UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SCOTT PEARLSTONE, individually and on behalf of similarly situated individuals, | )<br>)<br>) |
| *Plaintiff*, | ) Case No. 4:17-cv-02856 |
| v. | ) Hon. Henry Edward Autrey |
| WAL-MART STORES, INC., a Delaware corporation, | )<br>) JURY TRIAL DEMANDED |
| *Defendant*. | )<br>) |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, Scott Pearlstone, brings this Class Action Complaint against Defendant, Wal-Mart Stores, Inc. ("Walmart"), to stop Defendant's practice of unlawfully shortchanging consumers by withholding a portion of the money refunded on returned purchases, and to obtain redress for all those harmed by Defendant's conduct. For his First Amended Class Action Complaint, Plaintiff alleges as follows based on personal knowledge as to himself and his own acts and experiences, and as to all other matters, on information and belief, including an investigation by his attorneys.

## NATURE OF THE ACTION

1. Like many other retailers, Defendant promises its customers that they may return purchased items if they are unsatisfied or change their mind about their purchase.

2. However, Defendant has an unwritten practice of refusing to refund the sales taxes charged on certain returned items. As such, whenever a consumer returns certain items purchased from Defendant, Defendant withholds a portion of the original purchase price.

3. Defendant's practice of withholding sales taxes on refunds not only violates state

law—which doesn't permit Defendant to charge taxes for items that are returned—it is also contrary to Defendant's own written return policy.

4. Defendant's written return policy generally provides that customers may return purchased items within 90 days of the purchase date, with some limited exceptions for certain types of goods. If a customer returns an item within the 90 day period, the customer is generally entitled to receive a full refund through the original payment method or store credit in the amount of the refund.

5. Defendant's unwritten, unannounced practice of refusing to refund sales tax therefore also constitutes a breach of Defendant's written return policy.

6. Accordingly, Plaintiff brings this action on his own behalf and on behalf of proposed classes of similarly situated individuals in order to obtain redress for those who returned an item purchased from Defendant, but did not receive the full amount originally paid for the returned items due to Defendant's unlawful refund practices.

**PARTIES**

7. Plaintiff, Scott Pearlstone, is a natural person and a citizen of Missouri.

8. Defendant, Wal-Mart Stores, Inc., is Delaware corporation with its principal place of business in Bentonville, Arkansas. Walmart is the parent company of numerous subsidiaries that operate as a single, global organization, with divisions for Walmart U.S., Walmart International, Sam's Club, and Global eCommerce. Walmart exercises complete control of its subsidiaries, which act as agents on behalf of, and within the course and scope of the agency with, Walmart.

**JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction over this case and the claims at issue

pursuant to 28 U.S.C. § 1332(d), because this case is a class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are greater than 100 putative class members; at least one putative class member is a citizen of a state other than Defendant's states of citizenship; and none of the exceptions under subsection 1332(d) apply to this action.

10. This Court has specific personal jurisdiction over Defendant, because Plaintiff's claims arise out of Defendant's unlawful in-state activities. Defendant breached its agreement with Plaintiff in this state by unlawfully withholding money for items purchased and returned in this state. Defendant also advertises, distributes, and sells its products from its stores located in Missouri, such that it has sufficient minimum contacts with Missouri and has purposely availed itself of Missouri markets to make it reasonable for this Court to exercise jurisdiction over Defendant.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, as Defendant's transactions with Plaintiff and its alleged breach of contract occurred in this District.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

12. Defendant is a multinational corporation with more than 11,695 retail stores operating under 63 different names in 28 countries.

13. Defendant is the world's largest retailer in terms of revenue, with approximately $480 billion in revenue for 2016.

14. In the United States, Defendant operates retail stores in all 50 states and sells products to hundreds of thousands of customers every day.

**Defendant's Contracts With Customers**

15. When each one of Defendant's customers makes their respective purchase at one of Defendant's stores or through Defendant's website, Defendant enters into a contract for purchase of goods with that customer.

16. As part of Defendant's contracts with its customers, Defendant generally promises that the customers can return purchased products within a set timeframe for a full refund of the amount paid. This promise is contained in Defendant's written return policy.

17. Defendant's written return policy is a contract of adhesion. The terms of the return policy are drafted by Defendant, are nonnegotiable, and are subject to change by Defendant at any time.

18. The scope of Defendant's written return policy is extremely broad. The return policy applies nationwide and uniformly to each customer who purchases goods from Defendant. Indeed, the return policy expressly states that it applies to:

> all customers, associates and agents of Wal-Mart Stores, Inc., or one of its subsidiary companies, as well as the properties owned or operated by Wal-Mart Stores, Inc., or one of its subsidiary companies (excluding Sam's Club locations) in the United States ("Walmart").[1]

19. Although Defendant's nationwide written return policy treats certain types of goods differently, the policy generally provides that customers may return a purchased product with their sales receipt to receive a full refund of the amount paid, so long as the item is returned within a certain timeframe (usually within 90 days of purchase). The timeframe for returning goods under Defendant's policy is as follows:

> Generally, merchandise purchased in store or on Walmart.com can be returned or exchanged within **ninety (90) days** of purchase with or without a receipt.

---

[1] A true an accurate copy of relevant excerpts from Defendant's written Return Policy is attached hereto as <u>Exhibit A</u>.

Below are exceptions to the general ninety (90) day rule. All of the exceptions listed below require the merchandise be returned with a receipt.

- **Must be returned within 14 days with a receipt to obtain a refund or an exchange**
  Post-paid (contract) cellular devices may only be returned to the store of original purchase, in undamaged condition. Other contractually specified requirements may apply.
- **Must be returned within 15 days with a receipt to obtain a refund or an exchange**
  Drones, computers, camcorders, digital cameras, digital music players, e-tablets, e-readers, portable video players, GPS units, video game hardware, and prepaid cell phones.
- **Must be returned within 1 year with a receipt to obtain a refund or exchange**
  All perennials, trees, and shrubs.
- **Merchandise purchased from a Marketplace seller on Walmart.com cannot be returned to a store or to Walmart.com.**
- **Sales of the following items are final and may not be returned**
- All Firearms and Ammunition, and Pepper Spray
- Gas Powered Mini Bikes, Go Karts, Dirt Bikes, UTVs and ATVs
- Diabetic Products: Meters, Strips, Lancets, Lancet Devices and Syringes
- Prescription Drugs and products containing Pseudoephedrine and Pseudotropine
- Electronically fulfilled PINs or minutes for prepaid cellular devices.[2]

20.  If a customer complies with Defendant's return policy, they are entitled to reimbursement for the returned items.

21.  Customers who return their purchase during the applicable timeframe and with the original sales receipt are eligible to receive a full refund through the original payment method.

22.  Customers who return their purchase without their sales receipt are eligible to receive store credit.

23.  The terms of Defendant's written return policy governing returns with a sales receipt are as follows:

---

[2] Exh. A, at 1-2.

If an item is returned within the allowable return period with a receipt, the refund will be returned to the original method of payment.

**Cash or Check**
If a customer has a receipt and the item was purchased with cash or check, the customer may receive a cash refund.

**Credit Card**
If the item was purchased using a credit card, any refund is required to be issued to that same credit card.   If the original credit card is not present and is not available through scanning the TC number on the receipt, the refund will be processed onto a shopping card/gift card.

**Debit Card**
If the item was purchased using a debit card and the receipt shows 'debit tend', the refund should be placed back on the debit card if available, or cash can be provided.  If the receipt does not show 'debit tend' the refund is required to be issued to the same debit card.  If the debit card is not present and is not available through scanning the TC number on the receipt, the refund will be processed onto a shopping card/gift card.

**Receipted returns after the allowable return period**
With a receipt and if available, Walmart offers exchange or repair service through the manufacturer on select merchandise.[3]

24. The terms of Defendant's written return policy governing returns without a sales receipt are as follows:

Walmart will accept a non-receipted return or exchange provided it meets the following conditions:

- The refund verification process accepts the return.
- The customer's government issued ID has not been altered and is accepted by Walmart.

To return or exchange items without a receipt, the customer is required to present a valid government issued photo ID. Information from the customer ID will be stored in a secured database of returns activity that Walmart uses to authorize returns.

If an item is returned without a receipt and the refund verification process accepts it, the following options are available:

---

[3] *Id.*

- 6 -

- If available, the customer may send the merchandise to the manufacturer for repair.
- The merchandise may be exchanged for another item.
- The merchandise may be returned and a cash refund provided if the refund value of the returned item is **less than $25**.
- The merchandise will be returned and a shopping/gift card provided to the customer if the refund value of the returned merchandise is equal to or **greater than $25 in value**.[4]

25. Defendant publicizes the terms of its written return policy on marketing, on its website and help forums, on in-store displays and placards, and through sales associates.

26. Defendant's customers expect and understand that the terms of Defendant's written return policy are part of the contract for sale of goods that they enter into at the time of their respective purchases.

27. For items purchased from Defendant online via its website, Defendant's online return policy similarly provides that "Items sold and shipped by Walmart.com can be returned, exchanged or replaced (if the item is in stock) at any Walmart store, or returned by mail **within 90 days** of when you receive them."[5]

28. To summarize the contract provisions reproduced above, as part of every purchase of goods from Defendant, the customer enters into a contract of sale with Defendant. In exchange for the customer's promise to pay a certain price for goods, Defendant promises that:

   a. Customers who purchase goods from Defendant have 90 days (with exceptions) to determine whether or not they want to keep the goods. If the customer decides to reject the goods (that is, "return" them), Defendant will accept return of the goods.

   b. Upon return, Defendant will refund the money paid, exchange the product, or provide store credit, subject to whether the customer still has the sales receipt and

---

[4] *Id.*
[5] *How to Return an Item You Purchased on Walmart.com*, http://help.walmart.com/app/answers/detail/a_id/206/related/1 (last visited December, 5, 2017).

certain other limitations.

**Defendant's Failure to Honor its Written Refund Policy**

29. Defendant systematically breaches its contract with its customers by refusing to provide full refunds and instead refunding less than the amount paid.

30. For certain products, when one of Defendant's customers attempts to exercise their contractual right to return a product in exchange for the full refund of the amount paid, Defendant refunds the returned item's purchase price but refuses to refund the sales taxes charged on the item.

**Facts Specific to Plaintiff**

31. On September 29, 2017, Plaintiff purchased green beans, among other items, from one of Defendant's stores located at 201 Highlands Boulevard Dr., Manchester, MO 63011. The subtotal for the green beans was $3.48, to which Defendant added sales taxes of 9.363% and 5.975%.[6]

32. On October 2, 2017, Plaintiff purchased vitamins and salsa from Defendant's 201 Highlands Boulevard Dr. store. Plaintiff paid sales tax on both of these items. The subtotal on these items was $27.30, to which Defendant added sales taxes of 9.863% and 6.475%.[7]

33. Less than 90 days after these two purchases, on October 3, 2017, Plaintiff returned to Defendant's 201 Highlands Boulevard Dr. store and, pursuant to Defendant's written return policy, attempted to return the green beans, vitamins, and salsa he previously purchased.[8]

34. During this return transaction, Plaintiff was only refunded the listed retail purchase price that he originally paid for each item, but he was not refunded all of the sales taxes attributable to each returned item.[9]

---

[6] A true and accurate copy of Plaintiff's September 29, 2017 sales receipt is attached hereto as <u>Exhibit B</u>.
[7] A true and accurate copy of Plaintiff's October 2, 2017 sales receipt is attached hereto as <u>Exhibit C</u>.
[8] A true and accurate copy of Plaintiff's October 3, 2017 return receipt is attached hereto as <u>Exhibit D</u>.
[9] *See* Exhs. B-D.

35. After realizing he had been shorted on the amount the return, Plaintiff spoke with one of Defendant's in-store customer service representatives, and asked why he had not received a full refund in the amount he originally paid for the returned items. Plaintiff was then told that he was receiving a refund only for the listed retail price paid for the returned items, because Defendant's practice was to not refund sales tax on certain items.

36. When Defendant's customer service representative told Plaintiff about this unwritten and unannounced practice of withholding sales taxes, Plaintiff expressed his dissatisfaction with Defendant's practices and its failure to provide a full refund, and he politely attempted to dispute the amount of the refund with the customer service representative.

37. Plaintiff also asserted that Defendant's return policy required it to provide a full refund of the amount he originally paid. However, Defendant's customer service representative refused to authorize a full refund of the sales taxes Plaintiff paid, again explaining that Defendant's practice is to not refund sales taxes.

38. Plaintiff complied with all the terms of Defendant's written return policy in making his return.

39. Plaintiff performed all conditions and duties under the contracts with Defendant for the transactions at issue.

40. Defendant nonetheless failed to honor its written return policy and breached its contracts with Plaintiff.

41. Plaintiff is not alone in his experiences, and many of Defendant's other customers throughout the country have had nearly identical experiences.

42. Indeed, Defendant's unwritten, unannounced practice of failing to honor its promise to provide full refunds—including sales taxes—is widespread and well documented, as

seen from just a few examples of the hundreds of consumer complaints about this practice that have been publicly posted online:

- I got scammed by this, and all they refunded was the cost of the item and not the tax charged. I had to file a dispute with my [credit card] in order to get the tax refunded by [Walmart]. I placed the order in FL.  – Tom, December 15, 2017

- I even questioned them why I wasn't getting the taxes back? All they said was "be glad you're getting cash back". . . . – Melissa, December 17, 2017

- Yes, I was a victim of this. Not only did they keep the taxes. For returns, they also kept the taxes for layaways. – Roger Carter, December 19, 2017

- The same thing happened to me at a Walmart in Spokane, WA. I took back an item & they refused to give me the full amount & when I complained was told they do not refund taxes. – Patrick, December 21, 2017

- [T]hey don't refund sales tax in Cloquet,MN either returned boots and didn't get my sales tax back – Jennifer Neumeyer, December 22, 2017

- Just returned something to one of the Winchester, VA store's yesterday and didn't get the sales tax back. – Rebecca Gavin, December 22, 2017[10]

## CLASS ACTION ALLEGATIONS

43. Plaintiff bring this action pursuant to Fed. R. Civ. P. 23 on his own behalf and on behalf of a nationwide class (the "Class") with one subclass (the "Subclass" or "Missouri Subclass") defined as follows:

The Class: All persons who, during the applicable limitations period, purchased goods from Defendant; paid sales tax on the goods; returned one or more of the purchased items; and were not refunded the full amount of sales taxes paid on the returned goods.

The Missouri Subclass: All persons who, during the applicable limitations period, purchased goods from Defendant in Missouri; paid sales tax on the goods; returned one or more of the purchased items; and were not refunded the full amount of sales taxes paid on the returned goods.

---

[10] https://topclassactions.com/lawsuit-settlements/lawsuit-news/828699-walmart-keeps-sales-tax-on-returned-items-class-action-says/comment-page-1/#comments (last visited February 22, 2018).

44. Expressly excluded from the Class and Subclass are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family member of such officer or director.

45. There are tens if not hundreds of thousands of members of the Class and Subclass, making the members of the Class and Subclass so numerous that joinder of all members is impracticable. Although the exact number of members of the Class and Subclass is unavailable to Plaintiff, the members of the Class and Subclass can be easily identified through Defendant's records of returns and refunds made during the class period.

46. Plaintiff's claims are typical of the claims of the other members of the Class and Subclass, as Plaintiff and the other members of the Class and Subclass have all suffered harm and monetary damages as a result of Defendant unlawfully withholding a portion of refunds in breach of its written return policy.

47. Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class and Subclass. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and Subclass, and they have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class and Subclass.

48. Defendant has acted and failed to act on grounds generally applicable to Plaintiffs and the other members of the Class and Subclass, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and Subclass.

49. Absent a class action, most members of the Class and Subclass would find the cost of litigating their claims to be prohibitive and would have no effective remedy. Unless the Class

and Subclass are certified, Defendant will retain the monies it unlawfully withheld from the members of the Class and Subclass.

50. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

51. There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class and Subclass, and those questions predominate over any questions that may affect individual members of the Class and Subclass. Common questions for the Class and Subclass include, but are not limited to, the following:

(a) Whether the a contract is formed when a consumer purchases goods from Defendant;

(b) Whether any contract formed by the purchase of goods includes the terms set forth in Defendant's written return policy;

(c) Whether Defendant's written return policy contains a promise to refund all amounts paid for returned products;

(d) Whether Defendant breached its contract with its customers by failing to refund the sales taxes charged on returned items;

(e) Whether Defendant has been unjustly enriched by its failure to refund the sales taxes charged on returned items;

(f) Whether the Class and Subclass members have sustained damages as a result of Defendant's failure to refund the sales taxes charged on returned items;

(g) Whether Defendant's conduct constitutes a violation of the Missouri Merchandising Practices Act.

## COUNT I
## BREACH OF CONTRACT
**(on behalf of the Class and the Missouri Subclass members)**

52. Plaintiff incorporates by reference all of the foregoing allegations as if fully set forth herein.

53. A valid contract was formed with Defendant when Plaintiff and the other members of the Class and Subclass made their respective purchases from Defendant.

54. Defendant's contracts with Plaintiff and the other members of the Class and Subclass include or incorporate the terms of Defendant's written return policy.

55. Under Defendant's contracts with Plaintiff and the other members of the Class and Subclass, Plaintiff and the other members of the Class and Subclass had a set period of time (up to 90 days depending on the type of product) to reject the purchased product(s) and return them to receive a full refund, exchange, or store credit, depending on whether they retained the original receipt and whether the product remained unopened and unused.

56. Plaintiff and the other members of the Class and Subclass attempted to exercise their right to return their purchased products within the applicable time period.

57. Plaintiff and the other members of the Class and Subclass either had their receipts, the original packaging, or Defendant otherwise accepted the return, waiving such requirements.

58. Plaintiff and the other members of the Class and Subclass performed all other conditions and duties under their contracts with Defendant for the transactions at issue.

59. Defendant nonetheless failed to honor its written return policy and breached its contracts with Plaintiff and the other members of the Class and Subclass by failing to refund the entire amount paid for the returned product(s).

60. As a result of the Defendant's breach, Plaintiff and the other members of the Class and Subclass suffered actual harm and are entitled to recover compensatory damages in an amount equal to the sales taxes Defendant withheld on each refund.

**COUNT II**
**UNJUST ENRICHMENT**
**(in the alternative to Count I, and on behalf**
**of the Class and the Missouri Subclass members)**

61.     Plaintiff incorporates by reference the allegations in paragraphs 1-51 above.

62.     Plaintiff and the other Class and Subclass members conferred a benefit on Defendant when they purchased goods from Defendant. Defendant unjustly and unlawfully retained a portion of this benefit after, as explained above, Plaintiff and the other Class and Subclass members attempted to return their purchased items.

63.     The amount of the benefit Defendant unlawfully withheld on returned purchases is measurable by calculating the difference between the total amount of money originally paid for each returned item—including any sales tax—and the amount actually refunded. Defendant has been unjustly enriched by any portion of this difference that it has retained or withheld, or any monies it has derived from retained or withheld amounts. Defendant appreciates or has knowledge of such benefit.

64.     Defendant was not authorized to burden Plaintiff and the other Class and Subclass members with these charges, and Defendant's retention of this benefit violates fundamental principles of justice, equity, and good conscience.

65.     It would be inequitable and unjust for Defendant to retain the benefit of monies wrongfully withheld following customers' product returns.

66.     Therefore, to the extent that Defendant has unlawfully retained any money collected as or derived from customers' payments of sales taxes on goods that were later properly returned, Defendant has been enriched, and it would be unjust to allow Defendant to retain the enrichment.

67.     Because Defendant will be unjustly enriched if it is allowed to retain such funds,

Plaintiff and the other Class and Subclass members are entitled to an order requiring Defendant to disgorge any benefit it has unjustly retained, and requiring Defendant to pay restitution to Plaintiffs and the other Class and Subclass members in the amount by which Defendant was unjustly enriched on each Class and Subclass member's return.

## COUNT III
### VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT
**(Mo. Rev. Stat. 407.010 *et seq.* on behalf of the Missouri Subclass Members)**

68. Plaintiff incorporates by reference all of the foregoing allegations as if fully set forth herein.

69. Section 407.020 of the Missouri Merchandising Practices Act ("MMPA") states in relevant part that:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri, is declared to be an unlawful practice.

Mo. Rev. Stat. § 407.020.1.

70. Defendant is a "person" engaged in "trade" or "commerce," and Defendant's transactions with Plaintiff and the other members of the Missouri Subclass are "sales" as defined under Mo. Rev. Stat. § 407.010.

71. Plaintiff and the other members of the Missouri Subclass are persons who purchased merchandise from Defendant primarily for personal, family or household purposes and suffered an ascertainable loss of money as a result of Defendant's unlawful conduct described herein. Mo. Rev. Stat. § 407.025.1.

72. Defendant acted with, used, or employed deception, fraud, false pretense, false promise, misrepresentation, unfair practices or concealed, suppressed, or omitted material facts in

connection with the sale or advertisement of merchandise in trade or commerce in violation of Section 407.020.1 of the MMPA.

73. Defendant committed deceptive acts under the MMPA by representing to Plaintiff and the other members of the Missouri Subclass that they could obtain a full refund or store credit upon satisfying the conditions precedent under Defendant's written return policy, when in actuality, Defendant had a separate, unwritten practice of refusing to refund sales taxes on certain returned items.

74. Defendant knew and understood that it would not refund sales taxes at the time Plaintiff and the other Missouri Subclass members made their respective purchases, and Defendant intended that Plaintiff and the other Missouri Subclass members would rely on its misrepresentations.

75. Plaintiff and the Missouri Subclass members did in fact rely on Defendant's misrepresentations, as demonstrated by their purchase and subsequent attempts to invoke the terms of the return policy, and they would have acted differently had they known that the representations Defendant made in its written return policy were false.

76. Defendant also committed unfair acts under the MMPA. Under regulations promulgated by the Missouri Attorney General, "[i]t is an unfair practice for any person in connection with the sale of merchandise to unilaterally breach unambiguous provisions of consumer contracts." Mo. Code Regs. Ann. tit. 15 § 60-8.070.

77. As alleged above, Defendant unilaterally breached the terms of its written return policy when it refused to refund sales taxes charged on returned items and thereby failed to provide full refunds or full value in the form of store credit.

78. Defendant's actions are oppressive, unethical, and unscrupulous, and have caused

substantial injury to the Missouri Subclass members as a whole by imposing additional, unlawful costs on those who attempt to invoke their rights under Defendant's written return policy. *See* Mo. Code Regs. Ann. tit. 15 § 60-8.020.

79.     Defendant's unlawful conduct has resulted in an ascertainable loss of money. Plaintiff and the other members of the Missouri Subclass have suffered monetary losses in amount equal to the difference between the amount originally paid for the returned items, including the tax attributable to each item, and the lesser amount actually refunded.

80.     Pursuant to Mo. Rev. Stat. § 407.025, Plaintiffs and the other members of the Missouri Subclass are entitled to recover their actual damages in an amount to be proven at trial, an award of punitive damages, an award of reasonable attorney's fees, injunctive relief prohibiting Defendant's unfair and deceptive conduct prospectively, and any other penalties or awards that may be appropriate under applicable law.

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class and the Subclass, prays for the following relief:

- A)  An order certifying the Class and Subclass as defined above;
- B)  An award of actual or compensatory damages under Count I in amount to be determined at trial or, in the alternative, disgorgement of all funds unjustly retained by Defendant under Count II;
- C)  An award of actual or compensatory damages under Count III in amount to be determined at trial;
- D)  An award of punitive damages under Count III in amount to be determined at trial;
- E)  Injunctive relief under Count III prohibiting Defendant from continuing to commit the deceptive and unfair acts alleged herein;
- F)  An award of reasonable attorneys' fees and costs; and
- G)  Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: February 22, 2018              SCOTT PEARLSTONE, individually and on behalf of similarly situated individuals

By: /s/ *Paul T. Geske*
One of Plaintiff's Attorneys

Lanny Darr
DARR FIRM
307 Henry Street, Ste. 406
Alton, IL 62002
Tel: (618) 208-0011
Fax: (618) 433-8519
ldarr@darrfirm.com

Myles McGuire (*pro hac vice* to be filed)
Paul T. Geske (*pro hac vice*)
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
pgeske@mcgpc.com

*Attorneys for Plaintiff and the putative classes*