UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT PEARLSTONE, | ) | |
| individually and on behalf of similarly | ) | |
| situated individuals, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 4:17CV2856 HEA |
| | ) | |
| v. | ) | |
| | ) | |
| WAL-MART STORES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss the First

Amended Complaint and Alternative Motion to Strike Class Allegations. [Doc. No.

25]. The motion is fully briefed.  For the reasons set forth below, the Motion is

denied.

## Facts and Background[1]

Plaintiff brought this putative class action alleging that Defendant failed to

fully refund the sales tax that Plaintiff had paid on items that he later returned to

---

[1] For purposes of deciding the motion to dismiss for failure to state a claim, the Court accepts the factual allegations contained in the Amended Complaint as true. *Eckert v. Titan Tire Corp.* 514 F.3d 801, 806 (8th Cir. 2008).  The Court may also consider documents attached to, or materials that are necessarily embraced by, the pleadings.  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (internal quotations and citations omitted).  This recitation of facts, however, is set forth for the purposes of this motion only and in no way relieves the parties of the necessary proof thereof in later proceedings.

Defendant's Manchester, Missouri store.  Plaintiff asserts claims for breach of

contract (Count I), unjust enrichment (Count II), and violation of the Missouri

Merchandising Practices Act (Count III).  Plaintiff seeks compensatory damages,

punitive damages, injunctive relief, and attorneys' fees and costs.

Plaintiff's First Amended Complaint ("FAC") alleges the following:

Defendant is a multinational corporation and operates retail stores in all 50

states.  Plaintiff alleges that when each one of Defendant's customers make their

respective purchase at one of Defendant's stores or through Defendant's website,

Defendant enters into a contract for purchase of goods with that customer.

Plaintiff alleges that as part of Defendant's contracts with its customers,

Defendant generally promises that the customers can return purchased products

within a set timeframe for a full refund of the amount paid, and that this promise is

contained in Defendant's written return policy.  The terms of the return policy are

drafted by Defendant, are nonnegotiable, and are subject to change by Defendant at

any time.

The return policy generally applies nationwide and uniformly to each

customer who purchases goods from Defendant.  Defendant's nationwide written

return policy treats certain types of goods differently as to whether they can be

returned, and in what timeframe they must be returned.  The policy generally

provides that customers may return a purchased product with their sales receipt to

receive a refund of the amount paid, so long as the item is returned within a certain timeframe (usually within 90 days of purchase).

Subject to limitations, if a customer complies with Defendant's return policy, they are entitled to reimbursement for the returned items.  Customers who return their purchase during the applicable timeframe and with the original sales receipt are eligible to receive a full refund through the original payment method. Customers who return their purchase without their sales receipt are eligible to receive store credit.  The terms governing returns with and without a receipt, respectively, are included in the return policy.

Defendant publicizes the terms of its written return policy regarding marketing, on its website and help forums, on in-store displays and placards, and through sales associates.  Plaintiff alleges that Defendant's customers expect and understand that the terms of Defendant's written return policy are part of the contract for sale of goods that they enter into at the time of their respective purchases.

On September 29, 2017, Plaintiff purchased green beans, among other items, from one of Defendant's stores located at 201 Highlands Boulevard Dr., Manchester, MO 63011. The subtotal for the green beans was $3.48, to which Defendant added sales taxes of 9.363% and 5.975%.  On October 2, 2017, Plaintiff purchased vitamins and salsa from the same store. Plaintiff paid sales tax on both

of these items. The subtotal on these items was $27.30, to which Defendant added sales taxes of 9.863% and 6.475%.

Less than 90 days after these two purchases, on October 3, 2017, Plaintiff returned to Defendant's 201 Highlands Boulevard Dr. store and, pursuant to Defendant's written return policy, attempted to return the green beans, vitamins, and salsa he previously purchased.  During this return transaction, Plaintiff was refunded the listed retail purchase price that he originally paid for each item, but he was not refunded all of the sales taxes attributable to each returned item.  Plaintiff complied with all the terms of Defendant's written return policy in making his return.  Plaintiff performed all conditions and duties under the contracts with Defendant for the transactions at issue.  Defendant nonetheless failed to honor its written return policy and, Plaintiff alleges, breached its contracts with Plaintiff.

After realizing he had not fully been refunded his sales tax, Plaintiff spoke with one of Defendant's in-store customer service representatives, and asked why he had not received a full refund in the amount he originally paid for the returned items.  Plaintiff was then told that he was receiving a refund only for the listed retail price paid for the returned items, because Defendant's practice was to not refund sales tax on certain items.  Plaintiff responded by expressing his dissatisfaction with Defendant's unwritten and unannounced practice of withholding sales taxes and its failure to provide a full refund.  Plaintiff attempted

to dispute the amount of the refund with the customer service representative, and asserted that Defendant's return policy required it to provide a full refund of the amount he originally paid.  However, Defendant's customer service representative refused to authorize a full refund of the sales taxes Plaintiff paid, again explaining that Defendant's practice is to not refund sales taxes.

Plaintiff asserts his claims individually and on behalf of one nationwide class and one Missouri-specific subclass.[2]  Plaintiff seeks relief for Defendant's alleged breach of contract, unjust enrichment, and violation of the Missouri Merchandising Practices Act ("MMPA").

Defendant moves to dismiss Plaintiff's claims for failure to state a claim upon which relief may be granted under Rule 12(b)(6) and for failure to plead the MMPA claim with particularity under Rule 9(b).  In the alternative, Defendant moves to strike the class allegations under Rule 12(f) and Rule 23, and dismiss the Plaintiff's class claims under Rule 12(b)(6).

**Legal Standard**

---

[2] The class and subclass are defined as follows:
"The Class: All persons who, during the applicable limitations period, purchased goods from Defendant; paid sales tax on the goods; returned one or more of the purchased items; and were not refunded the full amount of sales taxes paid on the returned goods.
The Missouri Subclass: All persons who, during the applicable limitations period, purchased goods from Defendant in Missouri; paid sales tax on the goods; returned one or more of the purchased items; and were not refunded the full amount of sales taxes paid on the returned goods."

In examining a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court accepts all of Plaintiff's factual allegations as true and construes those allegations in Plaintiff's favor. *Kulkay v. Roy*, 847 F.3d 637, 641 (8th Cir. 2017). To survive such a motion, Plaintiff's complaint "must include sufficient factual allegations to provide the grounds on which the claim rests." *Drobnak v. Andersen Corp*, 561 F.3d 778, 783 (8th Cir. 2009). Put simply, Plaintiff's claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

A claim sounding in fraud is subject to a heightened pleading standard wherein the plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this requirement, the pleader must generally set forth the "who, what, when, where, and how of the misconduct charged." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (internal quotation marks and quoted cases omitted). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d

736, 746 (8th Cir. 2002) (*quoting Commercial Prop. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)).

Under Rule 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter."  Courts have acknowledged that Rule 12(f) may justify striking class allegations that facially fail to meet the requirements to certify a class under Rule 23.  *See Rios v. State Farm Fire & Cas. Co.*, 469 F.Supp.2d 727, 740 (S.D. Iowa 2007); *Knowles v. Standard Fire Ins. Co.*, No. 4:11-CV-04044, 2013 WL 6497097, at *3–4 (W.D. Ark. Dec. 11, 2013).  However, the Eighth Circuit has held that striking allegations is an "extreme measure" and is necessarily infrequently granted. *Stanbury Law Firm v. Internal Revenue Serv.*, 221 F.3d 1059, 1063 (8th Cir. 2000).

## Discussion

### Breach of Contract

Defendant claims that Plaintiff's breach of contract action is barred for Plaintiff's failure to give Defendant pre-suit notice of the alleged breach, as required by Missouri's codification of the UCC.  § 400.2-607(3)(a) RSMo. Plaintiff pleaded that he disputed the amount of the return with Defendant's customer service representative and told the representative that he was due a refund in the full amount originally paid.  Defendant argues, unpersuasively, that

these allegations are insufficient to provide grounds for the notice element of a UCC breach of contract claim.

"The notice contemplated by the U.C.C. does not require any particular formality or detail as to the nature of the buyer's complaint." *Kansas City v. Keene Corp.*, 855 S.W.2d 360, 369 (Mo. 1993). "The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched." *Id*.; V.A.M.S. § 400.2-607 at n.4. Accepting as true the factual allegations in the FAC, Plaintiff let Defendant know that the amount he received was less than what he believed he was owed per the return policy. Plaintiff has sufficiently pleaded that he provided Defendant with notice of the alleged breach of the sale contract.

**Unjust Enrichment**

Defendant claims that Plaintiff's unjust enrichment claim must be dismissed. Defendant asserts that it acts "merely as an agent of the Missouri director of revenue" when collecting sales tax; therefore "once [Defendant] collected sales tax on the original purchases, the sales tax belonged to the State of Missouri." For its contention that Defendant is merely an agent of the Missouri director of revenue, and therefore has no benefit conferred upon it, Defendant references Section 144.080.1, which provides that retailers:

> shall, on or before the last day of the month following each calendar
> quarterly period of three months, file a return with the director of

revenue showing the person's gross receipts and the amount of tax
levied in section 144.020 for the preceding quarter, and shall remit to
the director of revenue, with the return, the taxes levied in section
144.020 . . .

Defendant claims it is statutorily required to remit any levied and collected sales

tax to the director of revenue; that is, the statute "does not state that if [Defendant]

refunds the purchase price and tax levied [to the purchaser], it is not responsible to

remit the original tax levied."[3]

Defendant's argument is not supported by the plain language of the statutes.

In 1965 the General Assembly amended the statutory scheme "to change the state

sales tax from a transaction tax to a gross receipts tax." *Fabick & Co. v. Schaffner*,

492 S.W.2d 737, 743 (Mo. 1973).  As recently as 2017, the Missouri Supreme

Court has reiterated that the sales tax scheme is one of gross receipts.  *St. Louis

Rams LLC v. Dir. of Revenue*, 526 S.W.3d 124, 127 (Mo. 2017) ("Missouri sales

tax is a gross receipts tax imposed upon the seller.").

A gross receipts tax works simply: For each reporting period, sellers are

required "to report to the director of revenue their 'gross receipts', defined herein

to mean the aggregate amount of the sales price of all sales at retail, and remit tax

at four percent of their gross receipts."  § 144.021 RSMo.  Notably, Section

---

[3] In its memorandum, Defendant claims that it refunds sales tax to customers "whenever
possible."  Defendant does not address how or why it does so, in light of its assertions that all
sales tax levied "belongs" to the State of Missouri and all sales tax collected is remitted to the
director of revenue.

144.010.4 specifically provides that refunded sales are <u>not</u> to be included in gross receipts:

> Gross receipts . . . means the total amount of the sale price of the sales at retail . . . except that, the term gross receipts shall not include the sale price of property returned by customers when the full sale price thereof is refunded either in cash or by credit.

Therefore, for a sale and return that is made within the same sales tax reporting period, the tax is never remitted to the director of revenue.  The refund is subtracted from the gross receipts, making it as if the sale never happened.  The sale and refund cancel each other out completely, resulting in a zero effect on the gross receipts.  The four percent of gross receipts remitted, therefore, is unaffected by the sale and return.

When a sale occurs in one reporting period, and the return/refund occurs in another reporting period, Missouri sales tax law still allows for the seller to refund sales tax to the purchaser and deduct the sale price from their taxes owed.  Section 144.130 reads:

> Refunds made by the [seller] during the preceding calendar month or calendar quarter to purchasers, on account of . . . things returned to the [seller] shall be allowed as a deduction from the gross receipts required to be stated in the returns filed with the director of revenue; provided, the [seller] had theretofore included the said refunded receipts in a return made by such [seller] and had paid the amount imposed by sections 144.010 to 144.510 with respect thereto; provided, the seller has returned to the purchaser any and all tax previously paid by the purchaser at the time of the purchase.

In other words, if a seller who has made a sale and charged the appropriate sales tax and remitted that tax to the director of revenue during a previous reporting period, refunds the sale price <u>and</u> sales tax to the purchaser during a subsequent reporting period, then the seller can deduct the sale price from its gross receipts for that subsequent reporting period.  Perhaps less elegant than a same-reporting-period sale and refund, Section 144.130 bears the same result.  The purchaser is refunded their sales tax and the sales tax paid by the seller to the director of revenue during the previous reporting period is offset by the gross receipts deduction of the subsequent period.

Defendant's claim that "once [Defendant] collected sales tax on the original purchases, the sales tax belonged to the State of Missouri" is inaccurate as a matter of law.  The sales tax scheme accounts for the issue of returns and refunds, allowing sellers to adjust their gross receipts and refund purchasers' sales tax directly.  Nothing in the statutes indicates that a seller who issues a refund may keep the remaining sales tax; unjust enrichment is a possibility.  While it is possible that Defendant did not keep the excess sales tax, and was not unjustly enriched, that is not a determination to be made at this point in litigation.  The disposition of the excess sales tax is a question for discovery.  Therefore dismissal is not appropriate on this issue.

**Exclusive Remedy**

Defendant contends that Plaintiff's entire action is barred because the exclusive remedy for a refund of sales tax is set out in Section 144.190.4, which provides:

> [A] purchaser that originally paid sales or use tax to a vendor or seller may submit a refund claim directly to the director of revenue for such sales or use taxes paid to such vendor or seller and remitted to the director . . .

Defendant also quotes *H.S. Construction Co.v. Lohman*, 950 S.W.2d 331, 333 (Mo. App. W.D. 1997), in which the court held:

> The prescribed statutory remedies for recovery of the taxes paid are exclusive. Our courts "have consistently held that taxes, once paid, can only be recovered through proper statutory proceedings, and that the statutes must be adhered to."

(*quoting Ackerman Buick Inc. v. St. Louis County*, 771 S.W.2d 343, 346 (Mo. 1989)).  The exclusivity of remedy, as held in *H.S. Construction Co.* and *Ackerman Buick Inc.* applies only to taxes that have been paid to the director of revenue.

In the FAC, Plaintiff alleges that Defendant retained the sales tax it refused to refund him.  Accepting this factual allegation as true and construing it in Plaintiff's favor, the Court concludes that the facts as pleaded are that Defendant never remitted the sales tax to the director of revenue.  Although Defendant argues that this is impossible as a matter of law, it is not.  As discussed above, it is possible that a seller could retain unrefunded sales tax, thereby not remitting it to the director of revenue.  Because the case law clearly states that exclusivity of

remedy only applies where taxes were actually remitted to the director of revenue, the motion to dismiss will be denied.

**MMPA Claim**

For his MMPA claim, Plaintiff alleges both a "deceptive practices" claim and an "unfair practices" claim.  Plaintiff's primary allegation regarding the deceptive practices claim is that Defendant misrepresented to purchasers, through its "written return policy," that they could obtain a "full refund or store credit," while Plaintiff's unfair practice claim is based on an allegation that Defendant "unilaterally breached the terms of its written return policy" when it failed to "provide full refunds or full value in the form of store credit."

Defendant claims that Plaintiff's allegations do not satisfy the heightened pleading requirements of Rule 9(b).  It also argues that the MMPA claim should be dismissed because it relies on Defendant's "written return policy," which "contains no statement that a customer will receive a sales tax refund from [Defendant] on returned merchandise."  Defendant further claims that Plaintiff fails to identify any portion of the written return policy that could be considered a promise by Defendant to refund sales tax.

The MMPA creates an individual cause of action thereunder for any person "who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or

personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020."  § 407.025.1 RSMo.  The Missouri Supreme Court has characterized the MMPA as "'paternalistic legislation designed to protect those that could not otherwise protect themselves.'"  *High Life Sales Co. v. Brown–Forman, Corp.*, 823 S.W.2d 493, 498 (Mo. 1992) (*quoting Electrical and Magneto Service Co. v. AMBAC Intern'l Corp.*, 941 F.2d 660, 663 (8th Cir. 1991)); *see also Huch v. Charter Communications, Inc.*, 290 S.W.3d 721, 725 (Mo. 2009) (noting that the legislature enacted the MMPA to "regulate the marketplace to the advantage of those who may fall victim to unfair business practices").  As such, the law is very broadly written.  Under section 407.020:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce ... in or from the State of Missouri, is declared to be an unlawful practice.

See also 34 Mo. Practice Personal Injury and Torts Handbook § 29:2, "Elements of the action" (2016 ed.) ("The prohibitions of V.A.M.S. § 407.020 are construed broadly to reach any deception or unfair practice[.]") (and citations therein).

The focus of the statutory scheme is on the defendant's conduct.  "A consumer's reliance on an unlawful practice is not required under the MMPA." *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 311 (Mo. App. E.D. 2016) (*citing Hess v. Chase Manhattan Bank*, USA, N.A., 220 S.W.3d 758, 774 (Mo.

2007)).  Whether the practice alleged is deceptive under the MMPA is analyzed under the "reasonable consumer" standard.  *Webb v. Dr Pepper Snapple Grp., Inc.*, No. 4:17-00624-CV-RK, 2018 WL 1955422, at *3 (W.D. Mo. Apr. 25, 2018) (*citing Murphy v. Stonewall Kitchen*, LLC, 503 S.W.3d at 312.)  Ultimately, the MMPA requires courts to make case-by-case determinations of whether a defendant's conduct violates principles of fair dealing.  *Huch*, 290 S.W.3d at 724.

"[I]n order to prevent evasion by overly meticulous definitions," the statutory scheme does not provide definitions of any particular unlawful practices. *Clement v. St. Charles Nissan, Inc.*, 103 S.W.3d 898, 900 (Mo. App. E.D. 2003) (*citing State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W.2d 633, 635 (Mo. App. E.D. 1988)).  The Missouri Supreme Court explained that absent statutory definitions, it would "consider[] the plain and ordinary meaning of the words themselves,...which," in the case of "unfair practice" were "unrestricted, all-encompassing and exceedingly broad."  *Ports Petroleum Co. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. 2001).  Accordingly, "[f]or better or worse, the literal words cover every practice imaginable and every unfairness to whatever degree."  *Id*.

The MMPA also grants the Missouri Attorney General authority to promulgate rules, and the rules that have been promulgated under the MMPA are instructive here.  *See United Pharmacal Co. of Mo. v. Mo. Bd. of Pharmacy*, 159 S.W.3d 361, 365 (Mo. 2005) (properly promulgated rules have the force and effect

of law).  For example, under 15 C.S.R. § 60–9.020(1), "deception" is defined as "any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression." Another rule, 15 C.S.R. § 60–9.070(1), defines "misrepresentation" as "an assertion not in accord with the facts[.]"  The rules further provide that reliance and intent are not elements that must be proven to establish deception or misrepresentation for purposes of § 407.020(1). § 60–9.020(2) and § 60–9.070(2). The regulation concerning "unfair practice[s]" provides that proof of deception, fraud, or misrepresentation is not required.  15 C.S.R. § 60–8.020(2).

At the motion to dismiss stage, the Court's focus is on what is alleged in a Plaintiff's complaint. Plaintiff alleges that Defendant engaged in deceptive practices by representing to purchasers, through its "written return policy," that they could obtain a "full refund or store credit," while Defendant in fact had a separate, unwritten policy of refusing to return sales tax on certain items.  Plaintiff alleges that Defendant engaged in unfair practices when it "unilaterally breached the terms of its written return policy" by failing to "provide full refunds or full value in the form of store credit."

As previously noted, consumer protection is paramount under the MMPA and its prohibitions are construed broadly.  The Missouri Supreme Court has explained that an "unfair practice" under the MMPA covers every unfair practice

imaginable and every unfairness, to whatever degree.  Practices made unlawful by the act are also broadly defined by regulation, such as deception, which is any practice having the tendency or capacity to mislead, deceive, cheat, or create a false impression; or misrepresentation, which is an assertion not in accord with the facts.  The standard is that of a "reasonable consumer."  A plaintiff need not even allege or prove reliance on an unlawful practice to state a claim under the act.

Defendant argues that nothing in its written return policy guarantees a full refund of sales tax, and that Plaintiff's contention that "he held an unexplained, personal belief" that he would get a refund of sales tax is insufficient to state an MMPA claim.  Indeed, the return policy attached to the FAC is silent as to sales tax refunds.  It refers only to a "refund," and does not mention a "full refund."  The return policy includes some limiting language, the first stating that "[Defendant] reserves the right to warn, limit or decline returns or exchanges;" the second section of limitations addresses categories of items that are subject to a different time limitation for return than the general 30 days, items that require a receipt with return, and items which are not returnable.

The question of whether a reasonable purchaser would be misled by a policy offering a "refund," where the "refund" is not a "full refund" but rather excludes sales tax, is a question of fact not properly resolved on a motion to dismiss.  *See Thornton v. Pinnacle Foods Grp. LLC*, 2016 WL 4073713, at *3 n.3 (E.D. Mo.

Aug. 1, 2016).  Plaintiff has plausibly alleged that Defendant's return policy unfairly suggests that a customer will be refunded all monies expended in the purchase of the item they are returning.  The Court cannot conclude as a matter of law and at this stage of the litigation that the language of the return policy is not misleading.  Plaintiff sufficiently alleges an unlawful practice under the MMPA.

In order to satisfy Rule 9(b)'s particularity requirements, "a plaintiff must state the 'who, what, where, when, and how' of the alleged fraud." *Thornton v. Pinnacle Foods Grp. LLC*, No. 4:16-CV-00158 JAR, 2016 WL 4073713, at *4 (E.D. Mo. Aug. 1, 2016) (*citing BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007)).  Put another way, Rule 9(b)'s particularity requirements are satisfied "where plaintiff identifies particular statements alleged to be misleading, the basis for contention, where the statements appear, and the relevant time period in which statements were used." *Id.* at *5 (*citing Chacana v. Quaker Oats Co.*, 752 F.Supp.2d 1111, 1126 (N.D. Cal. 2010)).  Additionally, the plaintiff does not need to state each element of the fraud claim with particularity; instead, the plaintiff must state sufficient facts such that the pleadings are not conclusory. *Id.* at *4 (*citing Roberts v. Francis*, 128 F.3d 647, 651 (8th Cir. 1997)).  Finally, Rule 9(b)'s particularity requirements relax when concerning matters within the opposing party's knowledge. *Fitzhenry–Russell v. Dr Pepper/Snapple Grp.*, 2017

WL 4224723, at *6, 2017 U.S. Dist. LEXIS 155654, at *17 (C.D. Cal. Sept. 22, 2017).

The Court concludes Plaintiff's pleadings are sufficient to satisfy Rule 9(b)'s particularity requirements. Plaintiff identified: (i) who: Defendant Wal-mart; (ii) what: a "refund" policy that resulted in recoupment of less than the entire amount originally tendered by Plaintiff to Defendant; (iii) when: purchases and returns made within the class period; (iv) where: Defendant's return policy, posted on its website and attached to the FAC; and (v) how: that by stating Plaintiff could obtain a refund, when in fact he could not obtain a refund of his sales tax, Defendant made misrepresentations and deceptive statements. The claim is plausible on its face and satisfies Rule 9(b) particularity requirements.

**Economic Loss Doctrine**

Defendant seeks also to dismiss Plaintiff's MMPA claim on the grounds that it is barred by the economic loss doctrine. The economic loss doctrine prohibits a plaintiff from seeking to recover in tort for economic losses that are contractual in nature. "The doctrine was judicially created to protect the integrity of the UCC bargaining process; it prevents tort law from altering the allocation of costs and risks negotiated by the parties." *Self v. Equilon Enterprises, LLC,* No. 4:00-CV-1903 TA, 2005 WL 3763533, at *8 (E.D. Mo. Mar. 30, 2005) (*quoting Marvin Lumber and Cedar Co. v. PPG Indus., Inc*., 223 F.3d 873, 882 (8th Cir. 2000).

Missouri courts have not addressed whether the economic loss doctrine prohibits a plaintiff from seeking recovery under the MMPA for purely economic losses that are subject to a contract.  Nonetheless, Defendant argues that the economic loss doctrine should bar Plaintiff's MMPA claim because the doctrine applies to fraud claims, *Nestle Purina Petcare Co. v. Blue Buffalo Co. Ltd.*, 181 F. Supp. 3d 618, 634 (E.D. Mo. 2016), and because Plaintiff's claim is not "based upon a misrepresentation that was outside of or collateral to the contract," *AKA Distrib. Co. v. Whirlpool Corp.*, 137 F.3d 1083, 1086 (8th Cir. 1998).

This argument is not well taken.  The MMPA expressly provides for "recover[y of] actual damages" resulting from "an ascertainable loss of money," i.e., a purely economic loss.  § 407.025.1 RSMo.  The Missouri Supreme Court has rejected the applicability of other common law defenses to MMPA claims.  In *Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721 (2009), the Missouri Supreme Court held that "Because of the [MMPA]'s broad scope and the legislature's clear policy to protect consumers, certain legal principles are not available to defeat claims authorized by the act."  In *Huch*, the defendant company was prohibited from invoking a common law doctrine as a defense to a violation of the MMPA because allowing use of the doctrine "would nullify the protections of the [MMPA] and be contrary to the intent of the legislature."  *Id.* at 727.

In addition, the Eighth Circuit has indicated that the economic loss doctrine applies only to transactions between commercial parties.  *See AKA Distrib. Co. v. Whirlpool Corp.*, 137 F.3d 1083, 1087 (8th Cir. 1998) ("We think the Minnesota Supreme Court would . . . hold[] that, in a suit between merchants, a fraud claim to recover economic losses must be independent of the Article 2 contract or it is precluded by the economic loss doctrine."); *Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 908 (8th Cir. 2013) ("[T]he 'economic loss' doctrine ... forbids commercial contracting parties (as distinct from consumers, and other individuals not engaged in business) to escalate their contract dispute into a charge of tortious misrepresentation if they could easily have protected themselves from the misrepresentation of which they now complain.") (*quoting All–Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 865–66 (7th Cir. 1999) (Wisc.)).

The MMPA is paternalistic legislation made to protect consumers.  Unlike commercial parties, consumers generally lack sophisticated knowledge as to contracts and have unequal bargaining power.  The economic loss doctrine is meant to protect sophisticated parties from suing over issues that could have been bargained for.  It is not meant to subvert the legislature's efforts to protect customers in their purchase of consumer goods and equip them with a wholly economic remedy.  The economic loss doctrine does not apply to Plaintiff's MMPA claim.

**Motion to Strike Class Allegations**

Defendant moves to strike Plaintiff's class allegations under Rule 12(f) and Rule 23, and dismiss Plaintiff's class claims pursuant to Rule 12(b)(6).  Class allegations may be dismissed "'when the pleadings are facially defective and definitively establish that a class action cannot be maintained.'"  *St. Louis Heart Ctr., Inc. v. Forest Pharm., Inc.*, No. 4:12-CV-02224, 2013 WL 1076540, at *5 (E.D.Mo. Mar.13, 2013) (*quoting Wright v. Family Dollar, Inc.*, 2010 WL 4962838, at *1 (N.D.Ill. Nov.30, 2010)).  However, "'where the dispute is factual and discovery is needed to determine whether a class should be certified, it may be premature to strike class allegations.'"  *Id.*  "The propriety of class action status can seldom be determined on the basis of the pleadings alone."  *Walker v. World Tire Corp., Inc.*, 563 F.2d 918, 921 (8th Cir.1977).  "'Where ... the pleadings themselves do not conclusively show whether the Rule 23 requirements are met, the parties must be afforded the opportunity to discover and present documentary evidence on the issue.'"  *St. Louis Heart Ctr.*, 2013 WL 1076540, at *5 (*citing Walker*, 563 F.2d at 921).

Defendant argues that the class claims alleged do not satisfy the uniformity requirement of Rule 23(b)(3).  The focus of the arguments on the issue of uniformity put forth by Defendants Motion to Strike Class Allegations does not affect the class allegations at this point in the litigation.  The class claims are

plausibly pleaded. As a consequence, the motion to strike and dismiss class claims will be denied.

## Conclusion

Based upon the foregoing analysis, Plaintiff's Petition satisfies the requirements of Rules 12(b)(6) and 9(b).  Plaintiff's class claims are not facially defective so as to warrant dismissal.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss the First Amended Complaint and Alternative Motion to Strike Class Allegations. [Doc. No. 25] is **DENIED**.

Dated this 16th day of November, 2018.


_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE