**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| SCOTT PEARLSTONE, individually and on behalf of similarly situated individuals, | ) ) ) | |
| *Plaintiff*, | ) ) | Case No. 4:17-cv-02856-HEA |
| v. | ) ) | Hon. Henry Edward Autrey |
| WAL-MART STORES, INC., | ) ) | |
| *Defendant*. | ) ) ) | |

**PLAINTIFF'S *UNOPPOSED* MOTION AND INCORPORATED
MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY
<u>APPROVAL OF CLASS ACTION SETTLEMENT</u>**

Dated: November 24, 2020

Myles McGuire
Paul T. Geske
Brendan Duffner
MᴄGᴜɪʀᴇ Lᴀᴡ, P.C.
55 West Wacker Drive, Suite 900
Chicago, Illinois 60601
Tel: (312) 893-7002
mmcguire@mcpgpc.com
pgeske@mcgpc.com
bduffner@mcgpc.com

*Counsel for Plaintiff Scott Pearlstone
and proposed Class Counsel*

## TABLE OF CONTENTS

Table of Authorities ............................................................................................ iii

I.    INTRODUCTION  ................................................................................1

II.   BACKGROUND ..................................................................................2

      A.    Factual Background .................................................................2

      B.    Procedural History And The Parties' Settlement Negotiations ..............................4

III.  THE PROPOSED SETTLEMENT ......................................................6

      A.    The Proposed Settlement Class Definition ............................6

      B.    Monetary Relief And The Settlement Fund.............................6

      C.    Non-Monetary Relief ...............................................................7

      D.    Notice And Settlement Administration.....................................7

      E.    Exclusion And Objection Procedure.........................................9

      F.    Release Of Liability ................................................................9

IV.   DISCUSSION ......................................................................................9

      A.    Legal Standard At The Preliminary Approval Stage. ...........10

      B.    The Settlement's Terms Are Fair, Reasonable, And Adequate, Taking Into
            Account The Factors Listed In Federal Rule 23(e)(2)...........12

            1.    Plaintiff and Class Counsel have capably represented the Settlement Class
                  and will continue to do so. ........................................12

            2.    The Settlement was negotiated at arm's-length ........................13

            3.    The Settlement provides meaningful monetary compensation and adequate
                  relief to the Settlement Class Members. ...................14

                  i.    The Settlement delivers immediate relief and avoids the
                        considerable costs, risks, and delays of trial and appeal...............14

                  ii.   The Settlement provides for an efficient and effective method of
                        distributing relief to the Settlement Class Members.....................16

iii.    The anticipated award of attorneys' fees under the Settlement is fair and reasonable ........................................................................17

iv.    Apart from the Settlement Agreement, there have been no other agreements made in connection with the Settlement ....................19

4.    The Settlement treats the Settlement Class Members equitably relative to each other .................................................................................19

C.    The Court Should Grant Class Certification For Purposes Of Settlement.............19

1.    The Settlement Class satisfies the prerequisites to certification under Rule 23(a) ..........................................................................................20

i.    The Settlement Class is sufficiently numerous, and joinder is impracticable ..................................................................20

ii.    The Settlement Class Members' claims share common questions of law and fact. ..................................................................21

iii.    Plaintiff's claims are typical of those of the Settlement Class Members ......................................................................22

iv.    Plaintiff and Class Counsel will continue to adequately represent the Settlement Class Members and protect their interests .............23

2.    The Settlement Class is certifiable under Rule 23(b)(3) ............................23

i.    Common questions predominate over individual questions, and class adjudication is superior to other methods of resolution ........23

3.    The proposed notice plan informs the Settlement Class Members about all material aspects of the Settlement and satisfies Due Process ...................26

V.    CONCLUSION.............................................................................................28

Certificate of Service ................................................................................30

## **TABLE OF AUTHORITIES**

**Cases**                                                                                           **Page(s)**

*Ahmad v. City of St. Louis, Missouri*,
   No. 4:17-CV-2455, 2019 WL 2009589 (E.D. Mo. 2019).......................................................22

*Alpern v. UtiliCorp United, Inc.*,
   84 F.3d 1525 (8th Cir. 1996) ............................................................................................22

*Amchem Prods. Inc. v. Windsor*,
   521 U.S. 591 (1997).......................................................................................... 20, 23-26

*Ark. Educ. Ass'n v. Bd. of Educ. of Portland, Ark. Sch. Dist.*,
   446 F.2d 763 (8th Cir. 1971) ...........................................................................................20

*Blades v. Monsanto Co.*,
   400 F.3d 562 (8th Cir. 2005) ...........................................................................................24

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)...........................................................................................................19

*Cope v. Let's Eat Out, Inc.*,
   319 F.R.D. 544 (W.D. Mo. 2017) .............................................................................22, 25

*Cromeans v. Morgan Keegan & Co.*,
   303 F.R.D. 543 (W.D. Mo. 2014) .............................................................................21, 22

*DeBoer v. Mellon Mortg. Co.*,
   64 F.3d 1171 (8th Cir. 1995) ...........................................................................................22

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010).............................................................................................9

*Famuliner v. Walmart Inc.*,
   No. 19-CV-00060, 2019 WL 2566443 (W.D. Mo. 2019) ...............................................11

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982).........................................................................................................26

*George v. Uponor Corp.*,
   No. 12-CV-249, 2015 WL 5255280 (D. Minn. 2015) .............................................23

*Huyer v. Njema*,
   847 F.3d 934 (8th Cir. 2017) ...........................................................................................11

*In re BankAmerica Corp. Securities Litigation*,
   210 F.R.D. 694 (E.D. Mo. 2002) .....................................................................................15

iii

*In re Charter Communications, Inc., Securities Litigation*,
    No. 02-CV-1186, 2005 WL 4045741 (E.D. Mo. 2005)........................................................14

*In re Target Corporation Customer Data Security Breach Litigation*,
    892 F.3d 968 (8th Cir. 2018) ................................................................................11

*In re U.S. Bancorp Litig.*,
    291 F.3d 1035 (8th Cir. 2002) ................................................................................17

*In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 107 (S.D.N.Y. 2007) ......................................27-29

*In re Xcel Energy, Inc. Sec. Derivative and ERISA Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005)................................................................ 17-18

*Johnston v. Comerica Mortgage Co.*,
    83 F. 3d 241 (8th Cir. 1996) ................................................................................17

*Keil v. Lopez,*
    862 F.3d 685 (8th Cir. 2017) ................................................................11, 15, 17

*Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) ...........................................27

*Morgan v. United Parcel Serv. of N. Am, Inc.*,
    169 F.R.D. 349 (E.D. Mo. 1996) ................................................................................12

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 316 (1950) ................................28

*Paxton v. Union Nat. Bank*,
    688 F.2d 552 (8th Cir. 1982) ................................................................................20, 23

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) ................................................................................26

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)................................................................................26

*Rawa v. Monsanto Company*,
    934 F.3d 862 (8th Cir. 2019) ................................................................................15

*Schoenbaum v. E.I. Dupont De Nemours & Co.*,
    No. 4:05-CV-01108, 2009 WL 4782082 (E.D. Mo. 2009)........................................10, 12, 25

*Schumacher v. SC Data Center, Inc.*,
    No. 2:16-cv-04078, 2016 WL 7007539 (W.D. Mo. 2016) ................................................9

*Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*,
    271 F.R.D. 139, 145 (N.D. Ill. 2010) ................................................................................27

*Swinton v. SquareTrade, Inc.*,
   No. 18-CV-144, 2019 WL 617791 (S.D. Iowa 2019) ...........................................................11

*Van Horn v. Trickey*,
   840 F.2d 604 (8th Cir. 1988) ..................................................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)................................................................................................................21

*Yarrington v. Solvay Pharm., Inc.*,
   697 F. Supp. 2d 1057 (D. Minn. 2010).................................................................................17

## <u>Statutes</u>

Fed. R. Civ. P. 23 ...................................................................................................... *passim*

Missouri Merchandising Practices Act ("MMPA") Mo. Ann Stat. 407.010 ...................................4

Class Action Fairness Act, 28 U.S.C. § 1715 .................................................................................28

## <u>Other Authorities</u>

Conte & Newberg, 4 *Newberg on Class Actions*, (4th Ed. 2002)........................................ *passim*

*Manual for Complex Litigation* (4th Ed. 2004) ....................................................................... 9-10

## I.    <u>INTRODUCTION</u>

After nearly three years of contentious litigation, and following three full-day mediation sessions with former U.S. District Court Chief Judge James F. Holderman (ret.)—an experienced mediator with more than 30 years of experience on the bench—the Parties are pleased to report that they have reached a classwide settlement that favorably resolves this case. The Parties have entered into a Settlement Agreement,[1] under which Defendant Wal-Mart Stores, Inc. k/n/a Walmart Inc. ("Walmart" or "Defendant") has agreed to pay $5,000,000 into a Settlement Fund to be distributed to Settlement Class Members who elect to participate in the Settlement. Each Settlement Class Member who timely submits a valid claim will be entitled to receive a *pro rata* share of the Settlement Fund after deductions for Court-awarded Attorneys' Fees and Litigation Expenses, an Incentive Award to the Settlement Class Representative and the expenses associated with administering the Settlement.

By any measure, the Settlement and the relief it provides are a terrific outcome for the Settlement Class Members given the significant risks involved in continued litigation. Plaintiff brought this case against a defendant with substantial resources, strong legal defenses, and a willingness to litigate through trial and appeals. While Plaintiff maintains that even absent a settlement, he would be able to secure class certification and prevail on the merits at trial, success is not assured, and Walmart has vigorously defended this case at every stage. Notwithstanding many challenges, Plaintiff and Class Counsel have secured a $5 million Settlement Fund and obtained a commitment from Walmart to implement measures to help ensure that the challenged sales tax refund practices at issue in this litigation do not continue. If approved, the Settlement will bring meaningful relief to consumers nationwide as well as certainty and closure to what has

---

[1] Unless stated otherwise, capitalized terms used in this Motion are intended to have the meanings given to them in the Parties' Settlement Agreement, a copy of which is attached hereto as <u>Exhibit A</u>.

been—and likely would continue to be—highly contentious, costly, and lengthy litigation.

With this Motion, Plaintiff seeks certification of the proposed Settlement Class for purposes of settlement under Federal Rules 23(e) and (b)(3), and preliminary approval of the Settlement Agreement, claims procedure, and the proposed form and method of class notice. As explained in detail below, the terms of the Parties' Settlement are fair, reasonable, and adequate, and consistent with other consumer class settlements that have been approved in this District and other courts throughout the country. Certification of the Settlement Class is in the best interests of the putative class members and proper under Federal Rule 23.

Accordingly, Plaintiff respectfully requests that the Court enter an order (i) granting preliminary approval of the Settlement; (ii) appointing Plaintiff as Settlement Class Representative; (iii) approving the proposed Notice Plan; and (iv) appointing Myles McGuire, Paul Geske, and Brendan Duffner of McGuire Law, P.C. as Class Counsel.

## II.    BACKGROUND

### A.    Factual Background.[2]

Defendant Walmart is the world's largest retailer, operating thousands of retail stores across the United States. (First Amended Class Action Complaint ¶¶ 12-13, hereinafter "Compl.," Dkt. 22.) Like many retailers, Walmart allows its customers to return purchased items pursuant to a written return policy.   (*Id.*)

With some exceptions, Walmart's return policy generally provides that customers may return or exchange a purchased product for any reason, as long as the item is returned within a certain timeframe (usually within 90 days of purchase): "Generally, merchandise purchased in store or on Walmart.com can be returned or exchanged within ninety (90) days of purchase with

---

[2] Although Walmart contests and denies many of these allegations, Walmart does not oppose the filing of this Motion for Preliminary Approval.

or without a receipt." (*Id.* ¶ 19.) Upon accepting a return, Walmart will refund the money paid, exchange the product, or provide store credit. (*Id.* ¶¶ 21-23.) In general, customers who return their purchase during the applicable timeframe with the original sales receipt are eligible to receive a full refund through the original payment method; whereas customers who return their purchase without their sales receipt are eligible to receive store credit. (*Id.*)

In this suit, Plaintiff claims that Walmart routinely and systematically breaches the terms of its return policy by failing to provide a full refund when accepting returns. (*Id.* ¶¶ 29-30.) As alleged in the Complaint, when Walmart accepts an in-store return, its point-of-sale system and in-store associates often underrefund the sales taxes the customer originally paid on the returned items. (*Id.*) Although customers may receive a refund of the retail sale price they paid for the returned items, they often receive only a partial refund of the sales taxes they originally paid—or in some cases no refund of sales taxes at all. (*Id.*) Plaintiff asserts that this practice not only violates state law, but also the terms of Walmart's own written return policy which, as explained above, generally provides that customers who comply with Walmart's return policy are entitled to reimbursement of the full purchase price (in cash or store credit) for the returned items. (*Id.* ¶¶ 15-19.)

In September and October of 2017, Plaintiff made two separate purchases from one of Walmart's retail stores located in Manchester, Missouri. (*Id.* ¶¶ 31-32). Less than 90 days after these two purchases, on October 3, 2017, Plaintiff went back to the same store and attempted to return several of the items he had purchased in accordance with Walmart's return policy. (*Id.* ¶ 33). Plaintiff contends that during this return transaction, he was only refunded the listed retail purchase price that he originally paid for each item, but he was not refunded all of the sales taxes attributable to each returned item. (*Id.* ¶ 34).

As alleged in the Complaint, Plaintiff spoke with one of Walmart's in-store customer service representatives and attempted to dispute the amount of the refund after he realized that he had been shorted on the amount the return. (*Id.* ¶¶ 35-37). Walmart refused to provide a full refund and Plaintiff subsequently brought this suit on his own behalf and on behalf of a putative nationwide class, asserting claims under three counts for: (I) breach of contract, (II) unjust enrichment, and (III) violations of the Missouri Merchandising Practices Act ("MMPA"), Mo. Ann. Stat. 407.010 *et seq*. (*Id.* ¶¶ 48-76.)

**B.    Procedural History And The Parties' Settlement Negotiations.**

Plaintiff initiated this lawsuit on December 11, 2017. (Dkt. 1.) The Parties subsequently engaged in lengthy motion practice related to the sufficiency of the pleadings. On February 1, 2018, Walmart filed a Rule 12(b)(6) motion to dismiss, arguing in the alternative that the Court should strike Plaintiff's class allegations under Rule 12(f) (Dkt. 18.) On February 22, 2018, Plaintiff filed his First Amended Complaint. (Dkt. 22.) Walmart then renewed its motion to dismiss as to the Amended Complaint, and again argued in the alternative that Plaintiff's class claims should be stricken. (Dkt. 25-26.)

Following briefing, the Court issued an order on November 16, 2018 denying Walmart's motion to dismiss in its entirety. (Dkt. 32.) In the Court's Memorandum, Opinion & Order denying Walmart's motion, the Court held that Plaintiff had plausibly alleged claims for breach of contract, unjust enrichment, and violations of the MMPA, and that Plaintiff's claims were not barred as a matter of law under any of the defenses Walmart raised. (*Id.*) The Court also declined to strike Plaintiff's class allegations, deferring class certification issues to the time when Plaintiff files his certification motion. (*Id.*) On December 14, 2018, Walmart filed its Answer to Plaintiff's Complaint. (Dkt. 37.)

After these initial proceedings and motion practice, the Court entered a pretrial schedule. (Dkt. 43). As the Parties were beginning to engage in discovery in accordance with the Court's schedule, the Court referred this case to alternative dispute resolution on February 27, 2019. The Parties elected to participate in a private mediation. (Dkt. 44.) Pursuant to this District's Local Rules, and consistent with a proposal from the Parties, the Court appointed the Honorable James F. Holderman (ret.) of JAMS Chicago, former Chief Judge of the U.S. District Court for the Northern District of Illinois, to serve as the designated neutral for the Parties' mediation. (Dkt. 49-50.)

On October 8, 2019, the Parties attended a full-day mediation before Judge Holderman at the JAMS Chicago offices. However, the Parties were unable to reach an agreement to resolve the claims at issue at that time. (Dkt. 51.) The Court's ADR referral subsequently terminated, and the Parties returned to litigation. The Parties then engaged in months of extensive discovery, including the exchange of multiple rounds of document requests, interrogatories, and requests for admission; review and production of roughly fifteen hundred pages of documents; numerous telephonic meet-and-confer discovery conferences; thorough analysis of Walmart's customer transaction data; noticing and preparation for a Federal Rule 30(b)(6) deposition of Walmart; and expert discovery.

As the Parties were nearing completion of class discovery, and while Plaintiff was preparing to file his motion for class certification, the Parties decided to discuss whether there was any remaining possibility of reaching a resolution prior to class certification proceedings. As reported to the Court in a June 8, 2020 Joint Status Report, information produced in discovery following the first mediation "triggered further investigation on the part of Walmart, which [ ] led to discussions about potentially returning to mediation to see if there [wa]s a possibility of resolution." (Dkt. 58 at 2.) Following those discussions, the Parties agreed to attend a second

mediation before Judge Holderman.

On July 29, 2020, the Parties attended a second, full-day mediation session before Judge Holderman (the session was held remotely due to the ongoing COVID-19 public health crisis). (Dkt. 62 at 2.) Although the second mediation session was productive, the Parties were again unable to reach a resolution. However, the progress made during this second mediation gave Plaintiff's counsel confidence that a settlement was possible. To that end, on August 11, 2020, the Parties participated in a third mediation before Judge Holderman, again held remotely (*Id.*) Following this third session, the Parties reached an agreement in principle by which to resolve the claims in this matter on a classwide basis. (*Id.*)

Over the months that followed, the Parties negotiated the contours of the Settlement Agreement, including the scope of the release, the form of class notice, the claims submission process, and the various provisions governing implementation of the Settlement Agreement. Once negotiations concluded, Plaintiff and the Parties' counsel executed the final Settlement Agreement which is now being submitted to the Court for approval.

## III.    THE PROPOSED SETTLEMENT

### A.    The Proposed Settlement Class Definition.

The proposed Settlement would establish a Settlement Class defined as follows:

> All individuals who, during the Class Period, returned an item purchased from a Walmart store, Sam's Club store, or online from Walmart.com or Samsclub.com for pickup or delivery within the United States, and to whom Walmart or Sam's Club (hereafter, collectively "Walmart") gave a refund or credit, but where the amount of sales tax refunded or credited was less than the full amount of sales tax paid at the time the item was purchased.

(Exh. A ¶ 4.1.)

### B.    Monetary Relief And The Settlement Fund.

As part of the Settlement, Walmart has agreed to establish a $5,000,000.00 cash Settlement

Fund. (*Id.* ¶ 2.7). The entire amount of the Class Settlement Amount will be distributed *pro rata* to Settlement Class Members who submit approved claims following deductions for Notice and Administration Costs and any Court-awarded Attorneys' Fees and Litigation Expenses and an Incentive Award payment to Plaintiff. (*Id.* ¶ 5.1).

Because the Settlement Fund is to be distributed to Settlement Class Members *pro rata*, the total payment to each Settlement Class Member will ultimately depend on the number of approved claims. Based on an estimate of the number of claims expected in response to the notice program developed with the assistance of the Settlement Administrator, Epiq Systems Class Action and Claims Solutions ("Epiq"), Plaintiff anticipates a significant payment per Settlement Class Member that is well within the range of class settlements approved in this District.

**C. Non-Monetary Relief.**

In addition to the Settlement's monetary relief, the Settlement also provides meaningful prospective relief to every Settlement Class Member, regardless of whether they choose to submit a claim to receive a payment. As part of the Settlement, Walmart has agreed to implement an electronic solution at its Stores and Clubs designed to ensure that customers who return items to a Store or Club with a receipt receive complete refunds of any sales taxes paid whether the items were purchased at a Store or Club or online. (*Id.* ¶ 6.1).

**D. Notice And Settlement Administration.**

The Parties have engaged Epiq, an industry-leading class action settlement administrator, to carry out the Settlement's Notice Plan and claims process subject to Class Counsel's supervision. (*Id.* ¶ 2.30). With the assistance of Epiq, the Parties have developed a robust Notice Plan that is projected to reach at least 80% of adults who have shopped at Walmart or Sam's Club. The Notice Plan, outlined in Exhibit 1 to the Settlement Agreement, consists of: print media

advertisements in People Magazine, the top general consumer magazine in the U.S. with a circulation of 3.4 million and readership of over 34.9 million; online banner ads in both English and Spanish across the Google Display Network and Verizon Media Network, targeting Walmart and Sam's Club shoppers; social media ads on Facebook and Instagram targeting individuals who have shown interest in pages related to Walmart, Sam's Club, or discount stores; "geo-fencing" banner ads that will target individuals who have entered a Walmart or Sam's Club location; lead-form ads on Facebook which will gather information on potential class members for future communication; sponsored search results on the top three search websites in the U.S., Google, Yahoo!, and Bing; remarketing to those who visit the Settlement Website; and a release of notice in both English and Spanish over PR Newswire.

Further, the Settlement Agreement also provides for establishing a Settlement Website, which will host copies of all relevant documents, including the Settlement Agreement and its exhibits, a detailed Long Form Notice explaining the terms of the Settlement Agreement in plain language, and other important court filings. (*Id.* ¶¶ 2.38, 8.3). The Settlement Website will allow Settlement Class Members to conveniently submit claims electronically through a claims submission module, but they can also request a paper copy of a claim form and submit it by U.S. Mail if they prefer. (*Id.*)

The costs of providing notice, communicating with Settlement Class Members, establishing the Settlement Website, and disbursing individual payments will be paid out of the Settlement Fund. (*Id.* ¶ 2.17). Given the voluminous number of consumer transactions at issue, and the difficulty of ascertaining the identities and contact information for individual Settlement Class Members with only return receipts, the Parties have agreed that direct notice is impracticable, if not impossible, and publication notice is the best practicable notice of this Settlement under the

circumstances. The full Notice Plan is attached as Exhibit 1 to the Settlement Agreement.

### E.   Exclusion And Objection Procedure.

In accordance with Federal Rule 23(c)(2) and Due Process, Settlement Class Members will have the opportunity to exclude themselves from the Settlement or object to its approval. (*Id.* ¶¶ 10.1-10.4, 11.1-11.6). The procedures and deadlines for filing opt-out requests and objections are explained on the Settlement Website and in the Long Form Notice. (*Id.* ¶ 8.2). The notice also informs Settlement Class Members that there will be a final approval hearing, which will be their opportunity to appear and have their objections heard. (*Id.*) Finally, the website and Long Form Notice also explains that all Settlement Class Members will be bound by the release contained in the Settlement Agreement unless they properly exercise their right to exclude themselves. (*Id.*)

### F.   Release Of Liability.

In exchange for the relief described above, Settlement Class Members who do not exclude themselves will provide Defendant and its affiliated entities and other Releasees a full release of all claims arising out of, related to, or connected with the alleged facts, circumstances, and occurrences underlying the claims in this matter, as detailed in Section 14 of the Settlement Agreement.

## IV.   DISCUSSION

There is a strong judicial and public policy favoring the resolution of litigation through settlement, and this policy is "particularly muscular in class action suits." *Schumacher v. SC Data Center, Inc.*, No. 2:16-cv-04078, 2016 WL 7007539, at *2 (W.D. Mo. Nov. 29, 2016) (quoting *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010)). The *Manual for Complex Litigation* explains the benefits of settlement classes:

> Parties quite frequently enter into settlement agreements before a decision has been reached whether to certify a class. . . . Settlement classes—cases certified

> as class actions solely for settlement—can provide significant benefits to class members and enable the defendants to achieve final resolution . . . .  An early settlement produces certainty for the plaintiffs and defendants and greatly reduces litigation expenses.

*Manual for Complex Litigation (Fourth)* § 21.612 (2004).

Class action settlements are subject to court approval. Fed. R. Civ. P. 23(e). Courts review proposed class action settlements using a well-established two-step process. Conte & Newberg, 4 *Newberg on Class Actions* § 11.25, at 38–39 (4th ed. 2002); *Manual for Complex Litigation* § 21.632; *see, e.g.*, *Schoenbaum v. E.I. Dupont De Nemours & Co.,* No. 4:05-CV-01108, 2009 WL 4782082, at *2 (E.D. Mo. Dec. 8, 2009). The first step of this process is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Newberg* § 11.25, at 38-39; *Schoenbaum*, 2009 WL 4782082, at *3. If the Court finds the settlement proposal "within the range of possible approval," the case will be preliminarily approved, notice will issue, and the case will ultimately proceed to the second step in the review process: the final approval hearing. *Newberg* § 11.25, at 38-39.

**A.    Legal Standard At The Preliminary Approval Stage.**

Unlike the final approval hearing, the preliminary approval stage is only an "initial evaluation" of the fairness of the proposed settlement based on the written submissions and presentations from the settling parties. *Manual for Complex Litigation* § 21.632. At the preliminary approval stage, the "fair, reasonable, and adequate" standard is a lower bar, with emphasis only on whether the settlement is within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies. *Schoenbaum*, 2009 WL 4782082, at *3. The goal of the preliminary approval hearing is to decide whether there is a sufficient reason to notify the class members of the proposed settlement in order to give them an opportunity to voice their support or opposition to the settlement. *Newberg* § 11.25, at 38-39.

To determine whether preliminary approval is appropriate, a district court considers whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B);[3] *see, e.g., Famuliner v. Walmart Inc.,* No. 19-CV-00060, 2019 WL 2566443, at *2 (W.D. Mo. June 21, 2019); *Swinton v. SquareTrade, Inc.*, No. 18-CV-144, 2019 WL 617791, at *5 (S.D. Iowa Feb. 14, 2019) ("If these two elements are satisfied, the Court will consider whether the parties' proposed method of giving notice satisfies the requirements set out in Rule 23(c)(2)(B).").

The factors listed in Rule 23(e)(2) are:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3);

(D) the proposal treats class members equitably relative to each other.

---

[3] This relatively new standard derives from the December 2018 amendments to Federal Rule 23(e). Prior to those amendments, courts in the Eighth Circuit evaluated preliminary approval motions using a multi-factor test established under long-standing precedent such as *Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988). These factors were often referred to as the "*Van Horn* factors." *See, e.g., In re Target Corp. Customer Data Security Breach Litig.*, 892 F.3d 968, 978 (8th Cir. 2018); *Huyer v. Njema*, 847 F.3d 934, 939 (8th Cir. 2017); *Keil v. Lopez*, 862 F.3d 685, 693 (8th Cir. 2017). While the amendments to Rule 23(e) control here, the factors listed in Rule 23(e)(2) mirror the cases upon which they were based. Indeed, the advisory committee notes to the 2018 amendments explicitly state that the recent amendments to Rule 23(e) are simply meant to codify the preliminary approval process that has been a matter of practice, if not rule. Fed. R. Civ. P. 23 advisory committee notes ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

Fed. R. Civ. P. 23(e)(2). As explained below, all of the Rule 23(e)(2) factors support a finding that the Parties' Settlement is "fair, reasonable, and adequate," and well within the range of possible approval.

**B.    The Settlement's Terms Are Fair, Reasonable, And Adequate, Taking Into Account The Factors Listed In Federal Rule 23(e)(2).**

**1.    Plaintiff and Class Counsel have capably represented the Settlement Class Members and will continue to do so.**

The first factor listed under Rule 23(e)(2) is satisfied here because Class Counsel is "qualified, experienced, and will competently and vigorously prosecute the suit." *See Schoenbaum,* 2009 WL 4782082, at *7 (citing *Morgan v. United Parcel Serv. of N. Am, Inc.*, 169 F.R.D. 349, 357 (E.D. Mo. 1996)). As set forth in the declaration from Class Counsel, filed herewith as Exhibit B, proposed Class Counsel have extensive experience handling class actions and complex litigation, and have represented consumers in state and federal courts throughout the country for many years. (Declaration of Paul T. Geske in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ¶¶ 3-9, hereinafter "Geske Decl.") Further, Plaintiff's counsel have been appointed class counsel in numerous class actions similar in size and complexity to this case. (*Id.* ¶¶ 3, 6).

The procedural history of this case also demonstrates the effectiveness of Class Counsel's representation. Class Counsel overcame Walmart's efforts to have this case dismissed under Rule 12(b)(6) early on, resulting in an order denying Defendant's motion to dismiss in its entirety, sustaining Plaintiff's claims as well as the allegations on behalf of the putative class members, and rejecting several of Walmart's primary defenses. (Dkt. 32.) Moreover, Class Counsel doggedly pursued discovery throughout the course of this litigation, including propounding and responding to multiple rounds of written discovery requests, numerous telephonic meet-and-confer

conferences regarding production of Walmart's consumer transaction data, review of more than a thousand of pages of documents, thorough analysis of Walmart's customer transaction data, and engaging an expert to assist with discovery and data challenges.

The lengthy duration of the litigation; the extensive and sometimes contentious discovery process; the numerous adversarial mediations; the multiple months of contested settlement negotiations; and the excellent result for the Settlement Class in spite of the significant procedural and merits-based hurdles faced by Plaintiff all demonstrate that Class Counsel have competently and vigorously prosecuted the Settlement Class Members' claims, and will continue to do so following preliminary approval.

Alongside Class Counsel, Plaintiff has and will continue to adequately represent the Settlement Class Members. Plaintiff's interests are entirely representative of and aligned with the interests of the proposed Settlement Class—all have virtually identical claims arising out of Walmart's alleged breach of its written return policy and its failure to fully refund sales taxes for certain return transactions. Further, Plaintiff's continual pursuit of this matter to-date demonstrates that he has been, and will remain, a zealous advocate for the Settlement Class Members. Were it not for Plaintiff's willingness to pursue this action on a classwide basis, his assistance with Class Counsel's investigation of the underlying facts, and his continued participation in this case through settlement, the substantial benefits to the Settlement Class Members afforded under the Settlement Agreement would not exist. As a result, this factor weighs in favor of granting preliminary approval of the Settlement.

### 2.    The Settlement was negotiated at arm's-length.

The Settlement in this matter is the product of arms-length negotiations overseen by an experienced mediator. There is an initial presumption that a proposed settlement is fair, reasonable,

and adequate when it was the result of arms-length negotiations. *Newberg* § 11.41-11.42 (observing that courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval."); *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186, 2005 WL 4045741, at **1, 5 (E.D. Mo. June 30, 2005) (finding that negotiations were at "arm's-length" where they were conducted between informed and experienced counsel and supervised by a retired federal judge acting as a mediator).

Here, the Parties only reached a settlement after protracted litigation and lengthy negotiations, including three full-day mediation sessions overseen by Judge Holderman. (Geske Decl. ¶¶ 13-17.) Even after the Parties' third mediation, negotiations continued over the following two months before the terms of the Settlement Agreement was agreed upon and finalized. (*Id.* ¶¶ 18-19.) The contentiousness of these negotiations, as well as Judge Holderman's involvement in every step of the settlement process, including the negotiations themselves, demonstrate that the Settlement was negotiated at arm's-length, free of collusion.

Given the tenacity with which this case has been litigated, coupled with the excellent result obtained on behalf of the Settlement Class Members in terms of both the monetary and non-monetary relief being made available, it is clear that this Settlement was reached as a result of good-faith negotiations rather than any collusion between the Parties.

### 3. The Settlement provides meaningful monetary compensation and adequate relief to the Settlement Class Members.

#### i. The Settlement delivers immediate relief and avoids the considerable costs, risks, and delays of trial and appeal.

If approved, the Settlement will make monetary and non-monetary relief *immediately* available for the Settlement Class Members, as opposed to years in the future, if ever. As stated

above, every Settlement Class Member who timely submits a valid claim shall be entitled to receive an equal *pro rata* share of the Settlement's $5 million Settlement Fund after deductions for Court-approved fees, costs, and expenses as set forth in the Settlement Agreement. This is an outstanding result.

Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory. *Rawa v. Monsanto Company,* 934 F.3d 862, 869 (8th Cir. 2019) ("a settlement is a product of compromise and the fact that a settlement provides only a portion of the potential recovery does not make such settlement unfair, unreasonable or inadequate.") (quoting *Keil*, 862 F.3d at 699); *see also In re BankAmerica Corp. Securities Litigation,* 210 F.R.D. 694, 705 (E.D. Mo. 2002) ("In the settlement of this case, as in any case, the defendants agreed to pay more than they would have preferred and the plaintiffs agreed to receive less than they would have preferred.").

While Plaintiff believes that he would ultimately prevail on the merits in this litigation, he acknowledges that Walmart has expressly denied many of his material allegations and has put up a vigorous defense. In the absence of settlement, it is certain that the expense, duration, and complexity of continued litigation would be considerable. Not only would the Parties have to undergo additional motion practice before any trial on the merits, additional evidence and witnesses from across the country would have to be assembled for depositions and as witnesses during any trial. And although Plaintiff's claims have progressed beyond the pleadings stage, the Parties have not yet briefed class certification. Achieving certification in this case is extremely challenging due to the sheer volume of consumer transaction data, the potential number of state sales tax rates at issue, and the wide geographic distribution of the putative nationwide class. Moreover, given the complexity of the issues and the aggregate amount in controversy, the losing

party would likely appeal any decision on the merits (at summary judgment or trial), as well as any decision on class certification. Against this backdrop, the Settlement stands as an extraordinary result.

Approval of the Settlement will allow Plaintiff and the Settlement Class Members to receive meaningful payments now, instead of years from now—or perhaps never. As such, the immediate and considerable relief provided to the Settlement Class Members under the Settlement Agreement weighs heavily in favor of its approval compared to the inherent risk and delay of a long and drawn out litigation, trial, and appellate process.

**ii      The Settlement provides for an efficient and effective method of distributing relief to the Settlement Class Members.**

Under the Settlement Agreement, the notice and claims process is to be carried out by a capable third-party settlement administrator, Epiq, subject to the Parties' supervision. The publication notice, which includes both nationally distributed online and print advertisements and targeted advertisements sent to Walmart and Sam's Club customers, is carefully designed to be the best practicable way of informing the Settlement Class Members of the Settlement.

All notices and ads will direct the Settlement Class Members to visit the Settlement Website, where they can read the Long Form Notice (also available in Spanish) to apprise themselves of the terms of the Settlement if they wish to learn more. Additionally, the website will allow all Settlement Class Members to conveniently submit claims electronically. (Exh. A ¶¶ 2.5, 7.2). Settlement Class Members also have the option of submitting claims via U.S. Mail if they would prefer. (*Id.*). After all claims have been submitted, the Settlement Administrator will be responsible for reviewing claim forms and compiling a claims report of all valid claims. (*Id.* ¶¶ 7.7-7.8). Within fourteen (14) days of completing its review of the Claim Forms, the Settlement Administrator will submit a report to the Parties a report listing all approved Claims. (*Id.*). Finally,

the Settlement Administrator will mail checks for individual payments promptly to Settlement Class Members who submitted valid and approved claims. (*Id.* ¶ 12.1.2).

This process is a fair, efficient, and effective method for distributing relief to the Settlement Class Members given the relatively small damages at issue on a per-person basis. While the amount of damages in the aggregate is substantial, the relatively small value of the Settlement Class Members' individual claims in this case—as in many consumer class cases—makes it unlikely that individuals would invest the time and expense necessary to seek relief on their own or through individual lawsuits. This factor therefore supports granting preliminary approval.

### iii    The anticipated award of attorneys' fees under the Settlement is fair and reasonable.

In the Parties' Settlement Agreement, there is no "clear sailing" clause by which the Parties have agreed to a certain fee award. Instead, Plaintiff has agreed under the Settlement Agreement to limit any request for an award of attorneys' fees to no more than 35%[4] of the $5,000,000 Class Settlement Amount. (*Id.* ¶ 5.3.2). This percentage falls well within the range of attorneys' fees awarded in similar settlements. Courts in the Eighth Circuit and in Missouri "have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in class actions." *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010) (quoting *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming fee award representing 36% of the settlement fund as reasonable)); *In re Xcel Energy, Inc. Sec. Derivative and ERISA Litig.*,

---

[4] Although district courts have discretion to use either the percentage of the fund method or the lodestar method in determining the appropriate amount of attorneys' fees to award, *Keil*, 862 F.3d at 701, the percentage of the fund method is "well-established" and preferred in common fund cases like this one. *In re Xcel Energy*, 364 F. Supp. 2d at 991. As courts including the Eighth Circuit have routinely recognized, using a percentage of the fund approach most closely aligns the interests of the lawyers with the class, since it promotes efficiency and avoids any incentive to needlessly increase counsel's lodestar. *See Johnston v. Comerica Mortgage Co.,* 83 F. 3d 241, 244 (8th Cir. 1996) (noting that the percent of benefit approach has been recommended in common fund situations).

364 F. Supp. 2d 980, 998 (D. Minn. 2005) (collecting cases and observing that district courts routinely approve fee awards between 25% and 36%.) Further, any requested award may be contested by Defendant. (Exh. A ¶ 5.3.2).

Under Section 16 of the Settlement Agreement, Plaintiff's request for an award of attorney's fees must be made in conjunction with any motion for final approval of the Settlement. Plaintiff will explain in greater detail at the time of final approval why a requested fee award is reasonable given the work Class Counsel has performed and the risk they took on in bringing this case. Class Counsel agreed to bring this case on a contingent basis against a multinational retailer with substantial resources, with the real possibility of an unsuccessful outcome and no fee of any kind. (*See* Geske Decl. ¶¶ 11, 20.) When Plaintiff filed his Complaint nearly three years ago, there was no guarantee that a settlement would be reached or that litigation would be successful. (*Id.*)

While Class Counsel plans to request a fee award based on a percentage of the Class Settlement Amount being made available to the Settlement Class, it is important to note that any percentage should also reflect the additional value of the prospective relief that Walmart will be implementing pursuant to the Settlement. (Exh. A ¶ 6.1). Because the majority of Walmart shoppers are repeat customers, the prospective relief will continue to benefit them in the future, increasing the value of the Settlement to the Settlement Class.

In sum, both Class Counsel and the Class Representative devoted substantial time and effort to prosecuting the Settlement Class Members' claims in the face of staunch defenses and the risk of failing to obtain any compensation at all. Class Counsel's efforts have yielded an extraordinary benefit for consumers nationwide. Therefore, the agreed-upon cap on Class Counsel's fee award is fair and more than reasonable in light of the value of the relief being made available to Settlement Class Members. Accordingly, this factor also supports granting preliminary approval.

iv    **Apart from the Settlement Agreement, there have been no other agreements made in connection with the Settlement.**

With respect to the final subfactor of Rule 23(e)(2)(C), there are no other agreements to be identified under Rule 23(e)(3).

4.    **The Settlement treats the Settlement Class Members equitably relative to each other.**

This case only involves one Settlement Class, and the Settlement treats each Settlement Class Member identically. The terms of the Settlement apply uniformly across the Settlement Class. Each Settlement Class Member has the opportunity submit a claim and receive an equal *pro rata* payment from the Class Settlement Amount. Each Settlement Class Member will also be subject to the same deadlines for submitting claims, objections, and exclusion requests. A neutral third-party, the Settlement Administrator, will be processing and evaluating all claims. No group or individual is unfairly advantaged or disadvantaged. Accordingly, this factor also weighs in favor of granting preliminary approval.

C.    **The Court Should Grant Class Certification For Purposes Of Settlement.**[5]

The second step of the preliminary approval process under Rule 23(e)(1) directs courts to assess whether to "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). This requires that the proposed settlement class satisfy the four prerequisites of Fed. R. Civ. P. 23(a) and at least one of the provisions of Fed. R. Civ. P. 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

Under Rule 23(a), the proposed class must satisfy the requirements of numerosity,

---

[5] Walmart does not concede that it would be appropriate to grant class certification over its objection in this matter, but Walmart does not oppose certification of the proposed Settlement Class for settlement purposes consistent with the Parties' Settlement Agreement.

commonality, typicality, and fair and adequate representation. Fed. R. Civ. P. 23(a); s*ee Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). And where, as here, a plaintiff seeks certification under Rule 23(b)(3), they must demonstrate that common questions of law or fact predominate over individual issues and that maintaining the suit as a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615-16. Further, Rule 23(b) requires that a settlement's notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

As explained below, the Parties' Settlement readily meets each of these requirements, and the Settlement Class should be certified for the purpose of settlement.

### 1.    The Settlement Class satisfies the prerequisites to certification under Rule 23(a).

#### i.    The Settlement Class is sufficiently numerous, and joinder is impracticable.

The numerosity requirement is met where "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1). Although there is no bright-line test for numerosity, the Eighth Circuit has approved classes far smaller than the Settlement Class here. *See, e.g., Ark. Educ. Ass'n v. Bd. of Educ. of Portland, Ark. Sch. Dist.,* 446 F.2d 763, 765–66 (8th Cir. 1971) (approving a class of twenty members); *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982) (finding it impracticable to join 74 class members).

Here, the Settlement Class readily satisfies numerosity. Given that the Settlement Class Members potentially number in the tens of thousands, if not hundreds of thousands, and are scattered throughout the country, joinder would be impracticable and the numerosity requirement is readily met.

ii.    **The Settlement Class Members' claims share common questions of law and fact.**

Commonality, the second requirement under Rule 23(a), is met where there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A plaintiff must show that the claims "'depend upon a common contention' that 'is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Cromeans v. Morgan Keegan & Co.*, 303 F.R.D. 543, 552 (W.D. Mo. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Although there are many common questions of law and fact here, only one such common question is required to satisfy commonality. *Newberg* § 3:20 (5th ed.); *see also Dukes*, 564 U.S. at 359 ("even a single common question will do") (internal citations omitted).

Here, multiple common questions of law and fact exist to satisfy this requirement. All members of the proposed Settlement Class share claims arising out of a single course of conduct: Walmart's alleged practice of failing to refund the full amount of the sales taxes paid on certain returned items. (Compl. ¶ 2.) Plaintiff's and the Settlement Class Members' claims revolve around the same central factual and legal issues, including: (1) whether Defendant's written return policy contains a promise to refund the entirety of the purchase price on returned items, including sales taxes; (2) whether Defendant breached its contracts with its customers by failing to refund the full amount of the sales taxes charged on returned items as described in the Complaint; (3) whether Defendant has been unjustly enriched by its failure to refund the full amount paid for returned items; and (4) whether the Settlement Class Members have sustained damages as a result of not being refunded the full amount of the purchase price on returned items. These common questions satisfy the commonality requirement.

       **iii.**       **Plaintiff's claims are typical of those of the Settlement Class Members.**

The typicality prong of Rule 23(a) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. "The burden of demonstrating typicality is fairly easily met, so long as other class members have claims similar to the named plaintiff." *Ahmad v. City of St. Louis, Missouri,* No. 4:17-CV-2455, 2019 WL 2009589, at *5 (E.D. Mo. May 7, 2019) (citing *DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171, 1174 (8th Cir. 1995). "The claims of the entire class need not be identical, but the class representatives must generally possess the same interest and suffer the same injury as the unnamed class members." *Cope v. Let's Eat Out, Inc.,* 319 F.R.D. 544, 555 (W.D. Mo. 2017) (citing *DeBoer,* 64 F.3d at 1174). In evaluating typicality, courts consider whether the named plaintiff's claim "arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir. 1996). Finally, "[t]ypicality will not be destroyed unless a class representative is subject to a unique defense that threatens to play a major role in the litigation." *Cromeans*, 303 F.R.D. at 552.

Here, Plaintiff's claims are typical of those of the Settlement Class Members. Plaintiff and each of the Settlement Class Members were subject to the same uniform return policy and refund practices. Further, there are no defenses unique to Plaintiff that would destroy typicality here. While there may be some minor differences among state consumer protection laws or sales tax rates that apply to the Settlement Class Members, none are significant enough to destroy typicality. Because the Settlement Class Members assert the same types of claims based on the same underlying facts, similar legal theories, the same allegedly unlawful conduct, and all have suffered the same type of economic harm, Plaintiff's claims are typical of those of the class he seeks to

represent.

### iv. Plaintiff and Class Counsel will continue to adequately represent the Settlement Class Members and protect their interests.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This requirement "serves to uncover conflicts of interest between unnamed parties and the class they seek to represent." *Amchem*, 521 U.S. at 625 (citation omitted). Adequacy of representation is satisfied where: "(1) the class representatives have common interests with the members of the class, and (2) . . . the class representatives will vigorously prosecute the interest of the class." *George v. Uponor Corp.*, Civ. No. 12–249 (ADM/JJK), 2015 WL 5255280, at *4 (D. Minn. Sept. 9, 2015) (quoting *Paxton*, 688 F.2d at 563).

Here, Plaintiff's interests are entirely representative of and consistent with the interests of the proposed Settlement Class; all have been subject to Walmart's allegedly unlawful practice of failing to reimburse the full amount of sales taxes paid on certain returned items. Plaintiff has no interest that is antagonistic to, or in conflict with, the interests of the Settlement Class he seeks to represent. To the contrary, Plaintiff's interests are coextensive with those of the Settlement Class in establishing liability and recovering damages in the amount of unrefunded sales taxes. Further, as set forth in section IV(B)(1) above, Plaintiff has retained qualified attorneys who are experienced in consumer protection litigation. Plaintiff's pursuit of this matter and Class Counsel's successful prosecution of this litigation demonstrates that they have been, and will remain, zealous advocates for the Settlement Class Members. Thus, the adequacy requirement is also satisfied.

### 2. The Settlement Class Is Certifiable Under Rule 23(b)(3).

### i. Common questions predominate over individual questions, and class adjudication is superior to other methods of resolution.

Rule 23(b)(3) requires that "questions of law or fact common to class members

predominate over any questions affecting only individual members, and [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, the putative Rule 23 Class satisfies both the "predominance" and "superiority" requirements of Rule 23(b)(3).

First, as to predominance, "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. When determining whether common questions predominate, the Eighth Circuit has directed district courts to consider whether, if the plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case for the class. *See Blades v. Monsanto Co.*, 400 F.3d 562, 566-67 (8th Cir. 2005).

In this case, common questions predominate as to the Settlement Class Members' claims because all of their claims arise out of Walmart's single, uniform return policy. For each individual Settlement Class Member, the answers to the following questions are the same: whether they purchased items from Walmart or Sam's Club in the United States; whether they were subject to Walmart's written return policy; whether they returned items and received a refund; whether they were assessed sales taxes at the time of purchase; whether the amount of sales taxes refunded was less than the amount they originally paid; and whether Walmart's failure to refund the full amount of sales taxes originally paid at the time of purchase constitutes a breach of Walmart's written return policy. These common questions are central to the Settlement Class Members' claims such that even if any individual questions were to remain, they would be outweighed in terms of significance. As a result, the predominance element is met. *Id.*

Rule 23(b)(3) also requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) The superiority

analysis "requires the Court to determine whether the class action is manageable[.]" *Cope*, 319 F.R.D. at 557. "[T]he argument in favor of class action treatment is most compelling where individual suits would in effect have negative value because litigation costs would outweigh any potential recovery." *Schoenbaum v. E.I. Dupont De Nemours and Co.*, 2009 WL 4782082, at *8 (E.D. Mo. 2009). In other words, a class action is the superior method of resolving a large number of claims if it will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. Further, when "confronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

A class action is especially likely to be the superior method of adjudication for consumer litigation like this case, where there numerous putative class members, but the value of each individual's claim is relatively small. Here, as alleged in the Complaint, each Settlement Class Member was refunded an amount less than their original purchase price, but the difference is often only a few dollars at most such that costs of individual litigation would far outweigh any potential recovery. *Schoenbaum* 2009 WL 4782082, at *8.

Additionally, many putative Settlement Class Members may not have access to competent counsel willing to invest the time and resources necessary to prosecute their claims. Because the class members have little incentive to bring individual actions to recover "the relatively minimal amount of damages" at issue, it is unlikely that, absent a class action, the Settlement Class Members would be able to obtain relief through individual lawsuits. As such, adjudicating the Settlement Class Members' claims in a single proceeding will "save[] the resources of both the

courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (holding that a class action is superior where it allows the plaintiffs to pool claims that would be uneconomical to litigate individually). Moreover, because certification is being sought for purposes of settlement, the Court need not be concerned with issues of manageability relating to trial. *Amchem*, 521 U.S. at 620.

Resolving all claims in a single case is in the best interest of the Settlement Class Members and the court system. Indeed, piecemeal litigation of the claims at issue here would be an extraordinary waste of judicial time, effort, and expense given that the same legal theories and evidence will be used by all Settlement Class Members, and given the low value of each individual claim. Accordingly, a class action is the superior method of adjudicating the Settlement Class Members' claims and the proposed Settlement Class should be certified.

### 3.    The proposed notice plan informs the Settlement Class Members about all material aspects of the Settlement and satisfies Due Process.

Where, as here, a class is to be certified pursuant to Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Due Process requires that notice contain specific information in plain, easily understood language, including the nature of the action, the class definition(s), the claims, and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii); *see Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999). As explained by the U.S. Supreme Court, Due Process does not require that the notice be perfect, but it must be the "best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" as well as "describe the action and the plaintiffs' rights in

it." *Shutts*, 472 U.S. at 812 (internal quotations omitted).

The proposed notice plan in this case satisfies Due Process. As set forth in detail in section III(C) above, the Settlement Agreement provides for a far-reaching, multi-faceted notice plan designed to reach as many potential Settlement Class Members as practicable, and at least 80% of Walmart and Sam's Club customers. Additionally, the Settlement Administrator will establish a Settlement Website containing the Settlement Agreement, relevant court documents, a Long Form Notice, and a claims submission module to allow individuals to conveniently submit a claim. The Long Form Notice available on the Settlement Website includes all relevant information about the Settlement, including important deadlines and instructions as to how Settlement Class Members can file a claim, exclude themselves, or object to the Settlement. The proposed Claim Form and Long Form notice are attached as Exhibits 2 and 3 to the Settlement Agreement, respectively. Together, the Class Notices in conjunction with the Settlement Website apprise the Settlement Class Members of their rights and options under the Settlement and afford them an opportunity to submit a claim, ask questions about the Settlement, or raise any objections to it.

Although the Settlement's Notice Plan does not include a direct notice component, publication notice is the best notice that is practicable under the circumstances of this case. Where direct notice is not practicable, publication notice will satisfy due process. *See, e.g., Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 145 (N.D. Ill. 2010) (collecting cases and noting that "notice by publication alone" is appropriate "[i]n instances where the names and addresses of class members are not easily ascertainable"); *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) ("When individual notice is infeasible, notice by publication in a newspaper of national circulation . . . is an acceptable substitute." ); *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 107 (S.D.N.Y. 2007) ("when class members' names and addresses may not

be ascertained by reasonable effort, publication notice has been deemed adequate to satisfy due process."); *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 316 (1950) ("This Court has not hesitated to approve of resort to publication as a customary substitute in [a] class of cases where it is not reasonably possible or practicable to give more adequate warning."). The Parties have agreed that direct notice is impracticable here, if not impossible, due to the sheer volume of consumer transactions at issue and the difficulty in identifying contact information for individual Settlement Class Members with only their return receipts available. The names and addresses of Settlement Class Members could not likely be obtained, even through extraordinary time, effort, and expenditure.

Because the proposed Notice Plan is the best practicable plan under the circumstances present here, it comports with the requirements of Due Process and Rule 23 and warrants approval.[6]

## V.    **CONCLUSION**

For the foregoing reasons, Plaintiff Scott Pearlstone respectfully requests that the Court enter an order: (1) granting this Motion; (2) preliminarily approving the Parties' Settlement Agreement; (3) appointing Plaintiff as representative of the Settlement Class; (4) appointing Myles McGuire, Paul T. Geske, and Brendan Duffner of McGuire Law, P.C. as Class Counsel; (5) approving the form and methods of the proposed notice; and (6) granting such further relief as the Court deems reasonable and just.

---

[6] Additionally, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and no later than ten days after filing the Agreement with the Court, Walmart will send the required notice to the appropriate government entities. *Id*. § 1715(b).

Dated: November 24, 2020                    SCOTT PEARLSTONE, individually and on behalf
                                            of similarly situated individuals

                                            By: /s/ *Paul T. Geske*
                                            One of Plaintiff's Attorneys

                                            Myles McGuire (*pro hac vice* to be filed)
                                            Paul T. Geske (*pro hac vice*)
                                            Brendan Duffner (*pro hac vice*)
                                            MCGUIRE LAW, P.C.
                                            55 W. Wacker Drive, 9th Fl.
                                            Chicago, Illinois 60601
                                            Tel: (312) 893-7002
                                            Fax: (312) 275-7895
                                            mmcguire@mcgpc.com
                                            pgeske@mcgpc.com
                                            bduffner@mcgpc.com

                                            *Counsel for Plaintiff Scott Pearlstone*
                                            *and proposed Class Counsel*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on November 24, 2020, a copy of *Plaintiff's Unopposed Motion and Incorporated Memorandum in Support of Preliminary Approval of Class Action Settlement* was filed electronically with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

/s/ *Paul T. Geske*