**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SCOTT PEARLSTONE, individually and on behalf of similarly situated individuals, | ) ) ) | |
| *Plaintiff*, | ) ) | Case No. 4:17-cv-02856-HEA |
| v. | ) ) ) | Hon. Henry Edward Autrey |
| WAL-MART STORES, INC., | ) ) | |
| *Defendant*. | ) ) | |

**PLAINTIFF'S *UNOPPOSED* MOTION & INCORPORATED MEMORANDUM**
**IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Dated: April 15, 2021

Myles McGuire
Paul T. Geske
Brendan Duffner
MCGUIRE LAW, P.C.
55 West Wacker Drive, Suite 900
Chicago, Illinois 60601
Tel: (312) 893-7002
mmcguire@mcpgpc.com
pgeske@mcgpc.com
bduffner@mcgpc.com

*Counsel for Plaintiff Scott Pearlstone and Class Counsel*

[additional counsel listed on signature page]

## <u>TABLE OF CONTENTS</u>

Table of Authorities ........................................................................................................ iii

I.      INTRODUCTION .................................................................................................1

II.     BACKGROUND ....................................................................................................3

        A.      Factual Background ....................................................................................3

        B.      Procedural History Leading To Preliminary Approval............................4

        C.      Class Counsel's Continuing Efforts Since Preliminary Approval ..........6

III.    THE PROPOSED SETTLEMENT .......................................................................7

        A.      The Settlement Class....................................................................................7

        B.      Monetary Relief And The Settlement Fund................................................7

        C.      Non-Monetary Relief ..................................................................................8

        D.      Notice And Settlement Administration .....................................................8

        E.      Exclusions And Objections........................................................................10

        F.      Release Of Liability ..................................................................................11

        G.      Attorneys' Fees And Incentive Award .....................................................11

IV.     THE SETTLEMENT WARRANTS FINAL APPROVAL................................11

        A.      Legal Standard At The Final Approval Stage............................................12

        B.      The Settlement's Terms Are Fair, Reasonable, And Adequate, Taking Into
                Account The Factors Listed In Federal Rule 23(e)(2) ...........................14

                1.      Plaintiff and Class Counsel have capably represented the Settlement
                        Class Members and will continue to do so ...............................14

                2.      The Settlement was negotiated at arm's length .........................15

                3.      The Settlement provides adequate relief to the Settlement Class Members
                        taking into account the factors set out in Rule23(e)(2)(C)(i-iv) ...............16

                        i.      The Settlement will deliver valuable relief while avoiding the
                                considerable costs, risks, and delays of trial and appeal...............16

i

ii.    The Settlement provides for an efficient and effective method of notifying and distributing relief to the Settlement Class Members ........................................................................18

iii.    Plaintiff's requested fee award is reasonable and well-earned ......19

iv.    Apart from the Settlement Agreement, there have been no other agreements made in connection with the Settlement ....................20

4.    The Settlement treats the Settlement Class Members equitably relative to one another ............................................................................20

C.    The Remaining *Van Horn* Factors Also Weigh In Favor Of Final Approval........20

1.    Defendant has the ability to pay for the Settlement. ..................................20

2.    The Settlement has received no opposition or objections.........................21

D.    Epiq's Implementation Of The Notice Plan, Which Was Overseen By Class Counsel, Satisfies Due Process ............................................................................21

V.    CONCLUSION.............................................................................................................24

Certificate of Service ...........................................................................................................26

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Bezdek v. Vibram USA, Inc.*,
   809 F.3d 78 (1st Cir. 2015) ...........................................................................17

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156, 173 (1974) ..............................................................................14

*In re Charter Communications, Inc., Securities Litigation*,
   No. 02-CV-1186, 2005 WL 4045741 (E.D. Mo., 2005).........................................16

*In re U.S. Bancorp Litig.*,
   291 F.3d 1035 (8th Cir. 2002) .......................................................................19

*In re Vivendi Universal, S.A.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ....................................................................24

*In re Wireless Tel. Fed. Cost Recover Fees Litig.*,
   396 F.3d 922 (8th Cir. 2005) ........................................................................16

*In re Xcel Energy, Inc. Sec. Derivative and ERISA Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) .............................................................19

*Keil v. Lopez*,
   862 F.3d 685 (8th Cir. 2017) ........................................................................17

*Marshall v. Nat'l Football League*,
   787 F.3d 502 (8th Cir. 2015) ........................................................................21

*Mirfasihi v. Fleet Mortg. Corp.*,
   356 F.3d 781 (7th Cir. 2004) ........................................................................24

*Morgan v. United Parcel Serv. of N. Am, Inc.*,
   169 F.R.D. 349 (E.D. Mo. 1996) ..................................................................15

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)...................................................................................24

*Owner–Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.*,
   213 F.R.D. 537 (W.D. Mo. 2002)..................................................................14

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) ................................................................. 21-22

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)...................................................................................22

*Rawa v. Monsanto Company*,
  934 F.3d 862 (8th Cir. 2019) ..................................................................................16

*Schoenbaum v. E.I. Dupont De Nemours & Co.*,
  No. 4:05-CV-01108, 2009 WL 4782082 (E.D. Mo., 2009)......................................... 12, 14-15

*Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*,
  271 F.R.D. 139 (N.D. Ill. 2010)..................................................................................24

*Swinton v. SquareTrade, Inc.*,
  454 F. Supp. 3d 848 (S.D. Ia., 2020) ....................................................................... 13-14, 17

*Van Horn v. Trickey*,
  840 F.2d 604 (8th Cir. 1988) ........................................................................ *passim*

## Statutes

FED. R. CIV. P. 23 ........................................................................................ *passim*

Missouri Merchandising Practices Act ("MMPA"), Mo. Ann Stat. 407.010 ...................................4

Class Action Fairness Act, 28 U.S.C. § 1715 ..................................................................24

## Other Authorities

Conte & Newberg, 4 *Newberg on Class Actions*, (4th Ed. 2002)...................................................12

*Manual for Complex Litigation* (4th Ed. 2004) ...............................................................12

## I.    <u>INTRODUCTION</u>

Plaintiff Scott Pearlstone, as Class Representative of the Settlement Class, and pursuant to Fed. R. Civ. P. 23(e), respectfully submits this memorandum of law in support of final approval of the Parties' class action Settlement Agreement.[1] As explained in detail below, the Settlement— reached after three full-day mediation sessions before the Honorable James F. Holderman (ret.) of JAMS Chicago, former Chief Judge of the U.S. District Court for the Northern District of Illinois—is fair, reasonable, and adequate, and has been met with overwhelming support from the Settlement Class Members. Upon final approval, the Settlement will provide Settlement Class Members with meaningful relief and financial compensation that they otherwise could not have obtained on their own.

Following entry of the Court's Preliminary Approval Order (Dkt. 69), the Settlement's Notice Plan commenced in December 2020, and notice of the Settlement successfully reached hundreds of thousands of potential Settlement Class Members across the country. As of the close of the claims period, more than 250,000 Settlement Class Members have submitted claims eligible for payment.[2] Notably, ***there has not been* a *single objection*** to the Settlement from any of the Settlement Class Members, and only three individuals have elected to opt out.

The Settlement Class Members' unanimous support for the Settlement is not unexpected, because the Settlement and the relief it provides are a terrific outcome for the Settlement Class. Under the Settlement, Defendant Wal-Mart Stores, Inc. ("Walmart" or "Defendant") has agreed to establish a fund of $5,000,000; and Settlement Class Members who timely submit a valid claim

---

[1] Unless stated otherwise, capitalized terms that are not defined herein are intended to have the meanings assigned to them in the Parties' Settlement Agreement, a true and accurate copy of which is filed herewith as <u>Exhibit A</u>.

[2] *See generally* Declaration of Cameron R. Azari, Esq. on Adequacy and Implementation of Settlement Notice Plan, filed herewith (hereinafter "Azari Declaration" or "Azari Decl.," ¶¶ 14-35).

will receive a *pro rata* share of the Net Settlement Amount, after deductions for an Incentive Award to Plaintiff, an award of Attorneys' Fees and Litigation Expenses to Class Counsel, and Notice and Administration Costs. (Exh. A ¶ 5.)

The Settlement's relief is especially noteworthy when viewed in light of the real risks involved in continued litigation. Plaintiff and Class Counsel brought this lawsuit against a defendant with substantial resources, strong legal defenses, and a willingness to litigate through trial and appeal. Had Defendant prevailed either on the merits or in opposing class certification, the Settlement Class Members would have received *nothing*. Despite these risks, Plaintiff and Class Counsel zealously prosecuted this action—including during the ongoing COVID-19 pandemic notwithstanding logistical challenges for the Parties and their counsel—ultimately leading to the prompt and just resolution of this litigation for the well-deserved benefit of the Settlement Class Members.

In sum, this Settlement favorably resolves years of contentious litigation and brings certainty, closure, and valuable relief to consumers nationwide. The Settlement has received unanimous support from the Settlement Class Members and will yield meaningful relief if finally approved. Further, the Settlement meets or exceeds applicable standards and its terms are fair, reasonable, and adequate. In advance of the final fairness hearing set for April 22, 2021, Plaintiff respectfully submits the following memorandum and requests that the Court enter an order (i) granting final approval to the Settlement; (ii) finding that sufficient notice has been provided to the Settlement Class Members; and (iii) approving Plaintiff's requested award of Attorneys' Fees and Litigation Expenses and an Incentive Award.

## II.    **BACKGROUND**[3]

### A.    **Factual Background.**

As explained in prior filings, the claims at issue in this case challenge Defendant's refund practices with respect to its alleged failure to refund sales taxes charged on certain purchases. (*See generally* Dkt. 22, First Amended Class Action Complaint, hereinafter "Complaint" or "Compl.,") As alleged in the Complaint, Walmart maintains a written return policy that generally promises to allow customers to return a purchased product for a full refund, as long as the item is returned within a certain timeframe (usually within 90 days of purchase). (*Id.* ¶ 19.)

However, as further alleged in the Complaint, Walmart routinely and systematically breaches the terms of its return policy by failing to refund all sales taxes the customer originally paid and thus failing to provide a full refund for certain returns. (*Id.* ¶¶ 29-30.) Specifically, Plaintiff claims that when Walmart accepts an in-store return, its point-of-sale system and in-store associates often underrefund the sales taxes the customer originally paid on the returned items. (*Id.*) Although customers may receive a refund of the retail sale price they paid for the returned items, they often receive only a partial refund of the sales taxes they originally paid—or in some cases no refund of sales taxes at all. (*Id.*)

Plaintiff claims that this practice not only violates state law, but also the terms of Walmart's own written return policy which, as explained above, generally provides that customers who comply with Walmart's return policy are entitled to full reimbursement (in cash or store credit) for the returned items. Accordingly, Plaintiff filed this suit on behalf of a putative nationwide class, asserting claims under three counts for: (I) breach of contract, (II) unjust enrichment, and (III)

---

[3] Walmart does not concede Plaintiff's allegations, nor does it concede all of the factual statements set forth in this Motion. For purposes of this Settlement, however, Walmart does not oppose the filing of this Motion for Final Approval.

violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Ann. Stat. 407.010 *et seq*.

**B.    Procedural History Leading To Preliminary Approval.**

As the Court is aware, this litigation has been lengthy and contentious. Plaintiff initiated this lawsuit against Defendant more than three years ago, on December 11, 2017. (Dkt. 1.) The Parties then became embroiled in lengthy motion practice related to the pleadings. On February 1, 2018, Walmart filed a Rule 12(b)(6) motion to dismiss, arguing in the alternative to strike Plaintiff's class allegations under Rule 12(f). (Dkt. 18.) On February 22, 2018, Plaintiff filed his First Amended Complaint. (Dkt. 22.) Defendant then moved to dismiss the Amended Complaint, again arguing in the alternative to strike Plaintiff's class claims. (Dkts. 25-26.) After full briefing, the Court issued an order on November 16, 2018 denying Walmart's motion in its entirety. (Dkt. 32.) On December 14, 2018, Defendant filed its Answer to Plaintiff's Complaint denying Plaintiff's allegations. (Dkt. 37.)

Following the conclusion of these initial proceedings and motion practice, the Court entered a pretrial schedule. (Dkt. 43.) As the Parties were beginning to engage in discovery in accordance with the Court's schedule, the Court referred this case to alternative dispute resolution on February 27, 2019. The Parties elected to participate in a private mediation. (Dkt. 44.) Pursuant to this District's Local Rules, and consistent with a proposal from the Parties, the Court appointed the Honorable James F. Holderman (ret.) of JAMS Chicago, former Chief Judge of the U.S. District Court for the Northern District of Illinois, to serve as the designated neutral for the Parties' mediation. (Dkts. 49-50.)

On October 8, 2019, the Parties attended a full-day mediation before Judge Holderman at the JAMS Chicago offices. However, the Parties were unable to reach an agreement to resolve the claims at issue at that time. (Dkt. 51.) The Court's ADR referral subsequently terminated, and the

Parties returned to litigation.

The Parties then engaged in months of protracted discovery, including the exchange of multiple rounds of document requests, interrogatories, and requests for admission; review and production of hundreds of pages of documents; numerous telephonic meet-and-confer discovery conferences; thorough analysis of Walmart's customer transaction data; noticing and preparation for a Federal Rule 30(b)(6) deposition of Walmart; and expert discovery.

As the Parties were nearing completion of class discovery, and while Plaintiff was preparing to file his motion for class certification, the Parties decided to discuss whether there was any remaining possibility of reaching a resolution prior to class certification proceedings. As reported to the Court in a June 8, 2020 Joint Status Report, information produced in discovery following the first mediation "triggered further investigation on the part of Walmart, which [ ] led to discussions about potentially returning to mediation to see if there [wa]s a possibility of resolution." (Dkt. 58 at 2.) Following those discussions, the Parties agreed to attend a second mediation before Judge Holderman.

On July 29, 2020, the Parties attended a second full-day mediation session before Judge Holderman (the session was held remotely due to the ongoing COVID-19 public health crisis). (Dkt. 62 at 2.) Although the second mediation session was productive, the Parties were again unable to reach a resolution. However, the progress made during this second mediation gave Plaintiff's counsel confidence that a settlement was possible. To that end, on August 11, 2020, the Parties participated in a third day of mediation before Judge Holderman, again held remotely. (*Id.*) Following this third session, the Parties reached an agreement in principle by which to resolve the claims in this matter on a classwide basis. (*Id.*)

The Parties' negotiations concerning the contours and specifics of the settlement terms continued over the course of the following months, ultimately culminating in the Settlement Agreement submitted to the Court. Once the Settlement Agreement was executed, Plaintiff filed his motion for preliminary approval and the Court subsequently granted preliminary approval on November 25, 2020. (Dkt. 69.) The Court also set a deadline of April 15, 2021 for Plaintiff's submissions in support of final approval of the Settlement and scheduled a final approval hearing for April 22, 2021. (Dkt. 72.)

### C. Class Counsel's Continuing Efforts Since Preliminary Approval.

Class Counsel have continued to invest significant time and effort in this action following preliminary approval. (Declaration of Paul T. Geske in Support of Plaintiff's Motion for Final Approval of Class Action Settlement ¶¶ 13-23, hereinafter "Geske Declaration" or "Geske Decl.") The Parties selected Epiq Class Actions and Claims Solutions, LLC ("Epiq") as Settlement Administrator, and Class Counsel have been actively involved in supervising and managing all aspects of Epiq's administration of the Notice Plan and claims process. (*Id.* ¶ 14, 18.) Prior to the start of the Notice Period, Class Counsel revised the online and publication notices, reviewed the language and content of the Settlement Website, reviewed and edited the claim submission module to ensure that it was easy to understand, and communicated with opposing counsel regarding notice issues. (*Id.* ¶ 12.)

Once the Notice Plan began, Class Counsel worked to ensure a smooth notice process by monitoring claims and website activity, responding to inquiries and phone calls from Settlement Class Members, and regularly communicating with the Settlement Administrator. (*Id.* ¶ 18.) Going forward, Class Counsel will continue to devote their time and effort as the claims process

continues, as well as monitor the distribution of settlement payments by the Settlement Administrator following final approval. (*Id.* ¶ 23.)

## III.   THE PROPOSED SETTLEMENT

### A.   The Settlement Class.

With its Preliminary Approval Order, the Court preliminarily certified the Settlement Class defined as:

> All individuals who, during the Class Period, returned an item purchased from a Walmart store, Sam's Club store, or online from Walmart.com or Samsclub.com for pickup or delivery within the United States, and to whom Walmart or Sam's Club (hereafter, collectively "Walmart") gave a refund or credit, but where the amount of sales tax refunded or credited was less than the full amount of sales tax paid at the time the item was purchased.

 (*See* Dkt. 69; Exh. A ¶ 4.1.)

### B.   Monetary Relief And The Settlement Fund.

Plaintiff's and Class Counsel's efforts have yielded a Settlement that provides immediate monetary compensation to consumers nationwide. The Settlement makes available a fund of $5,000,000, and each Settlement Class Member who has timely file a valid claim will receive a *pro rata* share of the Net Settlement Amount after deductions for an Incentive Award to Plaintiff, an award of Attorneys' Fees and Litigation Expenses to Class Counsel, and payment of Notice and Administration Costs. (Exh. A ¶ 5.)

Because the Net Settlement Amount is being distributed to Settlement Class Members *pro rata*, the amount of individual payments will ultimately depend on the total number of claims submitted and the number of claims deemed to be valid. By the close of the claims period, more than 250,000 claims were submitted and determined to be eligible for payment. (Azari Decl. ¶ 36.) Assuming that all of these claims are ultimately found to be valid and compensable, Class Counsel

estimate that each claimant will receive an individual payment of approximately $7.00 - $10.00.[4] This payment amount is a strong result given that the claims at issue here arise out of relatively small consumer transactions and the amount of damages per-person is likewise small. (Compl. ¶¶ 31-34) (describing Plaintiff's refund transaction where Walmart allegedly failed to refund approximately $2.58 in sales taxes to Plaintiff).

### C.  Non-Monetary Relief.

In addition to the Settlement's monetary relief, the Settlement also provides meaningful prospective relief to every Settlement Class Member, regardless of whether they chose to submit a claim to receive a payment. As part of the Settlement, Walmart has agreed to implement an electronic solution at its Stores and Clubs designed to ensure that customers who return items to a Store or Club with a receipt receive complete refunds of any sales taxes paid whether the items were purchased in-store or online. (Exh. A ¶ 6.1.)

### D.  Notice And Settlement Administration.

The Court approved the Parties' choice of Epiq, as Settlement Administrator, to conduct notice and administration. Following entry of the Court's Preliminary Approval Order, Epiq began effectuating notice under Class Counsel's supervision. (Geske Decl. ¶¶ 13-17; Azari Decl. ¶¶ 14-15.) To that end, Epiq has been responsible for effectuating the Notice Plan, launching the settlement website, receiving claims submitted by Settlement Class Members, and determining whether each claim is valid and compensable. (Azari Decl. ¶¶ 16-37.)

As explained in Plaintiff's preliminary approval motion, and outlined in exhibits to the Settlement Agreement, the Parties and Epiq developed a robust Notice Plan that reached at least 80% of adults who have shopped at Walmart or Sam's Club. (Geske Decl. ¶ 15; Azari Decl. ¶¶ 9,

---

[4] This estimate is consistent with the estimate Class Counsel previously provided in their Fee Motion ($5-$15), albeit toward the lower end of that range due to a higher than anticipated number of claims.

16, 38.) The Court-approved Notice Plan included: print media advertisements in People Magazine, the top general consumer magazine in the U.S. with a circulation of 3.4 million and readership of over 34.9 million; online banner ads in both English and Spanish across the Google Display Network and Verizon Media Network, targeting Walmart and Sam's Club shoppers; social media ads on Facebook and Instagram targeting individuals who have shown interest in pages related to Walmart, Sam's Club, or discount stores; "geo-fencing" banner ads that targeted individuals who have entered a Walmart or Sam's Club location; lead-form ads on Facebook which gathered information on potential class members for future communication; sponsored search results on the top three search websites in the U.S., Google, Yahoo!, and Bing; remarketing to those who visited the Settlement Website; and a release of notice in both English and Spanish over PR Newswire. (Azari Decl. ¶¶ 16-34; Group Exh. 1 to Exh. A.)

The format and language of the notices were carefully drafted in straightforward, easy-to-read language in order to apprise Settlement Class Members of all material aspects of the Settlement, such as the relief they are entitled to, their right to object to the Settlement or opt-out, and the amount of attorneys' fees that could be sought as an award for Class Counsel. (Group Exh. 1 and Exh. 3 to Exh. A.) The notices also invited Settlement Class Members to visit the Settlement Website, where they were able to submit a claim or review more detailed information. (Azari Decl. ¶ 33.)

The Settlement Website, which is presently still live, can be reached at the following URL: https://www.walmartrefundclassaction.com/. The Settlement Website contains all of the important information related to the Settlement, including key dates and deadlines (e.g., claims deadline, objection deadline, final approval hearing date and time, etc.), all relevant court documents (e.g., the Preliminary Approval Order, Settlement Agreement, Plaintiff's Motion for Award of

Attorneys' Fees, and this Motion), contact information for Class Counsel, and most importantly, an easily accessible claims submission module that Settlement Class Members were able use to submit their claim directly online. (*Id.*) In addition, the Settlement Website gave detailed instructions for opting out or filing objections. As of April 15, 2021, there have been close to 660,000 unique visitors to the website and approximately 2.6 million website pages presented. (*Id.*)

The costs of effectuating the Court-approved Notice Plan, including processing and paying valid claims, along with all other expenses incurred by the Settlement Administrator in administering the Settlement, are to be paid from the Class Settlement Amount. (Exh. A ¶ 5.5.)

### E.    Exclusions And Objections.

As part of the Notice Plan, all Settlement Class Members were notified of their opportunity to exclude themselves from the Settlement or object to its approval. The procedures and deadlines for submitting opt-out requests and objections were referenced in the Notice and explained on the Settlement Website. (Azari Decl. ¶ 33; Group Exh. 1 and Exhs. 2-3 to Exh. A.) As to objecting, the Notices informed Settlement Class Members that they would have an opportunity to appear and have their objections heard at the Final Approval Hearing. (*Id.*) The Notices also informed putative Settlement Class Members that they would be bound by the Settlement's Release unless they timely exercised their right to be excluded. (*Id.*)

In Plaintiff's Motion in Support of Approval of Attorneys' Fees, Expenses, and Incentive Award, Plaintiff reported that there had been no objections received by the Settlement Administrator or Class Counsel, and there were only three opt-outs. (Dkt. 76, the "Fee Award Motion.") That remains true as of the date of this filing. (Geske Decl. ¶¶ 21-22; Azari Decl. ¶ 37.) The absence of any opposition to the Settlement, coupled with the near-universal preference to

remain in the Settlement Class, demonstrates the Settlement Class Members' strong support for the Settlement.

**F.    Release Of Liability.**

In exchange for the relief described above, the Settlement Class Members who did not exclude themselves will provide Defendant and the other Releasees with a full release of all claims asserted in the Litigation, as more fully described in the Settlement Agreement. (Exh. A ¶ 14.)

**G.    Attorneys' Fees And Incentive Award.**

Subject to Court approval, any award of attorneys' fees and any incentive award are to be paid out of the Settlement Fund. (Exh. A ¶¶ 5.1-5.4.) Class Counsel's requested award of Attorneys' Fees and Litigation Expenses and proposed Incentive Award are detailed in Plaintiff's separately filed Fee Award Motion submitted on March 4, 2021. (Dkt. 76.) Pursuant to the Settlement Agreement, Class Counsel agreed to limit their request for attorneys' fees to no more than 35% of the total Settlement Fund, or $1,750,000, plus their reasonable costs and expenses. (Dkt. 76 at 2; Exh. A ¶ 5.4.) The Fee Award Motion also included a request that the Court approve an Incentive Award for Plaintiff as Class Representative in the amount of $10,000. (Dkt. 76 at 23-24.) Defendant does not oppose the requested awards, nor have there been any objections or complaints from the Settlement Class Members as to Plaintiff's requested awards. (Geske Decl. ¶ 22; Azari Decl. ¶ 37.)

**IV.    THE SETTLEMENT WARRANTS FINAL APPROVAL[5]**

Upon final approval, the Settlement reached in this matter will provide Settlement Class Members with meaningful benefits that they otherwise would not, or could not, have achieved on their own or through an individual action. In addition, by virtue of the Settlement's robust Notice

---

[5] As set forth in the Settlement Agreement, Walmart does not oppose certification of the Settlement Class for settlement purposes. Ex. A., ¶4.

Plan, the Settlement Class Members were informed of their rights under the Settlement. Because the Settlement reached by the Parties is fair, reasonable, and provides meaningful compensation to the Settlement Class Members, and because the Notice Plan effectively notified Settlement Class Members of their rights under the Settlement Agreement, the Settlement warrants final approval by the Court.

### A.    Legal Standard At The Final Approval Stage.

Courts review proposed class action settlements using a well-established two-step process. Conte & Newberg, 4 *Newberg on Class Actions*, § 11.25, at 38–39 (4th ed. 2002); *Manual for Complex Litigation*, § 21.632 (4th ed. 2004); *see, e.g.*, *Schoenbaum v. E.I. Dupont De Nemours & Co.*, No. 4:05-CV-01108, 2009 WL 4782082, at *2 (E.D. Mo. Dec. 8, 2009). The first step of this process is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Newberg* § 11.25, at 38–39; *Schoenbaum*, 2009 WL 4782082, at *3. If the Court finds that the settlement proposal is "within the range of possible approval," notice will issue, and the case will ultimately proceed to the second step in the review process: the final approval hearing. *Newberg* § 11.25, at 38–39.

Here, preliminary approval has been granted and the claims period has concluded, so the Parties and the Court are now at the second and final step. Under Federal Rule 23(e)(2) a court may finally approve a class settlement "after a hearing and only on finding that it is fair, reasonable, and adequate" and after considering the factors listed in Fed. R. Civ. P. 23(e)(2). These factors are:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

- 12 -

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3);

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). At the preliminary approval stage, the Court found, pursuant to Federal Rule 23(e)(1)(B), that the Settlement preliminarily satisfied all of the above factors. (Dkt. 69.) The final approval process now provides an opportunity for the Court to revisit these factors with the benefit of claims data and feedback from the Settlement Class Members. Fed. R. Civ. P. 23(e)(2).[6]

In addition to the factors codified in Rule 23(e)(2), courts in the Eighth Circuit also consider several factors articulated in case precedent, stemming from the Eighth Circuit's seminal decision in *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988), to determine whether a settlement is fair, reasonable, and adequate.[7] The four *Van Horn* factors include: "the merits of the plaintiff's case, weighed against the terms of the settlement; the defendant's financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement." *Id.* at 607. The *Van Horn* factors substantially overlap with those listed in Rule 23. As such, courts in this Circuit have held that the first and third *Van Horn* factors can be properly assessed alongside Federal Rule 23(e)(2)(C)(i) due to their similarities. *Swinton v. SquareTrade, Inc.*, 454 F. Supp.

---

[6] The first two factors in subsections (A) and (B) do not require reanalysis because these factors "identify matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e) advisory committee notes.

[7] The specific considerations in Rule 23(e)(2)(A)-(D) added as part of the 2018 amendments "were not intended to displace the various factors that courts have developed in assessing the fairness of a settlement." Fed. R. Civ. P. 23 advisory committee notes. Rather, the factors are meant "to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* It is thus appropriate for the Court to consider the Rule 23(e)(2) factors along with the *Van Horn* Factors. *Swinton*, 454 F. Supp. 3d at 860.

3d 848, 861 (S.D. Iowa 2020) (noting that analysis of Federal Rule 23(e)(2)(C)(i) "will necessarily include analysis of two related *Van Horn* Factors: 'the merits of the plaintiff's case, weighed against the terms of the settlement' and 'the complexity and expense of further litigation.'") Accordingly, these factors are addressed together with Federal Rule 23(e)(2)(C)(i) below. The remaining two *Van Horn* factors will be discussed separately. Here, all relevant factors—both codified and from common law—weigh in favor of finally approving the Parties' Settlement.

Finally, where a Court certifies a class for the purposes of settlement under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances . . . ." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974). Here, this has been accomplished through implementation of the Settlement's Notice Plan, which satisfies Due Process and included a variety of advertisements and forms of publication notice that reached at least 80% of adults who have shopped at Walmart or Sam's Club. (Geske Decl. ¶ 15; Azari Decl. ¶¶ 9, 16, 38.)

**B.    The Settlement's Terms Are Fair, Reasonable, And Adequate, Taking Into Account The Factors Listed In Federal Rule 23(e)(2).**

**1.    Plaintiff and Class Counsel have capably represented the Settlement Class Members and will continue to do so.**

The adequacy requirement—that the representative parties will fairly and adequately protect the interests of the class—is met if: (1) "the plaintiff's attorney is qualified, experienced, and will competently and vigorously prosecute the suit"; and (2) "the interest of the class representative is not antagonistic to or in conflict with other members of the class." *Schoenbaum*, 2009 WL 4782082, at *7; *see also Owner–Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.,* 213 F.R.D. 537, 544 (W.D. Mo. 2002), *aff'd*, 339 F.3d 1001 (8th Cir. 2003). In the absence of

proof to the contrary, courts presume that class counsel is competent. *See Morgan v. United Parcel Serv. of N. Am., Inc.*, 169 F.R.D. 349, 357 (E.D. Mo. 1996).

Here, Class Counsel's adequacy is evident from: Class Counsel's extensive experience in the field of class action litigation in general and consumer class action litigation in particular, (Geske Decl. ¶¶ 4–9); Class Counsel's vigorous prosecution of this matter throughout the lengthy history of this case, (*id.* ¶¶ 10-12); the extensive and often contentious discovery process in this litigation (*id.* ¶ 12.); the multiple months of arm's-length settlement negotiations, (*id.* ¶ 12); and the outstanding relief obtained on behalf of the Settlement Class Members, along with many other indicators of Class Counsel's capable representation of the Settlement Class in this matter.

Additionally, following preliminary approval, Class Counsel have continued to zealously represent the Settlement Class Members and protect their interests. This has included: reviewing the Settlement Website and notices to ensure readability; regularly corresponding with the Settlement Administrator in order to assure smooth implementation of the Notice Plan; and responding to inquiries from Settlement Class Members. (*Id.* ¶¶ 12, 18.) Upon final approval, Class Counsel will continue to monitor Epiq's distribution of payments and answer questions from Settlement Class Members. (*Id.* ¶ 23.) Thus, the first factor under Rule 23(e)(2) is satisfied because Class Counsel is "qualified, experienced, and will competently and vigorously prosecute the suit." *See Schoenbaum,* 2009 WL 4782082, at \*7 (citing *Morgan*, 169 F.R.D. at 357).

### 2.    The Settlement was negotiated at arm's length.

Because the second factor concerns negotiations that occurred prior to preliminary approval, the facts relevant to this factor have already been presented to the Court. *See* Rule 23(e) advisory committee notes.

As stated in Plaintiff's Motion for Preliminary Approval, the Settlement in this matter is

the product of arm's-length negotiations overseen by an experienced mediator, retired U.S. District Court Chief Judge James F. Holderman. As such, there is an initial presumption that the Settlement is fair, reasonable, and adequate. *Newberg* § 11.41-11.42 (observing that courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval."); *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186, 2005 WL 4045741, at \*\*1, 5 (E.D. Mo. June 30, 2005) (finding that negotiations were at "arm's-length" where they were conducted between informed and experienced counsel and supervised by a retired federal judge acting as a mediator).

Additionally, the Parties were only able to reach agreement as to the Settlement after multiple months of contentious negotiations, three mediation sessions, and nearly two years of hard-fought litigation—as evidenced by the lengthy motion practice and multiple requested extensions needed to complete the thorough discovery that the Parties undertook. Thus, this factor also weighs in favor of final approval.

      **3.    The Settlement provides adequate relief to the Settlement Class Members taking into account the factors set out in Rule 23(e)(2)(C)(i-iv).**

           **i.    The Settlement will deliver valuable relief while avoiding the considerable costs, risks, and delays of trial and appeal.**

In assessing whether the relief provided under a settlement is adequate, courts must weigh the immediate benefits of a settlement against the additional time and expense that would be required to achieve a litigated judgment. *See, e.g., In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005) ("barring settlement, this case would 'likely drag on for years, require the expenditure of millions of dollars, all while the class members would receive nothing'"). Additionally, because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory. *Rawa v. Monsanto Company,*

934 F.3d 862, 869 (8th Cir. 2019) ("a settlement is a product of compromise and the fact that a settlement provides only a portion of the potential recovery does not make such settlement unfair, unreasonable or inadequate.") (quoting *Keil v. Lopez*, 862 F.3d 685, 699 (8th Cir. 2017)). As stated above, analysis of Rule 23(e)(2)(C)(i) can properly fold in *Van Horn* factors one and three due to the substantial degree of overlap. *Swinton*, 454 F. Supp. 3d at 861.

Under the Settlement Agreement here, every Settlement Class Member who submitted an approved claim will receive a *pro rata* share of the Net Settlement Amount. Based on the number of claims submitted and the anticipated costs, expenses, and deductions from the Class Settlement Amount, Class Counsel anticipate that each such payment will be approximately $7.00 - $10.00. Given the relatively low amount of damages at issue on a per-person basis here—the sales taxes owed to Plaintiff were only $2.58 (*see* Compl. ¶¶ 31-34)—this is an excellent result.

Further, the Settlement provides additional value to the Settlement Class Members beyond just the Settlement's monetary relief. Specifically, Walmart has agreed to implement prospective relief that is intended to ensure that those who return items receive complete refunds of any sales taxes paid whether the items were purchased in-store or online. (Exh. A ¶ 6.) This benefits all Settlement Class Members, a significant percentage of whom are repeat Walmart customers. Even individuals who do not submit a claim stand to benefit from this prospective relief. As a result, the total benefits being made available to the Settlement Class actually go beyond the monetary relief, and the value of the Settlement's prospective relief can properly be included by the Court in assessing the overall value of the Settlement. *Keil*, 862 F.3d at 697 (citing *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 84 (1st Cir. 2015) (finding that "[t]he district court did not abuse its discretion in concluding that injunctive relief against continuation of the allegedly false advertising was 'a valuable contribution to this settlement agreement.'")).

- 17 -

The substantial benefits being made available to Settlement Class Members are even more notable in light of the significant legal challenges that Plaintiff would have needed to overcome had this case not settled. (Geske Decl. ¶¶ 25-27.) While Plaintiff believes that he would ultimately prevail on the merits at trial, he understands that Defendant has expressly denied many of his material allegations and has vigorously defended this case from the outset of the litigation. (*Id.*) Were this case to continue, the Parties would have to complete class and expert discovery along with any related motion practice, brief class certification, and conduct depositions of individuals and experts across the country in preparation for the summary judgment stage and trial. (*Id.*) In addition, the losing party would likely appeal both any decision on the merits as well as any decision on class certification.

As such, final approval of the Settlement will put to rest what has been and would surely continue to be time consuming and costly litigation. (*Id.*) Further, final approval will allow Plaintiff and the Settlement Class Members to receive compensation immediately and without the expense and risks inherent in pressing the litigation further. As such, Rule 23(e)(2)(C)(i) and *Van Horn* factors one and three weigh heavily in favor of final approval.

   ii  **The Settlement provides for an efficient and effective method of notifying and distributing relief to the Settlement Class Members.**

Pursuant to the Parties' agreement, notice and administration has been carried out by nationally recognized notice and claims administrator, Epiq, subject to the Parties' supervision. (Exh. A ¶ 8; Geske Decl. ¶¶ 13-17; Azari Decl. ¶¶ 14-15.) To reach as many potential Settlement Class Members as possible, Epiq carried out a Notice Plan that reached at least 80% of adults who have shopped at Walmart or Sam's Club. (Geske Decl. ¶ 15; Azari Decl. ¶¶ 9, 16, 38.)

The Notice Plan has proven to be extremely successful at notifying potential Settlement

Class Members and informing them of the Settlement. The Notice Plan's print-based and web-based advertisements have driven a substantial amount of traffic to the Settlement Website, with the Website having received over 660,000 unique visitors and approximately 2.6 million website pages presented as of the close of the claims period. (Azari Decl. ¶ 33.) The website also allowed Settlement Class Members to easily and efficiently submit their claims. This, coupled with the Parties' diligent efforts to notify the Settlement Class, have yielded a high number of claims, with more than 250,000 claims eligible for payment received by the deadline. (*Id.* ¶ 36.)

In sum, the Notice Plan and claims process were fairly and efficiently designed to distribute relief to the Settlement Class Members. Should the Court finally approve the Settlement, Epiq will transmit payments promptly to Settlement Class Members who submitted Approved Claims. (Exh. A ¶ 12.1.3.) And until the distribution of the benefits under the Settlement is completely seen through, Class Counsel will continue to supervise Epiq's efforts and ensure that the Settlement Class Members receive their payments. (Geske Decl. ¶ 23.) This factor therefore also supports granting preliminary approval.

iii        **Plaintiff's requested fee award is reasonable and well-earned.**

On March 4, 2021, Plaintiff filed his Fee Award Motion. (Dkt. 76.) In that Motion, Class Counsel explained and provided ample support for their request for an award of attorneys' fees of $1,750,000, plus their reimbursable litigation costs and expenses. (Dkt. 76 at 2.) The requested fee award—representing 35% of the $5,000,000 Settlement Fund—falls well within the range of attorneys' fees awarded in similar settlements. *See e.g., In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming fee award representing 36% of the settlement fund as reasonable)); *In re Xcel Energy, Inc. Sec. Derivative and ERISA Litig.,* 364 F. Supp. 2d 980, 998 (D. Minn. 2005) (collecting cases and observing that district courts routinely approve fee awards between

25% and 36%). In the weeks since filing the Fee Award Motion, Class Counsel have not received any objections or complaints regarding the requested award. (Geske Decl. ¶ 22; Azari Decl. ¶ 37.)

> **iv**    **Apart from the Settlement Agreement, there have been no other agreements made in connection with the Settlement.**

As stated in Plaintiff's Motion for Preliminary Approval, with respect to the final subfactor of Rule 23(e)(2)(C), there are no side agreements to be identified under Rule 23(e)(3).

> **4.**    **The Settlement treats the Settlement Class Members equitably relative to one another.**

In its Preliminary Approval Order, the Court certified one Settlement Class. (Dkt. 69.) The terms of the Settlement apply uniformly across that Settlement Class, and each Settlement Class Member has had the same opportunity to receive the same benefits under the Settlement. (*See* Exh. A ¶ 5.2.) Further, each Settlement Class Member was subject to the same deadlines for claims, objections, and exclusions. Finally, each Settlement Class Member has had their claim evaluated by a neutral third party, Epiq. As a result, no group of Settlement Class Members was unfairly advantaged or disadvantaged. Accordingly, this factor also weighs in favor of granting final approval.

> **C.**    **The Remaining *Van Horn* Factors Also Weigh In Favor Of Final Approval.**

> **1.**    **Defendant has the ability to pay for the Settlement.**

Absent settlement, Walmart would likely incur significant litigation costs that could otherwise be preserved for distribution to the Settlement Class Members. If the case were to proceed, the Parties could expect to collectively spend hundreds of thousands of dollars in additional discovery costs and attorney time on merits issues alone, not including the additional cost of briefing class certification and further motion practice through trial. Resolving this matter now preserves these financial resources for the purpose of providing immediate relief to the

Settlement Class Members and for covering the costs of notice and distribution to the Settlement Class Members, including payment of claims, the Settlement Administrator's fees and expenses in implementing the Notice Plan, and the costs of reviewing submitted claims.

The Parties have negotiated a Settlement that provides substantial relief to the Settlement Class Members that Walmart has the ability to pay. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) ("In addition to assessing the relative merits of the plaintiffs' claims, a court, in examining the compensation provided by a settlement, should consider the defendant's ability to pay," along with "the anticipated length and complexity of further litigation[.]"); *Marshall v. Nat'l Football League*, 787 F.3d 502, 512 (8th Cir. 2015) (noting that a defendant's financial condition is a neutral factor when the defendant is "in good financial standing, which would permit it to adequately pay for its settlement obligations or continue with a spirited defense in the litigation.") And, as explained above, resolving this matter preserves these financial resources for distribution to the class members, rather than Walmart's costs of defense. Accordingly, this factor also supports granting final approval.

### 2. The Settlement has received no opposition or objections.

The final *Van Horn* factor to consider is "the amount of opposition to the settlement." 840 F.2d at 607. Here, of the hundreds of thousands of individuals who received notice, only three individuals opted out of the Settlement and zero objections were received. (Geske Decl. ¶ 22; Azari Decl. ¶ 37.) This lack of opposition to the Settlement is indicative of its quality and attractiveness to Settlement Class Members. Accordingly, this factor weighs in favor of final approval.

### D. Epiq's Implementation Of The Notice Plan, Which Was Overseen By Class Counsel, Satisfies Due Process.

In certifying a settlement class under rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all

- 21 -

members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Due Process requires that the notice contain relevant information in plain, easily understood language, including the nature of the action, the class definition(s), the claims, and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii); *see Petrovic*, 200 F.3d at 1153. As explained by the U.S. Supreme Court, Due Process does not require actual notice to every individual; rather notice need only be the "best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" as well as "describe the action and the plaintiffs' rights in it." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (internal quotations omitted).

The Notice Plan implemented here has satisfied Due Process. As set forth in detail in the attached Azari Declaration, Epiq carried out a robust notice plan that reached at least 80% of adults who have shopped at Walmart or Sam's Club. (Azari Decl. ¶¶ 9, 16, 38.) The Court-approved Notice Plan included: print media advertisements in People Magazine, the top general consumer magazine in the U.S. with a circulation of 3.4 million and readership of over 34.9 million; online banner ads in both English and Spanish across the Google Display Network and Verizon Media Network, targeting Walmart and Sam's Club shoppers; social media ads on Facebook and Instagram targeting individuals who have shown interest in pages related to Walmart, Sam's Club, or discount stores; "geo-fencing" banner ads that targeted individuals who have entered a Walmart or Sam's Club location; lead-form ads on Facebook which gathered information on potential class members for future communication; sponsored search results on the top three search websites in the U.S., Google, Yahoo!, and Bing; remarketing to those who visited the Settlement Website; and a release of notice in both English and Spanish over PR Newswire. (Azari Decl. ¶¶ 16-34; Group Exh. 1 to Exh. A.)

The format and language of the notices were carefully drafted in straightforward, easy-to-read language in order to apprise Settlement Class Members of all material aspects of the Settlement, such as the relief they are entitled to, their right to object to the Settlement or opt-out, and the amount of attorney's fees that could be sought. (Group Exh. 1 to Exh. A; Exhs. 2-3 to Exh. A.) The notices also invited Settlement Class Members to visit the Settlement Website, where they could submit a claim or review more detailed information. The final versions of the claim form, short form notice, and long form notice are included as attachments to the Azari Declaration filed herewith. Together, those notices apprised the Settlement Class Members of the pendency of the action and afforded them an opportunity to submit claims, questions about the Settlement, or any objections.

The Settlement Website launched on December 17, 2020 and is presently still live, though the claims period has ended. (Azari Decl. ¶ 33.) The website contains all of the important information related to the Settlement, including key dates and deadlines (e.g., claims deadline, objection deadline, final approval hearing date and time, etc.), all relevant court documents (e.g., the Preliminary Approval Order, Settlement Agreement, and this Motion), contact information for Class Counsel, and most importantly, an easily accessible claims submission module that Settlement Class Members used to submit their claim directly online. (*Id.*) In addition, the Settlement Website gave detailed instructions for opting out or filing objections.

Although the Settlement's Notice Plan did not include a direct notice component, Epiq and the Parties agree that publication notice was the best notice that was practicable under the circumstances of this case. (Azari Decl. ¶¶ 39-42.) Direct notice would have been impracticable here, if not impossible, due to the sheer volume of consumer transactions at issue and the difficulty in identifying contact information for individual Settlement Class Members with only their return

receipts available. In circumstances where, as here, direct notice is impracticable, numerous courts have held that publication notice will satisfy due process. *See, e.g., Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 145 (N.D. Ill. 2010) (collecting cases and noting that "notice by publication alone" is appropriate "[i]n instances where the names and addresses of class members are not easily ascertainable"); *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) ("When individual notice is infeasible, notice by publication in a newspaper of national circulation . . . is an acceptable substitute." ); *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 107 (S.D.N.Y. 2007) ("when class members' names and addresses may not be ascertained by reasonable effort, publication notice has been deemed adequate to satisfy due process."); *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 316 (1950) ("This Court has not hesitated to approve of resort to publication as a customary substitute in [a] class of cases where it is not reasonably possible or practicable to give more adequate warning.").

Finally, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, Walmart's counsel, on behalf of Walmart, sent the required notice to the appropriate government entities. *Id*. § 1715(b).

## V.    **CONCLUSION**

For the foregoing reasons, Plaintiff Scott Pearlstone respectfully requests that the Court enter an order: (1) finding that the Settlement is fair, reasonable, and adequate; (2) granting final approval to the Settlement; (3) approving Plaintiff's request for an award of attorneys' fees, costs, expenses, and an incentive award; (4) confirming appointment of Myles McGuire, Paul T. Geske, and Brendan Duffner of McGuire Law, P.C. as Class Counsel; (5) approving the form and methods of the Notice Plan and finding that it satisfied Due Process; and (6) granting such further relief as the Court deems reasonable and just.

Dated: April 15, 2021                     SCOTT PEARLSTONE, individually and on behalf
                                          of similarly situated individuals

                                          By: /s/ *Paul T. Geske*
                                          One of Plaintiff's Attorneys

                                          Myles McGuire (*pro hac vice* filed)
                                          Paul T. Geske (*pro hac vice*)
                                          Brendan Duffner (*pro hac vice*)
                                          Steven Beckham (admission pending)
                                          MCGUIRE LAW, P.C.
                                          55 W. Wacker Drive, 9th Fl.
                                          Chicago, Illinois 60601
                                          Tel: (312) 893-7002
                                          Fax: (312) 275-7895
                                          mmcguire@mcgpc.com
                                          pgeske@mcgpc.com
                                          bduffner@mcgpc.com
                                          sbeckham@mcgpc.com

                                          *Counsel for Plaintiff and the Settlement Class*

                                          Lanny Darr
                                          DARR FIRM
                                          307 Henry Street, Ste. 406
                                          Alton, IL 62002
                                          Tel: (618) 208-6828
                                          Fax: (618) 433-8519
                                          darr@darrfirm.com

                                          *Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on April 15, 2021, *Plaintiff's Unopposed Motion & Memorandum in Support of Final Approval of Class Action Settlement* was filed electronically with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.


/s/ *Paul T. Geske*

- 26 -