# Exhibit A

**<u>CLASS SETTLEMENT AGREEMENT</u>**

*Pearlstone v. Wal-Mart Stores, Inc.*, No. 4:17-cv-02856-HEA (E.D. Mo.)

1. **<u>PREAMBLE</u>**

**1.1**     This Settlement Agreement is entered into as of the dates of execution set forth below by and between Walmart Inc. f/k/a Wal-Mart Stores, Inc. ("Walmart") and Plaintiff Scott Pearlstone, both individually and as putative class representative on behalf of the Settlement Class Members (collectively, the "Parties") in the action *Scott Pearlstone v. Wal-Mart Stores, Inc.*, Case No. 4:17-cv-02856-HEA (United States District Court, Eastern District of Missouri).

2. **<u>DEFINITIONS</u>**

**2.1**     **"Agreement" or "Settlement Agreement"** means this Settlement Agreement together with its attendant Exhibits and any attachments.

**2.2**     **"Attorneys' Fees and Litigation Expenses"** means any award of attorneys' fees, costs, and reimbursable litigation expenses to be requested by Plaintiff and paid out of the Class Settlement Amount, subject to Court approval.

**2.3**     **"Claim"** means a request submitted by a Settlement Class Member to receive an individual payment out of the Class Settlement Amount in accordance with the procedures set forth in this Agreement.

**2.4**     **"Claims Deadline"** means the date by which all Claim Forms must be submitted or postmarked to be considered timely and eligible for payment. The Parties will request that the Claims Deadline be set fourteen (14) days after the close of the Notice Period, or such other date ordered by the Court. The Claims Deadline shall be clearly set forth in the Preliminary Approval Order as well as in the class notices and the Claim Form.

**2.5**     **"Claim Form"** means a form substantially in the form of <u>Exhibit 2</u> attached to this Agreement which Settlement Class Members shall use to submit Claims to the Settlement Administrator, either by mail or online via the Settlement Website.

**2.6**     **"Claimant"** means any Settlement Class Member who submits a Claim.

**2.7**      **"Class Settlement Amount"** means five million dollars ($5,000,000.00), which shall be the maximum amount of money that Walmart will be obligated to pay under this Settlement, as provided for in this Agreement. Under no circumstances shall Walmart be obligated to pay more than the Class Settlement Amount in connection with this Settlement.

**2.8**     **"Complaint"** means Plaintiff's First Amended Class Action Complaint, filed in the Litigation on February 22, 2018. (Dkt. 22).

**2.9**     **"Counsel"** means both Settlement Class Counsel and Walmart's Counsel, as defined in Paragraphs 2.32 and 2.40.

**2.10**     **"Court"** means the District Court presiding over approval of the Settlement and any

appellate court which may review any orders entered by the District Court related to this Settlement or this Litigation.

**2.11**  "**Days**" as used to calculate dates for events provided herein (unless the date is expressed in terms of "business days") has the same meaning as used when calculating days under the Federal Rules of Civil Procedure.

**2.12**  "**Final Approval Order**" means an order approving the settlement as fair, reasonable, and adequate and dismissing the Litigation with prejudice as against Walmart, substantially in the form of the proposed order attached hereto as Exhibit 5, which this Agreement contemplates will be approved and entered by the Court.

**2.13**  "**Incentive Award**" means the amount that may be requested and awarded to the Settlement Class Representative as an incentive award, subject to Court approval.

**2.14**  "**Litigation**" means the lawsuit captioned *Scott Pearlstone v. Wal-Mart Stores, Inc.*, Case No. 4:17-cv-02856-HEA (United States District Court, Eastern District of Missouri.).

**2.15**  "**Long Form Notice**" means the notice, substantially in the form of Exhibit 3, which shall be used for purposes of giving notice to the Settlement Class Members as further described in the Notice Plan.

**2.16**  "**Net Settlement Amount**" means the amount of monies remaining after subtracting from the Class Settlement Amount the amounts approved by the Court for (1) Notice and Administration Costs, (2) Attorneys' Fees and Litigation Expenses, and (3) an Incentive Award.

**2.17**  "**Notice and Administration Costs**" means the costs to be paid from the Class Settlement Amount to the Settlement Administrator for the purposes of sending Notice, administrating the Claims process, and performing other settlement administration functions in accordance with this Agreement.

**2.18**  "**Notice**" means the documents substantially similar to the documents attached hereto as Group Exhibit 1 and Exhibit 3, which have been agreed to by the Parties subject to Court approval and which shall be used for purposes of giving notice to the Settlement Class Members.

**2.19**  "**Notice Period**" means the minimum amount of time during which Notice will be promulgated as approved by the Court, which the Parties will propose to be ninety (90) Days.  The Notice Period shall begin on the date that Notice is first provided or initiated by the Settlement Administrator.

**2.20**  "**Notice Plan**" means the document, attached hereto as Group Exhibit 1, describing the various methods by which Notice will be provided to Settlement Class Members.

**2.21**  "**Objection Deadline**" means the last day on which a Settlement Class Member may file an objection to the Settlement, including Plaintiff's request for Attorneys' Fees and Litigation Expenses and an Incentive Award. The Parties will request that the Objection Deadline be set

fourteen (14) days after the close of the Notice Period, or such other date ordered by the Court. The Objection Deadline shall be clearly set forth in the Preliminary Approval Order as well as in the class notices.

**2.22**   **"Opt-Out Deadline"** means the last day on which a Settlement Class Member may submit an Opt-Out Request. The Parties will request that the Opt-Out Deadline be set fourteen (14) days after the close of the Notice Period, or such other date ordered by the Court. The Opt-Out Deadline shall be clearly set forth in the Preliminary Approval Order as well as in the class notices.

**2.23**   **"Opt-Out Request"** means a written request from a Settlement Class Member for exclusion from the Settlement Class in accordance with the procedures set forth in this Agreement.

**2.24**   **"Parties"** means the Settlement Class Representative and Walmart.

**2.25**   **"Preliminary Approval Order"** means an order substantially in the form of the proposed order attached hereto as Exhibit 4, which is entered by the Court and certifies the Settlement Class, directs that notice be distributed, and preliminarily approves the Settlement.

**2.26**   **"Publication Notice"** means the document, substantially in the form attached hereto as Group Exhibit 1, displaying the various forms of notice that will appear as advertisements pursuant to the Notice Plan.

**2.27**   **"QSF"** means the Qualified Settlement Fund to be established in accordance with this Agreement.

**2.28**   **"Releasing Settlement Class Members"** means the Settlement Class Representative and all Settlement Class Members, other than those who submit Opt-Out requests.

**2.29**   **"Settlement"** means the compromise and settlement of the Litigation as contemplated by this Agreement.

**2.30**   **"Settlement Administrator"** means, subject to Court approval, Epiq Class Actions & Claims Solutions, a third-party settlement administrator and the entity who shall perform certain notice and claims administration functions in accordance with this Agreement, subject to Class Counsel's supervision.

**2.31**    **"Settlement Class"** means all individuals who, during the Settlement Class Period, returned an item purchased from a Walmart store, Sam's Club store, or online from Walmart.com or Samsclub.com for pickup or delivery within the United States, and to whom Walmart or Sam's Club (hereafter, collectively "Walmart") gave a refund or credit, but where the amount of sales tax refunded or credited was less than the full amount of sales tax paid at the time the item was purchased.

**2.32**   **"Settlement Class Counsel"** or **"Class Counsel"** means Myles McGuire, Paul T. Geske, and Brendan Duffner of McGuire Law, P.C.

**2.33** **"Settlement Class Member Released Claims"** means the claims, rights, penalties, demands, damages, debts, accounts, duties, costs and expenses (other than those costs and expenses required to be paid pursuant to this Settlement Agreement), liens, charges, complaints, causes of action, obligations, or liabilities that are released, acquitted, and discharged by the Settlement Class Members pursuant to this Agreement.

**2.34** **"Settlement Class Members"** means the Settlement Class Representative and all members of the Settlement Class except those who timely Opt-Out in accordance with this Agreement.

**2.35** **"Settlement Class Period"** means the period of time from July 17, 2015 through and including the date the District Court grants preliminary approval to this Settlement.

**2.36** **"Settlement Class Representative"** or **"Plaintiff"** means Plaintiff Scott Pearlstone.

**2.37** "**Settlement Effective Date**" means the first Day following the last of the following occurrences:

> **2.37.1.** The date the time to appeal or seek permission to appeal or seek other judicial review of the entry of the Final Approval Order approving the Settlement and dismissing this Litigation with prejudice as to Walmart has expired with no appeal or other judicial review having been taken or sought; or

> **2.37.2.** If an appeal or other judicial review has been taken or sought, the latest of: (i) the date the Final Approval Order is finally affirmed by an appellate court with no possibility of subsequent appeal or other judicial review therefrom; or (ii) the date the appeal(s) or other judicial review therefrom are finally dismissed with no possibility of subsequent appeal or other judicial review; or (iii) if remanded to the District Court or to a lower appellate court following an appeal or other review, the date the Final Approval Order is entered by the District Court after remand and the time to appeal or seek permission to appeal or seek other judicial review of the entry of that Final Approval Order has expired with no further appeal or other judicial review having been taken or sought. If further appeal is sought after a remand, the time periods in this Sub-Section shall apply.

> **2.37.3.** The provisions and deadlines set forth in this Section apply even if there are no objections to the Settlement.

**2.38** **"Settlement Website"** means the website created and managed by the Settlement Administrator which will provide Settlement Class Members with access to relevant case documents, the online Claim Form and claims submission module, and other information regarding the Settlement.

**2.39** **"Walmart"** means Walmart Inc. (f/k/a Wal-Mart Stores, Inc.), Wal-Mart Stores East, LLC, Sam's West, Inc., Walmart.com USA LLC, and each of their current or former parents, subsidiaries, affiliates, divisions, predecessors, insurers, agents, employees, successors, assigns,

officers, officials, directors, partners, employers, attorneys, personal representatives, executors, and shareholders.

**2.40   "Walmart's Counsel"** means Naomi Beer and Francis Citera of Greenberg Traurig LLP and Matthew Turner of Armstrong Teasdale LLP.

## 3.   <u>RECITALS</u>

**3.1   WHEREAS**, on December 11, 2017, Plaintiff filed a putative class action lawsuit against Walmart in the United States District Court for the Eastern District of Missouri, captioned *Scott Pearlstone v. Wal-Mart Stores, Inc.*, No. 4:17-cv-02856 (E.D. Mo.) (the "Litigation"). The Litigation was assigned to the Honorable Henry Edward Autrey.

**3.2   WHEREAS**, Plaintiff's Complaint filed in the Litigation asserts claims against Walmart under three counts for: (I) breach of contract, (II) unjust enrichment, and (III) violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Ann. Stat. 407.010 *et seq.*

**3.3   WHEREAS**, Plaintiff's Complaint alleges, among other things, that Walmart breached its contracts with its customers as it relates to the return of purchased products within a set time frame for a full refund on the amount paid as set forth in Walmart's nationwide written return policy. Plaintiff alleges that Walmart breached the terms of these contracts with Plaintiff and other customers nationwide, and also violated the MMPA with respect to Plaintiff and other Missouri customers, by failing to provide a complete refund to certain customers who made returns pursuant to the return policy—namely, that Walmart underrefunded the sales taxes that some customers originally paid for items they later returned. Walmart denies Plaintiff's allegations as set forth in its Answer to Plaintiff's Complaint in the Litigation.

**3.4   WHEREAS**, in the Litigation, the Parties engaged in lengthy motion practice, including a Rule 12(b)(6) motion to dismiss and strike filed by Walmart, which sought dismissal of the Complaint in its entirety and, in the alternative, entry of an order striking the Complaint's class allegations.

**3.5   WHEREAS**, on November 16, 2018, the Court entered an order denying Walmart's motion to dismiss and strike in its entirety. (Dkt. 32).

**3.6   WHEREAS**, following the denial of Walmart's motion to dismiss and strike, the Parties engaged in months of extensive discovery, including the exchange of multiple rounds of written discovery requests, review and production of hundreds of pages of documents, thorough analysis of Walmart's customer transaction data, preparation for a Federal Rule 30(b)(6) deposition of Walmart, and expert discovery.

**3.7   WHEREAS**, on February 27, 2019, the Court referred the Litigation to alternative dispute resolution, and the Parties elected to participate in a private mediation. (Dkt. 44). Pursuant to the Local Rules of the U.S. District Court of the Eastern District of Missouri, and following a proposal from the Parties, the Court appointed the Honorable James F. Holderman (ret.) of JAMS Chicago,

former Chief Judge of the U.S. District Court for the Northern District of Illinois, to serve as the designated neutral for the Parties' mediation. (Dkt. 49-50).

**3.8    WHEREAS**, on October 8, 2019, the Parties attended a full-day mediation before Judge Holderman at the JAMS Chicago offices. However, the Parties were unable to reach an agreement to resolve the claims at issue in the Litigation. The Court's ADR referral subsequently terminated, and the Parties returned to engaging in discovery.

**3.9    WHEREAS**, as the Parties were nearing completion of class discovery, and while Plaintiff was preparing to file his motion for class certification, the Parties decided to discuss whether there was any remaining possibility of reaching a resolution prior to class certification proceedings. Following those discussions, the Parties agreed to attend a second mediation before Judge Holderman.

**3.10    WHEREAS**, on July 29, 2020, the Parties attended a second, full-day mediation session before Judge Holderman. The Parties attended this mediation session remotely and by videoconference due to the COVID-19 public health crisis. Although the second mediation session was productive, the Parties were again unable to reach a resolution.

**3.11    WHEREAS**, the Parties' progress made during the second mediation session gave them confidence that a resolution was still possible. Accordingly, the Parties scheduled a third follow-up mediation session with Judge Holderman for August 11, 2020.

**3.12    WHEREAS**, following the third mediation session, the Parties reached an agreement in principle by which to resolve the claims in the Litigation on a class basis. The Parties' negotiations concerning the contours and specifics of the settlement terms continued over the course of several weeks, ultimately culminating in this Settlement Agreement.

**3.13    WHEREAS**, Plaintiff and Settlement Class Counsel have conducted a thorough investigation into the facts of this case, and have diligently pursued the Settlement Class Members' claims against Walmart, including but not limited to: preparing and filing the Complaint and amendments thereto; briefing Walmart's motion to dismiss and strike; reviewing relevant documents and discovery; researching applicable law and potential defenses; propounding discovery on Walmart and responding to Walmart's discovery requests; hiring and consulting with an expert; developing the arguments for class certification; advocating for the rights of the putative class members; and preparing for class certification and trial. Based on the foregoing, Plaintiff and Settlement Class Counsel have concluded that a settlement according to the terms set forth below is fair, reasonable, adequate, and beneficial to and in the best interests of Plaintiff and the Settlement Class Members in light of (1) the existence of multiple complex and contested issues of law and fact; (2) the risks inherent in litigation, including any trial or appeal; (3) the likelihood that future proceedings will be unduly protracted and expensive if the Litigation is not settled by voluntary agreement; (4) the magnitude of the benefits derived from the Settlement in light of both the maximum potential and likely range of recovery to be obtained through further litigation and the expense thereof, as well as the potential of no recovery whatsoever; and (5) Plaintiff's determination that the settlement is fair, reasonable, adequate, and substantially beneficial to the Settlement Class Members.

**3.14    WHEREAS**, Walmart denies any liability or wrongdoing of any kind associated with the claims alleged and contends that this Litigation is not appropriate for adversarial class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure or any other federal or state rule, statute, law, or provision. Walmart further asserts that it has complied with all applicable provisions of federal or state statutory and common law. Walmart further states that despite its good faith belief that it is not liable for any of the claims asserted, and despite its good faith belief that adversarial certification is not appropriate, Walmart will not oppose the District Court's certification of the Settlement Class contemplated by this Agreement solely for purposes of effectuating this Settlement. Other than for purposes of this Settlement, Walmart does not waive its objections to certification of the Settlement Class, or any other class, in this Litigation as a litigation class.

**3.15    WHEREAS**, the Parties now seek to enter into this Settlement Agreement. In consideration of the covenants, agreements, and releases set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed by and among the undersigned that the Litigation be settled and compromised, and that the Releasing Settlement Class Members release Walmart of the Settlement Class Member Released Claims, without an award of costs to Walmart, Plaintiff, Settlement Class Counsel, or the Settlement Class, except as explicitly provided for in this Agreement, subject to the approval of the Court, on the following terms and conditions.

**3.16    WHEREAS**, the entry of final judgment in this Litigation shall dismiss with prejudice all claims that were or could have been alleged in the Litigation against Walmart, with the exception of any claims that might be retained by Settlement Class Members who exclude themselves from the Settlement, if any, in accordance with the Opt-Out process described in this Agreement. Walmart shall retain any existing defenses to such excluded claims.

**3.17    WHEREAS**, the Parties shall use their best efforts to effectuate this Agreement, including but not limited to cooperating in promptly seeking court approval of this Agreement, certification of the Settlement Class, and release of the Settlement Class Member Released Claims.

**3.18**    Each of these Recitals is incorporated into this Agreement as if fully set forth herein.

## 4.    <u>CERTIFICATION OF THE SETTLEMENT CLASS</u>

**4.1**    Subject to Court approval, the Parties shall request that the Court enter an order conditionally certifying the Settlement Class for purposes of settlement. As set forth above, the Settlement Class includes:

> All individuals who, during the Class Period, returned an item purchased from a Walmart store, Sam's Club store, or online from Walmart.com or Samsclub.com for pickup or delivery within the United States, and to whom Walmart or Sam's Club (hereafter, collectively "Walmart") gave a refund or credit, but where the amount of sales tax refunded or credited was less than the full amount of sales tax

paid at the time the item was purchased.

**4.2**    The Parties may request that the Court certify additional settlement subclasses as agreed, if appropriate.

**4.3**    Plaintiff shall file a motion requesting that the District Court enter an order conditionally certifying the Settlement Class for settlement purposes and covering all claims and individuals released by this Settlement. The form of any settlement certification orders shall, subject to Court approval, expressly state that the Parties and Settlement Class Counsel agree that certification of the Settlement Class is a conditional certification for settlement purposes only, and that Walmart retains its right to object to certification of this Litigation, or any other class action, under Federal Rule 23 or any other applicable rule, statute, law, or provision.

**4.4**    Any certification of the Settlement Class is for settlement purposes only, and if for any reason the District Court does not grant final approval of the Settlement, or if final approval is not granted following the appeal of any order by the District Court, or if for any reason the Settlement Effective Date does not occur, the certification of the Settlement Class for settlement purposes shall be deemed null and void, and each Party shall retain all of their respective rights as they existed prior to execution of this Settlement Agreement, and neither this Settlement Agreement, nor any of its accompanying Exhibits or any orders entered by the Court in connection with this Settlement Agreement, shall be admissible or used for any purpose in this Litigation.

**4.5**    Any certification of the Settlement Class for settlement purposes is in no way an admission by Walmart that class certification is proper in this Litigation or any other litigation against Walmart. Moreover, Walmart continues to assert that adversarial class certification in this Litigation would fail to meet the prerequisites necessary for class action treatment under applicable law. The Parties and Settlement Class Counsel further agree that, other than to effectuate the Settlement of this Litigation in this jurisdiction, the certification of the Settlement Class for settlement purposes and all documents related thereto, including this Agreement and all accompanying Exhibits and all orders entered by the Court in connection with this Agreement, are only intended to be used under the specific facts and circumstances of this case and are not intended to be used in any other judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or other proceeding against Walmart.

**4.6**    This Settlement is conditioned on the Court's certifying the Settlement Class for settlement purposes.

## 5.    <u>MONETARY RELIEF TO THE SETTLEMENT CLASS</u>

**5.1**    Subject to the terms and conditions of this Agreement, and subject to Court approval, Walmart agrees to pay the Class Settlement Amount of five million dollars ($5,000,000). The monies shall be paid into a QSF to be administered by the Settlement Administrator. The Class Settlement Amount shall be used to pay (i) Claims that are valid, timely, and approved for payment by the Settlement Administrator; (ii) Notice and Administration Costs; (iii) any Incentive Award to the Settlement Class Representative approved by the Court; and (iv) any award of Attorneys'

Fees and Litigation Expenses to Settlement Class Counsel approved by the Court. Under no circumstances shall Walmart be obligated to pay more than the Class Settlement Amount in connection with this Settlement.

**5.2     Payments to Settlement Class Members.**

    **5.2.1**     Each Settlement Class Member who timely files a valid and approved Claim shall be entitled to receive an equal *pro rata* share of the Net Settlement Amount, as defined in Section 2.16.

    **5.2.2**     Each Settlement Class Member may only submit one Claim and receive one individual payment no matter how many returns the individual Settlement Class Member may have made during the Class Period.

    **5.2.3**     Each payment issued pursuant to this Settlement, whether by check or electronic transfer, will be addressed to the respective Claimant. Checks that are issued but not redeemed within 120 Days are void. Any remaining amounts due to uncashed checks shall be distributed to recipient(s) to be chosen by the Parties and approved by the Court.

    **5.2.4**     Subject to the audit rights set forth in Section 7.7, the Settlement Administrator shall distribute payments to Settlement Class Members within a reasonable time following the Settlement Effective Date. Such payments shall be distributed via U.S. mail or other means of electronic transfer, per preference specified by the Claimant when submitting the Claim Form, to the address or other contact information provided on each Settlement Class Member's approved Claim Form.

    **5.2.5**     The Settlement Class Members shall be solely responsible for paying all tax obligations, if any, arising from payments to them in accordance with applicable law. Walmart, Walmart's Counsel, Plaintiff, and Settlement Class Counsel shall have no responsibility or liability to any Settlement Class Member or other party for determining, withholding, or paying any taxes, if any, incurred in connection with this Settlement Agreement.

    **5.2.6**     The Court may order changes to the method or allocation of payments to Settlement Class Members without invalidating this Settlement Agreement, provided that the other material terms of the Settlement Agreement are not altered.

**5.3     Attorneys' Fees and Litigation Expenses.**

    **5.3.1**     Plaintiff may apply to the Court for an award of reasonable Attorneys' Fees and Litigation Expenses for Settlement Class Counsel that, subject to Court approval and applicable law, will be paid from the Class Settlement Amount by the Settlement Administrator to an account designated by Settlement Class Counsel.

    **5.3.2**     With no consideration given or received, Plaintiff has agreed to limit the request

for an award of reasonable Attorneys' Fees and Litigation Expenses to no more than 35% of the Class Settlement Amount, plus reimbursement of reasonable litigation costs and expenses. Walmart may elect to contest Class Counsel's request but otherwise Walmart takes no position on the amount to be sought by Plaintiff and does not object to a reasonable award of Attorneys' Fees and Litigation Expenses as determined by the Court and sought in accordance with this Agreement and applicable law.

    5.3.3    In the event that the Court does not approve the requested award of Attorneys' Fees and Litigation Expenses, or the Court awards Attorneys' Fees and Litigation Expenses in an amount less than that requested, such decision shall not affect the validity and enforceability of the Settlement and shall not be a basis for rendering the entire Settlement null, void, or unenforceable. Plaintiff retains the right to appeal any decision by the Court regarding its award of Attorneys' Fees and Litigation Expenses.

**5.4**    **Settlement Class Representative Incentive Award.**

    5.4.1    Plaintiff may apply to the Court for a reasonable Incentive Award that, subject to Court approval and applicable law, will be paid from the Class Settlement Amount by the Settlement Administrator to an address provided by Class Counsel.

    5.4.2    With no consideration given or received, Plaintiff has agreed to limit the amount sought for an Incentive Award to no more than $10,000. Walmart may elect to contest the request for an Incentive Award but otherwise Walmart takes no position on the amount to be sought for an Incentive Award and does not object to a reasonable Incentive Award as determined by the Court and sought in accordance with this Agreement and applicable law.

    5.4.3    The denial by the Court of any application for an Incentive Award shall not affect the validity and enforceability of the Settlement and shall not be a basis for anyone to seek to void the Settlement.

**5.5**    **Notice and Administration Costs.**

    5.5.1    Notice and Administration Costs shall be paid to the Settlement Administrator from the Class Settlement Amount. It is anticipated that Notice and Administration Costs shall be approximately $750,000 - $850,000.

**6.**    **PROSPECTIVE RELIEF**

**6.1**    Subject to the other terms and conditions of this Agreement, and subject to Court approval, Walmart agrees to the following prospective relief: Walmart is implementing an electronic solution at its Stores and Clubs designed to ensure that customers who return items to a Store or Club with a receipt receive complete refunds of any sales taxes paid whether the items were

purchased at a Store or Club or online.

## 7. **CLAIMS SUBMISSION**

**7.1**    All Claims must be submitted through a completed Claim Form, which shall be substantially similar to the form attached as Exhibit 2 to this Agreement. The Claim Form will require each Claimant to provide his or her full name, mailing address, email address, contact telephone number, and an attestation that he or she is a Settlement Class Member. Any Claim Form that lacks the requisite information will be deemed to be incomplete and ineligible for payment, provided, however, that the Settlement Administrator may, with the approval of Settlement Class Counsel and Walmart's Counsel, approve Claim Forms with missing information if the information is not necessary to the administration of the Claim.

**7.2**    Claims shall be made by mailing or submitting via the Settlement Website a fully completed and signed Claim Form to the Settlement Administrator.

**7.3**    Claim Forms must be submitted on or before the Claims Deadline.

**7.4**    A Claim Form shall be approved if it is complete, timely, and valid, as determined by the Settlement Administrator.

**7.5**    Unless the Parties agree otherwise, a Settlement Class Member is not entitled to monetary benefits if he or she submits a Claim Form after the Claims Deadline; if the Claim Form is incomplete; or if the Claim Form is fraudulent or contains false information.

**7.6**    Subject to the audit rights set forth in Section 7.7, the Settlement Administrator shall have authority for determining if Claim Forms are complete, valid, and timely, in which case they will be accepted as approved.

**7.7**    Audit rights: Within fourteen (14) days of the Claims Deadline, the Settlement Administrator shall provide counsel for the Parties with a report that summarizes the information provided in the Claim Forms and its determination whether each Claim should be approved or denied, and whether any Claims should be denied as fraudulent or reasonably suspected to be fraudulent and the basis for the determination. Original Claim Forms will also be made available to counsel upon request. Within thirty (30) days of having received the report of proposed approved and denied Claims from the Settlement Administrator, Settlement Class Counsel and Walmart's Counsel shall meet and confer regarding any issues that either Settlement Class Counsel or Walmart believes need to be raised with the Settlement Administrator regarding the Claims. Settlement Class Counsel and Walmart's Counsel agree to use their best efforts to resolve any disputes. If necessary, the Parties may request that the Settlement Administrator conduct reasonable follow up with particular Claimants in the event of questions regarding the information provided by any Claimant or take other reasonable steps as agreed to by the Parties.

**7.8**    To the extent the Settlement Administrator determines a claim is deficient in whole or part, within a reasonable time of making such a determination, but not more than fifteen (15) days after

said determination, the Settlement Administrator shall notify the Settlement Class Member of the deficiency and give the Settlement Class Member twenty-one (21) days to cure the deficiency. Such notifications shall be sent via e-mail, unless the claimant did not provide an e-mail address, in which case such notifications shall be sent via U.S. mail. If the Settlement Class Member attempts to cure the deficiencies, but, at the sole discretion and authority of the Settlement Administrator, fails to do so, the Settlement Administrator shall notify the Settlement Class Member of that determination within ten (10) days. The Settlement Administrator may consult with Settlement Class Counsel and Walmart's Counsel in making such determinations.

## 8.    **NOTICE TO THE CLASS**

**8.1**     The Settlement Administrator shall provide notice of the Settlement to Settlement Class Members in accordance with the Notice Plan as approved by the Court. Given the difficulties in ascertaining individual Settlement Class Members, the Parties agree that publication notice (including through the internet) is the best practicable notice of this Settlement.

**8.2**     The Parties shall confer regarding the Notice Plan prior to its submission to the Court. The Parties have the right to approve the proposed Notice Plan prior to its submission to the Court, which approval they shall not unreasonably withhold. Subject to Court approval, Notice to be provided to the Settlement Class shall be in substantially the form of Group Exhibit 1 and Exhibit 3 attached hereto, together with the Settlement Website. The Notice shall provide all relevant information, including important dates and deadlines, the Class Settlement Amount, and how to submit a Claim, opt-out, or object.

**8.3**     Settlement Class Members shall also be notified of the Settlement via the establishment of a Settlement Website. The Settlement Website shall be established by the Settlement Administrator and shall contain information about the Settlement, including electronic copies of this Agreement as well as the Exhibits, including a long form Notice of the Settlement substantially in the form attached hereto. The URL of the Settlement Website shall be agreed upon by Settlement Class Counsel and Walmart's Counsel prior to the beginning of the Notice Period.

**8.4**    Due to the practical difficulties in ascertaining contact information for individual Settlement Class Members, Walmart may, in its sole discretion, terminate this Settlement if the Court requires individual, direct notice to Settlement Class Members. If Walmart exercises its option to terminate due to the Court's requiring individual, direct notice, it shall provide Settlement Class Counsel with written notice of its election, at which point the Agreement is void in accordance with Section 19.

**8.5**    Within thirty (30) days of Preliminary Approval of the Settlement Agreement, the Settlement Administrator shall establish the Settlement Website and begin effectuating notice to the Settlement Class Members as described in this Section. Unless otherwise agreed to by the Parties, the Settlement Website shall be maintained until sixty (60) days after the Settlement Effective Date and then taken down.

**8.6**    The Notice Period shall begin approximately thirty (30) days after the Preliminary

Approval Order, on whatever date the Court orders for Notice to be issued by the Settlement Administrator, provided however that the Parties may agree to begin the Notice Period at a later date if needed for scheduling and logistical considerations. The Notice Period shall last for ninety (90) Days thereafter.

**8.7** The Parties agree that distribution of Notice in the manners described above constitutes the best notice practicable under the circumstances to members of the Settlement Class Members, and complies fully with any and all substantive and procedural due process rights guaranteed by the United States Constitution and any other applicable law. The Parties further agree that the Notice sufficiently notifies the Settlement Class of the terms of the proposed Settlement, their right to object to the Settlement or to opt-out of the Settlement, and the deadlines and procedures to object, opt-out or submit a Claim Form in connection with this Settlement.

## 9.   CAFA NOTICE

**9.1** Walmart shall provide notice to the appropriate governmental authorities in accordance with the federal Class Action Fairness Act. *See generally* 28 U.S.C. § 1715.

## 10.   OPT-OUT PROCEDURE

**10.1** Any potential Settlement Class Member who wishes to be excluded from the Settlement must Opt-Out by submitting an Opt-Out Request to the Settlement Administrator.

**10.2** For an Opt-Out Request to be accepted it must be timely and valid. To be timely, it must be submitted by the Opt-Out Deadline. To be valid, the Opt-Out must (a) contain a statement that the Settlement Class Member requests to be excluded from the Settlement Class (b) be personally signed by the Settlement Class Member and dated in accordance with the instructions in the Notice; and (c) provide the Settlement Class Member's full name, mailing address, email, and telephone number. An Opt-Out must be mailed to the address for the Settlement Administrator provided in the Notice. The Opt-Out request must be postmarked before the Opt-Out Deadline and received within five (5) business days after the Opt-Out Deadline. Mass-generated Opt-Out Requests are invalid and may be denied by the Settlement Administrator.

**10.3** Settlement Class Members who Opt-Out will be excluded from the Settlement Class and thus may not submit a Claim Form and may not object. If a Settlement Class Member submits an Opt-Out Request and a Claim Form or objection, the Claim Form will govern and the Opt-Out Request will be considered invalid.

**10.4** The Settlement Administrator shall maintain a list of persons who have submitted Opt-Out requests and shall provide such list to the Parties on a weekly basis during the Notice Period. Within seven (7) business days after the Opt-Out Deadline, the Settlement Administrator shall provide Counsel a list reflecting all timely and valid Opt-Outs from the Settlement Class.

## 11.       OBJECTION PROCEDURE

**11.1**      A Settlement Class Member who wishes to object to the Settlement must notify the Parties and the District Court of his or her objection, in writing, on or before the Objection Deadline.

**11.2**      To be considered, an objection must be in writing, include the objector's full name and the case name and case number(s) of the Litigation; the objector's current address, email, and phone number; the reasons why the objector objects to the Settlement along with any supporting legal authority; documentation demonstrating that the objector has standing to object, such as legible copies of receipts demonstrating the objector is a member of the Settlement Class as defined herein; and the objector's signature. In addition, the objecting Settlement Class Member must identify any previously filed objections filed by the Settlement Class Member and his or her counsel in any state or federal court. This listing must contain (i) the name of the case; (ii) the case number; (iii) the court in which the objection was filed; and (iv) the outcome of the objection. The objection must also indicate whether or not the objector intends to appear at the hearing on the motion for final approval of the Settlement.

**11.3**      Any objection must be filed with the Court on or before the objection deadline, and a copy must be served on the Settlement Administrator, Settlement Class Counsel, and on Walmart's Counsel. The Parties will request that the Court order that failure to comply timely and fully with these procedures shall result in the invalidity and rejection of an objection. The Parties will request that the Court order that no Settlement Class Member shall be entitled to appear at the Final Approval Hearing (whether individually or through the objector's counsel) to object to the Settlement, or to object to certification of the Settlement Class or to the Settlement Agreement, and no written objections or briefs submitted by any Settlement Class Member shall be received or considered by the Court at the Final Approval Hearing, unless written notice of the Settlement Class Member's objection and any brief in support of the objection have been filed with the Court and served upon Settlement Class Counsel and Walmart's Counsel on or before the Objection Deadline.

**11.4**      Any Settlement Class Member who objects to the Settlement and wishes to appear and speak at the Final Approval Hearing must include in his or her written objection a statement expressing intention to appear and speak at the Final Approval Hearing, or send a "Notice of Intent to Appear" at the Final Approval Hearing to the Clerk of the Court and to Settlement Class Counsel and Walmart's Counsel, postmarked on or before the Objection Deadline. The Notice of Intent to Appear must include the case name and case number of the lawsuit; the Settlement Class Member's full name, address, email address, and phone number; a statement clearly indicating the intention to appear at the Final Approval Hearing and the reasons for seeking to appear; copies of any papers or information to be presented to the Court, if any; and the Settlement Class Member's signature.

**11.5**      Settlement Class Members who do not file and serve timely written objections in accordance with the procedures set forth in this Agreement have waived any objections to the Settlement and are forever foreclosed from making any objection (whether by appeal or otherwise) to the Settlement, or any aspect of the Settlement, including, without limitation, the fairness, reasonableness, or adequacy of the proposed Settlement, or any award of attorneys' fees or reimbursement of costs and expenses. The Parties will request that the Court order that Settlement

Class Members who fail to file and serve written objections in accordance with this Section shall be deemed to have waived any objections and shall be foreclosed from making any objection to the certification of the Settlement Class or to the Settlement Agreement.

**11.6**    In the event the Parties determine that an objection is frivolous or otherwise without merit, the Parties shall request that the Court, within its discretion, overrule the objection and award appropriate costs and fees to the Parties in opposing such objection(s).

## 12.    <u>FUNDING THE CLASS SETTLEMENT AMOUNT</u>

**12.1**    The Class Settlement Amount shall be funded through a QSF in accordance with this Agreement. The timing of the payments by Walmart to the QSF are as follows:

> **12.1.1**  Within 14 business days following the date on which the District Court enters an order approving the QSF (including if the Court's order granting preliminary approval approves the establishment of a QSF), or within 14 business days of the date that the Settlement Administrator provides to Walmart the information necessary to complete a wire transfer of funds to the QSF, whichever is later, Walmart shall transfer the initial Notice and Administration Costs to the QSF. In the event that the Settlement Effective Date does not occur, any amounts actually used by the Settlement Administrator for notice and administration shall not be refundable to Walmart. If, however, Walmart has paid into the QSF monies for Notice and Administration Costs which have not been used by the Settlement Administrator, those amounts not used by the Settlement Administrator shall be returned to Walmart.

> **12.1.2**  Subject to Section 12.1.3, within 10 business days following the Settlement Effective Date, Walmart shall transfer to the QSF amounts sufficient to cover the remainder of the Class Settlement Amount (or such lesser amount as awarded by the Court), to include the individual payments to Settlement Class Members, Attorneys' Fees and Litigation Expenses awarded by the Court, and the Settlement Class Representative Incentive Award awarded by the Court. Settlement Class Counsel shall provide the Settlement Administrator with the information as to whom the Attorneys' Fees and Litigation Expenses and Settlement Class Representative Incentive Award should be distributed.

> **12.1.3**  Within 14 days following the Settlement Effective Date, the Settlement Administrator shall effectuate payment of any Court-awarded Attorneys' Fees and Litigation Expenses for Class Counsel to an account designated by Class Counsel, as well as payment of any Court-awarded Incentive Award mailed to an address provided by Class Counsel. As set forth above, both such payments shall be paid from the Class Settlement Amount.

## 13.    <u>QUALIFIED SETTLEMENT FUND</u>

**13.1**    As required under this Agreement, Walmart shall transfer the required portions of the Class Settlement Amount to a Qualified Settlement Fund ("QSF"), to be held as a separate trust as described in Treasury Regulation §1.468B-1, 26 C.F.R. §1.468B-1. Settlement Class Counsel and Walmart jointly shall take such steps as shall be necessary to qualify the QSF under §468B of the Internal Revenue Code, 26 U.S.C. §468B, and the regulations promulgated pursuant thereto. Walmart shall be considered the "transferor" within the meaning of Treasury Regulation §1.468B-1(d)(1). The Settlement Administrator shall be the "administrator" within the meaning of Treasury Regulation §1.468B- 2(k)(3). The Parties shall cooperate in securing an order of the Court to establish the QSF in accordance with the terms hereof in conjunction with its preliminary approval of the Settlement and Notice as described in the Agreement. The Court shall retain jurisdiction over the administration of the QSF. Walmart shall supply to the Settlement Administrator and to the Internal Revenue Service the statement described in Treasury Regulation §1.468B-3(e)(2) no later than February 15th of the year following each calendar year in which Walmart makes a transfer to the QSF. It is intended that the transfers to the QSF will satisfy the "all events test" and the "economic performance" requirement of §461(h)(1) of the Internal Revenue Code, and Treasury Regulation §1.461-1(a)(2). Accordingly, Walmart shall not include the income of the QSF in its income. Rather, the QSF shall be taxed on its modified gross income, excluding the sums transferred to it, and shall make payment of resulting taxes from its own funds. In computing the QSF's modified gross income, deductions shall be allowed for its administrative costs and other deductible expenses incurred in connection with the operation of the QSF, including, without limitation, state and local taxes and legal, accounting, and other fees relating to the operation of the QSF.

**13.2**    Upon establishment of the QSF, the Settlement Administrator shall apply for an employer identification number for the QSF utilizing Internal Revenue Service Form SS-4 and in accordance with Treasury Regulation §1.468B-2(k)(4).

**13.3**    If requested by either Walmart or the Settlement Administrator, the Settlement Administrator and Walmart shall fully cooperate in filing a relation-back election under Treasury Regulation §1.468B-1(j)(2) to treat the QSF as coming into existence as a settlement fund as of the earliest possible date.

**13.4**    Following its deposits as described in this Agreement, Walmart shall have no responsibility, financial obligation, or liability whatsoever with respect to the notifications to the Class required hereunder, the processing of Claims and Opt-Out requests, the allowance or disallowance of claims by Claimants, payments to Settlement Class Counsel, investment of QSF funds, payment of federal, state, and local income, employment, unemployment, excise, and other taxes imposed on the QSF or its disbursements, or payment of the administrative, legal, accounting, or other costs occasioned by the use or administration of the QSF, since it is agreed that such deposits shall fully discharge Walmart's obligations to Claimants and Settlement Class Counsel and for expenses of administration in respect to the disposition of the Class Settlement Amount hereunder. Rather, the Settlement Administrator shall have sole authority and responsibility for the administration of such funds and income thereon, disbursement to Claimants and Settlement Class Counsel, and payment of taxes and administrative costs in accordance with

the provisions hereof, subject only to the rights of Walmart or Settlement Class Counsel to seek redress for any breach of the terms hereof.

**13.5**    The Settlement Administrator shall cause to be filed, on behalf of the QSF, all required federal, state, and local tax returns, information returns and tax withholdings statements in accordance with the provisions of Treasury Regulation §1.468B-2(k)(1) and Treasury Regulation §1.468B-2(l)(2)(ii). The Settlement Administrator may, at the expense of the QSF, retain legal counsel and an independent, certified public accountant to consult with and advise the Settlement Administrator or the Settlement Administrator with respect to the preparation and filing of such materials and the federal, state and local tax compliance of the QSF. Either Walmart or the Settlement Administrator, independently or jointly, may, but are not required to, apply to the Internal Revenue Service and/or any applicable state taxing authority for an advance ruling as to any issue pertinent to the qualification of the QSF under Internal Revenue Code §468B and Treasury Regulations promulgated thereunder, its tax status under applicable state law, and/or its tax payment, reporting and withholding duties, so long as Walmart and the remaining Parties are reasonably satisfied that such application and ruling will not compromise the confidentiality of settlement evidenced herein as required by this Agreement. Subject to any contrary holdings in any such ruling, Settlement Class Members shall be responsible for payment of appropriate federal, state, and local income taxes on any claim paid out pursuant to this Agreement. The Parties agree that no portion of any distributions from the QSF to the Settlement Class Members is made in satisfaction of any excluded liability as described in Treasury Regulation § 1.468B- 1(g), related to Qualified Settlement Funds.

**13.6**    The taxable year of the QSF shall be the calendar year in accordance with Treasury Regulation §1.468B-2(j). The QSF shall utilize the accrual method of accounting within the meaning of § 446(c) of the Internal Revenue Code.

**13.7**    Based on the Settlement Administrator's recommendation and approval by the Parties, the QSF may be invested in United States Treasury bills, money market funds primarily invested in the same, or certificates of deposit (CDs), provided that such portions of the QSF as may reasonably be required to pay current QSF administrative expenses, taxes or disbursements to Claimants or Settlement Class Counsel may be deposited in bank accounts which are federally insured to the greatest extent practicable. All federal, state, and local taxes imposed with respect to income earned by, or property of, the QSF, shall be paid from the QSF.

**13.8**    The Settlement Administrator may amend, either in whole or in part, any administrative provision of this Section to maintain the qualification of the QSF pursuant to the above-described authorities provided that the rights and liabilities of the Parties hereto and the Settlement Class are not altered thereby in any material respect.

## 14.    COMPREHENSIVE WAIVER, RELEASE, AND DISMISSAL

**14.1**    Settlement Class Members Released Claims:

**14.1.1.** Subject to final approval by the Court of the Settlement, and for good and valuable

- 18 -

consideration set forth herein, the receipt and sufficiency of which is hereby acknowledged, all Releasing Settlement Class Members irrevocably release, acquit, and forever discharge Walmart of and from any and all claims, rights, causes of action, penalties, demands, damages, debts, accounts, duties, costs and expenses (other than those costs and expenses required to be paid pursuant to this Agreement), liens, charges, complaints, causes of action, obligations, or liability of any and every kind that were asserted in the Litigation, or that could have been asserted but were not asserted in the Litigation, or in any other court or forum, whether known or unknown, on the basis of, connected with, arising out of, or related in whole or in part to any or all of the alleged acts, omissions, facts, matters, transactions, circumstances, and occurrences that were directly or indirectly alleged, asserted, described, set forth, or referred to in the Litigation, whether such allegations were or could have been based on common law or equity, or on any statute, rule, regulation, order, or law, whether federal, state, or local.The Settlement Class Member Released Claims also include a release of all claims for Attorneys' Fees and Costs incurred by Releasing Settlement Class Members or by Class Counsel or any other attorney in connection with the Litigation, and this Settlement, and all claims related to conduct in discovery in the Litigation.

**14.1.2.** Releasing Settlement Class Members understand and agree that the release of the Settlement Class Member Released Claims is a full and final general release applying to both those Claims that are currently known, anticipated, or disclosed to Releasing Settlement Class Members and to all those that are presently unknown, unanticipated, or undisclosed to any Releasing Settlement Class Members arising out of the alleged facts, circumstances, and occurrences underlying the claims set forth in the Litigation. Releasing Settlement Class Members acknowledge that the facts could be different than they now know or suspect to be the case, but they are nonetheless releasing all such unknown claims. In exchange for the good and valuable consideration set forth herein, all Releasing Settlement Class Members further waive any and all rights or benefits that they as individuals or the classes may now have as a result of the alleged facts, circumstances, and occurrences underlying the claims set forth in the Litigation. In exchange for the good and valuable consideration set forth herein, all Releasing Settlement Class Members further waive any and all rights or benefits that they as individuals or as Releasing Settlement Class Members may now have as a result of the alleged facts, circumstances, and occurrences underlying the claims set forth in the Litigation under the terms of Section 1542 (a) of the California Civil Code (or similar statute in effect in any other jurisdiction), which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH DEBTOR.

**14.2**    Individual General Release by Settlement Class Representative:

     **14.2.1.** Subject to the Court's final approval of the Settlement, and for good and valuable consideration set forth herein, the receipt and sufficiency of which is hereby acknowledged, and in addition to the release given by the Settlement Class Representative and all Releasing Settlement Class Members pursuant to Sections 14.1 of this Agreement, the Settlement Class Representative on behalf of himself and any and all spouses, representatives, heirs, successors, assigns, devisees, and executors (excluding the Releasing Settlement Class Members he seeks to represent), releases, acquits, and forever discharges Walmart from any and all allegations, claims, causes of action, demands, obligations, or liability, of whatever kind or nature, whether for injunctive relief, damages, penalties, or any other form of recovery, in this court or in any other court or forum, whether known or unknown, suspected or unsuspected, that the Settlement Class Representative may now have, has ever had, or hereafter may have, through the date of the execution of this Agreement, whether relating to the subject matter of this litigation or otherwise, and whether such allegations were or could have been based on common law or equity, or on any statute, rule, regulation, order, or law, whether federal, state, or local.

**14.3**    The Parties acknowledge that this Settlement, including the releases provided in this Section, reflects a compromise of disputed claims.

**14.4**    The Final Approval Order shall dismiss the Litigation with prejudice and shall incorporate the terms of the releases provided in this Section.

## 15.    DUTIES OF THE PARTIES REGARDING PRELIMINARY COURT APPROVAL

**15.1**    Plaintiff and Settlement Class Counsel shall apply to the District Court for the entry of an order granting preliminary approval of the Settlement, substantially in the form attached hereto as Exhibit 4 requesting that the District Court enter an order:

     **15.1.1**  Preliminarily approving the Settlement;

     **15.1.2**  Conditionally certifying the Settlement Class for settlement purposes in accordance with applicable legal standards and this Agreement;

     **15.1.3**  Approving as to form and content the proposed Notice Plan, including the form and content of the Internet Publication Notice and proposed Long Form Notice;

     **15.1.4**  Scheduling a fairness hearing on the question of whether the proposed Settlement should be finally approved as fair, reasonable, and adequate as to the Settlement Class;

     **15.1.5**  Approving Myles McGuire, Paul T. Geske, and Brendan Duffner of McGuire

Law, P.C. as Settlement Class Counsel;

**15.1.6**  Approving Scott Pearlstone as Settlement Class Representative;

**15.1.7**  Approving Epiq Class Actions and Claims Solutions as Settlement Administrator; and

**15.1.8**  Approving the establishment of the QSF.

**15.2**  Walmart shall cooperate with Settlement Class Counsel to obtain preliminary approval.

**15.3**  The Parties shall continue to take any steps necessary to stay any pending proceedings so as to preserve the status quo until either the Settlement Effective Date occurs, or the Settlement Agreement is voided.

16.  **DUTIES OF THE PARTIES REGARDING FINAL COURT APPROVAL**

**16.1**  The Parties will jointly request that the Court hold a Final Approval Hearing.

**16.2**  At the Final Approval Hearing, the Parties will request that the Court: (1) resolve any properly filed objections to the Settlement Agreement; (2) find that the Settlement Agreement is fair, reasonable, and adequate, was entered into in good faith and without collusion, and should be approved; (3) provide findings in connection therewith; and (4) enter the Final Approval Order, including final approval of conditional certification of the Settlement Class and the Settlement Agreement, an award of Attorneys' Fees and Litigation Expenses and an award of a Settlement Class Representative Incentive Award.

**16.3**  In their submission to the District Court for the entry of final approval of the Settlement, Plaintiff and Settlement Class Counsel will submit a proposed Final Approval Order substantially in the form attached hereto as Exhibit 5. The proposed Final Approval Order shall:

**16.3.1.**  Approve the Settlement, adjudging the terms thereof to be fair, reasonable, and adequate and directing consummation of its terms and provisions;

**16.3.2.**  Certify the Settlement Class for settlement purposes in accordance with applicable legal standards and this Agreement;

**16.3.3.**  Approve payment of the Class Settlement Amount pursuant to this Agreement;

**16.3.4.**  Approve Settlement Class Counsel's application for an award of Attorneys' Fees and Litigation Expenses pursuant to this Agreement;

**16.3.5.**  Approve the Settlement Class Representative Incentive Award; and

**16.3.6.**  Dismiss this Litigation as between the Settlement Class Representative and the Settlement Class Members on the one hand, and Walmart on the other hand, on the merits and with prejudice and permanently bar the Settlement Class Representative and all Settlement Class Members (other than those who timely filed valid Opt-Out Requests) from further prosecuting any of the Settlement Class Member Released Claims against Walmart.

**16.4**   The Final Approval Order shall not be considered final until the occurrence of the Settlement Effective Date.


**17.**     **MUTUAL FULL COOPERATION**

**17.1**   The Parties agree to cooperate fully with each other to accomplish the terms of this Settlement, including but not limited to execution of all necessary documents, and to take such other action as may reasonably be necessary to implement the terms of this Settlement. The Parties shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by order of the Court or otherwise, to effectuate the terms of this Settlement. As soon as practicable after execution of this Settlement, Settlement Class Counsel shall, with the assistance and cooperation of Walmart and its counsel, take all necessary steps to secure the Court's approval of the Settlement.


**18.**     **STATEMENT OF NO ADMISSION**

**18.1**   Nothing contained in this Agreement shall be construed or deemed an admission of liability, culpability, or wrongdoing on the part of Walmart, and Walmart denies liability for any alleged wrongdoing. Walmart expressly denies liability for the claims asserted and specifically denies and does not admit any of the pleaded facts not admitted in its pleadings in the Litigation. Nor shall this Agreement constitute an admission by Walmart as to any interpretation of laws or as to the merits, validity, or accuracy of any claims made against it in the Litigation. Likewise, nothing in this agreement shall be construed or deemed an admission by Plaintiff or the Settlement Class with regards to the validity of any of Walmart's defenses or affirmative defenses. Each of the Parties has entered into this Settlement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.

**18.2**    This Agreement, and all related documents, including the Settlement Agreement, the certification for settlement purposes entered pursuant to this Agreement, and any Claims, Requests to Opt-Out, Objections or other materials submitted by Settlement Class Members and all other actions taken in implementation of the Settlement, including any statements, discussions, or communications, and any materials prepared, exchanged, issued, or used during the course of the negotiations leading to this Agreement are settlement documents and shall be inadmissible in evidence and shall not be used for any purpose in this Litigation or in any other judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or proceeding, or any other litigation against Walmart, for any purpose, except in an action or proceeding to approve, interpret, or enforce the terms of this Agreement.

**18.3**     The Claim Forms, requests to Opt-Out, Objections, and any other evidence produced or created by any Settlement Class Member in connection with the claims resolutions procedures pursuant to this Settlement, and any actions taken by Walmart in response to such materials do not constitute, are not intended to constitute, and will not be deemed to constitute an admission by Walmart of any violation of any federal, state, or local law, statute, ordinance, regulation, rule, or executive order, or any obligation or duty at law or in equity.

**18.4**     Any certification of the Settlement Class in accordance with the terms of this Agreement is for settlement purposes only. Nothing in this Agreement will be construed as an admission or acknowledgement of any kind that any class should be certified in this Litigation or in any other action or proceeding. Further, neither this Agreement, nor the Court's actions with regard to this Agreement, will be deemed admissible in this Litigation and are not intended to be admissible (and Plaintiff and Settlement Class Counsel shall not seek their admission), in any other judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or proceeding, or in any other litigation, regarding the propriety of class certification or collective treatment. In the event that this Agreement is not approved by the District Court or any appellate court, or otherwise fails to become effective and enforceable, or is terminated, or the Settlement Effective Date does not occur for any reason, Walmart will not be deemed to have waived, limited, or affected in any way any of its objections or defenses in the Litigation. Such objections and defenses include, but are not limited to, Walmart's objections and defenses to any class-wide treatment and nothing in this Agreement or any document related to this Agreement shall be construed as a waiver by Walmart of its contention that class certification is not appropriate and is contrary to law in this Litigation or any other case or proceeding.

## 19.     <u>VOIDING THE AGREEMENT</u>

**19.1**     In the event that this Settlement is not approved, or if for any reason the Effective Date does not occur, the Parties may elect to deem the Settlement Agreement null, void, and unenforceable, and it shall not be used nor shall it be admissible in any subsequent proceedings either in this Court or in any other judicial, arbitral, administrative, investigative, or other court, tribunal, forum, or other proceeding, or other litigation against Walmart, and the Parties shall return to their respective positions prior to engaging in settlement negotiations.

## 20.     <u>SIGNATORIES' AUTHORITY</u>

**20.1**     The respective signatories to this Agreement each represent that they are fully authorized to enter into this Settlement on behalf of the respective Parties for submission to the Court for preliminary and final approval.

## 21.     <u>NO PRIOR ASSIGNMENTS</u>

**21.1**     The Parties represent, covenant, and warrant that they have not directly or indirectly,

assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or right released and discharged in this Settlement.

## 22.   NOTICES AND COMMUNICATIONS

**22.1**   Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given: (i) on the date given, if given by hand delivery; (ii) within one (1) business day, if sent by overnight delivery services such as Federal Express or similar courier; (iii) on the third business day after mailing by United States registered or certified mail, return receipt requested, or (iv) on the day received for delivery by e-mail. All notices given under this Agreement shall be addressed as follows:

To Plaintiff and Settlement Class Counsel:

Paul T. Geske
MCGUIRE LAW, P.C.
55 West Wacker Dr. 9th Floor
Chicago, Illinois 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
Email: pgeske@mcgpc.com

To Walmart:

Naomi G. Beer
Francis A. Citera
GREENBERG TRAURIG, LLP
1144 15th Street, Suite 3300
Denver, Colorado 80202
Tel: (303) 572-6500
Fax: (303) 572-6540
Email: BeerN@gtlaw.com
        CiteraF@gtlaw.com

## 23.   CONFIDENTIALITY

**23.1**   The negotiations related to this Agreement (including the negotiations regarding the Term Sheet, negotiations related to the drafting of this Agreement, and any negotiations prior to preliminary approval or between the time of preliminary and final approval) will remain strictly confidential and shall not be discussed with anyone other than the Settlement Class Representative and Walmart, their retained attorneys, their accountants and financial or tax advisers, their retained consultants, the Court, and the mediator Hon. James Holderman (Ret.) and his staff, unless

otherwise agreed to by Settlement Class Counsel and Walmart or unless otherwise ordered by the Court. Notwithstanding the other provisions of this Section, Walmart may, if necessary, disclose the Settlement in filings that Walmart Inc. is required to make with the Securities and Exchange Commission, including 10-Q and 10-K filings, or in other disclosures to investors.

## 24.   **PRESS RELEASE**

**24.1**   No Party, nor their Counsel, shall initiate any statements to the media regarding the Settlement. The Parties shall agree on a statement to be used in the event of press inquiries regarding the settlement. The Parties shall not make any other statements to the media regarding this Settlement unless agreed upon by the Parties. This provision shall not prohibit notice by publication in accordance with the Notice Plan, including through an agreed release of the notice through PR Newswire.

## 25.   **MISCELLANEOUS PROVISIONS**

**25.1**   Construction. The Parties agree that the terms and conditions of this Settlement are the result of lengthy, intensive arms-length negotiations between the Parties and that this Settlement shall not be construed in favor of or against any party by reason of the extent to which any party or her or his counsel participated in the drafting of this Settlement.

**25.2**   Captions and Interpretations. Paragraph titles or captions contained in this Agreement are a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement or any provision of this Agreement. Each term of this Agreement is contractual and not merely a recital.

**25.3**   Documents and Discovery. Settlement Class Counsel will maintain confidentiality of documents and data produced by Walmart in the Litigation pursuant to any protective order entered in the litigation, and within sixty (60) days following the Settlement Effective Date, shall either return such documents and data or certify that such documents and data have been destroyed.

**25.4**   Modification. This Agreement may not be changed, altered, or modified, except in a writing signed by the Parties and approved by the Court. Notwithstanding the foregoing, the Parties agree that any dates contained in this Agreement may be modified by agreement of the Parties without Court approval if the Parties agree and cause exists for such modification. This Settlement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

**25.5**   Integration Clause. This Agreement, the Exhibits hereto, and any other documents delivered pursuant hereto contain the entire agreement between the Parties relating to the resolution of the Litigation, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged in this Agreement. No rights under this Settlement may be waived except in writing and signed by the Party against whom such waiver is to be enforced.

**25.6**     <u>Binding on Assigns</u>. This Settlement shall be binding upon, and inure to the benefit of, the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

**25.7**     <u>Settlement Class Counsel Signatories</u>. It is agreed that because the Settlement Class Members are so numerous, it is impossible or impractical to have each Settlement Class Member execute this Settlement. The notice provided in accordance with the Notice Plan will provide all Settlement Class Members with a summary of the Settlement and will advise all Settlement Class Members of the binding nature of the release. Excepting only those Settlement Class Members who timely submit a valid Opt-Out request, such Notice shall have the same force and effect as if this Settlement were executed by each Settlement Class Member.

**25.8**     <u>Counterparts</u>. This Agreement may be executed by facsimile signature and in any number of counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one and the same Agreement, which shall be binding upon and effective as to all Parties.

**25.9**     <u>Applicable Law</u>. This Agreement shall be governed by Missouri law without regard to its choice of law or conflicts of law principles or provisions.

(The remainder of this page is intentionally left blank.)

**IN WITNESS WHEREOF**, the Parties have executed this Settlement Agreement by and through their duly authorized representatives and counsel on the dates stated below.

**FOR PLAINTIFF AND THE PROPOSED SETTLEMENT CLASS**

By: _____

Print Name: Scott Pearlstone

Date: NOVEMBER 24, 2020

By: *Paul Geske* _____

Print Name: Paul T. Geske, McGuire Law, P.C.

Date:  November 24, 2020 _____

**FOR DEFENDANT WALMART INC.**

By: _____

Print Name:  Naomi Beer, Greenberg Traurig, LLP

Date: _____

**IN WITNESS WHEREOF**, the Parties have executed this Settlement Agreement by and through their duly authorized representatives and counsel on the dates stated below.

**FOR PLAINTIFF AND THE PROPOSED SETTLEMENT CLASS**

By: _____

Print Name: Scott Pearlstone

Date: _____

By: _____

Print Name: Paul T. Geske, MᴄGᴜɪʀᴇ Lᴀᴡ, P.C.

Date: _____

**FOR DEFENDANT WALMART INC.**

By: _____

Print Name:  Naomi Beer, Gʀᴇᴇɴʙᴇʀɢ Tʀᴀᴜʀɪɢ, LLP

Date: __November 24, 2020_____

# Exhibit 1



# Hilsoft Program Highlights & Budget Estimate

*Pearlstone v Wal-Mart*

November 16, 2020

Confidential and Proprietary

**From:**

Cam Azari
Director
Hilsoft Notifications
caza@legalnotice.com
503.350.5822

*Pearlstone v Wal-Mart*

## INTRODUCTION

The notice program, as described below, is designed to provide best practicable notice to potential Class Members who may be affected by the settlement. Based on our professional experience, this comprehensive Notice Program is reasonably calculated to satisfy due process requirements and provide effective notice to the Class Members covered by the settlement. Hilsoft Notifications is a leading provider of legal notice services for large-scale class action and bankruptcy matters. We specialize in providing quality, expert, notice plan development – designing notice programs that satisfy due process requirements and withstand judicial scrutiny. Hilsoft Notifications ("Hilsoft") has been retained by defendants and/or plaintiffs for more than 400 cases, including more than 35 MDL cases, with notices appearing in more than 53 languages and in almost every country, territory and dependency in the world. For more than 24 years, Hilsoft's notice plans have been approved and upheld by courts. The Hilsoft CV is included as **Attachment A**.

## TARGETING FOR NOTICE

Our notice plan is designed to provide notice to all persons who purchased goods from Wal-Mart or Sam's Club; paid sales tax on the goods; returned one or more of the purchased items; and were not refunded the full amount of sales taxes paid on the returned goods.  We understand that there will be no direct notice information for the class, so the entirety of our reach will come from a paid media effort.

To assist us in designing an appropriate and efficient national legal notice program, we utilize the syndicated research bureaus GfK Mediamark Research, Inc. ("GfK MRI") and comScore. With these tools, we are able to measure and report to the Court what percentage of the target audience is estimated to be reached by the Notice Program and how many times the target audience will have the opportunity to see the notice. We have measured the notice program against individuals aged 18 or older who shop at Wal-Mart and/or Sam's Club.

We will target likely class members with a variety of advanced targeting techniques spread over two phases – an Initial Notice phase and a secondary Claims Reminder phase.  Below we've outlined the noticing methods including:

- ○ Print media in the top general consumer magazine in the U.S.
- ○ Banner ad behavioral targeting to those who have searched for information on Wal-Mart of Sam's Club.
- ○ Banner ad behavioral targeting to individuals who have visited websites with information regarding Wal-Mart, Sam's Club, and/or value shopping.
- ○ Spanish banner ads.
- ○ Social media on *Facebook* and *Instagram* including targeting to individuals who have shown interest in pages related to Wal-Mart, Sam's Club, and/or discount stores.
- ○ "Geo-fencing" banner ads that will target individuals who have entered a Wal-Mart or Sam's Club location.
- ○ Lead-Form ads on Facebook which will gather information on potential class members for future communication.
- ○ Sponsored search on the top three search websites in the U.S.
- ○ Remarketing to those who visit the class website.
- ○ National press release in both English and Spanish.

The media Notice Plan as outlined below has a total estimated cost of $498,000.  The Detailed Notice Plan Estimate is included as **Attachment B**.  In combination, the Initial Notice and Claims Reminder phases will reach approximately 80% of adults who have shopped at Walmart or Sam's Club, an average frequency of 4.8 times each.

## PHASE 1 – INITIAL NOTICE

The Initial Notice phase will consist of print, online/social media banner ads, sponsored search, and a press release.

### PRINT MEDIA

*People Magazine*



- ○ Two, 1/3 page B&W notices in *People Magazine* over consecutive weeks.
- ○ Total circulation of 3.4 million and readership of over 34.9 million.
- ○ According to GfK MRI, approximately 63% of *People* readers are Wal-Mart or Sam's Club shoppers.

*Pearlstone v Wal-Mart*

## ONLINE DISPLAY CAMPAIGNS



87% of adults who shop at Wal-Mart/Sam's Club are online

- ○ Multiple unit sizes across the *Google Display Network* and *Verizon Media Network* (f/k/a the *Yahoo! Audience Network*).
- ○ Spanish language banners across the *Google Display Network*.
- ○ Approximately 398 million total impressions nationwide.
- ○ Use of algorithms from *Google Display Network* to identify consumer Affinity/Intent Audience targets for shoppers of Wal-Mart and Sam's Club, as well as "Superstore Shoppers" and "Value Shoppers."
- ○ Users who click ads will be retargeted to increase frequency & effectiveness of the campaign.
- ○ Ads will be served on targeted websites on mobile, tablet and desktop devices.
- ○ Banners will run for a period of 6 weeks.
- ○ Banners will include a headline of the matter at issue, and urge readers to click to the website for more information where they will have the option to file a claim – similar to the example shown below:

## ONLINE DISPLAY SAMPLE AD POSITIONS



*Pearlstone v Wal-Mart*

## ONLINE DISPLAY SAMPLE AD POSITIONS (CONTINUED)



## SOCIAL MEDIA

According to GfK MRI, 79% of adults 18+ who shop at Wal-Mart/Sam's Club use social media. Social media is a great platform for targeting users based on their interests.

 

- ○ Newsfeed & Right Hand Column ads on *Facebook* and Newsfeed ads on *Instagram*.
  - • Click-through function to case website where users can get more info and file a claim.
- ○ Estimated 201 million impressions to run for a period of 6 weeks.
- ○ Ads will be targeted to adults with an interest in "Wal-Mart," "Sam's Club," & "Discount Stores."

*Pearlstone v Wal-Mart*

## SOCIAL (FACEBOOK) SAMPLE AD POSITION



## SPONSORED SEARCH

- o   Text notice will appear on popular search networks such as *Google*, *Yahoo!* and *Bing*.
- o   Notice will link directly to case website where users can get more information and file a claim.
- o   Notice may appear when a user types in keywords such as "Wal-Mart Return Settlement," or "Sam's Club Lawsuit." Exact search terms will be developed at the time of the buy in consultation with counsel.

## PRESS RELEASE



To build additional reach and extend exposures, we will prepare a press release of approximately 600 words (in consultation with counsel) for the Court's approval.

- o   National Distribution in English & Spanish through *PR Newswire's* US1+Hispanic Newsline.
- o   This party-neutral Informational Release will be issued to more than 5,000 general media (print and broadcast) outlets, including local and national newspapers, magazine, wire services, television and radio media, as well as online distribution to approximately 4,500 websites, online databases, Internet networks and social networking sites in all 50 states.
- o   The Informational Release will serve a valuable role by providing additional notice exposures beyond those already provided by the paid media.

*Pearlstone v Wal-Mart*

○ The Hispanic newsline reaches over 1,900 Hispanic US general media contacts as well as up to 4,840 additional industry-specific Hispanic media contacts. The Hispanic release also includes a guaranteed placement on over 140 Hispanic websites and/or news portals.

## PHASE 2 – CLAIM REMINDER NOTICE

Upon completion of the initial notice phase, the Claim Reminder phase will commence with messaging focused on reminding individuals to visit the website and complete a claim form.  The Claim Reminder phase will be a strictly online campaign that will use similar banner notices as the Initial Notice phase but with slightly different call-to-action messaging.

○ Online display and social media ad including:
  o Use of algorithms from *Google Display Network* to identify consumer Affinity Audience targets for shoppers of Wal-Mart and Sam's Club, as well as "Superstore Shoppers" and "Value Shoppers."
  o Use of algorithms from *Google Display Network* to identify consumer Intent Audience targets for individuals who have searched out information on Wal-Mart and/or Sam's Club.
  o "Geofence" advertising.  We will utilize a location database of all Walmart and Sam's Club store locations in the U.S. to precisely target customers within the store locations (approximately 4,700 Walmart and 600 Sam's Club locations included). When an adult enters the store, ad technology will identify the user's mobile ID (based on their mobile device with location service turned on). Ads will then be served to the user during and after their visit to that location. Ads will be served as display ads on mobile and desktop sites the customer's visit frequently. In addition, when Spanish language preference is available on a user's phone, we will serve the notice in Spanish to that individual.
  o Social media ads on Facebook/Instagram targeted to adults with an interest in "Wal-Mart," and "Sam's Club."
  o Lead Form ads on Facebook. When the ad is clicked, a pop-up appears on screen asking if the user would like more information about the class action.  Once a user

*Pearlstone v Wal-Mart*

submits the form, we will collect the user information which can be used to send/mail information such as the notice and/or claim form to their attention.

- o  Estimated 215 million impressions to run for a period of 6 weeks.

## CONCLUSION

The above combined phases of the Notice Plan are estimated to reach approximately 80% of the target audience with an average frequency of 4.8 times each.  If Hilsoft and Epiq are selected to implement this notice effort, we will prepare a detailed Notice Plan document and affidavit for filing with Court that details all steps in the notice plan. At the conclusion of the notification effort Hilsoft will prepare a complete final report detailing all efforts undertaken. Attachments to the report will contain a complete list of all known appearances of the notice and appropriate details. The report will also include all verifications of performance as may be required.

# Attachment A



Hilsoft Notifications is a leading provider of legal notice services for large-scale class action and bankruptcy matters. We specialize in providing quality, expert, notice plan development – designing notice programs that satisfy due process requirements and withstand judicial scrutiny. Hilsoft Notifications ("Hilsoft") has been retained by defendants and/or plaintiffs for more than 450 cases, including more than 40 MDL cases, with notices appearing in more than 53 languages and in almost every country, territory and dependency in the world. For more than 25 years, Hilsoft's notice plans have been approved and upheld by courts. Case examples include:

➢ Hilsoft designed and implemented monumental notice campaigns to notify current or former owners or lessees of certain BMW, Mazda, Subaru, Toyota, Honda, Nissan, and Ford vehicles as part of $1.49 billion in settlements regarding Takata airbags. The Notice Plans included individual mailed notice to more than 59.6 million potential class members and notice via consumer publications, U.S. Territory newspapers, radio spots, internet banners, mobile banners, and behaviorally targeted digital media. Combined, the Notice Plans reached more than 95% of adults aged 18+ in the U.S. who owned or leased a subject vehicle with a frequency of 4.0 times each. *In re: Takata Airbag Products Liability Litigation (OEMS – BMW, Mazda, Subaru, Toyota, Honda, Nissan and Ford)*, MDL No. 2599 (S.D. Fla.).

➢ For a landmark $6.05 billion settlement reached by Visa and MasterCard in 2012, Hilsoft implemented an intensive notice program, which included over 19.8 million direct mail notices to class members together with insertions in over 1,500 newspapers, consumer magazines, national business publications, trade and specialty publications, and language & ethnic targeted publications. Hilsoft also implemented an extensive online notice campaign with banner notices, which generated more than 770 million adult impressions, a settlement website in eight languages, and acquisition of sponsored search listings to facilitate locating the website. For the subsequent superseding $5.54 billion settlement reached by Visa and MasterCard in 2019, Hilsoft implemented an extensive notice program, which included over 16.3 million direct mail notices to class members together with over 354 print publication units and banner notices, which generated more than 689 million adult impressions. *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 05-MD-1720, MDL No. 1720 (E.D.N.Y.).

➢ For a $250 million settlement with approximately 4.7 million class members, Hilsoft designed and implemented a notice program with individual notice via postcard or email to approximately 1.43 million class members and a robust publication program, which combined, reached approximately 78.8% of all U.S. adults aged 35+ approximately 2.4 times each. *Hale v. State Farm Mutual Automobile Insurance Company, et al.,* 12-cv-00660 (S.D. Ill.).

➢ Hilsoft designed and implemented an extensive individual notice program, which included 8.6 million double-postcard notices and 1.4 million email notices. The notices informed class members of a $32 million settlement for a "security incident" regarding class members' personal information stored in Premera's computer network, which was compromised. The individual notice efforts reached 93.3% of the settlement class. A settlement website, an informational release, and a geo-targeted publication notice further enhanced the notice efforts. *In Re: Premera Blue Cross Customer Data Security Breach Litigation*, 3:15-md-2633 (D. Ore.).

➢ Hilsoft designed a notice program that included extensive data acquisition and mailed notice to inform owners and lessees of specific models of Mercedes-Benz vehicles. The notice program designed and implemented by Hilsoft reached approximately 96.5% of all class members. *Callaway v. Mercedes-Benz USA, LLC*, 8:14-cv-02011 (C.D. Cal.).

➢ For a $20 million TCPA settlement that involved Uber, Hilsoft created a notice program, which resulted in notice via mail or email to more than 6.9 million identifiable class members. The combined measurable effort reached approximately 90.6% of the settlement class with direct mail and email, newspaper and internet banner ads. *Vergara, et al., v. Uber Technologies, Inc.,* 1:15-CV-06972 (N.D. Ill.).

➢ A comprehensive notice program within the *Volkswagen Emissions Litigation* that provided individual notice to more than 946,000 vehicle owners via first class mail and to more than 855,000 vehicle owners via email. A targeted internet campaign further enhanced the notice effort.  ***In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch Settlement)***, MDL No. 2672 (N.D. Cal.).

➢ An extensive notice effort regarding asbestos personal injury claims and rights as to Debtors' Joint Plan of Reorganization and Disclosure Statement that was designed and implemented by Hilsoft.  The notice program included nationwide consumer print publications, trade and union labor publications, internet banner advertising, an informational release, and a website.  ***In re: Kaiser Gypsum Company, Inc., el al.***, 16-31602 (Bankr. W.D. N.C.).

➢ Hilsoft designed and implemented an extensive settlement notice plan for a class period spanning more than 40 years for smokers of light cigarettes.  The notice plan delivered a measured reach of approximately 87.8% of Arkansas adults 25+ with a frequency of 8.9 times and approximately 91.1% of Arkansas adults 55+ with a frequency of 10.8 times.  Hispanic newspaper notice, an informational release, radio public service announcements ("PSAs"), sponsored search listings and a case website further enhanced reach. ***Miner v. Philip Morris USA, Inc.***, 60CV03-4661 (Ark. Cir.).

➢ One of the largest claim deadline notice campaigns ever implemented, for BP's $7.8 billion settlement claim deadline relating to the Deepwater Horizon oil spill.  Hilsoft designed and implemented the claim deadline notice program, which resulted in a combined measurable paid print, television, radio and internet effort, which reached in excess of 90% of adults aged 18+ in the 26 identified DMAs covering the Gulf Coast Areas an average of 5.5 times each.  ***In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010***, MDL No. 2179 (E.D. La.).

➢ A large asbestos bar date notice effort, which included individual notice, national consumer publications, hundreds of local and national newspapers, Spanish newspapers, union labor publications, and digital media to reach the target audience.  ***In re: Energy Future Holdings Corp., et al. (Asbestos Claims Bar Date Notice)***, 14-10979 (Bankr. D. Del.).

➢ BP's $7.8 billion settlement of claims related to the Deepwater Horizon oil spill emerged from possibly the most complex class action case in U.S. history.  Hilsoft drafted and opined on all forms of notice.  The 2012 dual notice program to distinct "Economic and Property Damages" and "Medical Benefits" settlement classes designed by Hilsoft reached at least 95% Gulf Coast region adults via more than 7,900 television spots, 5,200 radio spots, 5,400 print insertions in newspapers, consumer publications, and trade journals, digital media, and individual notice.  ***In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010***, MDL No. 2179 (E.D. La.).

➢ Overdraft fee class actions have been brought against nearly every major U.S. commercial bank.  For related settlements from 2010-2020, Hilsoft has developed programs that integrate individual notice and in some cases paid media efforts.  Fifth Third Bank, National City Bank, Bank of Oklahoma, Webster Bank, Harris Bank, M& I Bank, PNC Bank, Compass Bank, Commerce Bank, Citizens Bank, Great Western Bank, TD Bank,  BancorpSouth, Comerica Bank, Susquehanna Bank, Associated Bank, Capital One, M&T Bank, Iberiabank and Synovus are among the more than 20 banks that have retained Hilsoft.  ***In re Checking Account Overdraft Litigation***, MDL No. 2036 (S.D. Fla.).

➢ Hilsoft provided notice for one of the largest data breaches in U.S. history with approximately 130 million credit and debit card numbers stolen.  ***In re Heartland Data Security Breach Litigation***, MDL No. 2046 (S.D. Tex.).

➢ For one of the largest and most complex class action case in Canadian history, Hilsoft designed and implemented groundbreaking notice to disparate, remote indigenous people in the multi-billion dollar settlement.  ***In re Residential Schools Class Action Litigation***, 00-CV-192059 CPA (Ont. Super. Ct.).

➢ Extensive point of sale notice program of a settlement, which provided payments of up to $100,000 related to Chinese drywall – 100 million notices distributed to Lowe's purchasers during a six-week period.  ***Vereen v. Lowe's Home Centers***, SU10-CV-2267B (Ga. Super. Ct.).



## LEGAL NOTICING EXPERTS

### *Cameron Azari, Esq., Director of Legal Notice*

Cameron Azari, Esq. has more than 20 years of experience in the design and implementation of legal notice and claims administration programs.  He is a nationally recognized expert in the creation of class action notification campaigns in compliance with Fed R. Civ. P. 23(c)(2) (d)(2) and (e) and similar state class action statutes.  Cameron has been responsible for hundreds of legal notice and advertising programs.  During his career, he has been involved in an array of high profile class action matters, including *In re: Takata Airbag Products Liability Litigation, In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (MasterCard & Visa), In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch Settlement), In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, In re: Checking Account Overdraft Litigation,* and *In re Residential Schools Class Action Litigation.*  He is an active author and speaker on a broad range of legal notice and class action topics ranging from amendments to FRCP Rule 23 to email noticing, response rates and optimizing settlement effectiveness.  Cameron is an active member of the Oregon State Bar.  He received his B.S. from Willamette University and his J.D. from Northwestern School of Law at Lewis and Clark College.  Cameron can be reached at caza@legalnotice.com.

### *Lauran Schultz, Epiq Managing Director*

Lauran Schultz consults with Hilsoft clients on complex noticing issues.  Lauran has more than 20 years of experience as a professional in the marketing and advertising field, specializing in legal notice and class action administration since 2005.  High profile actions he has been involved in include companies such as BP, Bank of America, Fifth Third Bank, Symantec Corporation, Lowe's Home Centers, First Health, Apple, TJX, CNA and Carrier Corporation.  Prior to joining Epiq in 2005, Lauran was a Senior Vice President of Marketing at National City Bank in Cleveland, Ohio.  Lauran's education includes advanced study in political science at the University of Wisconsin-Madison along with a Ford Foundation fellowship from the Social Science Research Council and American Council of Learned Societies.  Lauran can be reached at lschultz@hilsoft.com.

### *Kyle Bingham, Manager of Strategic Communications*

Kyle Bingham has 14 years of experience in the advertising industry. At Hilsoft and Epiq, Kyle is responsible for overseeing the research, planning, and execution of advertising campaigns for legal notice programs including class action, bankruptcy and other legal cases.  Kyle has been involved in the design and implementation of numerous legal notice campaigns, including *In re: Takata Airbag Products Liability Litigation, In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch), In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (MasterCard & Visa), In re: Energy Future Holdings Corp., et al. (Asbestos Claims Bar Notice), In re: Residential Schools Class Action Litigation, Hale v. State Farm Mutual Automobile Insurance Company,* and *In Re: Checking Account Overdraft Litigation.*  Prior to joining Epiq and Hilsoft, Kyle worked at Wieden+Kennedy for seven years, an industry-leading advertising agency where he planned and purchased print, digital and broadcast media, and presented strategy and media campaigns to clients for multi-million dollar branding campaigns and regional direct response initiatives.  He received his B.A. from Willamette University.  Kyle can be reached at kbingham@epiqglobal.com.

## ARTICLES AND PRESENTATIONS

- ➢ **Cameron Azari** Speaker, "Consumers and Class Action Notices: An FTC Workshop."  Federal Trade Commission, Washington, DC, October 29, 2019.

- ➢ **Cameron Azari** Speaker, "The New Outlook for Automotive Class Action Litigation: Coattails, Recalls, and Loss of Value/Diminution Cases."  ACI's Automotive Product Liability Litigation Conference."  American Conference Institute, Chicago, IL, July 18, 2019.

- ➢ **Cameron Azari** Moderator, "Prepare for the Future of Automotive Class Actions." Bloomberg Next, Webinar-CLE, November 6, 2018.

- ➢ **Cameron Azari** Speaker, "The Battleground for Class Certification: Plaintiff and Defense Burdens, Commonality Requirements and Ascertainability."  30th National Forum on Consumer Finance Class Actions and Government Enforcement, Chicago, IL, July 17, 2018.



➢ **Cameron Azari** Speaker, "Recent Developments in Class Action Notice and Claims Administration."  PLI's Class Action Litigation 2018 Conference, New York, NY, June 21, 2018.

➢ **Cameron Azari** Speaker, "One Class Action or 50? Choice of Law Considerations as Potential Impediment to Nationwide Class Action Settlements."  5th Annual Western Regional CLE Program on Class Actions and Mass Torts.  Clyde & Co LLP, San Francisco, CA, June 22, 2018.

➢ **Cameron Azari** Co-Author, *A Practical Guide to Chapter 11 Bankruptcy Publication Notice.*  E-book, published, May 2017.

➢ **Cameron Azari** Featured Speaker, "Proposed Changes to Rule 23 Notice and Scrutiny of Claim Filing Rates," DC Consumer Class Action Lawyers Luncheon, December 6, 2016.

➢ **Cameron Azari** Speaker, "Recent Developments in Consumer Class Action Notice and Claims Administration."  Berman DeValerio Litigation Group, San Francisco, CA, June 8, 2016.

➢ **Cameron Azari** Speaker, "2016 Cybersecurity & Privacy Summit.  Moving From 'Issue Spotting' To Implementing a Mature Risk Management Model."  King & Spalding, Atlanta, GA, April 25, 2016.

➢ **Cameron Azari** Speaker, "Live Cyber Incident Simulation Exercise."  Advisen's Cyber Risk Insights Conference, London, UK, February 10, 2015.

➢ **Cameron Azari** Speaker, "Pitfalls of Class Action Notice and Claims Administration."  PLI's Class Action Litigation 2014 Conference, New York, NY, July 9, 2014.

➢ **Cameron Azari** Co-Author, "What You Need to Know About Frequency Capping In Online Class Action Notice Programs."  *Class Action Litigation Report*, June 2014.

➢ **Cameron Azari** Speaker, "Class Settlement Update – Legal Notice and Court Expectations."  PLI's 19th Annual Consumer Financial Services Institute Conference, New York, NY, April 7-8, 2014 and Chicago, IL, April 28-29, 2014.

➢ **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements - Recent Developments."  ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 29-30, 2014.

➢ **Cameron Azari** Speaker, "Legal Notice in Building Products Cases."  HarrisMartin's Construction Product Litigation Conference, Miami, FL, October 25, 2013.

➢ **Cameron Azari** Co-Author, "Class Action Legal Noticing: Plain Language Revisited."  *Law360*, April 2013.

➢ **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements Getting your Settlement Approved."  ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 31-February 1, 2013.

➢ **Cameron Azari** Speaker, "Perspectives from Class Action Claims Administrators: Email Notices and Response Rates."  CLE International's 8th Annual Class Actions Conference, Los Angeles, CA, May 17-18, 2012.

➢ **Cameron Azari** Speaker, "Class Action Litigation Trends: A Look into New Cases, Theories of Liability & Updates on the Cases to Watch."  ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 26-27, 2012.

➢ **Lauran Schultz** Speaker, "Legal Notice Best Practices: Building a Workable Settlement Structure."  CLE International's 7th Annual Class Action Conference, San Francisco, CA, May 2011.

➢ **Cameron Azari** Speaker, "Data Breaches Involving Consumer Financial Information: Litigation Exposures and Settlement Considerations."  ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 2011.



➢ **Cameron Azari** Speaker, "Notice in Consumer Class Actions: Adequacy, Efficiency and Best Practices." CLE International's 5th Annual Class Action Conference: Prosecuting and Defending Complex Litigation, San Francisco, CA, 2009.

➢ **Lauran Schultz** Speaker, "Efficiency and Adequacy Considerations in Class Action Media Notice Programs." Chicago Bar Association, Chicago, IL, 2009.

➢ **Cameron Azari** Author, "Clearing the Five Hurdles of Email - Delivery of Class Action Legal Notices." *Thomson Reuters Class Action Litigation Reporter*, June 2008.

➢ **Cameron Azari** Speaker, "Planning for a Smooth Settlement."  ACI: Class Action Defense – Complex Settlement Administration for the Class Action Litigator, Phoenix, AZ, 2007.

➢ **Cameron Azari** Speaker, "Structuring a Litigation Settlement." CLE International's 3rd Annual Conference on Class Actions, Los Angeles, CA, 2007.

➢ **Cameron Azari** Speaker, "Noticing and Response Rates in Class Action Settlements" – Class Action Bar Gathering, Vancouver, British Columbia, 2007.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Skadden Arps Slate Meagher & Flom, LLP, New York, NY, 2006.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Bridgeport Continuing Legal Education, Class Action and the UCL, San Diego, CA, 2006.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Stoel Rives litigation group, Portland, OR / Seattle, WA / Boise, ID / Salt Lake City, UT, 2005.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Stroock & Stroock & Lavan Litigation Group, Los Angeles, CA, 2005.

➢ **Cameron Azari** Author, "Twice the Notice or No Settlement."  Current Developments – Issue II, August 2003.

➢ **Cameron Azari** Speaker, "A Scientific Approach to Legal Notice Communication" – Weil Gotshal litigation group, New York, NY, 2003.

## JUDICIAL COMMENTS

**Judge Nancy J. Rosenstengel,** *First Impressions Salon, Inc. et al. v. National Milk Producers Federation, et al.* (Apr. 27, 2020) 3:13-cv-00454 (S.D. Ill.):

> *The Court finds that the Notice given to the Class Members was completed as approved by this Court and complied in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process. The settlement Notice Plan was modeled on and supplements the previous court-approved plan and, having been completed, constitutes the best notice practicable under the circumstances. In making this determination, the Court finds that the Notice provided Class members due and adequate notice of the Settlement, the Settlement Agreement, the Plan of Distribution, these proceedings, and the rights of Class members to opt-out of the Class and/or object to Final Approval of the Settlement, as well as Plaintiffs' Motion requesting attorney fees, costs, and Class Representative service awards.*

**Judge Harvey Schlesinger,** *In Re: Disposable Contact Lens Antitrust Litigation* (Mar. 4, 2020) 3:15-md-02626 (M.D. Fla.):

> *The Court finds that the dissemination of the Notice: (a) was implemented in accordance with the Preliminary Approval Orders; (b) constitutes the best notice practicable under the circumstances; (c) constitutes notice that was reasonably calculated, under the circumstances, to apprise the Settlement Classes of (i) the pendency of the Action; (ii) the effect of the Settlement Agreements (including the Releases to the provided thereunder); (iii) Class Counsel's possible motion for an award of attorneys' fees and reimbursement of expenses; (iv) the right to object to any aspect of the Settlement Agreements, the Plan of Distribution, and/or*



*Class Counsel's motion for attorneys' fees and reimbursement of expenses; (v) the right to opt out of the Settlement Classes; (vi) the right to appear at the Fairness Hearing; and (vii) the fact that Plaintiffs may receive incentive awards; (d) constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the Settlement Agreement and (e) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and the United States Constitution (including the Due Process Clause).*

**Judge Amos L. Mazzant,** ***Stone et al. v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens*** (Mar. 3, 2020) 4:17-cv-00001 (E.D. Tex.):

*The Court has reviewed the Notice Plan and its implementation and efficacy, and finds that it constituted the best notice practicable under the circumstances and was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and their right to object to the proposed settlement in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution and Rules 23(c) and (e) of the Federal Rules of Civil Procedure.*

*In addition, Class Notice clearly and concisely stated in plain, easily understood language: (i) the nature of the action; (ii) the definition of the certified Equitable Relief Settlement Class; (iii) the claims and issues of the Equitable Relief Settlement Class; (iv) that a Settlement Class Member may enter an appearance through an attorney if the member so desires; (v) the binding effect of a class judgment on members under Fed. R. Civ. P. 23(c)(3).*

**Judge Michael H. Simon,** ***In Re: Premera Blue Cross Customer Data Security Breach Litigation*** (Mar. 2, 2020) 3:15-md-2633 (D. Ore.):

*The Court confirms that the form and content of the Summary Notice, Long Form Notice, Publication Notice, and Claim Form, and the procedure set forth in the Settlement for providing notice of the Settlement to the Class, were in full compliance with the notice requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e), fully, fairly, accurately, and adequately advised members of the Class of their rights under the Settlement, provided the best notice practicable under the circumstances, fully satisfied the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure, and afforded Class Members with adequate time and opportunity to file objections to the Settlement and attorney's fee motion, submit Requests for Exclusion, and submit Claim Forms to the Settlement Administrator.*

**Judge Maxine M. Chesney,** ***McKinney-Drobnis, et al. v. Massage Envy Franchising*** (Mar. 2, 2020) 3:16-CV-6450 (N.D. Cal.):

*The COURT hereby finds that the individual direct CLASS NOTICE given to the CLASS via email or First Class U.S. Mail (i) fairly and accurately described the ACTION and the proposed SETTLEMENT; (ii) provided sufficient information so that the CLASS MEMBERS were able to decide whether to accept the benefits offered by the SETTLEMENT, exclude themselves from the SETTLEMENT, or object to the SETTLEMENT; (iii) adequately described the manner in which CLASS MEMBERS could submit a VOUCHER REQUEST under the SETTLEMENT, exclude themselves from the SETTLEMENT, or object to the SETTLEMENT and/or appear at the FINAL APPROVAL HEARING; and (iv) provided the date, time, and place of the FINAL APPROVAL HEARING. The COURT hereby finds that the CLASS NOTICE was the best notice practicable under the circumstances and complied fully with Federal Rule of Civil Procedure Rule 23, due process, and all other applicable laws.*

**Judge Harry D. Leinenweber,** ***Albrecht v. Oasis Power, LLC d/b/a Oasis Energy*** (Feb. 6, 2020) 1:18-cv-1061 (N.D. Ill.):

*The Court finds that the distribution of the Class Notice, as provided for in the Settlement Agreement, (i) constituted the best practicable notice under the circumstances to Settlement Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of, among other things, the pendency of the Action, the nature and terms of the proposed Settlement, their right to object or to exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing, (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice, and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law.*

*The Court finds that the Class Notice and methodology set forth in the Settlement Agreement, the Preliminary Approval Order, and this Final Approval Order (i) constitute the most effective and practicable notice of the Final Approval Order, the relief available to Settlement Class Members pursuant to the Final Approval Order,*



*and applicable time periods; (ii) constitute due, adequate, and sufficient notice for all other purposes to all Settlement Class Members; and (iii) comply fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable laws.*

**Judge Robert Scola, Jr.,** *Wilson et al. v. Volkswagen Group of America, Inc., et al.* (Jan. 28, 2020) 17-cv-23033 (S.D. Fla.):

*The Court finds that the Class Notice, in the form approved by the Court, was properly disseminated to the Settlement Class pursuant to the Notice Plan and constituted the best practicable notice under the circumstances. The forms and methods of the Notice Plan approved by the Court met all applicable requirements of the Federal Rules of Civil Procedure, the United States Code, the United States Constitution (including the Due Process Clause), and any other applicable law.*

**Judge Michael Davis,** *Garcia v. Target Corporation* (Jan. 27, 2020) 16-cv-02574 (D. Minn.):

*The Court finds that the Notice Plan set forth in Section 4 of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Class of the pendency of this case, certification of the Settlement Class for settlement purposes only, the terms of the Settlement Agreement, and the Final Approval Hearing, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law.*

**Judge Bruce Howe Hendricks,** *In Re: TD Bank, N.A. Debit Card Overdraft Fee Litigation* (Jan. 9, 2020) MDL No. 2613, 6:15-MN-02613 (D. S.C.):

*The Classes have been notified of the settlement pursuant to the plan approved by the Court. After having reviewed the Declaration of Cameron R. Azari (ECF No. 220-1) and the Supplemental Declaration of Cameron R. Azari (ECF No. 225-1), the Court hereby finds that notice was accomplished in accordance with the Court's directives. The Court further finds that the notice program constituted the best practicable notice to the Settlement Classes under the circumstances and fully satisfies the requirements of due process and Federal Rule 23.*

**Judge Margo K. Brodie,** *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, (Dec. 13, 2019) MDL No. 1720, 05-MD-1720 (E.D. NY.):

*The notice and exclusion procedures provided to the Rule 23(b)(3) Settlement Class, including but not limited to the methods of identifying and notifying members of the Rule 23(b)(3) Settlement Class, were fair, adequate, and sufficient, constituted the best practicable notice under the circumstances, and were reasonably calculated to apprise members of the Rule 23(b)(3) Settlement Class of the Action, the terms of the Superseding Settlement Agreement, and their objection rights, and to apprise members of the Rule 23(b)(3) Settlement Class of their exclusion rights, and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, any other applicable laws or rules of the Court, and due process.*

**Judge Steven Logan,** *Knapper v. Cox Communications, Inc.* (Dec. 13, 2019) 2:17-cv-00913 (D. Ariz.):

*The Court finds that the form and method for notifying the class members of the settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order (Doc. 120). The Court further finds that the notice satisfied due process principles and the requirements of Federal Rule of Civil Procedure 23(c), and the Plaintiff chose the best practicable notice under the circumstances. The Court further finds that the notice was clearly designed to advise the class members of their rights.*

**Judge Manish Shah,** *Prather v. Wells Fargo Bank, N.A.* (Dec. 10, 2019) 1:17-cv-00481 (N.D. Ill.):

*The Court finds that the Notice Plan set forth in Section VIII of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Class of the pendency of this case, certification of the Settlement Class for settlement purposes only, the terms of the Settlement Agreement, and the Final Approval Hearing, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law.*



**Judge Liam O'Grady,** *Liggio v. Apple Federal Credit Union* (Dec. 6, 2019) 1:18-cv-01059 (E.D. Vir.):

*The Court finds that the manner and form of notice (the "Notice Plan") as provided for in the this Court's July 2, 2019 Order granting preliminary approval of class settlement, and as set forth in the Parties' Settlement Agreement was provided to Settlement Class Members by the Settlement Administrator. . . The Notice Plan was reasonably calculated to give actual notice to Settlement Class Members of the right to receive benefits from the Settlement, and to be excluded from or object to the Settlement. The Notice Plan met the requirements of Rule 23(c)(2)(B) and due process and constituted the best notice practicable under the circumstances.*

**Judge Brian McDonald,** *Armon et al. v. Washington State University* (Nov. 8, 2019) 17-2-23244-1 (consolidated with 17-2-25052-0) (Sup. Ct. Wash.):

*The Court finds that the Notice Program, as set forth in the Settlement and effectuated pursuant to the Preliminary Approval Order, satisfied CR 23(c)(2), was the best Notice practicable under the circumstances, was reasonably calculated to provide-and did provide-due and sufficient Notice to the Settlement Class of the pendency of the Litigation; certification of the Settlement Class for settlement purposes only; the existence and terms of the Settlement; the identity of Class Counsel and appropriate information about Class Counsel's then-forthcoming application for attorneys' fees and incentive awards to the Class Representatives; appropriate information about how to participate in the Settlement; Settlement Class Members' right to exclude themselves; their right to object to the Settlement and to appear at the Final Approval Hearing, through counsel if they desired; and appropriate instructions as to how to obtain additional information regarding this Litigation and the Settlement. In addition, pursuant to CR 23(c)(2)(B), the Notice properly informed Settlement Class Members that any Settlement Class Member who failed to opt-out would be prohibited from bringing a lawsuit against Defendant based on or related to any of the claims asserted by Plaintiffs, and it satisfied the other requirements of the Civil Rules.*

**Judge Andrew J. Guilford,** *In Re Wells Fargo Collateral Protection Insurance Litigation* (Nov. 4, 2019) 8:17-ml-02797 (C.D. Cal.):

*Epiq Class Action & Claims Solutions, Inc. ("Epiq"), the parties' settlement administrator, was able to deliver the court-approved notice materials to all class members, including 2,254,411 notice packets and 1,019,408 summary notices.*

**Judge Paul L. Maloney,** *Burch v. Whirlpool Corporation* (Oct. 16, 2019) 1:17-cv-00018 (W.D. Mich.):

*[T]he Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of federal and applicable state laws and due process.*

**Judge Jon Tigar,** *McKnight v. Uber Technologies, Inc.* (Aug. 13, 2019) 3:14-cv-05615 (N.D. Cal.):

*The settlement administrator, Epiq Systems, Inc., carried out the notice procedures as outlined in the preliminary approval. ECF No. 162 at 17-18. Notices were mailed to over 22 million class members with a success rate of over 90%. Id. at 17. Epiq also created a website, banner ads, and a toll free number. Id. at 17-18. Epiq estimates that it reached through mail and other formats 94.3% of class members. ECF No. 164 ¶ 28. In light of these actions, and the Court's prior order granting preliminary approval, the Court finds that the parties have provided adequate notice to class members.*

**Judge Gene E.K. Pratter,** *Tashica Fulton-Green et al. v. Accolade, Inc.* (Sept. 24, 2019) 18-274 (E.D. Penn.):

*The Court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of Federal Rule of Civil Procedure 23(c)(2)(B).*

**Judge Edwin Torres,** *Burrow, et al. v. Forjas Taurus S.A., et al.* (Sept. 6, 2019) 1:16-cv-21606 (S.D. Fla.):

*Because the Parties complied with the agreed-to notice provisions as preliminarily approved by this Court, and given that there are no developments or changes in the facts to alter the Court's previous conclusion, the Court finds that the notice provided in this case satisfied the requirements of due process and of Rule 23(c)(2)(B).*



**Judge Amos L. Mazzant,** *Fessler v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens* (Aug. 30, 2019) 4:19-cv-00248 (E.D. Tex.):

> The Court has reviewed the Notice Plan and its implementation and efficacy, and finds that it constituted the best notice practicable under the circumstances and was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and their right to object to the proposed settlement or opt out of the Settlement Class in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution and Rules 23(c) and (e) of the Federal Rules of Civil Procedure.

> In addition, Class Notice clearly and concisely stated in plain, easily understood language: (i) the nature of the action; (ii) the definition of the certified 2011 Settlement Class; (iii) the claims and issues of the 2011 Settlement Class; (iv) that a Settlement Class Member may enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the Settlement Class any member who requests exclusions; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Fed. R. Civ. P. 23(c)(3).

**Judge Karon Owen Bowdre,** *In Re: Community Health Systems, Inc. Customer Data Security Breach Litigation* (Aug. 22, 2019) MDL No. 2595 (N.D. Ala.):

> The court finds that the Notice Program: (1) satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process; (2) was the best practicable notice under the circumstances; (3) reasonably apprised Settlement Class members of the pendency of the Action and their right to object to the settlement or opt-out of the Settlement Class; and (4) was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice. Approximately 90% of the 6,081,189 individuals identified as Settlement Class members received the Initial Postcard Notice of this Settlement Action.

> The court further finds, pursuant to Fed. R. Civ. P. 23(c)(2)(B), that the Class Notice adequately informed Settlement Class members of their rights with respect to this action.

**Judge Christina A. Snyder,** *Zaklit, et al. v. Nationstar Mortgage LLC, et al.* (Aug. 21, 2019) 5:15-cv-02190 (C.D. Cal.):

> The Class Notice provided to the Settlement Class conforms with the requirements of Fed. Rule Civ. Proc. 23, the California and United States Constitutions, and any other applicable law, and constitutes the best notice practicable under the circumstances, by providing individual notice to all Settlement Class Members who could be identified through reasonable effort, and by providing due and adequate notice of the proceedings and of the matters set forth therein to the other Settlement Class Members. The notice fully satisfied the requirements of Due Process. No Settlement Class Members have objected to the terms of the Settlement.

**Judge Brian M. Cogan,** *Luib v. Henkel Consumer Goods Inc.* (Aug. 19, 2019) 1:17-cv-03021 (E.D.N.Y.):

> The Court finds that the Notice Plan, set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order: (i) was the best notice practicable under the circumstances; (ii) was reasonably calculated to provide, and did provide, due and sufficient notice to the Settlement Class regarding the existence and nature of the Action, certification of the Settlement Class for settlement purposes only, the existence and terms of the Settlement Agreement, and the rights of Settlement Class members to exclude themselves from the Settlement Agreement, to object and appear at the Final Approval Hearing, and to receive benefits under the Settlement Agreement; and (iii) satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and all other applicable law.

**Judge Yvonne Gonzalez Rogers,** *In Re:  Lithium Ion Batteries Antitrust Litigation* (Aug. 16, 2019) 4:13-MD-02420 (N.D. Cal.):

> The proposed notice plan was undertaken and carried out pursuant to this Court's preliminary approval order. [T]he notice program reached approximately 87 percent of adults who purchased portable computers, power tools, camcorders, or replacement batteries, and these class members were notified an average of 3.5 times each. As a result of Plaintiffs' notice efforts, in total, 1,025,449 class members have submitted claims. That includes 51,961 new claims, and 973,488 claims filed under the prior settlements.



**Judge Gary W.B. Chang,** *Robinson v. First Hawaiian Bank* (Aug. 8, 2019) 17-1-0167-01 (Cir. Ct. of First Cir. Haw.):

> *This Court determines that the Notice Program satisfies all of the due process requirements for a class action settlement.*

**Judge Karin Crump,** *Hyder, et al. v. Consumers County Mutual Insurance Company* (July 30, 2019) D-1-GN-16-000596 (D. Ct. of Travis County Tex.):

> *Due and adequate Notice of the pendency of this Action and of this Settlement has been provided to members of the Settlement Class, and this Court hereby finds that the Notice Plan described in the Preliminary Approval Order and completed by Defendant complied fully with the requirements of due process, the Texas Rules of Civil Procedure, and the requirements of due process under the Texas and United States Constitutions, and any other applicable laws.*

**Judge Wendy Bettlestone,** *Underwood v. Kohl's Department Stores, Inc., et al.* (July 24, 2019) 2:15-cv-00730 (E.D. Penn.):

> *The Notice, the contents of which were previously approved by the Court, was disseminated in accordance with the procedures required by the Court's Preliminary Approval Order in accordance with applicable law.*

**Judge Andrew G. Ceresia, J.S.C.,** *Denier, et al. v. Taconic Biosciences, Inc.* (July 15, 2019) 00255851 (Sup Ct. N.Y.):

> *The Court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of the CPLR.*

**Judge Vince G. Chhabria,** *Parsons v. Kimpton Hotel & Restaurant Group* (July 11, 2019) 3:16-cv-05387 (N.D. Cal.):

> *Pursuant to the Preliminary Approval Order, the notice documents were sent to Settlement Class Members by email or by first-class mail, and further notice was achieved via publication in People magazine, internet banner notices, and internet sponsored search listings. The Court finds that the manner and form of notice (the "Notice Program") set forth in the Settlement Agreement was provided to Settlement Class Members. The Court finds that the Notice Program, as implemented, was the best practicable under the circumstances. The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, class certification, the terms of the Settlement, and their rights to opt-out of the Settlement Class and object to the Settlement, Class Counsel's fee request, and the request for Service Award for Plaintiff. The Notice and Notice Program constituted sufficient notice to all persons entitled to notice. The Notice and Notice Program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.*

**Judge Daniel J. Buckley,** *Adlouni v. UCLA Health Systems Auxiliary, et al.* (June 28, 2019) BC589243 (Sup. Ct. Cal.):

> *The Court finds that the notice to the Settlement Class pursuant to the Preliminary Approval Order was appropriate, adequate, and sufficient, and constituted the best notice practicable under the circumstances to all Persons within the definition of the Settlement Class to apprise interested parties of the pendency of the Action, the nature of the claims, the definition of the Settlement Class, and the opportunity to exclude themselves from the Settlement Class or present objections to the settlement.  The notice fully complied with the requirements of due process and all applicable statutes and laws and with the California Rules of Court.*

**Judge John C. Hayes III,** *Lightsey, et al. v. South Carolina Electric & Gas Company, a Wholly Owned Subsidiary of SCANA, et al.* (June 11, 2019) 2017-CP-25-335 (Ct. of Com. Pleas., S.C.):

> *These multiple efforts at notification far exceed the due process requirement that the class representative provide the best practical notice. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140 (1974); Hospitality Mgmt. Assoc., Inc. v. Shell Oil, Inc., 356 S.C. 644, 591 S.E.2d 611 (2004). Following this extensive notice campaign reaching over 1.6 million potential class member accounts, Class counsel have received just two objections to the settlement and only 24 opt outs.*



**Judge Stephen K. Bushong,** *Scharfstein v. BP West Coast Products, LLC* (June 4, 2019) 1112-17046 (Ore. Cir., County of Multnomah):

> *The Court finds that the Notice Plan was effected in accordance with the Preliminary Approval and Notice Order, dated March 26, 2019, was made pursuant to ORCP 32 D, and fully met the requirements of the Oregon Rules of Civil Procedure, due process, the United States Constitution, the Oregon Constitution, and any other applicable law.*

**Judge Cynthia Bashant,** *Lloyd, et al. v. Navy Federal Credit Union* (May 28, 2019) 17-cv-1280 (S.D. Cal.):

> *This Court previously reviewed, and conditionally approved Plaintiffs' class notices subject to certain amendments. The Court affirms once more that notice was adequate.*

**Judge Robert W. Gettleman,** *Cowen v. Lenny & Larry's Inc.* (May 2, 2019) 1:17-cv-01530 (N.D. Ill.):

> *Notice to the Settlement Class and other potentially interested parties has been provided in accordance with the elements specified by the Court in the preliminary approval order. Adequate notice of the amended settlement and the final approval hearing has also been given.  Such notice informed the Settlement Class members of all material elements of the proposed Settlement and of their opportunity to object or comment thereon or to exclude themselves from the Settlement; provided Settlement Class Members adequate instructions and a means to obtain additional information; was adequate notice under the circumstances; was valid, due, and sufficient notice to all Settlement Class [M]embers; and complied fully with the laws of the State of Illinois, Federal Rules of Civil Procedure, the United States Constitution, due process, and other applicable law.*

**Judge Edward J. Davila,** *In re HP Printer Firmware Update Litigation* (Apr. 25, 2019) 5:16-cv-05820 (N.D. Cal.):

> *Due and adequate notice has been given of the Settlement as required by the Preliminary Approval Order. The Court finds that notice of this Settlement was given to Class Members in accordance with the Preliminary Approval Order and constituted the best notice practicable of the proceedings and matters set forth therein, including the Settlement, to all Persons entitled to such notice, and that this notice satisfied the requirements of Federal Rule of Civil Procedure 23 and of due process.*

**Judge Claudia Wilken,** *Naiman v. Total Merchant Services, Inc., et al.* (Apr. 16, 2019) 4:17-cv-03806 (N.D. Cal.):

> *The Court also finds that the notice program satisfied the requirements of Federal Rule of Civil Procedure 23 and due process. The notice approved by the Court and disseminated by Epiq constituted the best practicable method for informing the class about the Final Settlement Agreement and relevant aspects of the litigation.*

**Judge Paul Gardephe,** *37 Besen Parkway, LLC v. John Hancock Life Insurance Company (U.S.A.)* (Mar. 31, 2019) 15-cv-9924 (S.D.N.Y.):

> *The Notice given to Class Members complied in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process and provided due and adequate notice to the Class.*

**Judge Alison J. Nathan,** *Pantelyat v. Bank of America, N.A., et al.* (Jan. 31, 2019) 16-cv-8964 (S.D.N.Y.):

> *The Class Notice provided to the Settlement Class in accordance with the Preliminary Approval Order was the best notice practicable under the circumstances, and constituted due and sufficient notice of the proceedings and matters set forth therein, to all persons entitled to notice.  The notice fully satisfied the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and all other applicable law and rules.*

**Judge Kenneth M. Hoyt,** *Al's Pals Pet Card, LLC, et al v. Woodforest National Bank, N.A., et al.* (Jan. 30, 2019) 4:17-cv-3852 (S.D. Tex.):

> *[T]he Court finds that the class has been notified of the Settlement pursuant to the plan approved by the Court. The Court further finds that the notice program constituted the best practicable notice to the class under the circumstances and fully satisfies the requirements of due process, including Fed. R. Civ. P. 23(e)(1) and 28 U.S.C. § 1715.*



**Judge Robert M. Dow, Jr.,** *In re: Dealer Management Systems Antitrust Litigation* (Jan. 23, 2019) MDL No. 2817 (N.D. Ill.):

> The Court finds that the Settlement Administrator fully complied with the Preliminary Approval Order and that the form and manner of providing notice to the Dealership Class of the proposed Settlement with Reynolds was the best notice practicable under the circumstances, including individual notice to all members of the Dealership Class who could be identified through the exercise of reasonable effort. The Court further finds that the notice program provided due and adequate notice of these proceedings and of the matters set forth therein, including the terms of the Agreement, to all parties entitled to such notice and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1715(b), and constitutional due process.

**Judge Federico A. Moreno,** *In re: Takata Airbag Products Liability Litigation (Ford)* (Dec. 20, 2018) MDL No. 2599 (S.D. Fla.):

> The record shows and the Court finds that the Class Notice has been given to the Class in the manner approved by the Court in its Preliminary Approval Order. The Court finds that such Class Notice: .(i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense) and the binding effect of the orders and Final Order and Final Judgment in the Action, whether favorable or unfavorable, on all persons and entities who or which do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), FED. R. Civ. P. 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.

**Judge Herndon,** *Hale v. State Farm Mutual Automobile Insurance Company, et al.* (Dec. 16, 2018) 3:12-cv-00660 (S.D. Ill.):

> The Class here is estimated to include approximately 4.7 million members. Approximately 1.43 million of them received individual postcard or email notice of the terms of the proposed Settlement, and the rest were notified via a robust publication program "estimated to reach 78.8% of all U.S. Adults Aged 35+ approximately 2.4 times." Doc. 966-2 ¶¶ 26, 41. The Court previously approved the notice plan (Doc. 947), and now, having carefully reviewed the declaration of the Notice Administrator (Doc. 966-2), concludes that it was fully and properly executed, and reflected "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." See Fed. R. Civ. P. 23(c)(2)(B). The Court further concludes that CAFA notice was properly effectuated to the attorneys general and insurance commissioners of all 50 states and District of Columbia.

**Judge Jesse M. Furman,** *Alaska Electrical Pension Fund, et al. v. Bank of America, N.A., et al.* (Nov. 13, 2018) 14-cv-7126 (S.D.N.Y.):

> The mailing and distribution of the Notice to all members of the Settlement Class who could be identified through reasonable effort, the publication of the Summary Notice, and the other Notice efforts described in the Motion for Final Approval, as provided for in the Court's June 26, 2018 Preliminary Approval Order, satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all Persons entitled to notice.

**Judge William L. Campbell, Jr.,** *Ajose v. Interline Brands, Inc.* (Oct. 23, 2018) 3:14-cv-01707 (M.D. Tenn.):

> The Court finds that the Notice Plan, as approved by the Preliminary Approval Order: (i) satisfied the requirements of Rule 23(c)(3) and due process; (ii) was reasonable and the best practicable notice under the circumstances; (iii) reasonably apprised the Settlement Class of the pendency of the action, the terms of the Agreement, their right to object to the proposed settlement or opt out of the Settlement Class, the right to appear at the Final Fairness Hearing, and the Claims Process; and (iv) was reasonable and constituted due, adequate, and sufficient notice to all those entitled to receive notice.



**Judge Joseph C. Spero,** *Abante Rooter and Plumbing v. Pivotal Payments Inc., d/b/a/ Capital Processing Network and CPN* (Oct. 15, 2018) 3:16-cv-05486 (N.D. Cal.):

> [T]the Court finds that notice to the class of the settlement complied with Rule 23(c)(3) and (e) and due process. Rule 23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement, voluntary dismissal, or compromise. Class members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B)…The notice program included notice sent by first class mail to 1,750,564 class members and reached approximately 95.2% of the class.

**Judge Marcia G. Cooke,** *Dipuglia v. US Coachways, Inc.* (*Sept. 28, 2018)* 1:17-cv-23006 (S.D. Fla):

> The Settlement Class Notice Program was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the Case 1:17-cv-23006-MGC Document 66 Entered on FLSD Docket 09/28/2018 Page 3 of 7 4 proceedings and of the matters set forth therein, including the proposed settlement set forth in the Agreement, to all persons entitled to such notice and said notice fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.

**Judge Beth Labson Freeman,** *Gergetz v. Telenav, Inc.* (Sept. 27, 2018) 5:16-cv-04261 (N.D. Cal.):

> The Court finds that the Notice and Notice Plan implemented pursuant to the Settlement Agreement, which consists of individual notice sent via first-class U.S. Mail postcard, notice provided via email, and the posting of relevant Settlement documents on the Settlement Website, has been successfully implemented and was the best notice practicable under the circumstances and: (1) constituted notice that was reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, their right to object to or to exclude themselves from the Settlement Agreement, and their right to appear at the Final Approval Hearing; (2) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (3) met all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause, and the Rules of this Court.

**Judge M. James Lorenz,** *Farrell v. Bank of America, N.A.* (Aug. 31, 2018) 3:16-cv-00492 (S.D. Cal.):

> The Court therefore finds that the Class Notices given to Settlement Class members adequately informed Settlement Class members of all material elements of the proposed Settlement and constituted valid, due, and sufficient notice to Settlement Class members. The Court further finds that the Notice Program satisfies due process and has been fully implemented.

**Judge Dean D. Pregerson,** *Falco et al. v. Nissan North America, Inc. et al.* (July 16, 2018) 2:13-cv-00686 (C.D. Cal.):

> Notice to the Settlement Class as required by Rule 23(e) of the Federal Rules of Civil Procedure has been provided in accordance with the Court's Preliminary Approval Order, and such Notice by first-class mail was given in an adequate and sufficient manner, and constitutes the best notice practicable under the circumstances, and satisfies all requirements of Rule 23(e) and due process.

**Judge Lynn Adelman,** *In re: Windsor Wood Clad Window Product Liability Litigation* (July 16, 2018) MDL No. 16-MD-02688 (E.D. Wis.):

> The Court finds that the Notice Program was appropriately administered, and was the best practicable notice to the Class under the circumstances, satisfying the requirements of Rule 23 and due process. The Notice Program, constitutes due, adequate, and sufficient notice to all persons, entities, and/or organizations entitled to receive notice; fully satisfied the requirements of the Constitution of the United States (including the Due Process Clause), Rule 23 of the Federal Rules of Civil Procedure, and any other applicable law; and is based on the Federal Judicial Center's illustrative class action notices.

**Judge Stephen K. Bushong,** *Surrett et al. v. Western Culinary Institute, et al.* (June 18, 2018) 0803-03530 (Ore. Cir. County of Multnomah):

> This Court finds that the distribution of the Notice of Settlement was effected in accordance with the Preliminary Approval/Notice Order, dated February 9, 2018, was made pursuant to ORCP 32 D, and fully met



*the requirements of the Oregon Rules of Civil Procedure, due process, the United States Constitution, the Oregon Constitution, and any other applicable law.*

**Judge Jesse M. Furman,** ***Alaska Electrical Pension Fund, et al. v. Bank of America, N.A., et al.*** (June 1, 2018) 14-cv-7126 (S.D.N.Y.):

*The mailing of the Notice to all members of the Settlement Class who could be identified through reasonable effort, the publication of the Summary Notice, and the other Notice distribution efforts described in the Motion for Final Approval, as provided for in the Court's October 24, 2017 Order Providing for Notice to the Settlement Class and Preliminarily Approving the Plan of Distribution, satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all Persons entitled to notice.*

**Judge Brad Seligman,** ***Larson v. John Hancock Life Insurance Company (U.S.A.)*** (May 8, 2018) RG16813803 (Cal. Sup. Ct., County of Alameda):

*The Court finds that the Class Notice and dissemination of the Class Notice as carried out by the Settlement Administrator complied with the Court's order granting preliminary approval and all applicable requirements of law, including, but not limited to California Rules of Court, rule 3.769(f) and the Constitutional requirements of due process, and constituted the best notice practicable under the circumstances and sufficient notice to all persons entitled to notice of the Settlement.*

*[T]he dissemination of the Class Notice constituted the best notice practicable because it included mailing individual notice to all Settlement Class Members who are reasonably identifiable using the same method used to inform class members of certification of the class, following a National Change of Address search and run through the LexisNexis Deceased Database.*

**Judge Federico A. Moreno,** ***Masson v. Tallahassee Dodge Chrysler Jeep, LLC*** (May 8, 2018) 17-cv-22967 (S.D. Fla.):

*The Settlement Class Notice Program was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed settlement set forth in the Agreement, to all persons entitled to such notice and said notice fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.*

**Chancellor Russell T. Perkins,** ***Morton v. GreenBank*** (Apr. 18, 2018) 11-135-IV (20th Jud. Dist. Tenn.):

*The Notice Program as provided or in the Agreement and the Preliminary Amended Approval Order constituted the best notice practicable under the circumstances, including individual notice to all Settlement Class members who could be identified through reasonable effort. The Notice Plan fully satisfied the requirements of Tennessee Rule of Civil Procedure 23.03, due process and any other applicable law.*

**Judge James V. Selna,** ***Callaway v. Mercedes-Benz USA, LLC*** (Mar. 8, 2018) 8:14-cv-02011 (C.D. Cal.):

*The Court finds that the notice given to the Class was the best notice practicable under the circumstances of this case, and that the notice complied with the requirements of Federal Rule of Civil Procedure 23 and due process.*

*The notice given by the Class Administrator constituted due and sufficient notice to the Settlement Class, and adequately informed members of the Settlement Class of their right to exclude themselves from the Settlement Class so as not to be bound by the terms of the Settlement Agreement and how to object to the Settlement.*

*The Court has considered and rejected the objection . . . [regarding] the adequacy of the notice plan. The notice given provided ample information regarding the case. Class members also had the ability to seek additional information from the settlement website, from Class Counsel or from the Class Administrator*

**Judge Thomas M. Durkin,** ***Vergara, et al., v. Uber Technologies, Inc.*** (Mar. 1, 2018) 1:15-CV-06972 (N.D. Ill.):

*The Court finds that the Notice Plan set forth in Section IX of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Classes of the pendency of this case,*



*certification of the Settlement Classes for settlement purposes only, the terms of the Settlement Agreement, and the Final Approval Hearing, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law. Further, the Court finds that Defendant has timely satisfied the notice requirements of 28 U.S.C. Section 1715.*

**Judge Federico A. Moreno,** ***In re: Takata Airbag Products Liability Litigation (Honda & Nissan)*** (Feb. 28, 2018) MDL No. 2599 (S.D. Fla.):

*The Court finds that the Class Notice has been given to the Class in the manner approved by the Court in its Preliminary Approval Order. The Court finds that such Class Notice: (i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense) and the binding effect of the orders and Final Order and Final Judgment in the Action, whether favorable or unfavorable, on all persons and entities who or which do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), FED R. CIV. R. 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.*

**Judge Susan O. Hickey,** ***Larey v. Allstate Property and Casualty Insurance Company*** (Feb. 9, 2018) 4:14-cv-04008 (W.D. Kan.):

*Based on the Court's review of the evidence submitted and argument of counsel, the Court finds and concludes that the Class Notice and Claim Form was mailed to potential Class Members in accordance with the provisions of the Preliminary Approval Order, and together with the Publication Notice, the automated toll-free telephone number, and the settlement website: (i) constituted, under the circumstances, the most effective and practicable notice of the pendency of the Lawsuit, this Stipulation, and the Final Approval Hearing to all Class Members who could be identified through reasonable effort; and (ii) met all requirements of the Federal Rules of Civil Procedure, the requirements of due process under the United States Constitution, and the requirements of any other applicable rules or law.*

**Judge Muriel D. Hughes,** ***Glaske v. Independent Bank Corporation*** (Jan. 11, 2018) 13-009983 (Cir. Ct. Mich.):

*The Court-approved Notice Plan satisfied due process requirements . . . The notice, among other things, was calculated to reach Settlement Class Members because it was sent to their last known email or mail address in the Bank's files.*

**Judge Naomi Reice Buchwald,** ***Orlander v. Staples, Inc.*** (Dec. 13, 2017) 13-CV-0703 (S.D.N.Y.):

*The Notice of Class Action Settlement ("Notice") was given to all Class Members who could be identified with reasonable effort in accordance with the terms of the Settlement Agreement and Preliminary Approval Order. The form and method of notifying the Class of the pendency of the Action as a class action and the terms and conditions of the proposed Settlement met the requirements of Federal Rule of Civil Procedure 23 and the Constitution of the United States (including the Due Process Clause); and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.*

**Judge Lisa Godbey Wood,** ***T.A.N. v. PNI Digital Media, Inc.*** (Dec. 1, 2017) 2:16-cv-132 (S.D. GA.):

*Notice to the Settlement Class Members required by Rule 23 has been provided as directed by this Court in the Preliminary Approval Order, and such notice constituted the best notice practicable, including, but not limited to, the forms of notice and methods of identifying and providing notice to the Settlement Class Members, and satisfied the requirements of Rule 23 and due process, and all other applicable laws.*

**Judge Robin L. Rosenberg,** ***Gottlieb v. Citgo Petroleum Corporation*** (Nov. 29, 2017) 9:16-cv-81911 (S.D. Fla):

*The Settlement Class Notice Program was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed settlement set forth in the Settlement Agreement, to all persons entitled to such notice and said*



*notice fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.*

**Judge Donald M. Middlebrooks,** ***Mahoney v TT of Pine Ridge, Inc.*** (Nov. 20, 2017) 9:17-cv-80029 (S.D. Fla.):

*Based on the Settlement Agreement, Order Granting Preliminary Approval of Class Action Settlement Agreement, and upon the Declaration of Cameron Azari, Esq. (DE 61-1), the Court finds that Class Notice provided to the Settlement Class was the best notice practicable under the circumstances, and that it satisfied the requirements of due process and Federal Rule of Civil Procedure 23(e)(1).*

**Judge Gerald Austin McHugh,** ***Sobiech v. U.S. Gas & Electric, Inc., i/t/d/b/a Pennsylvania Gas & Electric, et al.*** (Nov. 8, 2017) 2:14-cv-04464 (E.D. Penn.):

*Notice has been provided to the Settlement Class of the pendency of this Action, the conditional certification of the Settlement Class for purposes of this Settlement, and the preliminary approval of the Settlement Agreement and the Settlement contemplated thereby. The Court finds that the notice provided was the best notice practicable under the circumstances to all persons entitled to such notice and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process.*

**Judge Federico A. Moreno,** ***In re: Takata Airbag Products Liability Litigation (BMW, Mazda, Toyota, & Subaru)*** (Nov. 1, 2017) MDL No. 2599 (S.D. Fla.):

*[T]he Court finds that the Class Notice has been given to the Class in the manner approved in the Preliminary Approval Order. The Class Notice: (i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense), and the binding effect of the orders and Final Order and Final Judgment in the Action, whether favorable or unfavorable, on all persons and entities who or which do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), Federal Rule of Civil Procedure 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.*

**Judge Charles R. Breyer,** ***In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation*** (May 17, 2017) MDL No. 2672 (N.D. Cal.):

*The Court is satisfied that the Notice Program was reasonably calculated to notify Class Members of the proposed Settlement. The Notice "apprise[d] interested parties of the pendency of the action and afford[ed] them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Indeed, the Notice Administrator reports that the notice delivery rate of 97.04% "exceed[ed] the expected range and is indicative of the extensive address updating and re-mailing protocols used." (Dkt. No. 3188-2 ¶ 24.)*

**Judge Rebecca Brett Nightingale,** ***Ratzlaff et al. v. BOKF, NA d/b/a Bank of Oklahoma et al.*** (May 15, 2017) No. CJ-2015-00859 (Dist. Ct. Okla.):

*The Court-approved Notice Plan satisfies Oklahoma law because it is "reasonable" (12 O.S. § 2023(E)(I)) and it satisfies due process requirements because it was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Shutts, 472 U.S. at 812 (quoting Mullane, 339 U.S. at 314-15).*

**Judge Joseph F. Bataillon,** ***Klug v. Watts Regulator Company*** (Apr. 13, 2017) No. 8:15-cv-00061 (D. Neb.):

*The court finds that the notice to the Settlement Class of the pendency of the Class Action and of this settlement, as provided by the Settlement Agreement and by the Preliminary Approval Order dated December 7, 2017, constituted the best notice practicable under the circumstances to all persons and entities within the definition of the Settlement Class, and fully complied with the requirements of Federal Rules of Civil Procedure Rule 23 and due process. Due and sufficient proof of the execution of the Notice Plan as outlined in the Preliminary Approval Order has been filed.*



**Judge Yvonne Gonzalez Rogers, *Bias v. Wells Fargo & Company, et al.*** (Apr. 13, 2017) 4:12-cv-00664 (N.D. Cal.):

*The form, content, and method of dissemination of Notice of Settlement given to the Settlement Class was adequate and reasonable and constituted the best notice practicable under the circumstances, including both individual notice to all Settlement Class Members who could be identified through reasonable effort and publication notice.*

*Notice of Settlement, as given, complied with the requirements of Rule 23 of the Federal Rules of Civil Procedure, satisfied the requirements of due process, and constituted due and sufficient notice of the matters set forth herein.*

*Notice of the Settlement was provided to the appropriate regulators pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(c)(1).*

**Judge Carlos Murguia, *Whitton v. Deffenbaugh Industries, Inc., et al*** (Dec. 14, 2016) 2:12-cv-02247 (D. Kan.) and ***Gary, LLC v. Deffenbaugh Industries, Inc., et al*** (Dec. 14, 2016) 2:13-cv-2634 (D. Kan.):

*The Court determines that the Notice Plan as implemented was reasonably calculated to provide the best notice practicable under the circumstances and contained all required information for members of the proposed Settlement Class to act to protect their interests. The Court also finds that Class Members were provided an adequate period of time to receive Notice and respond accordingly.*

**Judge Yvette Kane, *In re: Shop-Vac Marketing and Sales Practices Litigation*** (Dec. 9, 2016) MDL No. 2380 (M.D. Pa.):

*The Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and all other applicable laws.*

**Judge Timothy D. Fox, *Miner v. Philip Morris USA, Inc.*** (Nov. 21, 2016) 60CV03-4661 (Ark. Cir.):

*The Court finds that the Settlement Notice provided to potential members of the Class constituted the best and most practicable notice under the circumstances, thereby complying fully with due process and Rule 23 of the Arkansas Rules of Civil Procedure.*

**Judge Eileen Bransten, *In re: HSBC Bank USA, N.A., Checking Account Overdraft Litigation*** (Oct. 13, 2016) 650562/2011 (Sup. Ct. N.Y.):

*This Court finds that the Notice Program and the Notice provided to Settlement Class members fully satisfied the requirements of constitutional due process, the N.Y. C.P.L.R., and any other applicable laws, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all persons entitled thereto.*

**Judge Jerome B. Simandle, *In re: Caterpillar, Inc. C13 and C15 Engine Products Liability Litigation*** (Sept. 20, 2016) MDL No. 2540 (D. N.J.):

*The Court hereby finds that the Notice provided to the Settlement Class constituted the best notice practicable under the circumstances. Said Notice provided due and adequate notice of these proceedings and the matters set forth herein, including the terms of the Settlement Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of Fed. R. Civ. P. 23, requirements of due process and any other applicable law.*

**Judge Marcia G. Cooke, *Chimeno-Buzzi v. Hollister Co. and Abercrombie & Fitch Co.*** (Apr. 11, 2016) 14-23120 (S.D. Fla.):

*Pursuant to the Court's Preliminary Approval Order, the Settlement Administrator, Epiq Systems, Inc. [Hilsoft Notifications], has complied with the approved notice process as confirmed in its Declaration filed with the Court on March 23, 2016.  The Court finds that the notice process was designed to advise Class Members of their rights.  The form and method for notifying Class Members of the settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order, constituted the best notice practicable under the circumstances, and satisfied the requirements of Federal Rule of Civil Procedure*



*23(c)(2)(B), the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, and due process under the United States Constitution and other applicable laws.*

**Judge Yvonne Gonzalez Rogers,** *In Re: Lithium Ion Batteries Antitrust Litigation* (Mar. 22, 2016) 4:13-MD-02420 (N.D. Cal.):

*From what I could tell, I liked your approach and the way you did it. I get a lot of these notices that I think are all legalese and no one can really understand them. Yours was not that way.*

**Judge Christopher S. Sontchi,** *In re: Energy Future Holdings Corp, et al.,* (July 30, 2015) 14-10979 (Bankr. D. Del.):

*Notice of the Asbestos Bar Date as set forth in this Asbestos Bar Date Order and in the manner set forth herein constitutes adequate and sufficient notice of the Asbestos Bar Date and satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.*

**Judge David C. Norton,** *In re: MI Windows and Doors Inc. Products Liability Litigation* (July 22, 2015) MDL No. 2333, 2:12-mn-00001 (D. S.C.):

*The court finds that the Notice Plan, as described in the Settlement and related declarations, has been faithfully carried out and constituted the best practicable notice to Class Members under the circumstances of this Action, and was reasonable and constituted due, adequate, and sufficient notice to all Persons entitled to be provided with Notice.*

*The court also finds that the Notice Plan was reasonably calculated, under the circumstances, to apprise Class Members of: (1) the pendency of this class action; (2) their right to exclude themselves from the Settlement Class and the proposed Settlement; (3) their right to object to any aspect of the proposed Settlement (including final certification of the Settlement Class, the fairness, reasonableness, or adequacy of the proposed Settlement, the adequacy of the Settlement Class's representation by Named Plaintiffs or Class Counsel, or the award of attorney's and representative fees); (4) their right to appear at the fairness hearing (either on their own or through counsel hired at their own expense); and (5) the binding and preclusive effect of the orders and Final Order and Judgment in this Action, whether favorable or unfavorable, on all Persons who do not request exclusion from the Settlement Class. As such, the court finds that the Notice fully satisfied the requirements of the Federal Rules of Civil Procedure, including Federal Rule of Civil Procedure 23(c)(2) and (e), the United States Constitution (including the Due Process Clause), the rules of this court, and any other applicable law, and provided sufficient notice to bind all Class Members, regardless of whether a particular Class Member received actual notice.*

**Judge Robert W. Gettleman,** *Adkins v. Nestle Purina PetCare Company, et al.,* (June 23, 2015) 12-cv-2871 (N.D. Ill.):

*Notice to the Settlement Class and other potentially interested parties has been provided in accordance with the notice requirements specified by the Court in the Preliminary Approval Order. Such notice fully and accurately informed the Settlement Class members of all material elements of the proposed Settlement and of their opportunity to object to or comment thereon or to exclude themselves from the Settlement; provided Settlement Class Members adequate instructions and a variety of means to obtain additional information; was the best notice practicable under the circumstances; was valid, due, and sufficient notice to all Settlement Class members; and complied fully with the laws of the State of Illinois, Federal Rules of Civil Procedure, the United States Constitution, due process, and other applicable law.*

**Judge James Lawrence King,** *Steen v. Capital One, N.A.* (May 22, 2015) 2:10-cv-01505 (E.D. La.) and 1:10-cv-22058 (S.D. Fla.) as part of *In Re: Checking Account Overdraft Litigation*, MDL 2036 (S.D. Fla.):

*The Court finds that the Settlement Class Members were provided with the best practicable notice; the notice was reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Shutts, 472 U.S. at 812 (quoting Mullane, 339 U.S. at 314-15). This Settlement with Capital One was widely publicized, and any Settlement Class Member who wished to express comments or objections had ample opportunity and means to do so. Azari Decl. ¶¶ 30-39.*



**Judge Rya W. Zobel,** *Gulbankian et al. v. MW Manufacturers, Inc.,* (Dec. 29, 2014) 1:10-cv-10392 (D. Mass.):

*This Court finds that the Class Notice was provided to the Settlement Class consistent with the Preliminary Approval Order and that it was the best notice practicable and fully satisfied the requirements of the Federal Rules of Civil Procedure, due process, and applicable law.  The Court finds that the Notice Plan that was implemented by the Claims Administrator satisfies the requirements of FED. R. CIV. P. 23, 28 U.S.C. § 1715, and Due Process, and is the best notice practicable under the circumstances.  The Notice Plan constituted due and sufficient notice of the Settlement, the Final Approval Hearing, and the other matters referred to in the notices.  Proof of the giving of such notices has been filed with the Court via the Azari Declaration and its exhibits.*

**Judge Edward J. Davila,** *Rose v. Bank of America Corporation, and FIA Card Services, N.A.,* (Aug. 29, 2014) 5:11-CV-02390; 5:12-CV-0400 (N.D. Cal.):

*The Court finds that the notice was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of this action, all material elements of the Settlement, the opportunity for Settlement Class Members to exclude themselves from, object to, or comment on the settlement and to appear at the final approval hearing. The notice was the best notice practicable under the circumstances, satisfying the requirements of Rule 23(c)(2)(B); provided notice in a reasonable manner to all class members, satisfying Rule 23(e)(1)(B); was adequate and sufficient notice to all Class Members; and, complied fully with the laws of the United States and of the Federal Rules of Civil Procedure, due process and any other applicable rules of court.*

**Judge James A. Robertson, II,** *Wong et al. v. Alacer Corp.* (June 27, 2014) CGC-12-519221 (Cal. Super. Ct.):

*Notice to the Settlement Class has been provided in accordance with the Preliminary Approval Order.  Based on the Declaration of Cameron Azari dated March 7, 2014, such Class Notice has been provided in an adequate and sufficient manner, constitutes the best notice practicable under the circumstances and satisfies the requirements of California Civil Code Section 1781, California Civil Code of Civil Procedure Section 382, Rules 3.766 of the California Rules of Court, and due process.*

**Judge John Gleeson,** *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* (Dec. 13, 2013) 05-md-01720, MDL No. 1720 (E.D. NY.):

*The Class Administrator notified class members of the terms of the proposed settlement through a mailed notice and publication campaign that included more than 20 million mailings and publication in more than 400 publications.  The notice here meets the requirements of due process and notice standards… The objectors' complaints provide no reason to conclude that the purposes and requirements of a notice to a class were not met here.*

**Judge Lance M. Africk,** *Evans, et al. v. TIN, Inc., et al,* (July 7, 2013) 2:11-cv-02067 (E.D. La.):

*The Court finds that the dissemination of the Class Notice… as described in Notice Agent Lauran Schultz's Declaration: (a) constituted the best practicable notice to Class Members under the circumstances; (b) constituted notice that was reasonably calculated, under the circumstances…; (c) constituted notice that was reasonable, due, adequate, and sufficient; and (d) constituted notice that fully satisfied all applicable legal requirements, including Rules 23(c)(2)(B) and (e)(1) of the Federal Rules of Civil Procedure, the United States Constitution (including Due Process Clause), the Rules of this Court, and any other applicable law, as well as complied with the Federal Judicial Center's illustrative class action notices.*

**Judge Edward M. Chen,** *Marolda v. Symantec Corporation,* (Apr. 5, 2013) 08-cv-05701 (N.D. Cal.):

*Approximately 3.9 million notices were delivered by email to class members, but only a very small percentage objected or opted out . . .  The Court . . . concludes that notice of settlement to the class was adequate and satisfied all requirements of Federal Rule of Civil Procedure 23(e) and due process.  Class members received direct notice by email, and additional notice was given by publication in numerous widely circulated publications as well as in numerous targeted publications.  These were the best practicable means of informing class members of their rights and of the settlement's terms.*



**Judge Ann D. Montgomery,** *In re Zurn Pex Plumbing Products Liability Litigation,* (Feb. 27, 2013) 0:08-cv-01958 (D. Minn.):

> The parties retained Hilsoft Notifications ("Hilsoft"), an experienced class-notice consultant, to design and carry out the notice plan.  The form and content of the notices provided to the class were direct, understandable, and consistent with the "plain language" principles advanced by the Federal Judicial Center.
>
> The notice plan's multi-faceted approach to providing notice to settlement class members whose identity is not known to the settling parties constitutes "the best notice [*26] that is practicable under the circumstances" consistent with Rule 23(c)(2)(B).

**Magistrate Judge Stewart,** *Gessele et al. v. Jack in the Box, Inc.,* (Jan. 28, 2013) 3:10-cv-960 (D. Ore.):

> Moreover, plaintiffs have submitted [a] declaration from Cameron Azari (docket #129), a nationally recognized notice expert, who attests that fashioning an effective joint notice is not unworkable or unduly confusing.  Azari also provides a detailed analysis of how he would approach fashioning an effective notice in this case.

**Judge Carl J. Barbier,** *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* *(Medical Benefits Settlement),* (Jan. 11, 2013) MDL No. 2179 (E.D. La.):

> Through August 9, 2012, 366,242 individual notices had been sent to potential [Medical Benefits] Settlement Class Members by postal mail and 56,136 individual notices had been e-mailed.  Only 10,700 mailings—or 3.3%—were known to be undeliverable.  (Azari Decl. ¶¶ 8, 9.)  Notice was also provided through an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, highly-trafficked websites, and Sunday local newspapers (via newspaper supplements).  Notice was also provided in non-measured trade, business and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming.  The combined measurable paid print, television, radio, and Internet effort reached an estimated 95% of adults aged 18+ in the Gulf Coast region an average of 10.3 times each, and an estimated 83% of all adults in the United States aged 18+ an average of 4 times each.  (Id. ¶¶ 8, 10.)  All notice documents were designed to be clear, substantive, and informative.  (Id. ¶ 5.)
>
> The Court received no objections to the scope or content of the [Medical Benefits] Notice Program.  (Azari Supp. Decl. ¶ 12.)  The Court finds that the Notice and Notice Plan as implemented satisfied the best notice practicable standard of Rule 23(c) and, in accordance with Rule 23(e)(1), provided notice in a reasonable manner to Class Members who would be bound by the Settlement, including individual notice to all Class Members who could be identified through reasonable effort.  Likewise, the Notice and Notice Plan satisfied the requirements of Due Process.  The Court also finds the Notice and Notice Plan satisfied the requirements of CAFA.

**Judge Carl J. Barbier,** *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* *(Economic and Property Damages Settlement),* (Dec. 21, 2012) MDL No. 2179 (E.D. La.):

> The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rule of Civil Procedure 23(c)(2)(b) and 23(e), the Class Action Fairness Act (28 U.S.C. § 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation. The notice program surpassed the requirements of Due Process, Rule 23, and CAFA.  Based on the factual elements of the Notice Program as detailed below, the Notice Program surpassed all of the requirements of Due Process, Rule 23, and CAFA.
>
> The Notice Program, as duly implemented, surpasses other notice programs that Hilsoft Notifications has designed and executed with court approval.  The Notice Program included notification to known or potential Class Members via postal mail and e-mail; an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, and Sunday local newspapers.  Notice placements also appeared in non-measured trade, business, and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming.  The Notice Program met the objective of reaching the greatest possible number of class members and providing them with every reasonable opportunity to understand their legal rights.  See Azari Decl. ¶¶ 8, 15, 68.  The



*Notice Program was substantially completed on July 15, 2012, allowing class members adequate time to make decisions before the opt-out and objections deadlines.*

*The media notice effort alone reached an estimated 95% of adults in the Gulf region an average of 10.3 times each, and an estimated 83% of all adults in the United States an average of 4 times each. These figures do not include notice efforts that cannot be measured, such as advertisements in trade publications and sponsored search engine listings. The Notice Program fairly and adequately covered and notified the class without excluding any demographic group or geographic area, and it exceeded the reach percentage achieved in most other court-approved notice programs.*

**Judge Alonzo Harris,** ***Opelousas General Hospital Authority, A Public Trust, D/B/A Opelousas General Health System and Arklamiss Surgery Center, L.L.C. v. FairPay Solutions, Inc.,*** (Aug. 17, 2012) 12-C-1599 (27th Jud. D. Ct. La.):

*Notice given to Class Members and all other interested parties pursuant to this Court's order of April 18, 2012, was reasonably calculated to apprise interested parties of the pendency of the action, the certification of the Class as Defined for settlement purposes only, the terms of the Settlement Agreement, Class Members rights to be represented by private counsel, at their own costs, and Class Members rights to appear in Court to have their objections heard, and to afford persons or entities within the Class Definition an opportunity to exclude themselves from the Class. Such notice complied with all requirements of the federal and state constitutions, including the Due Process Clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Class as Defined.*

**Judge James Lawrence King,** ***In re Checking Account Overdraft Litigation (IBERIABANK),*** (Apr. 26, 2012) MDL No. 2036 (S.D. Fla):

*The Court finds that the Notice previously approved was fully and properly effectuated and was sufficient to satisfy the requirements of due process because it described "the substantive claims . . . [and] contained information reasonably necessary to [allow Settlement Class Members to] make a decision to remain a class member and be bound by the final judgment." In re Nissan Motor Corp. Antitrust Litig., 552 F.2d 1088, 1104-05 (5th Cir. 1977). The Notice, among other things, defined the Settlement Class, described the release as well as the amount and method and manner of proposed distribution of the Settlement proceeds, and informed Settlement Class Members of their rights to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. The Notice also informed Settlement Class Members that a class judgment would bind them unless they opted out, and told them where they could obtain more information, such as access to a full copy of the Agreement. Further, the Notice described in summary form the fact that Class Counsel would be seeking attorneys' fees of up to 30 percent of the Settlement. Settlement Class Members were provided with the best practicable notice "reasonably calculated, under [the] circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314. The content of the Notice fully complied with the requirements of Rule 23.*

**Judge Bobby Peters,** ***Vereen v. Lowe's Home Centers,*** (Apr. 13, 2012) SU10-CV-2267B (Ga. Super. Ct.):

*The Court finds that the Notice and the Notice Plan was fulfilled, in accordance with the terms of the Settlement Agreement, the Amendment, and this Court's Preliminary Approval Order and that this Notice and Notice Plan constituted the best practicable notice to Class Members under the circumstances of this action, constituted due and sufficient Notice of the proposed Settlement to all persons entitled to participate in the proposed Settlement, and was in full compliance with Ga. Code Ann § 9-11-23 and the constitutional requirements of due process. Extensive notice was provided to the class, including point of sale notification, publication notice and notice by first-class mail for certain potential Class Members.*

*The affidavit of the notice expert conclusively supports this Court's finding that the notice program was adequate, appropriate, and comported with Georgia Code Ann. § 9-11-23(b)(2), the Due Process Clause of the Constitution, and the guidance for effective notice articulate in the FJC's Manual for Complex Litigation, 4th.*



**Judge Lee Rosenthal,** *In re Heartland Payment Systems, Inc. Customer Data Security Breach Litigation,* (Mar. 2, 2012) MDL No. 2046 (S.D. Tex.):

> The notice that has been given clearly complies with Rule 23(e)(1)'s reasonableness requirement… Hilsoft Notifications analyzed the notice plan after its implementation and conservatively estimated that notice reached 81.4 percent of the class members.  (Docket Entry No. 106, ¶ 32).  Both the summary notice and the detailed notice provided the information reasonably necessary for the presumptive class members to determine whether to object to the proposed settlement.  See Katrina Canal Breaches, 628 F.3d at 197.  Both the summary notice and the detailed notice "were written in easy-to-understand plain English."  In re Black Farmers Discrimination Litig., — F. Supp. 2d —, 2011 WL 5117058, at *23 (D.D.C. 2011); accord AGGREGATE LITIGATION § 3.04(c).15 The notice provided "satisf[ies] the broad reasonableness standards imposed by due process" and Rule 23.  Katrina Canal Breaches, 628 F.3d at 197.

**Judge John D. Bates,** *Trombley v. National City Bank,* (Dec. 1, 2011) 1:10-CV-00232 (D.D.C.) as part of *In Re: Checking Account Overdraft Litigation*, MDL 2036 (S.D. Fla.):

> The form, content, and method of dissemination of Notice given to the Settlement Class were in full compliance with the Court's January 11, 2011 Order, the requirements of Fed. R. Civ. P. 23(e), and due process.  The notice was adequate and reasonable, and constituted the best notice practicable under the circumstances.  In addition, adequate notice of the proceedings and an opportunity to participate in the final fairness hearing were provided to the Settlement Class.

**Judge Robert M. Dow, Jr.,** *Schulte v. Fifth Third Bank,* (July 29, 2011) 1:09-cv-6655 (N.D. Ill.):

> The Court has reviewed the content of all of the various notices, as well as the manner in which Notice was disseminated, and concludes that the Notice given to the Class fully complied with Federal Rule of Civil Procedure 23, as it was the best notice practicable, satisfied all constitutional due process concerns, and provided the Court with jurisdiction over the absent Class Members.

**Judge Ellis J. Daigle,** *Williams v. Hammerman & Gainer Inc.,* (June 30, 2011) 11-C-3187-B (27th Jud. D. Ct. La.):

> Notices given to Settlement Class members and all other interested parties throughout this proceeding with respect to the certification of the Settlement Class, the proposed settlement, and all related procedures and hearings—including, without limitation, the notice to putative Settlement Class members and others more fully described in this Court's order of 30th day of March 2011 were reasonably calculated under all the circumstances and have been sufficient, as to form, content, and manner of dissemination, to apprise interested parties and members of the Settlement Class of the pendency of the action, the certification of the Settlement Class, the Settlement Agreement and its contents, Settlement Class members' right to be represented by private counsel, at their own cost, and Settlement Class members' right to appear in Court to have their objections heard, and to afford Settlement Class members an opportunity to exclude themselves from the Settlement Class. Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedures, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Settlement Class.

**Judge Stefan R. Underhill,** *Mathena v. Webster Bank, N.A.,* (Mar. 24, 2011) 3:10-cv-1448 (D. Conn.) as part of *In Re: Checking Account Overdraft Litigation*, MDL 2036 (S.D. Fla.):

> The form, content, and method of dissemination of Notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances.  The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all persons entitled to such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.

**Judge Ted Stewart,** *Miller v. Basic Research, LLC,* (Sept. 2, 2010) 2:07-cv-871 (D. Utah):

> Plaintiffs state that they have hired a firm specializing in designing and implementing large scale, unbiased, legal notification plans.  Plaintiffs represent to the Court that such notice will include: 1) individual notice by electronic mail and/or first-class mail sent to all reasonably identifiable Class members; 2) nationwide paid media notice through a combination of print publications, including newspapers, consumer magazines, newspaper supplements and the Internet; 3) a neutral, Court-approved, informational press release; 4) a



*neutral, Court-approved Internet website; and 5) a toll-free telephone number.  Similar mixed media plans have been approved by other district courts post class certification.  The Court finds this plan is sufficient to meet the notice requirement.*

**Judge Sara Loi,** ***Pavlov v. Continental Casualty Co.,*** (Oct. 7, 2009) 5:07-cv-2580 (N.D. Ohio):

*As previously set forth in this Memorandum Opinion, the elaborate notice program contained in the Settlement Agreement provides for notice through a variety of means, including direct mail to each class member, notice to the United States Attorney General and each State, a toll free number, and a website designed to provide information about the settlement and instructions on submitting claims.  With a 99.9% effective rate, the Court finds that the notice program constituted the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and clearly satisfies the requirements of Rule 23(c)(2)(B).*

**Judge James Robertson,** ***In re Department of Veterans Affairs (VA) Data Theft Litigation,*** (Sept. 23, 2009) MDL No. 1796 (D.D.C.):

*The Notice Plan, as implemented, satisfied the requirements of due process and was the best notice practicable under the circumstances. The Notice Plan was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the action, the terms of the Settlement, and their right to appear, object to or exclude themselves from the Settlement.  Further, the notice was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice.*

**Judge Lisa F. Chrystal,** ***Little v. Kia Motors America, Inc.,*** (Aug. 27, 2009) UNN-L-0800-01 (N.J. Super. Ct.):

*The Court finds that the manner and content of the notices for direct mailing and for publication notice, as specified in the Notice Plan (Exhibit 2 to the Affidavit of Lauran R. Schultz), provides the best practicable notice of judgment to members of the Plaintiff Class.*

**Judge Barbara Crowder,** ***Dolen v. ABN AMRO Bank N.V.,*** (Mar. 23, 2009) 01-L-454, 01-L-493 (3rd Jud. Cir. Ill.):

*The Court finds that the Notice Plan is the best notice practicable under the circumstances and provides the Eligible Members of the Settlement Class sufficient information to make informed and meaningful decisions regarding their options in this Litigation and the effect of the Settlement on their rights.  The Notice Plan further satisfies the requirements of due process and 735 ILCS 5/2-803.  That Notice Plan is approved and accepted.  This Court further finds that the Notice of Settlement and Claim Form comply with 735 ILCS 5/2-803 and are appropriate as part of the Notice Plan and the Settlement, and thus they are hereby approved and adopted.  This Court further finds that no other notice other than that identified in the Notice Plan is reasonably necessary in this Litigation.*

**Judge Robert W. Gettleman,** ***In re Trans Union Corp.,*** (Sept. 17, 2008) MDL No. 1350 (N.D. Ill.):

*The Court finds that the dissemination of the Class Notice under the terms and in the format provided for in its Preliminary Approval Order constitutes the best notice practicable under the circumstances, is due and sufficient notice for all purposes to all persons entitled to such notice, and fully satisfies the requirements of the Federal Rules of Civil Procedure, the requirements of due process under the Constitution of the United States, and any other applicable law… Accordingly, all objections are hereby OVERRULED.*

**Judge Steven D. Merryday,** ***Lockwood v. Certegy Check Services, Inc.,*** (Sept. 3, 2008) 8:07-cv-1434 (M.D. Fla.):

*The form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable and constituted the best notice practicable in the circumstances.  The notice as given provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions of the Settlement Agreement, and these proceedings to all persons entitled to such notice, and the notice satisfied the requirements of Rule 23, Federal Rules of Civil Procedure, and due process.*

**Judge William G. Young,** ***In re TJX Companies,*** (Sept. 2, 2008) MDL No. 1838 (D. Mass.):

*The form, content, and method of dissemination of notice provided to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances.  The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Persons entitled to such notice, and said Notice fully satisfied the requirements of Fed. R. Civ. P. 23 and due process.*



**Judge Philip S. Gutierrez,** *Shaffer v. Continental Casualty Co.,* (June 11, 2008) SACV-06-2235 (C.D. Cal.):

> [Notice] was reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and met all applicable requirements of the Federal Rules of Civil Procedure, the Class Action Fairness Act, the United States Constitution (including the Due Process Clauses), the Rules of the Court, and any other applicable law.

**Judge Robert L. Wyatt,** *Gunderson v. AIG Claim Services, Inc.,* (May 29, 2008) 2004-002417 (14th Jud. D. Ct. La.):

> Notices given to Settlement Class members…were reasonably calculated under all the circumstances and have been sufficient, as to form, content, and manner of dissemination…Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Settlement Class.

**Judge Mary Anne Mason,** *Palace v. DaimlerChrysler Corp.,* (May 29, 2008) 01-CH-13168 (Ill. Cir. Ct.):

> The form, content, and method of dissemination of the notice given to the Illinois class and to the Illinois Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of the proposed Settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings, to all Persons entitled to such notice, and said notice fully satisfied the requirements of due process and complied with 735 ILCS §§5/2-803 and 5/2-806.

**Judge David De Alba,** *Ford Explorer Cases,* (May 29, 2008) JCCP Nos. 4226 & 4270 (Cal. Super. Ct.):

> [T]he Court is satisfied that the notice plan, design, implementation, costs, reach, were all reasonable, and has no reservations about the notice to those in this state and those in other states as well, including Texas, Connecticut, and Illinois; that the plan that was approved—submitted and approved, comports with the fundamentals of due process as described in the case law that was offered by counsel.

**Judge Kirk D. Johnson,** *Webb v. Liberty Mutual Ins. Co.,* (Mar. 3, 2008) CV-2007-418-3 (Ark. Cir. Ct.):

> The Court finds that there was minimal opposition to the settlement.  After undertaking an extensive notice campaign to Class members of approximately 10,707 persons, mailed notice reached 92.5% of potential Class members.

**Judge Carol Crafton Anthony,** *Johnson v. Progressive Casualty Ins. Co.,* (Dec. 6, 2007) CV-2003-513 (Ark. Cir. Ct.):

> Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated…Notice was direct mailed to all Class members whose current whereabouts could be identified by reasonable effort.  Notice reached a large majority of the Class members.  The Court finds that such notice constitutes the best notice practicable…The forms of Notice and Notice Plan satisfy all of the requirements of Arkansas law and due process.

**Judge Kirk D. Johnson,** *Sweeten v. American Empire Insurance Co.,* (Aug. 20, 2007) CV-2007-154-3 (Ark. Cir. Ct.):

> The Court does find that all notices required by the Court to be given to class members was done within the time allowed and the manner best calculated to give notice and apprise all the interested parties of the litigation.  It was done through individual notice, first class mail, through internet website and the toll-free telephone call center…The Court does find that these methods were the best possible methods to advise the class members of the pendency of the action and opportunity to present their objections and finds that these notices do comply with all the provisions of Rule 23 and the Arkansas and United States Constitutions.

**Judge Robert Wyatt,** *Gunderson v. F.A. Richard & Associates, Inc.,* (July 19, 2007) 2004-2417-D (14th Jud. D. Ct. La.):

> This is the final Order and Judgment regarding the fairness, reasonableness and adequacy.  And I am satisfied in all respects regarding the presentation that's been made to the Court this morning in the Class memberships, the representation, the notice, and all other aspects and I'm signing that Order at this time.



**Judge Lewis A. Kaplan,** *In re Parmalat Securities Litigation***,** (July 19, 2007) MDL No. 1653-LAK (S.D.N.Y.):

*The Court finds that the distribution of the Notice, the publication of the Publication Notice, and the notice methodology…met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution, (including the Due Process clause), the Private Securities Litigation Reform Act of 1995 (15 U.S.C. 78u-4, et seq.) (the "PSLRA"), the Rules of the Court, and any other applicable law.*

**Judge Joe Griffin,** *Beasley v. The Reliable Life Insurance Co.,* (Mar. 29, 2007) CV-2005-58-1 (Ark. Cir. Ct.):

*[T]he Court has, pursuant to the testimony regarding the notification requirements, that were specified and adopted by this Court, has been satisfied and that they meet the requirements of due process. They are fair, reasonable, and adequate. I think the method of notification certainly meets the requirements of due process…So the Court finds that the notification that was used for making the potential class members aware of this litigation and the method of filing their claims, if they chose to do so, all those are clear and concise and meet the plain language requirements and those are completely satisfied as far as this Court is concerned in this matter.*

**Judge Lewis A. Kaplan,** *In re Parmalat Securities Litigation,* (Mar. 1, 2007) MDL No. 1653-LAK (S.D.N.Y.):

*The court approves, as to form and content, the Notice and the Publication Notice, attached hereto as Exhibits 1 and 2, respectively, and finds that the mailing and distribution of the Notice and the publication of the Publication Notice in the manner and the form set forth in Paragraph 6 of this Order…meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Securities Exchange Act of 1934, as emended by Section 21D(a)(7) of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(7), and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons and entities entitled thereto.*

**Judge Anna J. Brown,** *Reynolds v. The Hartford Financial Services Group, Inc.,* (Feb. 27, 2007) CV-01-1529-BR (D. Ore.):

*[T]he court finds that the Notice Program fairly, fully, accurately, and adequately advised members of the Settlement Class and each Settlement Subclass of all relevant and material information concerning the proposed settlement of this action, their rights under Rule 23 of the Federal Rules of Civil Procedure, and related matters, and afforded the Settlement Class with adequate time and an opportunity to file objections to the Settlement or request exclusion from the Settlement Class. The court finds that the Notice Program constituted the best notice practicable under the circumstances and fully satisfied the requirements of Rule 23 and due process.*

**Judge Kirk D. Johnson**, *Zarebski v. Hartford Insurance Company of the Midwest,* (Feb. 13, 2007) CV-2006-409-3 (Ark. Cir. Ct.):

*Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Class Notice, as disseminated to members of the Settlement Class in accordance with provisions of the Preliminary Approval Order, was the best notice practicable under the circumstances to all members of the Settlement Class. Accordingly, the Class Notice and Claim Form as disseminated are finally approved as fair, reasonable, and adequate notice under the circumstances. The Court finds and concludes that due and adequate notice of the pendency of this Action, the Stipulation, and the Final Settlement Hearing has been provided to members of the Settlement Class, and the Court further finds and concludes that the notice campaign described in the Preliminary Approval Order and completed by the parties complied fully with the requirements of Arkansas Rule of Civil Procedure 23 and the requirements of due process under the Arkansas and United States Constitutions.*

**Judge Richard J. Holwell,** *In re Vivendi Universal, S.A. Securities Litigation,* 2007 WL 1490466 (S.D.N.Y.):

*In response to defendants' manageability concerns, plaintiffs have filed a comprehensive affidavit outlining the effectiveness of its proposed method of providing notice in foreign countries. According to this…the Court is satisfied that plaintiffs intend to provide individual notice to those class members whose names and addresses are ascertainable, and that plaintiffs' proposed form of publication notice, while complex, will prove both manageable and the best means practicable of providing notice.*



**Judge Samuel Conti,** *Ciabattari v. Toyota Motor Sales, U.S.A., Inc.,* (Nov. 17, 2006) C-05-04289-SC (N.D. Cal.):

> After reviewing the evidence and arguments presented by the parties…the Court finds as follows…The class members were given the best notice practicable under the circumstances, and that such notice meets the requirements of the Due Process Clause of the U.S. Constitution, and all applicable statutes and rules of court.

**Judge Ivan L.R. Lemelle**, *In re High Sulfur Content Gasoline Prods. Liability Litigation,* (Nov. 8, 2006) MDL No. 1632 (E.D. La.):

> This Court approved a carefully-worded Notice Plan, which was developed with the assistance of a nationally-recognized notice expert, Hilsoft Notifications…The Notice Plan for this Class Settlement was consistent with the best practices developed for modern-style "plain English" class notices; the Court and Settling Parties invested substantial effort to ensure notice to persons displaced by the Hurricanes of 2005; and as this Court has already determined, the Notice Plan met the requirements of Rule 23 and constitutional due process.

**Judge Catherine C. Blake,** *In re Royal Ahold Securities and "ERISA" Litigation,* (Nov. 2, 2006) MDL No. 1539 (D. Md.):

> The global aspect of the case raised additional practical and legal complexities, as did the parallel criminal proceedings in another district.  The settlement obtained is among the largest cash settlements ever in a securities class action case and represents an estimated 40% recovery of possible provable damages.  The notice process appears to have been very successful not only in reaching but also in eliciting claims from a substantial percentage of those eligible for recovery.

**Judge Elaine E. Bucklo,** *Carnegie v. Household International,* (Aug. 28, 2006) 98 C 2178 (N.D. Ill.):

> [T]he Notice was disseminated pursuant to a plan consisting of first class mail and publication developed by Plaintiff's notice consultant, Hilsoft Notification[s]…who the Court recognized as experts in the design of notice plans in class actions.  The Notice by first-class mail and publication was provided in an adequate and sufficient manner; constitutes the best notice practicable under the circumstances; and satisfies all requirements of Rule 23(e) and due process.

**Judge Joe E. Griffin,** *Beasley v. Hartford Insurance Company of the Midwest,* (June 13, 2006) CV-2005-58-1 (Ark. Cir. Ct.):

> Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Individual Notice and the Publication Notice, as disseminated to members of the Settlement Class in accordance with provisions of the Preliminarily Approval Order, was the best notice practicable under the circumstances…and the requirements of due process under the Arkansas and United States Constitutions.

**Judge Norma L. Shapiro,** *First State Orthopedics et al. v. Concentra, Inc., et al.,* (May 1, 2006) 2:05-CV-04951 (E.D. Pa.):

> The Court finds that dissemination of the Mailed Notice, Published Notice and Full Notice in the manner set forth here and in the Settlement Agreement meets the requirements of due process and Pennsylvania law.  The Court further finds that the notice is reasonable, and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice, is the best practicable notice; and is reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Lawsuit and of their right to object or to exclude themselves from the proposed settlement.

**Judge Thomas M. Hart,** *Froeber v. Liberty Mutual Fire Ins. Co.,* (Apr. 19, 2006) 00C15234 (Ore. Cir. Ct.):

> The court has found and now reaffirms that dissemination and publication of the Class Notice in accordance with the terms of the Third Amended Order constitutes the best notice practicable under the circumstances.

**Judge Catherine C. Blake,** *In re Royal Ahold Securities and "ERISA" Litigation,* (Jan. 6, 2006) MDL No. 1539 (D. Md.):

> I think it's remarkable, as I indicated briefly before, given the breadth and scope of the proposed Class, the global nature of the Class, frankly, that again, at least on a preliminary basis, and I will be getting a final report on this, that the Notice Plan that has been proposed seems very well, very well suited, both in terms



*of its plain language and in terms of its international reach, to do what I hope will be a very thorough and broad-ranging job of reaching as many of the shareholders, whether individual or institutional, as possibly can be done to participate in what I also preliminarily believe to be a fair, adequate and reasonable settlement.*

**Judge Catherine C. Blake,** ***In re Royal Ahold Securities & "ERISA" Litigation,*** (2006) 437 F.Supp.2d 467, 472 (D. Md.):

*The court hereby finds that the Notice and Notice Plan described herein and in the Order dated January 9, 2006 provided Class Members with the best notice practicable under the circumstances.  The Notice provided due and adequate notice of these proceedings and the matters set forth herein, including the Settlement and Plan of Allocation, to all persons entitled to such notice, and the Notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process.*

**Judge Robert H. Wyatt, Jr.,** ***Gray v. New Hampshire Indemnity Co., Inc.,*** (Dec. 19, 2005) CV-2002-952-2-3 (Ark. Cir. Ct.):

*Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated.  The Notice contained the essential elements necessary to satisfy due process, including the Settlement Class definition, the identities of the Parties and of their counsel, a summary of the terms of the proposed settlement, Class Counsel's intent to apply for fees, information regarding the manner in which objections could be submitted, and requests for exclusions could be filed. The Notice properly informed Class members of the formula for the distribution of benefits under the settlement…Notice was direct mailed to all Class members whose current whereabouts could be identified by reasonable effort.  Notice was also effected by publication in many newspapers and magazines throughout the nation, reaching a large majority of the Class members multiple times.  The Court finds that such notice constitutes the best notice practicable.*

**Judge Michael J. O'Malley,** ***Defrates v. Hollywood Entm't Corp.,*** (June 24, 2005) 02 L 707 (Ill. Cir. Ct.):

*[T]his Court hereby finds that the notice program described in the Preliminary Approval Order and completed by HEC complied fully with the requirements of due process, the Federal Rules of Civil Procedure and all other applicable laws.*

**Judge Wilford D. Carter,** ***Thibodeaux v. Conoco Phillips Co.,*** (May 26, 2005) 2003-481 F (14th J.D. Ct. La.):

*Notice given to Class Members…were reasonably calculated under all the circumstances and have been sufficient, both as to the form and content…Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due process and sufficient notice to all potential members of the Class as Defined.*

**Judge Michael Canaday,** ***Morrow v. Conoco Inc.,*** (May 25, 2005) 2002-3860 G (14th J.D. Ct. La.):

*The objections, if any, made to due process, constitutionality, procedures, and compliance with law, including, but not limited to, the adequacy of notice and the fairness of the proposed Settlement Agreement, lack merit and are hereby overruled.*

**Judge John R. Padova,** ***Nichols v. SmithKline Beecham Corp.,*** (Apr. 22, 2005) 00-6222 (E.D. Pa.):

*Pursuant to the Order dated October 18, 2004, End-Payor Plaintiffs employed Hilsoft Notifications to design and oversee Notice to the End-Payor Class. Hilsoft Notifications has extensive experience in class action notice situations relating to prescription drugs and cases in which unknown class members need to receive notice…After reviewing the individual mailed Notice, the publication Notices, the PSAs and the informational release, the Court concludes that the substance of the Notice provided to members of the End-Payor Class in this case was adequate to satisfy the concerns of due process and the Federal Rules.*

**Judge Douglas Combs,** ***Morris v. Liberty Mutual Fire Ins. Co.,*** (Feb. 22, 2005) CJ-03-714 (D. Okla.):

*I am very impressed that the notice was able to reach – be delivered to 97 ½ percent members of the class. That, to me, is admirable.  And I'm also – at the time that this was initially entered, I was concerned about the ability of notice to be understood by a common, nonlawyer person, when we talk about legalese in a*



*court setting. In this particular notice, not only the summary notice but even the long form of the notice were easily understandable, for somebody who could read the English language, to tell them whether or not they had the opportunity to file a claim.*

**Judge Joseph R. Goodwin,** *In re Serzone Products Liability Litigation,* (2005) 231 F.R.D. 221, 231 (S.D. W. Va.):

*The Notice Plan was drafted by Hilsoft Notifications, a Pennsylvania firm specializing in designing, developing, analyzing and implementing large-scale, unbiased legal notification plans. Hilsoft has disseminated class action notices in more than 150 cases, and it designed the model notices currently displayed on the Federal Judicial Center's website as a template for others to follow…To enhance consumer exposure, Hilsoft studied the demographics and readership of publications among adults who used a prescription drug for depression in the last twelve months. Consequently, Hilsoft chose to utilize media particularly targeting women due to their greater incidence of depression and heavy usage of the medication.*

**Judge Richard G. Stearns,** *In re Lupron® Marketing and Sales Practice Litigation,* (Nov. 24, 2004) MDL No. 1430 (D. Mass.):

*After review of the proposed Notice Plan designed by Hilsoft Notifications…is hereby found to be the best practicable notice under the circumstances and, when completed, shall constitute due and sufficient notice of the Settlement and the Fairness Hearing to all persons and entities affected by and/or entitled to participate in the Settlement, in full compliance with the notice requirements of Rule 23 the Federal Rules of Civil Procedure and due process.*

**Judge Richard G. Stearns,** *In re Lupron® Marketing and Sales Practice Litigation,* (Nov. 23, 2004) MDL No. 1430 (D. Mass.):

*I actually find the [notice] plan as proposed to be comprehensive and extremely sophisticated and very likely be as comprehensive as any plan of its kind could be in reaching those most directly affected.*

**Judge James S. Moody, Jr.,** *Mantzouris v. Scarritt Motor Group Inc.,* (Aug. 10, 2004) 8:03 CV- 0015-T-30 (M.D. Fla.):

*Due and adequate notice of the proceedings having been given and a full opportunity having been offered to the members of the Class to participate in the Settlement Hearing, or object to the certification of the Class and the Agreement, it is hereby determined that all members of the Class, except for Ms. Gwendolyn Thompson, who was the sole person opting out of the Settlement Agreement, are bound by this Order and Final Judgment entered herein.*

**Judge Robert E. Payne,** *Fisher v. Virginia Electric & Power Co.,* (July 1, 2004) 3:02CV431 (E.D. Va.):

*The record here shows that the class members have been fully and fairly notified of the existence of the class action, of the issues in it, of the approaches taken by each side in it in such a way as to inform meaningfully those whose rights are affected and to thereby enable them to exercise their rights intelligently…The success rate in notifying the class is, I believe, at least in my experience, I share Ms. Kauffman's experience, it is as great as I have ever seen in practicing or serving in this job…So I don't believe we could have had any more effective notice.*

**Judge John Kraetzer,** *Baiz v. Mountain View Cemetery,* (Apr. 14, 2004) 809869-2 (Cal. Super. Ct.):

*The notice program was timely completed, complied with California Government Code section 6064, and provided the best practicable notice to all members of the Settlement Class under the circumstances. The Court finds that the notice program provided class members with adequate instructions and a variety of means to obtain information pertaining to their rights and obligations under the settlement so that a full opportunity has been afforded to class members and all other persons wishing to be heard…The Court has determined that the Notice given to potential members of the Settlement Class fully and accurately informed potential Members of the Settlement Class of all material elements of the proposed settlement and constituted valid, due, and sufficient notice to all potential members of the Settlement Class, and that it constituted the best practicable notice under the circumstances.*

*Hospitality Mgmt. Assoc., Inc. v. Shell Oil Co.,* (2004) 356 S.C. 644, 663, 591 S.E.2d 611, 621 (Sup. Ct. S.C.):

*Clearly, the Cox court designed and utilized various procedural safeguards to guarantee sufficient notice under the circumstances. Pursuant to a limited scope of review, we need go no further in deciding the Cox court's findings that notice met due process are entitled to deference.*



**Judge Joseph R. Goodwin,** *In re Serzone Prods. Liability Litigation,* (2004) U.S. Dist. LEXIS 28297 (S.D. W. Va.):

> The Court has considered the Notice Plan and proposed forms of Notice and Summary Notice submitted with the Memorandum for Preliminary Approval and finds that the forms and manner of notice proposed by Plaintiffs and approved herein meet the requirements of due process and Fed.R.Civ.P. 23(c) and (e), are the best notice practicable under the circumstances, constitute sufficient notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice.

**Judge James D. Arnold,** *Cotten v. Ferman Mgmt. Servs. Corp.,* (Nov. 26, 2003) 02-08115 (Fla. Cir. Ct.):

> Due and adequate notice of the proceedings having been given and a full opportunity having been offered to the member of the Class to participate in the Settlement Hearing, or object to the certification of the Class and the Agreement…

**Judge Judith K. Fitzgerald,** *In re Pittsburgh Corning Corp.,* (Nov. 26, 2003) 00-22876 (Bankr.W.D. Pa.):

> The procedures and form of notice for notifying the holders of Asbestos PI Trust Claims, as described in the Motion, adequately protect the interests of the holders of Asbestos PI Trust Claims in a manner consistent with the principles of due process, and satisfy the applicable requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

**Judge Carter Holly,** *Richison v. American Cemwood Corp.,* (Nov. 18, 2003) 005532 (Cal. Super. Ct.):

> As to the forms of Notice, the Court finds and concludes that they fully apprised the Class members of the pendency of the litigation, the terms of the Phase 2 Settlement, and Class members' rights and options…Not a single Class member—out of an estimated 30,000—objected to the terms of the Phase 2 Settlement Agreement, notwithstanding a comprehensive national Notice campaign, via direct mail and publication Notice…The notice was reasonable and the best notice practicable under the circumstances, was due, adequate, and sufficient notice to all Class members, and complied fully with the laws of the State of California, the Code of Civil Procedure, due process, and California Rules of Court 1859 and 1860.

**Judge Thomas A. Higgins,** *In re Columbia/HCA Healthcare Corp.,* (June 13, 2003) MDL No. 1227 (M.D. Tenn.):

> Notice of the settlement has been given in an adequate and sufficient manner.  The notice provided by mailing the settlement notice to certain class members and publishing notice in the manner described in the settlement was the best practicable notice, complying in all respects with the requirements of due process.

**Judge Harold Baer, Jr.,** *Thompson v. Metropolitan Life Ins. Co.,* (2003) 216 F.R.D. 55, 68 (S.D.N.Y.):

> In view of the extensive notice campaign waged by the defendant, the extremely small number of class members objecting or requesting exclusion from the settlement is a clear sign of strong support for the settlement…The notice provides, in language easily understandable to a lay person, the essential terms of the settlement, including the claims asserted…who would be covered by the settlement…[T]he notice campaign that defendant agreed to undertake was extensive…I am satisfied, having reviewed the contents of the notice package, and the extensive steps taken to disseminate notice of the settlement, that the class notice complies with the requirements of Rule 23 (c)(2) and 23(e). In summary, I have reviewed all of the objections, and none persuade me to conclude that the proposed settlement is unfair, inadequate or unreasonable.

**Judge Edgar E. Bayley,** *Dimitrios v. CVS, Inc.,* (Nov. 27, 2002) 99-6209; *Walker v. Rite Aid Corp.,* 99-6210; and *Myers v. Rite Aid Corp.,* 01-2771 (Pa. Ct. C.P.):

> The Court specifically finds that: fair and adequate notice has been given to the class, which comports with due process of law.

**Judge Dewey C. Whitenton,** *Ervin v. Movie Gallery, Inc.,* (Nov. 22, 2002) 13007 (Tenn. Ch.):

> The content of the class notice also satisfied all due process standards and state law requirements…The content of the notice was more than adequate to enable class members to make an informed and intelligent choice about remaining in the class or opting out of the class.



**Judge James R. Williamson,** *Kline v. The Progressive Corp.***,** (Nov. 14, 2002) 01-L-6 (Ill. Cir. Ct.):

> *Notice to the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated.  The notice contained the essential elements necessary to satisfy due process…*

**Judge Marina Corodemus,** *Talalai v. Cooper Tire & Rubber Co.,* (Sept. 13, 2002) L-008830.00 (N.J. Super. Ct.):

> *Here, the comprehensive bilingual, English and Spanish, court-approved Notice Plan provided by the terms of the settlement meets due process requirements.  The Notice Plan used a variety of methods to reach potential class members.  For example, short form notices for print media were placed…throughout the United States and in major national consumer publications which include the most widely read publications among Cooper Tire owner demographic groups.*

**Judge Harold Baer, Jr.,** *Thompson v. Metropolitan Life Ins. Co.,* (Sept. 3, 2002) 00 Civ. 5071-HB (S.D.N.Y.):

> *The Court further finds that the Class Notice and Publication Notice provided in the Settlement Agreement are written in plain English and are readily understandable by Class Members.  In sum, the Court finds that the proposed notice texts and methodology are reasonable, that they constitute due, adequate and sufficient notice to all persons entitled to be provided with notice, and that they meet the requirements of the Federal Rules of Civil Procedure (including Fed. R. Civ. P. 23(c)(2) and (e)), the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law.*

**Judge Milton Gunn Shuffield,** *Scott v. Blockbuster Inc.,* (Jan. 22, 2002) D 162-535 (Tex. Jud. Dist. Ct.) ultimately withstood challenge to Court of Appeals of Texas.  *Peters v. Blockbuster* 65 S.W.3d 295, 307 (Tex. App.-Beaumont, 2001):

> *In order to maximize the efficiency of the notice, a professional concern, Hilsoft Notifications, was retained.  This Court concludes that the notice campaign was the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the settlement and afford them an opportunity to present their objections…The notice campaign was highly successful and effective, and it more than satisfied the due process and state law requirements for class notice.*

**Judge Marina Corodemus,** *Talalai v. Cooper Tire & Rubber Co.,* (Oct. 30, 2001) MID-L-8839-00-MT (N.J. Super. Ct.):

> *The parties have crafted a notice program which satisfies due process requirements without reliance on an unreasonably burdensome direct notification process…The form of the notice is reasonably calculated to apprise class members of their rights.  The notice program is specifically designed to reach a substantial percentage of the putative settlement class members.*

**Judge Marina Corodemus,** *Talalai v. Cooper Tire & Rubber Co.,* (Oct. 29, 2001) L-8830-00-MT (N.J. Super. Ct.):

> *I saw the various bar graphs for the different publications and the different media dissemination, and I think that was actually the clearest bar graph I've ever seen in my life…it was very clear of the time periods that you were doing as to each publication and which media you were doing over what market time, so I think that was very clear.*

**Judge Stuart R. Pollak,** *Microsoft I-V Cases,* (Apr. 1, 2001) J.C.C.P. CJC-00-004106 (Cal. Super. Ct.):

> *[C]oncerning dissemination of class notice; and I have reviewed the materials that have been submitted on that subject and basically I'm satisfied.  I think it's amazing if you're really getting 80 percent coverage.  That's very reassuring.  And the papers that you submitted responded to a couple things that had been mentioned before and I am satisfied with all that.*

**Judge Stuart R. Pollak,** *Microsoft I-V Cases,* (Mar. 30, 2001) J.C.C.P. 4106 (Cal. Super. Ct.):

> *Plaintiffs and Defendant Microsoft Corporation have submitted a joint statement in support of their request that the Court approve the plan for dissemination of class action notice and proposed forms of notice, and amend the class definition.  The Court finds that the forms of notice to Class members attached hereto as Exhibits A and B fairly and adequately inform the Class members of their rights concerning this litigation.  The Court further finds that the methods for dissemination of notice are the fairest and best practicable under the circumstances, and comport with due process requirements.*



**LEGAL NOTICE CASES**

Hilsoft has served as a notice expert for planning, implementation and/or analysis in the following partial list of cases:

| | |
|---|---|
| *Andrews v. MCI (900 Number Litigation)* | S.D. Ga., No. CV 191-175 |
| *Harper v. MCI (900 Number Litigation)* | S.D. Ga., No. CV 192-134 |
| *In re Bausch & Lomb Contact Lens Litigation* | N.D. Ala., No. 94-C-1144-WW |
| *In re Ford Motor Co. Vehicle Paint Litigation* | E.D. La., MDL 1063 |
| *Castano v. Am. Tobacco* | E.D. La., No. CV 94-1044 |
| *Cox v. Shell Oil (Polybutylene Pipe Litigation)* | Tenn. Ch., No. 18,844 |
| *In re Amino Acid Lysine Antitrust Litigation* | N.D. Ill., MDL No. 1083 |
| *In re Dow Corning Corp. (Breast Implant Bankruptcy)* | E.D. Mich., No. 95-20512-11-AJS |
| *Kunhel v. CNA Ins. Companies* | N.J. Super. Ct., No. ATL-C-0184-94 |
| *In re Factor Concentrate Blood Prods. Litigation (Hemophiliac HIV)* | N.D. Ill., MDL No. 986 |
| *In re Ford Ignition Switch Prods. Liability Litigation* | D. N.J., No. 96-CV-3125 |
| *Jordan v. A.A. Friedman (Non-Filing Ins. Litigation)* | M.D. Ga., No. 95-52-COL |
| *Kalhammer v. First USA (Credit Card Litigation)* | Cal. Cir. Ct., No. C96-45632010-CAL |
| *Navarro-Rice v. First USA (Credit Card Litigation)* | Ore. Cir. Ct., No. 9709-06901 |
| *Spitzfaden v. Dow Corning (Breast Implant Litigation)* | La. D. Ct., No. 92-2589 |
| *Robinson v. Marine Midland (Finance Charge Litigation)* | N.D. Ill., No. 95 C 5635 |
| *McCurdy v. Norwest Fin. Alabama* | Ala. Cir. Ct., No. CV-95-2601 |
| *Johnson v. Norwest Fin. Alabama* | Ala. Cir. Ct., No. CV-93-PT-962-S |
| *In re Residential Doors Antitrust Litigation* | E.D. Pa., MDL No. 1039 |
| *Barnes v. Am. Tobacco Co. Inc.* | E.D. Pa., No. 96-5903 |
| *Small v. Lorillard Tobacco Co. Inc.* | N.Y. Super. Ct., No. 110949/96 |
| *Naef v. Masonite Corp (Hardboard Siding Litigation)* | Ala. Cir. Ct., No. CV-94-4033 |
| *In re Synthroid Mktg. Litigation* | N.D. Ill., MDL No. 1182 |
| *Raysick v. Quaker State Slick 50 Inc.* | D. Tex., No. 96-12610 |
| *Castillo v. Mike Tyson (Tyson v. Holyfield Bout)* | N.Y. Super. Ct., No. 114044/97 |
| *Avery v. State Farm Auto. Ins. (Non-OEM Auto Parts)* | Ill. Cir. Ct., No. 97-L-114 |



| *Walls v. The Am. Tobacco Co. Inc.* | N.D. Okla., No. 97-CV-218 |
|---|---|
| *Tempest v. Rainforest Café (Securities Litigation)* | D. Minn., No. 98-CV-608 |
| *Stewart v. Avon Prods. (Securities Litigation)* | E.D. Pa., No. 98-CV-4135 |
| *Goldenberg v. Marriott PLC Corp (Securities Litigation)* | D. Md., No. PJM 95-3461 |
| *Delay v. Hurd Millwork (Building Products Litigation)* | Wash. Super. Ct., No. 97-2-07371-0 |
| *Gutterman v. Am. Airlines (Frequent Flyer Litigation)* | Ill. Cir. Ct., No. 95CH982 |
| *Hoeffner v. The Estate of Alan Kenneth Vieira (Un-scattered Cremated Remains Litigation)* | Cal. Super. Ct., No. 97-AS 02993 |
| *In re Graphite Electrodes Antitrust Litigation* | E.D. Pa., MDL No. 1244 |
| *In re Silicone Gel Breast Implant Prods. Liability Litigation, Altrichter v. INAMED* | N.D. Ala., MDL No. 926 |
| *St. John v. Am. Home Prods. Corp. (Fen/Phen Litigation)* | Wash. Super. Ct., No. 97-2-06368 |
| *Crane v. Hackett Assocs. (Securities Litigation)* | E.D. Pa., No. 98-5504 |
| *In re Holocaust Victims Assets Litigation (Swiss Banks)* | E.D.N.Y., No. CV-96-4849 |
| *McCall v. John Hancock (Settlement Death Benefits)* | N.M. Cir. Ct., No. CV-2000-2818 |
| *Williams v. Weyerhaeuser Co. (Hardboard Siding Litigation)* | Cal. Super. Ct., No. CV-995787 |
| *Kapustin v. YBM Magnex Int'l Inc. (Securities Litigation)* | E.D. Pa., No. 98-CV-6599 |
| *Leff v. YBM Magnex Int'l Inc. (Securities Litigation)* | E.D. Pa., No. 95-CV-89 |
| *In re PRK/LASIK Consumer Litigation* | Cal. Super. Ct., No. CV-772894 |
| *Hill v. Galaxy Cablevision* | N.D. Miss., No. 1:98CV51-D-D |
| *Scott v. Am. Tobacco Co. Inc.* | La. D. Ct., No. 96-8461 |
| *Jacobs v. Winthrop Financial Associates (Securities Litigation)* | D. Mass., No. 99-CV-11363 |
| *Int'l Comm'n on Holocaust Era Ins. Claims – Worldwide Outreach Program* | Former Secretary of State Lawrence Eagleburger Commission |
| *Bownes v. First USA Bank (Credit Card Litigation)* | Ala. Cir. Ct., No. CV-99-2479-PR |
| *Whetman v. IKON (ERISA Litigation)* | E.D. Pa., No. 00-87 |
| *Mangone v. First USA Bank (Credit Card Litigation)* | Ill. Cir. Ct., No. 99AR672a |
| *In re Babcock and Wilcox Co. (Asbestos Related Bankruptcy)* | E.D. La., No. 00-10992 |
| *Barbanti v. W.R. Grace and Co. (Zonolite / Asbestos Litigation)* | Wash. Super. Ct., No. 00201756-6 |
| *Brown v. Am. Tobacco* | Cal. Super. Ct., No. J.C.C.P. 4042,711400 |



| | |
|---|---|
| *Wilson v. Servier Canada Inc. (Canadian Fen/Phen Litigation)* | Ont. Super. Ct., No. 98-CV-158832 |
| *In re Texaco Inc. (Bankruptcy)* | S.D.N.Y. No. 87 B 20142, No. 87 B 20143, No. 87 B 20144 |
| *Olinde v. Texaco (Bankruptcy, Oil Lease Litigation)* | M.D. La., No. 96-390 |
| *Gustafson v. Bridgestone/Firestone, Inc. (Recall Related Litigation)* | S.D. Ill., No. 00-612-DRH |
| *In re Bridgestone/Firestone Tires Prods. Liability Litigation* | S.D. Ind., MDL No. 1373 |
| *Gaynoe v. First Union Corp. (Credit Card Litigation)* | N.C. Super. Ct., No. 97-CVS-16536 |
| *Carson v. Daimler Chrysler Corp. (Fuel O-Rings Litigation)* | W.D. Tenn., No. 99-2896 TU A |
| *Providian Credit Card Cases* | Cal. Super. Ct., No. J.C.C.P. 4085 |
| *Fields v. Great Spring Waters of Am., Inc. (Bottled Water Litigation)* | Cal. Super. Ct., No. 302774 |
| *Sanders v. Great Spring Waters of Am., Inc. (Bottled Water Litigation)* | Cal. Super. Ct., No. 303549 |
| *Sims v. Allstate Ins. Co. (Diminished Auto Value Litigation)* | Ill. Cir. Ct., No. 99-L-393A |
| *Peterson v. State Farm Mutual Auto. Ins. Co. (Diminished Auto Value Litigation)* | Ill. Cir. Ct., No. 99-L-394A |
| *Microsoft I-V Cases (Antitrust Litigation Mirroring Justice Dept.)* | Cal. Super. Ct., No. J.C.C.P. 4106 |
| *Westman v. Rogers Family Funeral Home, Inc. (Remains Handling Litigation)* | Cal. Super. Ct., No. C-98-03165 |
| *Rogers v. Clark Equipment Co.* | Ill. Cir. Ct., No. 97-L-20 |
| *Garrett v. Hurley State Bank (Credit Card Litigation)* | Miss. Cir. Ct., No. 99-0337 |
| *Ragoonanan v. Imperial Tobacco Ltd. (Firesafe Cigarette Litigation)* | Ont. Super. Ct., No. 00-CV-183165 CP |
| *Dietschi v. Am. Home Prods. Corp. (PPA Litigation)* | W.D. Wash., No. C01-0306L |
| *Dimitrios v. CVS, Inc. (PA Act 6 Litigation)* | Pa. C.P., No. 99-6209 |
| *Jones v. Hewlett-Packard Co. (Inkjet Cartridge Litigation)* | Cal. Super. Ct., No. 302887 |
| *In re Tobacco Cases II (California Tobacco Litigation)* | Cal. Super. Ct., No. J.C.C.P. 4042 |
| *Scott v. Blockbuster, Inc. (Extended Viewing Fees Litigation)* | 136th Tex. Jud. Dist., No. D 162-535 |
| *Anesthesia Care Assocs. v. Blue Cross of Cal.* | Cal. Super. Ct., No. 986677 |
| *Ting v. AT&T (Mandatory Arbitration Litigation)* | N.D. Cal., No. C-01-2969-BZ |
| *In re W.R. Grace & Co. (Asbestos Related Bankruptcy)* | Bankr. D. Del., No. 01-01139-JJF |
| *Talalai v. Cooper Tire & Rubber Co. (Tire Layer Adhesion Litigation)* | N.J. Super. Ct.,, No. MID-L-8839-00 MT |



| | |
|---|---|
| *Kent v. Daimler Chrysler Corp. (Jeep Grand Cherokee Park-to-Reverse Litigation)* | N.D. Cal., No. C01-3293-JCS |
| *Int'l Org. of Migration – German Forced Labour Compensation Programme* | Geneva, Switzerland |
| *Madsen v. Prudential Federal Savings & Loan (Homeowner's Loan Account Litigation)* | 3rd Jud. Dist. Ct. Utah, No. C79-8404 |
| *Bryant v. Wyndham Int'l., Inc. (Energy Surcharge Litigation)* | Cal. Super. Ct., No. GIC 765441, No. GIC 777547 |
| *In re USG Corp. (Asbestos Related Bankruptcy)* | Bankr. D. Del., No. 01-02094-RJN |
| *Thompson v. Metropolitan Life Ins. Co. (Race Related Sales Practices Litigation)* | S.D.N.Y., No. 00-CIV-5071 |
| *Ervin v. Movie Gallery Inc. (Extended Viewing Fees)* | Tenn. Ch., No. CV-13007 |
| *Peters v. First Union Direct Bank (Credit Card Litigation)* | M.D. Fla., No. 8:01-CV-958-T-26 TBM |
| *National Socialist Era Compensation Fund* | Republic of Austria |
| *In re Baycol Litigation* | D. Minn., MDL No. 1431 |
| *Claims Conference–Jewish Slave Labour Outreach Program* | German Government Initiative |
| *Wells v. Chevy Chase Bank (Credit Card Litigation)* | Md. Cir. Ct., No. C-99-000202 |
| *Walker v. Rite Aid of PA, Inc. (PA Act 6 Litigation)* | C.P. Pa., No. 99-6210 |
| *Myers v. Rite Aid of PA, Inc. (PA Act 6 Litigation)* | C.P. Pa., No. 01-2771 |
| *In re PA Diet Drugs Litigation* | C.P. Pa., No. 9709-3162 |
| *Harp v. Qwest Communications (Mandatory Arbitration Lit.)* | Ore. Circ. Ct., No. 0110-10986 |
| *Tuck v. Whirlpool Corp. & Sears, Roebuck & Co. (Microwave Recall Litigation)* | Ind. Cir. Ct., No. 49C01-0111-CP-002701 |
| *Allison v. AT&T Corp. (Mandatory Arbitration Litigation)* | 1st Jud. D.C. N.M., No. D-0101-CV-20020041 |
| *Kline v. The Progressive Corp.* | Ill. Cir. Ct., No. 01-L-6 |
| *Baker v. Jewel Food Stores, Inc. & Dominick's Finer Foods, Inc. (Milk Price Fixing)* | Ill. Cir. Ct., No. 00-L-9664 |
| *In re Columbia/HCA Healthcare Corp. (Billing Practices Litigation)* | M.D. Tenn., MDL No. 1227 |
| *Foultz v. Erie Ins. Exchange (Auto Parts Litigation)* | C.P. Pa., No. 000203053 |
| *Soders v. General Motors Corp. (Marketing Initiative Litigation)* | C.P. Pa., No. CI-00-04255 |
| *Nature Guard Cement Roofing Shingles Cases* | Cal. Super. Ct., No. J.C.C.P. 4215 |
| *Curtis v. Hollywood Entm't Corp. (Additional Rental Charges)* | Wash. Super. Ct., No. 01-2-36007-8 |
| *Defrates v. Hollywood Entm't Corp.* | Ill. Cir. Ct., No. 02L707 |



| | |
|---|---|
| ***Pease v. Jasper Wyman & Son, Merrill Blueberry Farms Inc., Allen's Blueberry Freezer Inc. & Cherryfield Foods Inc.*** | Me. Super. Ct., No. CV-00-015 |
| ***West v. G&H Seed Co. (Crawfish Farmers Litigation)*** | 27th Jud. D. Ct. La., No. 99-C-4984-A |
| ***Linn v. Roto-Rooter Inc. (Miscellaneous Supplies Charge)*** | C.P. Ohio, No. CV-467403 |
| ***McManus v. Fleetwood Enter., Inc. (RV Brake Litigation)*** | D. Ct. Tex., No. SA-99-CA-464-FB |
| ***Baiz v. Mountain View Cemetery (Burial Practices)*** | Cal. Super. Ct., No. 809869-2 |
| ***Stetser v. TAP Pharm. Prods, Inc. & Abbott Laboratories (Lupron Price Litigation)*** | N.C. Super. Ct., No. 01-CVS-5268 |
| ***Richison v. Am. Cemwood Corp. (Roofing Durability Settlement)*** | Cal. Super. Ct., No. 005532 |
| ***Cotten v. Ferman Mgmt. Servs. Corp.*** | 13th Jud. Cir. Fla., No. 02-08115 |
| ***In re Pittsburgh Corning Corp. (Asbestos Related Bankruptcy)*** | Bankr. W.D. Pa., No. 00-22876-JKF |
| ***Mostajo v. Coast Nat'l Ins. Co.*** | Cal. Super. Ct., No. 00 CC 15165 |
| ***Friedman v. Microsoft Corp. (Antitrust Litigation)*** | Ariz. Super. Ct., No. CV 2000-000722 |
| ***Multinational Outreach - East Germany Property Claims*** | Claims Conference |
| ***Davis v. Am. Home Prods. Corp. (Norplant Contraceptive Litigation)*** | D. La., No. 94-11684 |
| ***Walker v. Tap Pharmaceutical Prods., Inc. (Lupron Price Litigation)*** | N.J. Super. Ct., No. CV CPM-L-682-01 |
| ***Munsey v. Cox Communications (Late Fee Litigation)*** | Civ. D. La., No. Sec. 9, 97 19571 |
| ***Gordon v. Microsoft Corp. (Antitrust Litigation)*** | 4th Jud. D. Ct. Minn., No. 00-5994 |
| ***Clark v. Tap Pharmaceutical Prods., Inc.*** | 5th Dist. App. Ct. Ill., No. 5-02-0316 |
| ***Fisher v. Virginia Electric & Power Co.*** | E.D. Va., No. 3:02-CV-431 |
| ***Mantzouris v. Scarritt Motor Group, Inc.*** | M.D. Fla., No. 8:03-CV-0015-T-30-MSS |
| ***Johnson v. Ethicon, Inc. (Product Liability Litigation)*** | W. Va. Cir. Ct., No. 01-C-1530, 1531, 1533, No. 01-C-2491 to 2500 |
| ***Schlink v. Edina Realty Title*** | 4th Jud. D. Ct. Minn., No. 02-018380 |
| ***Tawney v. Columbia Natural Res. (Oil & Gas Lease Litigation)*** | W. Va. Cir. Ct., No. 03-C-10E |
| ***White v. Washington Mutual, Inc. (Pre-Payment Penalty Litigation)*** | 4th Jud. D. Ct. Minn., No. CT 03-1282 |
| ***Acacia Media Techs. Corp. v. Cybernet Ventures Inc., (Patent Infringement Litigation)*** | C.D. Cal., No. SACV03-1803 |
| ***Bardessono v. Ford Motor Co. (15 Passenger Vans)*** | Wash. Super. Ct., No. 32494 |
| ***Gardner v. Stimson Lumber Co. (Forestex Siding Litigation)*** | Wash. Super. Ct., No. 00-2-17633-3SEA |



| *Poor v. Sprint Corp. (Fiber Optic Cable Litigation)* | Ill. Cir. Ct., No. 99-L-421 |
| *Thibodeau v. Comcast Corp.* | E.D. Pa., No. 04-CV-1777 |
| *Cazenave v. Sheriff Charles C. Foti (Strip Search Litigation)* | E.D. La., No. 00-CV-1246 |
| *National Assoc. of Police Orgs., Inc. v. Second Chance Body Armor, Inc. (Bullet Proof Vest Litigation)* | Mich. Cir. Ct., No. 04-8018 |
| *Nichols v. SmithKline Beecham Corp. (Paxil)* | E.D. Pa., No. 00-6222 |
| *Yacout v. Federal Pacific Electric Co. (Circuit Breaker)* | N.J. Super. Ct., No. MID-L-2904-97 |
| *Lewis v. Bayer AG (Baycol)* | 1st Jud. Dist. Ct. Pa., No. 002353 |
| *In re Educ. Testing Serv. PLT 7-12 Test Scoring Litigation* | E.D. La., MDL No. 1643 |
| *Stefanyshyn v. Consol. Indus. Corp. (Heat Exchanger)* | Ind. Super. Ct., No. 79 D 01-9712-CT-59 |
| *Barnett v. Wal-Mart Stores, Inc.* | Wash. Super. Ct., No. 01-2-24553-8 |
| *In re Serzone Prods. Liability Litigation* | S.D. W. Va., MDL No. 1477 |
| *Ford Explorer Cases* | Cal. Super. Ct., No. J.C.C.P. 4226 & 4270 |
| *In re Solutia Inc. (Bankruptcy)* | S.D.N.Y., No. 03-17949 |
| *In re Lupron Marketing & Sales Practices Litigation* | D. Mass., MDL No. 1430 |
| *Morris v. Liberty Mutual Fire Ins. Co.* | D. Okla., No. CJ-03-714 |
| *Bowling, et al. v. Pfizer Inc. (Bjork-Shiley Convexo-Concave Heart Valve)* | S.D. Ohio, No. C-1-91-256 |
| *Thibodeaux v. Conoco Philips Co.* | D. La., No. 2003-481 |
| *Morrow v. Conoco Inc.* | D. La., No. 2002-3860 |
| *Tobacco Farmer Transition Program* | U.S. Dept. of Agric. |
| *Perry v. Mastercard Int'l Inc.* | Ariz. Super. Ct., No. CV2003-007154 |
| *Brown v. Credit Suisse First Boston Corp.* | C.D. La., No. 02-13738 |
| *In re Unum Provident Corp.* | D. Tenn., No. 1:03-CV-1000 |
| *In re Ephedra Prods. Liability Litigation* | D.N.Y., MDL No. 1598 |
| *Chesnut v. Progressive Casualty Ins. Co.* | Ohio C.P., No. 460971 |
| *Froeber v. Liberty Mutual Fire Ins. Co.* | Ore. Cir. Ct., No. 00C15234 |
| *Luikart v. Wyeth Am. Home Prods. (Hormone Replacement)* | W. Va. Cir. Ct., No. 04-C-127 |
| *Salkin v. MasterCard Int'l Inc. (Pennsylvania)* | Pa. C.P., No. 2648 |
| *Rolnik v. AT&T Wireless Servs., Inc.* | N.J. Super. Ct., No. L-180-04 |



| | |
|---|---|
| *Singleton v. Hornell Brewing Co. Inc. (Arizona Ice Tea)* | Cal. Super. Ct., BC No. 288 754 |
| *Becherer v. Qwest Commc'ns Int'l, Inc.* | Ill. Cir. Ct., No. 02-L140 |
| *Clearview Imaging v. Progressive Consumers Ins. Co.* | Fla. Cir. Ct., No. 03-4174 |
| *Mehl v. Canadian Pacific Railway, Ltd* | D.N.D., No. A4-02-009 |
| *Murray v. IndyMac Bank. F.S.B* | N.D. Ill., No. 04 C 7669 |
| *Gray v. New Hampshire Indemnity Co., Inc.* | Ark. Cir. Ct., No. CV-2002-952-2-3 |
| *George v. Ford Motor Co.* | M.D. Tenn., No. 3:04-0783 |
| *Allen v. Monsanto Co.* | W. Va. Cir. Ct., No. 041465 |
| *Carter v. Monsanto Co.* | W. Va. Cir. Ct., No. 00-C-300 |
| *Carnegie v. Household Int'l, Inc.* | N. D. Ill., No. 98-C-2178 |
| *Daniel v. AON Corp.* | Ill. Cir. Ct., No. 99 CH 11893 |
| *In re Royal Ahold Securities and "ERISA" Litigation* | D. Md., MDL No. 1539 |
| *In re Pharmaceutical Industry Average Wholesale Price Litigation* | D. Mass., MDL No. 1456 |
| *Meckstroth v. Toyota Motor Sales, U.S.A., Inc.* | 24th Jud. D. Ct. La., No. 583-318 |
| *Walton v. Ford Motor Co.* | Cal. Super. Ct., No. SCVSS 126737 |
| *Hill v. State Farm Mutual Auto Ins. Co.* | Cal. Super. Ct., BC No. 194491 |
| *First State Orthopaedics et al. v. Concentra, Inc., et al.* | E.D. Pa. No. 2:05-CV-04951 |
| *Sauro v. Murphy Oil USA, Inc.* | E.D. La., No. 05-4427 |
| *In re High Sulfur Content Gasoline Prods. Liability Litigation* | E.D. La., MDL No. 1632 |
| *Homeless Shelter Compensation Program* | City of New York |
| *Rosenberg v. Academy Collection Service, Inc.* | E.D. Pa., No. 04-CV-5585 |
| *Chapman v. Butler & Hosch, P.A.* | 2nd Jud. Cir. Fla., No. 2000-2879 |
| *In re Vivendi Universal, S.A. Securities Litigation* | S.D.N.Y., No. 02-CIV-5571 |
| *Desportes v. American General Assurance Co.* | Ga. Super. Ct., No. SU-04-CV-3637 |
| *In re: Propulsid Products Liability Litigation* | E.D. La., MDL No. 1355 |
| *Baxter v. The Attorney General of Canada (In re Residential Schools Class Action Litigation)* | Ont. Super. Ct., No. 00-CV-192059 CP |
| *McNall v. Mastercard Int'l, Inc. (Currency Conversion Fees)* | 13th Tenn. Jud. Dist. Ct., No. CT-002506-03 |
| *Lee v. Allstate* | Ill. Cir. Ct., No. 03 LK 127 |



| | |
|---|---|
| *Turner v. Murphy Oil USA, Inc.* | E.D. La., No. 2:05-CV-04206 |
| *Carter v. North Central Life Ins. Co.* | Ga. Super. Ct., No. SU-2006-CV-3764-6 |
| *Harper v. Equifax* | E.D. Pa., No. 2:04-CV-03584-TON |
| *Beasley v. Hartford Insurance Co. of the Midwest* | Ark. Cir. Ct., No. CV-2005-58-1 |
| *Springer v. Biomedical Tissue Services, LTD (Human Tissue Litigation)* | Ind. Cir. Ct., No. 1:06-CV-00332 |
| *Spence v. Microsoft Corp. (Antitrust Litigation)* | Wis. Cir. Ct., No. 00-CV-003042 |
| *Pennington v. The Coca Cola Co. (Diet Coke)* | Mo. Cir. Ct., No. 04-CV-208580 |
| *Sunderman v. Regeneration Technologies, Inc. (Human Tissue Litigation)* | S.D. Ohio, No. 1:06-CV-075 |
| *Splater v. Thermal Ease Hydronic Systems, Inc.* | Wash. Super. Ct., No. 03-2-33553-3-SEA |
| *Peyroux v. The United States of America (New Orleans Levee Breech)* | E.D. La., No. 06-2317 |
| *Chambers v. DaimlerChrysler Corp. (Neon Head Gaskets)* | N.C. Super. Ct., No. 01:CVS-1555 |
| *Ciabattari v. Toyota Motor Sales, U.S.A., Inc. (Sienna Run Flat Tires)* | N.D. Cal., No. C-05-04289 |
| *In re Bridgestone Securities Litigation* | M.D. Tenn., No. 3:01-CV-0017 |
| *In re Mutual Funds Investment Litigation (Market Timing)* | D. Md., MDL No. 1586 |
| *Accounting Outsourcing v. Verizon Wireless* | M.D. La., No. 03-CV-161 |
| *Hensley v. Computer Sciences Corp.* | Ark. Cir. Ct., No. CV-2005-59-3 |
| *Peek v. Microsoft Corporation* | Ark. Cir. Ct., No. CV-2006-2612 |
| *Reynolds v. The Hartford Financial Services Group, Inc.* | D. Ore., No. CV-01-1529 |
| *Schwab v. Philip Morris USA, Inc.* | E.D.N.Y., No. CV-04-1945 |
| *Zarebski v. Hartford Insurance Co. of the Midwest* | Ark. Cir. Ct., No. CV-2006-409-3 |
| *In re Parmalat Securities Litigation* | S.D.N.Y., MDL No. 1653 |
| *Beasley v. The Reliable Life Ins. Co.* | Ark. Cir. Ct., No. CV-2005-58-1 |
| *Sweeten v. American Empire Insurance Company* | Ark. Cir. Ct., No. 2007-154-3 |
| *Govt. Employees Hospital Assoc. v. Serono Int., S.A.* | D. Mass., No. 06-CA-10613 |
| *Gunderson v. Focus Healthcare Management, Inc.* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Gunderson v. F.A. Richard & Associates, Inc., et al.* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Perez v. Manor Care of Carrollwood* | 13th Jud. Cir. Fla., No. 06-00574-E |



| | |
|---|---|
| *Pope v. Manor Care of Carrollwood* | 13th Jud. Cir. Fla., No. 06-01451-B |
| *West v. Carfax, Inc.* | Ohio C.P., No. 04-CV-1898 |
| *Hunsucker v. American Standard Ins. Co. of Wisconsin* | Ark. Cir. Ct., No. CV-2007-155-3 |
| *In re Conagra Peanut Butter Products Liability Litigation* | N.D. Ga., MDL No. 1845 |
| *The People of the State of CA v. Universal Life Resources (Cal DOI v. CIGNA)* | Cal. Super. Ct., No. GIC838913 |
| *Burgess v. Farmers Insurance Co., Inc.* | D. Okla., No. CJ-2001-292 |
| *Grays Harbor v. Carrier Corporation* | W.D. Wash., No. 05-05437 |
| *Perrine v. E.I. Du Pont De Nemours & Co.* | W. Va. Cir. Ct., No. 04-C-296-2 |
| *In re Alstom SA Securities Litigation* | S.D.N.Y., No. 03-CV-6595 |
| *Brookshire Bros. v. Chiquita (Antitrust)* | S.D. Fla., No. 05-CIV-21962 |
| *Hoorman v. SmithKline Beecham* | Ill. Cir. Ct., No. 04-L-715 |
| *Santos v. Government of Guam (Earned Income Tax Credit)* | D. Guam, No. 04-00049 |
| *Johnson v. Progressive* | Ark. Cir. Ct., No. CV-2003-513 |
| *Bond v. American Family Insurance Co.* | D. Ariz., No. CV06-01249 |
| *In re SCOR Holding (Switzerland) AG Litigation (Securities)* | S.D.N.Y., No. 04-cv-7897 |
| *Shoukry v. Fisher-Price, Inc. (Toy Safety)* | S.D.N.Y., No. 07-cv-7182 |
| *In re: Guidant Corp. Plantable Defibrillators Prod's Liab. Litigation* | D. Minn., MDL No. 1708 |
| *Clark v. Pfizer, Inc. (Neurontin)* | C.P. Pa., No. 9709-3162 |
| *Angel v. U.S. Tire Recovery (Tire Fire)* | W. Va. Cir. Ct., No. 06-C-855 |
| *In re TJX Companies Retail Security Breach Litigation* | D. Mass., MDL No. 1838 |
| *Webb v. Liberty Mutual Insurance Co.* | Ark. Cir. Ct., No. CV-2007-418-3 |
| *Shaffer v. Continental Casualty Co. (Long Term Care Ins.)* | C.D. Cal., No. V06-2235 |
| *Palace v. DaimlerChrysler (Defective Neon Head Gaskets)* | Ill. Cir. Ct., No. 01-CH-13168 |
| *Lockwood v. Certegy Check Services, Inc. (Stolen Financial Data)* | M.D. Fla., No. 8:07-cv-1434 |
| *Sherrill v. Progressive Northwestern Ins. Co.* | 18th D. Ct. Mont., No. DV-03-220 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (AIG)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Jones v. Dominion Resources Services, Inc.* | S.D. W. Va., No. 2:06-cv-00671 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (Wal-Mart)* | 14th Jud. D. Ct. La., No. 2004-2417-D |

| | |
|---|---|
| *In re Trans Union Corp. Privacy Litigation* | N.D. Ill., MDL 1350 |
| *Gudo v. The Administrator of the Tulane Ed. Fund* | La. D. Ct., No. 2007-C-1959 |
| *Guidry v. American Public Life Insurance Co.* | 14th Jud. D. Ct. La., No. 2008-3465 |
| *McGee v. Continental Tire North America* | D.N.J., No. 2:06-CV-06234 |
| *Sims v. Rosedale Cemetery Co.* | W. Va. Cir. Ct., No. 03-C-506 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (Amerisafe)* | 14th Jud. D. Ct. La., No. 2004-002417 |
| *In re Katrina Canal Breaches Consolidated Litigation* | E.D. La., No. 05-4182 |
| *In re Department of Veterans Affairs (VA) Data Theft Litigation* | D.D.C., MDL No. 1796 |
| *Dolen v. ABN AMRO Bank N.V. (Callable CD's)* | Ill. Cir. Ct., No. 01-L-454 and No. 01-L-493 |
| *Pavlov v. CNA (Long Term Care Insurance)* | N.D. Ohio, No. 5:07cv2580 |
| *Steele v. Pergo( Flooring Products)* | D. Ore., No. 07-CV-01493-BR |
| *Opelousas Trust Authority v. Summit Consulting* | 27th Jud. D. Ct. La., No. 07-C-3737-B |
| *Little v. Kia Motors America, Inc. (Braking Systems)* | N.J. Super. Ct., No. UNN-L-0800-01 |
| *Boone v. City of Philadelphia (Prisoner Strip Search)* | E.D. Pa., No. 05-CV-1851 |
| *In re Countrywide Customer Data Breach Litigation* | W.D. Ky., MDL No. 1998 |
| *Miller v. Basic Research (Weight-loss Supplement)* | D. Utah, No. 2:07-cv-00871 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (Cambridge)* | 14th Jud. D. Ct. La., No. 2004-002417 |
| *Weiner v. Snapple Beverage Corporation* | S.D.N.Y., No. 07-CV-08742 |
| *Holk v. Snapple Beverage Corporation* | D.N.J., No.  3:07-CV-03018 |
| *Coyle v. Hornell Brewing Co. (Arizona Iced Tea)* | D.N.J., No. 08-CV-2797 |
| *In re Heartland Data Security Breach Litigation* | S.D. Tex., MDL No. 2046 |
| *Satterfield v. Simon & Schuster, Inc. (Text Messaging)* | N.D. Cal., No. 06-CV-2893 |
| *Schulte v. Fifth Third Bank (Overdraft Fees)* | N.D. Ill., No. 1:09-CV-06655 |
| *Trombley v. National City Bank (Overdraft Fees)* | D.D.C., No. 1:10-CV-00232 as part of MDL 2036 (S.D. Fla.) |
| *Vereen v. Lowe's Home Centers (Defective Drywall)* | Ga. Super. Ct., No. SU10-CV-2267B |
| *Mathena v. Webster Bank, N.A. (Overdraft Fees)* | D. Conn, No. 3:10-cv-01448 as part MDL 2036 (S.D. Fla.) |
| *Delandro v. County of Allegheny (Prisoner Strip Search)* | W.D. Pa., No. 2:06-cv-00927 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (First Health)* | 14th Jud. D. Ct. La., No. 2004-002417 |

| *Williams v. Hammerman & Gainer, Inc. (Hammerman)* | 27th Jud. D. Ct. La., No. 11-C-3187-B |
| *Williams v. Hammerman & Gainer, Inc. (Risk Management)* | 27th Jud. D. Ct. La., No. 11-C-3187-B |
| *Williams v. Hammerman & Gainer, Inc. (SIF Consultants)* | 27th Jud. D. Ct. La., No. 11-C-3187-B |
| *Gwiazdowski v. County of Chester (Prisoner Strip Search)* | E.D. Pa., No. 2:08cv4463 |
| *Williams v. S.I.F. Consultants (CorVel Corporation)* | 27th Jud. D. Ct. La., No. 09-C-5244-C |
| *Sachar v. Iberiabank Corporation (Overdraft Fees)* | S.D. Fla., MDL 2036 |
| *LaCour v. Whitney Bank (Overdraft Fees)* | M.D. Fla., No. 8:11cv1896 |
| *Lawson v. BancorpSouth (Overdraft Fees)* | W.D. Ark., No. 1:12cv1016 |
| *McKinley v. Great Western Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Wolfgeher v. Commerce Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Harris v. Associated Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Case v. Bank of Oklahoma (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Nelson v. Rabobank, N.A. (Overdraft Fees)* | Cal. Super. Ct., No. RIC 1101391 |
| *Fontaine v. Attorney General of Canada (Stirland Lake and Cristal Lake Residential Schools)* | Ont. Super. Ct., No. 00-CV-192059 CP |
| *Opelousas General Hospital Authority v. FairPay Solutions* | 27th Jud. D. Ct. La., No. 12-C-1599-C |
| *Marolda v. Symantec Corporation (Software Upgrades)* | N.D. Cal., No. 3:08-cv-05701 |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010—Economic and Property Damages Settlement* | E.D. La., MDL No. 2179 |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010—Medical Benefits Settlement* | E.D. La., MDL No. 2179 |
| *Vodanovich v. Boh Brothers Construction (Hurricane Katrina Levee Breaches)* | E.D. La., No. 05-cv-4191 |
| *Gessele et al. v. Jack in the Box, Inc.* | D. Ore., No. 3:10-cv-960 |
| *RBS v. Citizens Financial Group, Inc. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Mastercard & Visa) – 2013 & 2019 Notice Programs* | E.D.N.Y., MDL No. 1720 |
| *Saltzman v. Pella Corporation (Building Products)* | N.D. Ill., No. 06-cv-4481 |
| *In re Zurn Pex Plumbing, Products Liability Litigation* | D. Minn., MDL No. 1958 |
| *Blahut v. Harris, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Eno v. M & I Marshall & Ilsley Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |



| | |
|---|---|
| *Casayuran v. PNC Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Anderson v. Compass Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Evans, et al. v. TIN, Inc. (Environmental)* | E.D. La. No. 2:11-cv-02067 |
| *Opelousas General Hospital Authority v. Qmedtrix Systems, Inc.* | 27th Jud. D. Ct. La., No. 12-C-1599-C |
| *Williams v. SIF Consultants of Louisiana, Inc. et al.* | 27th Jud. D. Ct. La., No. 09-C-5244-C |
| *Miner v. Philip Morris Companies, Inc. et al.* | Ark. Cir. Ct., No. 60CV03-4661 |
| *Fontaine v. Attorney General of Canada (Mistassini Hostels Residential Schools)* | Qué. Super. Ct., No. 500-06-000293-056 & No. 550-06-000021-056 (Hull) |
| *Glube et al. v. Pella Corporation et al. (Building Products)* | Ont. Super. Ct., No. CV-11-4322294-00CP |
| *Yarger v. ING Bank* | D. Del., No. 11-154-LPS |
| *Price v. BP Products North America* | N.D. Ill, No. 12-cv-06799 |
| *National Trucking Financial Reclamation Services, LLC et al. v. Pilot Corporation et al.* | E.D. Ark., No. 4:13-cv-00250 |
| *Johnson v. Community Bank, N.A. et al. (Overdraft Fees)* | M.D. Pa., No. 3:12-cv-01405 |
| *Rose v. Bank of America Corporation, et al. (TCPA)* | N.D. Cal., No. 11-cv-02390 |
| *McGann, et al., v. Schnuck Markets, Inc. (Data Breach)* | Mo. Cir. Ct., No. 1322-CC00800 |
| *Simmons v. Comerica Bank, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *George Raymond Williams, M.D., Orthopedic Surgery, a Professional Medical, LLC, et al. v. Bestcomp, Inc., et al.* | 27th Jud. D. Ct. La., No. 09-C-5242-B |
| *Simpson v. Citizens Bank* (Overdraft Fees) | E.D. Mich, No. 2:12-cv-10267 |
| *In re Plasma-Derivative Protein Therapies Antitrust Litigation* | N.D. Ill, No. 09-CV-7666 |
| *In re Dow Corning Corporation (Breast Implants)* | E.D. Mich., No. 00-X-0005 |
| *Mello et al v. Susquehanna Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Wong  et al. v. Alacer Corp. (Emergen-C)* | Cal. Super. Ct., No. CGC-12-519221 |
| *In re American Express Anti-Steering Rules Antitrust Litigation (II)* (Italian Colors Restaurant) | E.D.N.Y., 11-MD-2221, MDL No. 2221 |
| *Costello v. NBT Bank (Overdraft Fees)* | Sup. Ct. Del Cnty., N.Y., No. 2011-1037 |
| *Gulbankian et al. v. MW Manufacturers, Inc.* | D. Mass., No. 10-CV-10392 |
| *Hawthorne v. Umpqua Bank (Overdraft Fees)* | N.D. Cal., No. 11-cv-06700 |
| *Smith v. City of New Orleans* | Civil D. Ct., Parish of Orleans, La., No. 2005-05453 |



| | |
|---|---|
| *Adkins et al. v. Nestlé Purina PetCare Company et al.* | N.D. Ill., No. 1:12-cv-02871 |
| *Scharfstein v. BP West Coast Products, LLC* | Ore. Cir., County of Multnomah, No. 1112-17046 |
| *Given v. Manufacturers and Traders Trust Company a/k/a M&T Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *In re MI Windows and Doors Products Liability Litigation (Building Products)* | D. S.C., MDL No. 2333 |
| *Childs et al. v. Synovus Bank, et al. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Steen v. Capital One, N.A. (Overdraft Fees)* | E.D. La., No. 2:10-cv-01505 as part of S.D. Fla., MDL No. 2036 |
| *Kota of Sarasota, Inc. v. Waste Management Inc. of Florida* | 12th Jud. Cir. Ct., Sarasota Cnty, Fla., No. 2011-CA-008020NC |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010—Economic and Property Damages Settlement  (Claim Deadline Notice)* | E.D. La., MDL No. 2179 |
| *Dorothy Williams d/b/a Dot's Restaurant v. Waste Away Group, Inc.* | Cir. Ct., Lawrence Cnty, Ala., No. 42-cv-2012- 900001.00 |
| *In re: Energy Future Holdings Corp., et al. (Asbestos Claims Bar Notice)* | Bankr. D. Del., No. 14-10979 |
| *Gattinella v. Michael Kors (USA), Inc., et al.* | S.D.N.Y., No. 14-civ-5731 |
| *Kerry T. Thibodeaux, M.D. (A Professional Medical Corporation) v. American Lifecare, Inc.* | 27th Jud. D. Ct. La., No. 13-C-3212 |
| *Russell Minoru Ono v. Head Racquet Sports USA* | C.D.Cal., No. 2:13-cv-04222 |
| *Opelousas General Hospital Authority v. PPO Plus, L.L.C., et al.* | 27th Jud. D. Ct. La., No. 13-C-5380 |
| *In re: Shop-Vac Marketing and Sales Practices Litigation* | M.D. Pa., MDL No. 2380 |
| *In re: Caterpillar, Inc. C13 and C15 Engine Products Liability Litigation* | D. N.J., MDL No. 2540 |
| *In Re: Citrus Canker Litigation* | 11th Jud. Cir., Fla., No. 03-8255 CA 13 |
| *Whitton v. Deffenbaugh Industries, Inc., et al. Gary, LLC v. Deffenbaugh Industries, Inc., et al.* | D. Kan., No. 2:12-cv-02247 D. Kan., No. 2:13-cv-2634 |
| *Swift v. BancorpSouth Bank (Overdraft Fees)* | N.D. Fla., No. 1:10-cv-00090 as part of MDL 2036 (S.D. Fla.) |
| *Forgione v. Webster Bank N.A. (Overdraft Fees)* | Sup. Ct. Conn., No. X10-UWY-CV-12-6015956-S |
| *Small v. BOKF, N.A.* | D. Col., No. 13-cv-01125 |
| *Anamaria Chimeno-Buzzi & Lakedrick Reed v. Hollister Co. & Abercrombie & Fitch Co.* | S.D. Fla., No. 14-cv-23120 |
| *In Re:  Lithium Ion Batteries Antitrust Litigation* | N.D. Cal., MDL No. 2420, 4:13-MD-02420 |



| | |
|---|---|
| *MSPA Claims 1, LLC v. IDS Property Casualty Insurance Company* | 11th Jud. Cir. Fla, No. 15-27940-CA-21 |
| *Glaske v. Independent Bank Corporation (Overdraft Fees)* | Cir. Ct. Mich., No. 13-009983-CZ |
| *In re: HSBC Bank USA, N.A., Checking Account Overdraft Litigation* | Sup. Ct. N.Y., No. 650562/11 |
| *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch)* | N.D. Cal., MDL No. 2672 |
| *Hawkins v. First Tennessee Bank, N.A., et al. (Overdraft Fees)* | 13th Jud. Cir. Tenn., No. CT-004085-11 |
| *Greater Chautauqua Federal Credit Union v. Kmart Corp., et al. (Data Breach)* | N.D. Ill., No. 1:15-cv-02228 |
| *Bias v. Wells Fargo & Company, et al. (Broker's Price Opinions)* | N.D. Cal., No 4:12-cv-00664 |
| *Klug v. Watts Regulator Company (Product Liability)* | D. Neb., No. 8:15-cv-00061 |
| *Ratzlaff et al. v. BOKF, NA d/b/a Bank of Oklahoma, et al. (Overdraft Fees)* | Dist. Ct. Okla., No. CJ-2015-00859 |
| *Morton v. Greenbank (Overdraft Fees)* | 20th Jud. Dist. Tenn., No. 11-135-IV |
| *Jacobs, et al. v. Huntington Bancshares Inc., et al. (FirstMerit Overdraft Fees)* | Ohio C.P., No. 11CV000090 |
| *Farnham v. Caribou Coffee Company, Inc. (TCPA)* | W.D. Wis., No. 16-cv-00295 |
| *Gottlieb v. Citgo Petroleum Corporation (TCPA)* | S.D. Fla., No. 9:16-cv-81911 |
| *McKnight et al. v. Uber Technologies, Inc. et al.* | N.D. Cal., No 3:14-cv-05615 |
| *Lewis v. Flue-Cured Tobacco Cooperative Stabilization Corporation (n/k/a United States Tobacco Cooperative, Inc.)* | N.C. Gen. Ct of Justice, Sup. Ct. Div., No. 05 CVS 188, No. 05 CVS 1938 |
| *T.A.N. v. PNI Digital Media, Inc.* | S.D. GA., No. 2:16-cv-132 |
| *In re: Syngenta Litigation* | 4th Jud. Dist. Minn., No. 27-CV-15-3785 |
| *The Financial Oversight and Management Board for Puerto Rico as representative of Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy)* | D. Puerto Rico, No. 17-04780 |
| *Reilly v. Chipotle Mexican Grill, Inc.* | S.D. Fla., No. 1:15-cv-23425 |
| *Ma et al. v. Harmless Harvest Inc. (Coconut Water)* | E.D.N.Y., No. 2:16-cv-07102 |
| *Mahoney v TT of Pine Ridge, Inc.* | S.D. Fla., No. 9:17-cv-80029 |
| *Sobiech v. U.S. Gas & Electric, Inc., i/t/d/b/a Pennsylvania Gas & Electric, et al.* | E.D. Penn., No. 2:14-cv-04464 |
| *Alexander M. Rattner v. Tribe App., Inc.,* and *Kenneth Horsley v. Tribe App., Inc.,* | S.D. Fla., No. 1:17-cv-21344 and No. 1:17-cv-23111 |



| | |
|---|---|
| *Gordon, et al. v. Amadeus IT Group, S.A., et al.* | S.D.N.Y. No. 1:15-cv-05457 |
| *Masson v. Tallahassee Dodge Chrysler Jeep, LLC (TCPA)* | S.D. Fla., No. 1:17-cv-22967 |
| *Orlander v. Staples, Inc.* | S.D. NY, No. 13-CV-0703 |
| *Larey v. Allstate Property and Casualty Insurance Company* | W.D. Kan., No. 4:14-cv-04008 |
| *Larson v. John Hancock Life Insurance Company (U.S.A.)* | Cal. Sup. Court, County of Alameda, No. RG16 813803 |
| *Alaska Electrical Pension Fund, et al. v. Bank of America N.A et al. (ISDAfix Instruments)* | S.D.N.Y., No. 14-cv-7126 |
| *Falco et al. v. Nissan North America, Inc. et al. (Engine – CA & WA)* | C.D. Cal., No. 2:13-cv-00686 |
| *Pantelyat, et al v. Bank of America, N.A. et al. (Overdraft/Uber)* | S.D.N.Y., No. 16-cv-08964 |
| *In re: Parking Heaters Antitrust Litigation* | E.D.N.Y., No. 15-MC-0940 |
| *Wallace, et al, v. Monier Lifetile LLC, et al.* | Sup. Ct. Cal., No. SCV-16410 |
| *In re: Windsor Wood Clad Window Products Liability Litigation* | E.D. Wis., MDL No. 16-MD-02688 |
| *Farrell v. Bank of America, N.A.  (Overdraft)* | S.D. Cal., No. 3:16-cv-00492 |
| *Hale v. State Farm Mutual Automobile Insurance Company, et al.* | S.D. Ill., No. 12-cv-0660 |
| *Callaway v. Mercedes-Benz USA, LLC (Seat Heaters)* | C.D. Cal., No. 8:14-cv-02011 |
| *Poseidon Concepts Corp. et al. (Canadian Securities Litigation)* | Ct. of QB of Alberta, No. 1301-04364 |
| *In re: Takata Airbag Products Liability Litigation (OEMs – BMW, Mazda, Subaru, Toyota, Honda, and Nissan)* | S.D. Fla, MDL No. 2599 |
| *Watson v. Bank of America Corporation et al.; Bancroft-Snell et al. v. Visa Canada Corporation et al.; Bakopanos v. Visa Canada Corporation et al.; Macaronies Hair Club and Laser Center Inc. operating as Fuze Salon v. BofA Canada Bank et al.; Hello Baby Equipment Inc. v. BofA Canada Bank and others (Visa and Mastercard Canadian Interchange Fees)* | Sup. Ct. of B.C., No. VLC-S-S-112003; Ontario Sup. Ct., No. CV-11-426591; Sup. Ct. of Quebec, No. 500-06-00549-101; Ct. of QB of Alberta, No. 1203-18531; Ct. of QB of Saskatchewan, No. 133 of 2013 |
| *Vergara, et al., v. Uber Technologies, Inc. (TCPA)* | N.D. Ill., No. 1:15-CV-06972 |
| *Surrett et al. v. Western Culinary Institute, et al.* | Ore. Cir., County of Multnomah, No. 0803-03530 |
| *Underwood v. Kohl's Department Stores, Inc., et al.* | E.D. Penn., No. 2:15-cv-00730 |
| *Ajose et al. v. Interline Brands Inc. (Plumbing Fixtures)* | M.D. Tenn., No. 3:14-cv-01707 |
| *Gergetz v. Telenav (TCPA)* | N.D. Cal., No. 5:16-cv-4261 |
| *Raffin v. Medicredit, Inc., et al.* | C.D. Cal., No 15-cv-4912 |



| | |
|---|---|
| *First Impressions Salon, Inc. et al. v. National Milk Producers Federation, et al.* | S.D. Ill., No. 3:13-cv-00454 |
| *Abante Rooter and Plumbing v. Pivotal Payments Inc., d/b/a/ Capital Processing Network and CPN) (TCPA)* | N.D. Cal., No. 3:16-cv-05486 |
| *Dipuglia v. US Coachways, Inc. (TCPA)* | S.D. Fla., No. 1:17-cv-23006 |
| *Knapper v. Cox Communications* | D. Ariz., No. 2:17-cv-00913 |
| *Martin v. Trott (MI - Foreclosure)* | E.D. Mich., No. 2:15-cv-12838 |
| *Cowen v. Lenny & Larry's Inc.* | N.D. Ill., No. 1:17-cv-01530 |
| *Al's Pals Pet Card, LLC, et al v. Woodforest National Bank, N.A., et al.* | S.D. Tex., No. 4:17-cv-3852 |
| *In Re: Community Health Systems, Inc. Customer Data Security Breach Litigation* | N.D. Ala., MDL No. 2595, 2:15-CV-222 |
| *Tashica Fulton-Green et al. v. Accolade, Inc.* | E.D. Penn., No. 2:18-cv-00274 |
| *37 Besen Parkway, LLC v. John Hancock Life Insurance Company (U.S.A.)* | S.D.N.Y., No. 15-cv-9924 |
| *Stahl v. Bank of the West* | Sup. Ct. Cal., No. BC673397 |
| *Parsons v. Kimpton Hotel & Restaurant Group, LLC (Data Breach)* | N.D. Cal., No. 3:16-cv-05387 |
| *Waldrup v. Countrywide* | C.D. Cal., No. 2:13-cv-08833 |
| *In re: Valley Anesthesiology Consultants, Inc. Data Breach Litigation* | Sup. Ct. Cal., No. CV2016-013446 |
| *Naiman v. Total Merchant Services, Inc., et al. (TCPA)* | N.D. Cal., No. 4:17-cv-03806 |
| *In re Dealer Management Systems Antitrust Litigation* | N.D. Ill., MDL No. 2817, No. 18-cv-00864 |
| *In re HP Printer Firmware Update Litigation* | N.D. Cal., No. 5:16-cv-05820 |
| *Zaklit, et al. v. Nationstar Mortgage LLC, et al. (TCPA)* | C.D. Cal., No. 5:15-CV-02190 |
| *Luib v. Henkel Consumer Goods Inc.* | E.D.N.Y., No. 1:17-cv-03021 |
| *Lloyd, et al. v. Navy Federal Credit Union* | S.D. Cal., No. 17-cv-1280 |
| *Waldrup v. Countrywide Financial Corporation, et al.* | C.D. Cal., No. 2:13-cv-08833 |
| *Adlouni v. UCLA Health Systems Auxiliary, et al.* | Sup. Ct. Cal., No. BC589243 |
| *Di Filippo v. The Bank of Nova Scotia, et al. (Gold Market Instrument)* | Ontario Sup. Ct., No. CV-15-543005-00CP & No. CV-16-551067-00CP |
| *McIntosh v. Takata Corporation, et al.; Vitoratos, et al. v. Takata Corporation, et al.; and Hall v. Takata Corporation, et al.* | Ontario Sup Ct., No. CV-16-543833-00CP; Quebec Sup. Ct of Justice, No. 500-06-000723-144; & Court of Queen's Bench for Saskatchewan, No. QBG. 1284 or 2015 |
| *Rabin v. HP Canada Co., et al.* | Quebec Ct., Dist. of Montreal, No. 500-06-000813-168 |
| *Lightsey, et al. v. South Carolina Electric & Gas Company, a Wholly Owned Subsidiary of SCANA, et al.* | Ct. of Com. Pleas., S.C., No. 2017-CP-25-335 |



| | |
|---|---|
| *In re: Comcast Corp. Set-Top Cable Television Box Antitrust Litigation* | E.D. Penn., No. 2:09-md-02034 |
| *Henrikson v. Samsung Electronics Canada Inc.* | Ontario Sup. Ct., No. 2762-16cp |
| *Burrow, et al. v. Forjas Taurus S.A., et al.* | S.D. Fla., No. 1:16-cv-21606 |
| *Waldrup v. Countrywide Financial Corporation, et al.* | C.D. Cal., No. 2:13-cv-08833 |
| *Jackson v. Viking Group* | D. Md., No. 8:18-cv-02356 |
| *Walters v. Target Corp (Overdraft)* | S.D. Cal., No. 3:16-cv-1678 |
| *Skochin et al. v. Genworth Life Insurance Company, et al.* | E.D. Vir., No. 3:19-cv-00049 |
| *Rose et al. v. The Travelers Home and Marine Insurance Company* | E.D. Penn., No. 19-cv-977 |
| *Nelson v. Roadrunner Transportation Systems, Inc. (Data Breach)* | N.D. Ill., No. 1:18-cv-07400 |
| *In re: Renovate America Finance Cases* | Sup. Ct, Cal., County of Riverside, No. RICJCCP4940 |
| *Behfarin v. Pruco Life Insurance Company, et al.* | C.D. Cal., No. 2:17-05290 |
| *Dasher v. RBC Bank (USA) (Overdraft)* | S.D. Fla., No. 1:10-CV-22190, as part MDL 2036 (S.D. Fla.) |
| *In re: FCA US LLC Monostable Electronic Gearshift Litigation* | E.D. Mich., No. MDL No. 2744, 16-md-02744 |
| *Lehman v. Transbay Joint Powers Authority, et al. (Millennium Tower)* | Sup. Ct. of Cal., Cnty of San Fran., No. GCG-16-553758 |
| *Pirozzi, et al. v. Massage Envy Franchising, LLC* | E.D. Mo., No. 4:19-CV- 807 |
| *Cox, et al. v. Ametek, Inc. et al.*<br>*Danielle Trujillo, et al. v. Ametek, Inc. et al (Toxic Leak)* | S.D. Cal., No. 3:17-cv-00597<br>S.D. Cal., No.3:15-cv-01394 |
| *Lashambae v. Capital One (Overdraft)* | E.D.N.Y, No. 1:2017-cv-06406 |
| *Harris et al. v. Farmers Insurance Exchange and Mid Century Insurance Company* | Sup.Ct Cal., No. BC 579498 |
| *Grayson v. General Electric Company* | D. Conn., No. 3:13-cv-01799 |
| *Elder v. Hilton Worldwide Holdings, Inc.* | N.D. Cal., No. 16-cv-00278 |
| *In Re: Premera Blue Cross Customer Data Security Breach Litigation* | D. Ore., No. 3:15-md-2633 |
| *Lusnak v. Bank of America, N.A.* | C.D. Cal., No. 14-cv-1855 |
| *Kuss v. American HomePatient, Inc. et al.* | M.D. Fla., No. 8:18-cv-2348 |
| *In re: Kaiser Gypsum Company, Inc., el al.* | Bankr. W.D. N.C., No. 16-31602 |
| *Stone et al. v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens* | E.D. Tex., No. 4:17-cv-00001 |
| *In Re Optical Disk Drive Products Antitrust Litigation* | N.D. Cal., No. 3:10-md-2143 |
| *In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation* | N.D. Cal., MDL No. 2672 |



| | |
|---|---|
| *McKinney-Drobnis, et al. v. Massage Envy Franchising* | N.D. Cal., No. 3:16-cv-6450 |
| *Albrecht v. Oasis Power, LLC d/b/a Oasis Energy* | N.D. Ill., No. 1:18-cv-1061 |
| *Garcia v. Target Corporation (TCPA)* | D. Minn., No. 16-cv-02574 |
| *Liggio v. Apple Federal Credit Union* | E.D. Vir., No. 1:18-cv-01059 |
| *In Re: TD Bank, N.A. Debit Card Overdraft Fee Litigation* | D. S.C, MDL No. 2613, No. 6:15-MN-02613 |
| *Fessler v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens* | E.D. Tex., No. 4:19-cv-00248 |
| *Hyder, et al. v. Consumers County Mutual Insurance Company* | D. Ct. of Travis County Tex., No. D-1-GN-16-000596 |
| *Audet et al. v. Garza et al.* | D. Conn., No. 3:16-cv-00940 |
| *In Re: Disposable Contact Lens Antitrust Litigation* | M.D. Fla., No. 3:15-md-2626 |
| *Coffeng v. Volkswagen Group of America, Inc.,* | N.D. Cal., No. 3:17-cv-01825 |
| *Ciuffitelli, et al. v. Deloitte & Touche LLP, et al.* | D. Ore., No. 3:16-cv-00580 |
| *In Re Wells Fargo Collateral Protection Insurance Litigation* | C.D. Cal., No. 8:17-ML-2797 |
| *Prather v. Wells Fargo Bank, N.A. (TCPA)* | N.D. Ill., No. 1:17-cv-00481 |
| *Wilson et al. v. Volkswagen Group of America, Inc. et al.* | S.D. Fla., No. 17-cv-23033 |
| *Armon et al. v. Washington State University* | Sup. Ct. Wash., No. 17-2-23244-1 SEA (consolidated with No. 17-2-25052-0 SEA) |
| *Burch v. Whirlpool Corporation* | W.D. Mich., No. 1:17-cv-18 |
| *Robinson v. First Hawaiian Bank (Overdraft)* | Cir. Ct. of First Cir. Haw., No. 17-1-0167-01 |
| *Denier, et al. v. Taconic Biosciences, Inc.* | Sup Ct. N.Y., No. 00255851 |

Hilsoft-cv-144



# Attachment B



**Pearlstone v. Walmart Stores**
**Notice Plan Proposal**
**Proprietary and Confidential**
**November 12, 2020**

*Notice plan reaches 80% of adults who have shopped at Walmart or Sam's Club, an average frequency of 4.8 times each.* *

### Detailed Media Plan

| Print | Circulation | Insertions | Distribution | Frequency | Language | Ad Size (450 words max) | Cost |
|---|---|---|---|---|---|---|---|
| *People* | 3,400,000 | 2 | National | Weekly | English | 1/3 Page | |
| **Total Estimated Print:** | **3,400,000** | **2** | | | | | **$132,148** |

| Digital Base Plan (Display & Social) | Duration | Impressions** | Distribution | Target | | Ad Size | Cost |
|---|---|---|---|---|---|---|---|
| - Notice on desktop, mobile and tablet devices. <br> - Remarket to Adults who have visited settlement website. | | | | | | | |
| Google Display Network | 6 weeks | 123,500,000 | National | A18+ | | 728x90, 300x250, 300x600 & 970x250 | |
| Google Display Network | 6 weeks | 80,000,000 | National | Custom Affinity Audiences: "Shopping at Walmart," "Shopping at Sam's Club," "Superstore Shoppers" and "Value Shoppers" | English & Spanish | 728x90, 300x250, 300x600 & 970x250 | |
| Google Display Network | 6 weeks | 50,000,000 | National | Custom Intent Audiences: Walmart and Sam's Club | English & Spanish | 728x90, 300x250, 300x600 & 970x250 | |
| Verizon (Yahoo) Audience Network | 6 weeks | 145,000,000 | National | A18+ | English | 728x90, 300x250, 300x600 & 970x250 | |
| Facebook | 6 weeks | 70,000,000 | National | A18+ | English | Newsfeed & Right Hand Column | |
| Facebook | 6 weeks | 95,000,000 | National | A18+ whose interests include Walmart, Sam's Club or Discount Stores | English | Newsfeed & Right Hand Column | |
| Instagram | 6 weeks | 17,500,000 | National | A18+ | English | Newsfeed | |
| Instagram | 6 weeks | 19,000,000 | National | A18+ whose interests include Walmart, Sam's Club or Discount Stores | English | Newsfeed | |
| **Total Estimated Digital:** | | **600,000,000** | | | | | **$234,668** |

**Pearlstone v. Walmart Stores**
**Notice Plan Proposal**
**Proprietary and Confidential**
**November 12, 2020**



| Digital Claims Stimulation (Display & Social) | Duration | Impressions** | Distribution | Target | | Ad Size | Cost |
|---|---|---|---|---|---|---|---|
| - Notice on desktop, mobile and tablet devices. | | | | | | | |
| - Remarket to Adults who have visited settlement website. | | | | | | | |
| Geofence Walmart and Sam's Club | 6 weeks | 40,000,000 | National | A18+; Notice will be served to adults only after identifying them as having stepped inside a Walmart or Sam's club location | English & Spanish | 728x90, 300x250, 300x600 & 970x250 | |
| Google Display Network | 6 weeks | 28,250,000 | National | Custom Affinity Audiences: Walmart and Sam's Club | English | 728x90, 300x250, 300x600 & 970x250 | |
| Google Display Network | 6 weeks | 28,250,000 | National | Custom Intent Audiences: Walmart and Sam's Club | English | 728x90, 300x250, 300x600 & 970x250 | |
| Facebook | 6 weeks | 70,000,000 | National | A18+ whose interests include Walmart or Sam's Club | English | Newsfeed & Right Hand Column | |
| Facebook Lead Form Ads | 6 weeks | 15,000,000 | National | A18+ whose interests include Walmart or Sam's Club | English | Custom Lead Form Ad | |
| Instagram | 6 weeks | 33,500,000 | National | A18+ whose interests include Walmart or Sam's Club | English | Newsfeed | |
| **Total Estimated Digital:** | | **215,000,000** | | | | | **$124,510** |

| Additional Notice Enhancements | Cost |
|---|---|
| Sponsored Search Listings (Google, Yahoo! & Bing) | $5,000 |
| National Press Release over PR Newswire's U.S.1 and Hispanic Newslines (600 words max.) in English and Spanish. | $1,700 |
| **Plan Total:^** | **$498,026** |

*Reach and frequency includes addition of claims stimulation notice plan.
**Impression inventory at time of booking may vary slightly.
^Expert and professional time to be billed separately.
Estimated Program Duration (including lead time after Preliminary Approval):  Approximately 8 weeks
Quote valid for 60 days from issue date. All advertising is subject to publisher's approval and availability at the time of the buy.



Hilsoft Notifications
10300 SW Allen Blvd.
Beaverton, OR 97005
503.350.5800
www.hilsoft.com



# Exhibit 2

*Pearlstone v. Wal-Mart Stores, Inc.*, No. 4:17-cv-02856-HEA (E.D. Mo.)

# Claim Form

**IMPORTANT NOTE: To be eligible to receive a payment from the Settlement, you must submit your claim online or mail this claim form to the Settlement Administrator by [DATE]. See the settlement website, www.walmartrefundclassaction.com, for more details and instructions.**

This form pertains to the class action settlement in *Pearlstone v. Wal-Mart Stores, Inc.*, No. 4:17-cv-02856-HEA (E.D. Mo.). You may only submit a claim if you are a member of the Settlement Class, defined as:

> All individuals who, during the Class Period (July 17, 2015 to [DATE]), returned an item purchased from a Walmart store, Sam's Club store, or online from Walmart.com or Samsclub.com for pickup or delivery within the United States, and to whom Walmart or Sam's Club gave a refund or credit, but the amount of sales tax refunded or credited was less than the full amount of sales tax paid at the time the item was purchased.

**INSTRUCTIONS TO SUBMIT YOUR CLAIM**: If you are a member of the Settlement Class and wish to submit a claim to receive a payment, you can submit your claim online at the settlement website, www.walmartrefundclassaction.com. Online claims must be completed and submitted by **[DATE]** to be timely. If instead you wish to submit a claim by mail, please (1) read these instructions carefully; (2) fill in the contact information below; (3) read and sign the certification; (4) and mail your completed claim form to the address at the bottom of this page. If submitted by U.S. Mail, this form must be postmarked by **[DATE]**.

Each Settlement Class Member is entitled to submit only one Claim Form. If your claim is complete, timely, and approved by the Settlement Administrator, you will receive a payment for your share of the Class Settlement Amount. If you do not submit a claim, you will not be eligible to receive a payment from the Settlement, but you will still be bound by the Settlement Agreement and its release unless you exclude yourself. See the settlement website for more details and instructions.

## Claimant Information

_____     _____     _____
FIRST NAME                                                               MI         LAST NAME

_____
STREET ADDRESS

_____     _____     _____  -  _____
CITY                                                                         STATE               ZIP

_____          _____
EMAIL ADDRESS                                                       CONTACT PHONE NUMBER

## **Purchase/Return Information**

Did you purchase a product at a Walmart store, Sam's Club store, or online from Walmart.com or Samsclub.com and later return the product for a refund or credit between July 17, 2015 and [DATE]?

☐  Yes   ☐  No

Was the amount of sales tax refunded or credited less than the full amount of sales tax you paid at the time the item was purchased?

☐  Yes   ☐  No

**How to Receive Your Payment**: If your Claim is approved by the Settlement Administrator, you have the option to receive your settlement payment electronically or by check. If you elect to receive an electronic payment, the Settlement Administrator will notify you by email when your claim has been approved and will ask you to confirm the email address to be used to facilitate your payment, and will inform you of the electronic payment service (e.g. PayPal or similar service) that will be used to process the payment.

Check the box below to indicate your preference.  Checks will be void after 120 days.

☐      Mailed check               ☐      Electronic payment

## **Certification**

By submitting this form, I am affirming that I am a Settlement Class Member and the information I have provided in this Claim Form is true and correct to the best of my knowledge.  I further acknowledge that I am eligible to receive only one payment from this Settlement based on my eligibility as a Settlement Class Member.  I understand that the Settlement Administrator has the right to verify my claim.

Signature: _____      Date:_____

REMINDER: you can submit your claim online at [website]. If you choose to submit your claim by mail, this form must be completed, signed, and sent to the Settlement Administrator, postmarked no later than **[DATE]**, and addressed to: **[ADDRESS]**

# Exhibit 3

**EXHIBIT 3**

# Walmart and Sam's Club customers may be entitled to a payment from a class action settlement if they returned a purchase and didn't get a full refund.

Official notice for *Pearlstone v. Wal-Mart Stores, Inc.*, Case No. 4:17-cv-02856-HEA (E.D. Mo.)
*Si desea recibir esta notificación en español, llámenos o visite nuestra página web.*

This is <u>not</u> an advertisement from a lawyer. The U.S. District Court for the Eastern District of Missouri authorized this notice to inform Settlement Class Members about their rights and the opportunity to submit a claim in the Settlement.

## What Is This Notice About?

This notice provides important information about a proposed settlement in a class action lawsuit against Walmart. The lawsuit claims that Walmart violated the law by incorrectly calculating and refunding the sales taxes it owed to customers who returned items purchased in store or online from Walmart or Sam's Club after July 17, 2015. Although the court presiding over the case has not decided who is right or wrong, the parties have reached a compromise to end the lawsuit and provide compensation to those who may have been affected. **Please read this notice carefully. It summarizes the rights and options under the settlement. You can access and read the full settlement agreement at** [[website URL]].

## Who's In The Settlement?

**The Settlement Class:** All those individuals who, during the period July 17, 2015 through [[DATE]], returned an item purchased from a Walmart store, Sam's Club store, or online from Walmart.com or Samsclub.com for pickup or delivery within the United States, and to whom Walmart or Sam's Club gave a refund or credit, but the amount of sales tax refunded or credited was less than the full amount of sales tax paid at the time the item was purchased.

## What Are My Options?

If you are a member of the Settlement Class, then you have the following options under the settlement:

1) **File a Claim to Receive Compensation:** You may submit a claim to receive a payment. Under the settlement, all Settlement Class Members Settlement Class who timely submit a valid claim are eligible to receive an equal share of a **$5,000,000** settlement fund after deductions for attorneys' fees, litigation expenses, and administrative costs associated with the Settlement. **To receive a payment, you must submit a claim by [DATE].** You can submit your claim online at the settlement website or mail it to the settlement administrator. Please see below for further instructions.

2) **Exclude Yourself:** You may exclude yourself from the settlement. If you choose this option, you will not receive a payment, but you will not give up your right to assert your own claims

against Walmart if you want to do so. Your request to exclude yourself must be submitted by mail no later than [DATE]. You must follow the process described in section 8 below. If the Settlement is approved and you do not exclude yourself, you will be bound by the Settlement and will release certain claims as described below.

**3)** <u>**Object:**</u> You may object to the settlement. The deadline for objecting to the Settlement is [DATE]. All objections must be mailed to the parties' lawyers and the settlement administrator. See Part 7 below for details.

**4)** <u>**Do Nothing**</u>:  If you do nothing, you will remain a member of the Settlement Class and will not receive any payment and will still be bound by the release of claims against Walmart.

**NOTE:** This is just a summary. The Settlement Class members' rights and options under the settlement—and the deadlines to exercise them—are explained below.

**PLEASE DO NOT CALL OR WRITE THE COURT, THE COURT CLERK'S OFFICE, WALMART, OR WALMART'S ATTORNEYS. THEY WILL NOT BE ABLE TO ASSIST YOU.** If you have questions, or if you'd like more information, please visit [[website URL]] or call [telephone number]

## WHAT THIS NOTICE CONTAINS

1. Who's part of the Settlement?.................................................................4

2. What is this lawsuit about?...................................................................4

3. Who represents me?...........................................................................4

4. What benefits can I receive from the Settlement?..............................5

5. How do I make a Claim and get a Payment?....................................5

6. Do I have to pay the lawyers representing me?.................................5

7. What am I agreeing to by remaining in the Settlement Class in this case?........6

8. What if I don't agree with the Settlement?.......................................6

9. Can I exclude myself from the Settlement Class?.............................7

10. What is the difference between objecting and asking to be excluded?..............8

11. What if I do nothing at all?................................................................8

12. What will be decided at the final approval hearing?.........................8

13. Is this the entire Settlement Agreement?.........................................9

14. Where can I get more information?...................................................9

*For more information and for a claim form, visit* [[website URL]]

## 1.      Who's part of the Settlement?

You may be a member of the Settlement Class if you fall within the Settlement Class definition. The "Settlement Class" is defined as:

> All individuals who, between July 17, 2015 and [[DATE]], returned an item purchased from a Walmart store, Sam's Club store, or online from Walmart.com or Samsclub.com for pickup or delivery within the United States, and to whom Walmart or Sam's Club gave a refund or credit, but the amount of sales tax refunded or credited was less than the full amount of sales tax paid at the time the item was purchased.

The United States District Court for the Eastern District of Missouri (Judge Henry E. Autrey) has conditionally certified the Settlement Class for settlement purposes only.

If you are not sure whether you are in the Settlement Class, or have any other questions about the settlement, visit the settlement website at [[website URL]].

## 2.      What is this lawsuit about?

The lawsuit alleges that Walmart violated the law by failing to provide a full refund in cash or store credit to some customers who were owed a full refund under Walmart's return policy, and specifically that Walmart miscalculated and underrefunded the sales taxes that those customers originally paid for the items they returned.  As alleged in the lawsuit, Walmart maintains a written return policy, under which it promises its customers that they may generally return purchased items within 90 days of the purchase date and receive a full refund in cash or store credit. The lawsuit further alleges that Walmart breached the terms of its return policy and violated the Missouri Merchandising Practices Act ("MMPA"), Mo. Ann. Stat. 407.010 *et seq.* by failing to provide a complete refund to certain customers who made returns pursuant to the return policy—namely, that Walmart underrefunded the sales taxes that some customers originally paid for items they later returned. The complaint in the lawsuit is posted at [[website URL]] and contains all of the allegations.

Walmart denies Plaintiff's allegations and that it has violated the law. Neither the Court nor a jury have considered or decided the merits of the allegations in the lawsuit. The parties have negotiated and entered into the proposed Settlement to avoid the risk, uncertain outcome, expense and distraction of continued litigation.

## 3.      Who represents me?

In a class action, one or more people called "class representatives" sue on behalf of other people who have the same or similar claims. In this case, the Plaintiff, Scott Pearlstone, sued Walmart and sought to represent other consumers who could have similar claims against Walmart. The court has appointed Plaintiff for settlement purposes to be the class representative for all Settlement Class members in this case.

The court also appointed the law firm McGuire Law, P.C. as class counsel to represent the

*For more information and for a claim form, visit* [[website URL]]

Settlement Class members. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 4.      What benefits can I receive from the Settlement?

Walmart has agreed to pay a class settlement amount of $5,000,000 into a Settlement Fund. Settlement Class Members who timely file a valid claim will be eligible to receive an equal share of the money remaining in the Settlement Fund after deductions for the costs of settlement administration, attorneys' fees and litigation expenses, and an incentive award for the Settlement Class Representative.

The exact amount of payments to each Settlement Class member is unknown at this time; the final amount of each payment will depend on the number of claims submitted and the amount available in the Settlement Fund after the deductions.

If you timely submit a valid claim form that is approved by the Settlement Administrator, your settlement payment will be paid by check mailed to you or transmitted electronically, depending on what you prefer.  Claims will only be paid after the Court grants Final Approval of the Settlement and after any appeals are resolved.  If there are appeals, resolving them can take time.  Please be patient.

## 5.      How do I make a Claim and get a Payment?

To qualify for a payment from the Settlement, you must be a Settlement Class Member and submit a Claim Form.  To submit your Claim Form, you may submit an electronic Claim Form online at the settlement website [[settlement website]], or you may download a physical copy of the Claim Form and mail it to the Settlement Administrator.  Claim Forms must be postmarked or submitted online on or before [[DATE]].  Failure to provide complete and accurate information could result in a denial of your claim.

## 6.      Do I have to pay the lawyers representing me?

No. The Court has appointed attorneys from McGuire Law P.C. in Chicago, Illinois to serve as Settlement Class Counsel to represent you and other members of the Settlement Class. If you want to be represented by your own lawyer, you may hire one at your own expense.

To date, Settlement Class Counsel have not received any payment for their services in litigating the case on behalf of the class representatives and the Settlement Class, nor have Settlement Class Counsel been reimbursed for their costs and expenses directly relating to their representation of the Settlement Class. Prior to final approval of the Settlement, Settlement Class Counsel will ask the court for an award of attorneys' fees and litigation expenses for investigating the facts, litigating the case, and negotiating the settlement. This award is subject to court approval and can be up to 35% of the settlement fund, or $1,750,000 plus costs and litigation expenses.

Settlement Class Counsel's contact information is as follows:

*For more information and for a claim form, visit [[website URL]]*

Myles McGuire
Paul T. Geske
Brendan Duffner
McGuire Law, P.C.
55 West Wacker Drive, Suite 900
Chicago, Illinois 60601
mmcguire@mcgpc.com
pgeske@mcgpc.com
bduffner@mcgpc.com
Tel: (312) 893-7002

Class Counsel may also request that an Incentive Award of up to $10,000 be awarded to the class representative in recognition of his service to the Settlement Class. The amount of any fee or service award will be subject to approval by the court.

## 7.     What am I agreeing to by remaining in the Settlement Class in this case?

If you are a member of the Settlement Class, and you choose to remain in the Settlement Class (i.e. you do not exclude yourself), then you will be eligible to submit a claim to receive a payment from the $5,000,000 Settlement Fund as described above. Settlement Class Members will also be bound by the release of claims in the Settlement. This means that if the Settlement is finally approved, Settlement Class Members cannot sue, continue to sue, or be part of any lawsuit against Walmart for claims involving or relating in any way to the claims made in the lawsuit that led to the Settlement.

The released claims include all claims that were or could have been asserted in the litigation, regardless of whether those claims are known or unknown, filed or unfiled, asserted or as yet unasserted, existing or contingent.

## 8.     What if I don't agree with the Settlement?

If you are a member of the Settlement Class, and have not excluded yourself from the Settlement, you may object to the Settlement or any part of the Settlement if you think there are legal reasons why the court should reject it. If you object, the court will consider your views. To object, you must file your objection with the Court and serve a copy of the letter to the Settlement Administrator and the lawyers for both the Settlement Class and Walmart.  Your objection must clearly state the following information:

a)   The case name and case number of this Litigation (*Pearlstone v. Wal-Mart Stores, Inc.*, Case No. 4:17-cv-02856-HEA (E.D. Mo.)).
b)   Your full name, current address, email address and phone number;
c)   The reasons why you object to the Settlement along with any supporting materials;
d)   Information about all other objections you or your lawyer(s) have made in other class action cases in state or federal courts, including the name of the case, case number, the court in which the objection was filed, and the outcome of the objection; and
e)   Your signature.

**Your objection must be postmarked no later than [date].** Objections must be mailed to:

Epiq Class Actions and Claims Solutions
[Address]

| **Plaintiff's Counsel** | **Walmart's Counsel** |
|---|---|
| Paul Geske | Naomi G. Beer |
| McGuire Law, P.C. | GREENBERG TRAURIG, LLP |
| 55 W. Wacker Drive, 9th Fl. | 1144 15th Street, Suite 3300 |
| Chicago, IL 60601 | Denver, Colorado 80202 |

## 9.      Can I exclude myself from the Settlement Class?

If you do not want a payment and do not want to be legally bound by the terms of the Settlement, you must exclude yourself from the Settlement. If you do so, you will not be eligible to receive any payments as a result of this Settlement. However, you will keep the right to sue or continue to sue Walmart on your own and at your own expense if you wish to pursue any of the claims being released as part of this settlement.

To exclude yourself from the Settlement Class, you must submit a timely and valid "Opt-Out Request" to the Settlement Administrator in writing.  To be valid, the request must include:

a)   The case name and case number of this Litigation (*Pearlstone v. Wal-Mart Stores, Inc.*, Case No. 4:17-cv-02856-HEA (E.D. Mo.)).
b)   Your full name, current mailing address, email address, and phone number;
c)   A statement that you wish to exclude yourself from the Settlement Class; and
d)   Your signature.

To be considered timely, you must submit your fully completed Opt-Out Request to the following address postmarked no later than [date].

Settlement Administrator: Epiq Class Actions and Claims Solutions [address]

**REQUESTS FOR EXCLUSION FROM THE CLASS THAT ARE NOT POSTMARKED ON OR BEFORE [date] WILL NOT BE HONORED.**

You cannot exclude yourself from the Settlement Class by telephone, email, or on the settlement website. You cannot exclude yourself by mailing a request to any other location or after the deadline above. Your request for exclusion must be signed by you.

## 10.  What is the difference between objecting and asking to be excluded?

Objecting is telling the Court the legal reasons why you do not like something about the Settlement. You can object to the settlement only if you are a Settlement Class Member and you do not exclude yourself.

Excluding yourself is telling the court that you do not want to be part of the settlement. If you exclude yourself, you cannot object to the settlement because it no longer affects you.

## 11.  What if I do nothing at all?

If you are a Settlement Class Member and do nothing in response to this notice, you will remain a member of the Settlement Class and release your claims against Walmart. However, you will not be eligible to receive an individual payment. **You must submit a claim to receive a payment from this settlement.** See Part 4 above.

## 12.  When will the court finally rule on the Settlement?

The Court will hold a final approval hearing to decide whether to grant final approval to the Settlement and any requests for fees, expenses, and incentive awards. The final approval hearing is currently set for [date] at [time] in Courtroom 10N of the Thomas F. Eagleton U.S. Courthouse, 111 S. 10th Street, St. Louis, MO 63102. The hearing may be moved to a different date or time without additional notice, so you should check [[website URL]] and the court's docket for updates.

At the final approval hearing, the court will consider whether the settlement is fair, reasonable, and adequate. The court will also consider the request by Settlement Class Counsel for attorneys' fees and expenses and for the Settlement Class Representative's incentive award. If there are any objections, the court will consider them at the final approval hearing as well. After the hearing, the court will decide whether to finally approve the settlement. We do not know how long that decision may take.

You may attend the hearing, at your own expense, but you do not have to do so. If you wish to ask the court for permission to speak at the hearing, you must send a "Notice of Intent to Appear" letter to the Court and to Settlement Class Counsel and Walmart's Counsel saying that you intend to appear and wish to be heard. Your Notice of Intent to Appear must include the following:

a) The case name and case number of this litigation (*Pearlstone v. Wal-Mart Stores, Inc.*, Case No. 4:17-cv-02856-HEA (E.D. Mo.)).
b) Your full name, current address, email address, and phone number;
c) A statement that this is your "Notice of Intent to Appear" at the final approval hearing in this case;
d) Copies of any papers, exhibits, or other evidence or information that you will present to the court;
e) The reasons you want to be heard; and
f) Your signature.

You must send copies of your Notice of Intent to Appear, postmarked by [date], to:

Clerk of Court
Thomas F. Eagleton Courthouse
111 South 10th Street, Suite 3.300
St. Louis, MO 63102

**Plaintiff's Counsel**

Paul Geske
MᴄGᴜɪʀᴇ Lᴀᴡ, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601

**Walmart's Counsel**

Naomi G. Beer
GREENBERG TRAURIG, LLP
1144 15th Street, Suite 3300
Denver, Colorado 80202

**Note: You cannot object or speak at the hearing if you exclude yourself from the settlement.**

## 13.      Does this Notice contain the entire Settlement Agreement?

No. This is only a summary of the Settlement. If the Settlement is approved and you do not exclude yourself from the Settlement Class, you will be bound by the terms and the release contained in the settlement agreement, and not just by the terms of this notice. You can view the full settlement agreement online at [[website URL]], or you can write to the settlement administrator for more information.

## 14.      Where can I get more information?

For more information, visit [[website URL]] or call class counsel at (312) 893-7002.

**NOTE: PLEASE DO NOT CALL OR WRITE THE COURT, THE COURT CLERK'S OFFICE, WALMART, OR WALMART'S COUNSEL. THEY WILL NOT BE ABLE TO ASSIST YOU.**

# Exhibit 4

**EXHIBIT 4**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| SCOTT PEARLSTONE, individually and on behalf of similarly situated individuals, | ) ) ) | |
| *Plaintiff*, | ) ) | Case No. 4:17-cv-02856-HEA |
| v. | ) ) ) | Hon. Henry Edward Autrey |
| WAL-MART STORES, INC., | ) ) | |
| *Defendant*. | ) ) ) | |

## [PROPOSED] PRELIMINARY APPROVAL ORDER

This matter having come before the Court for consideration of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion"), the Court having considered and reviewed Plaintiff's Motion, the Parties' class action Settlement Agreement, and all other papers that have been filed with the Court related to the Settlement Agreement, including all exhibits and attachments to the Motion and the Settlement Agreement,

IT IS HEREBY ORDERED:

1.     Unless stated otherwise, all capitalized terms used in this Final Order and Judgment shall be defined and interpreted in accordance with the definitions in the Parties' Settlement Agreement.

2.     The Parties have applied to the Court for preliminary approval of the proposed Settlement, the terms of which are set forth in the Settlement Agreement, and have provided the Court with sufficient information to enable it to determine whether to certify the Settlement Class and order that notice be given to the Settlement Class Members.

3.     Subject to further consideration by the Court at the time of final approval, the Court

preliminarily approves the Parties' Settlement as falling within the range of possible final approval

and as meriting notice to the Settlement Class Members for their consideration.

4.       For settlement purposes only, pursuant to Fed. R. Civ. P. 23(b)(3) and 23(e), the

Court hereby preliminarily certifies the Settlement Class defined as:

> All individuals who, during the Class Period, returned an item purchased from a
> Walmart store, Sam's Club store, or online from Walmart.com or Samsclub.com
> for pickup or delivery within the United States, and to whom Walmart or Sam's
> Club gave a refund or credit, but the amount of sales tax refunded or credited was
> less than the full amount of sales tax paid at the time the item was purchased.

5.       For settlement purposes only, the Court preliminarily finds that the Parties'

Settlement Agreement and the proposed Settlement Class satisfy all of the prerequisites to

maintenance of a class action listed in Federal Rule 23, namely:

A.       The Settlement Class Members are so numerous that joinder of all of them
is impracticable;

B.       There are questions of law and fact common to the Settlement Class
Members, which predominate over any individual questions;

C.       The claims of the Plaintiff are typical of the claims of the Settlement Class
Members;

D.       The Plaintiff and Class Counsel have fairly and adequately represented and
protected the interests of all of the Settlement Class Members; and

E.       Class treatment of these claims will be efficient and manageable, thereby
achieving an appreciable measure of judicial economy, and a class action is
superior to other available methods for a fair and efficient adjudication of
this controversy.

*See Prater v. Medicredit, Inc.*, 4:14-cv-159, 2015 U.S. Dist. LEXIS 94435, at *4–5 (E.D. Mo. July

13, 2015).

6.     The Court further finds, preliminarily and for settlement purposes only, that the relief provided for the Settlement Class Members under the Settlement is fair, reasonable, and adequate, taking into account the considerations listed in Federal Rule 23(e)(2). In particular, Plaintiff and Settlement Class Counsel have adequately and capably represented the Settlement Class; the Settlement Agreement was negotiated at arms-length between the Parties and only reached following a mediation with the assistance of the Hon. James F. Holderman (Ret.) of JAMS Chicago; the monetary relief provided for the Settlement Class constitutes adequate compensation, taking into account the factors listed in Federal Rule 23(e)(2)(C); and the Settlement Agreement treats Settlement Class Members equitably relative to each other. The Settlement is also fair, adequate, and reasonable based on the four factors laid out in *Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988), namely: (1) the Settlement provides adequate compensation in light of the strength of Plaintiff's case; (2) the financial condition of the Defendant is such that the Settlement is reasonable; (3) the complexity and expense of further litigation counsels in favor of approval; and (4) the absence of opposition to the Settlement.

7.     The Court appoints Plaintiff Scott Pearlstone as Settlement Class Representative of the Settlement Class, and the following counsel are appointed as Settlement Class Counsel for the Settlement Class:

> Myles McGuire
> Paul T. Geske
> Brendan Duffner
> MCGUIRE LAW, P.C.
> 55 W. Wacker Drive, 9th Fl.
> Chicago, IL 60601

8.     The Court finds that Plaintiff and Settlement Class Counsel have and will continue to fairly and adequately represent and protect the interests of the members of the Settlement Class

in accordance with Federal Rule 23(a)(4) and 23(e)(2)(A).

9.      The Court approves, in form and content, the Notice Plan set forth in the Settlement Agreement and its attendant exhibits and finds that the Notice Plan provides the best notice practicable under the circumstances of this Settlement. The Court further finds that the Parties' Notice Plan satisfies Due Process, such that the Settlement Agreement will be binding on all Settlement Class Members upon final approval. The Court finds that the proposed Notice is clearly designed to advise the Class Members of their rights.

10.     The Court finds that the Long Form Notice and Publication Notice attached to the Settlement Agreement meets all of the requirements and contains all the required information listed in Federal Rule 23(c)(2) and 23(e)(1). No notice other than that specifically identified in the Settlement Agreement and its attendant exhibits is necessary in this action. The Parties, by agreement, may revise the Notices and Claim Form in ways that are not material, or in ways that are appropriate to update the documents for purposes of accuracy, readability, or formatting.

11.     The Court approves the establishment of a Qualified Settlement Fund in accordance with Treasury Regulation § 1.468B-1, 26 C.F.R. § 1.468B-1, that shall be funded and administered in accordance with the terms of the Settlement Agreement.

12.     Epiq Class Actions & Claims Solutions is hereby appointed Settlement Administrator to supervise and administer the notice process, as well as to oversee the claims submission process and administration of the Settlement, as more fully described in the Settlement Agreement. The Settlement Administrator shall proceed with the distribution of class notice, as set forth in the Settlement Agreement and its attendant exhibits.

13.     The Settlement Administrator shall provide notice to the Settlement Class in accordance with the Notice Plan set forth in the Settlement Agreement and its attendant exhibits.

The Settlement Administrator shall begin providing Notice, and the beginning date of the Notice Period under the Settlement Agreement, shall be [DATE] (30 days from entry of this Order), provided, however, that the Parties may agree to begin the Notice Period at a later date if needed for scheduling and logistical considerations.

14.     Settlement Class Members who wish to receive benefits under the Settlement Agreement must timely submit a valid and completed Claim Form in accordance with the instructions provided in the notices, on or before the Claims Deadline under the Settlement Agreement (the date that is fourteen (14) days after the close of the Notice Period).  Any Settlement Class Member who does not timely submit a Claim Form deemed to be valid in accordance with the Settlement Agreement shall not be entitled to receive any monetary benefit under the Settlement. The Court hereby approves as to form and content the Claim Form attached to the Settlement Agreement.

15.     Any person who would otherwise be a Settlement Class Member may request to be excluded (or "opt-out") from the Settlement Class. In order to exercise the right to be excluded, a person within the Settlement Class must timely send a written request for exclusion to the Settlement Administrator, providing his or her name and address, email address, telephone number, signature, the name and number of this case, and a statement that he or she wishes to be excluded from the Settlement Class. Any request for exclusion submitted via U.S. mail must be personally signed by the person requesting exclusion. Such exclusion requests must be sent to the Settlement Administrator at the address specified in the Class Notice, by first class mail, postage prepaid, and postmarked no later than the Opt-Out Deadline under the Settlement Agreement (the date that is fourteen (14) days after the close of the Notice Period), and received by the Settlement Administrator within five (5) business days after the Opt-Out Deadline.

16.      No person within the Settlement Class, or any person acting on behalf of, in concert with, or in participation with that person within the Settlement Class, may request exclusion from the Settlement Class on behalf of another.

17.      Settlement Class Members shall be bound by all determinations and orders pertaining to the Settlement, including the release of all claims to the extent set forth in the Settlement Agreement, whether favorable or unfavorable, unless such persons request exclusion from the Settlement Class in a timely and proper manner, as provided herein and in the Settlement Agreement. Settlement Class Members who do not timely and validly request exclusion shall be so bound even if they have previously initiated or subsequently initiate litigation or other proceedings against Defendant or the Releasees relating to the claims released under the terms of the Settlement Agreement.

18.      Any person in the Settlement Class who elects to be excluded shall not: (i) be bound any Final Approval Order; (ii) be entitled to relief under the Settlement Agreement; (iii) gain any rights by virtue of the Settlement Agreement; or (iv) be entitled to object to any aspect of the Settlement Agreement.

19.      Settlement Class Counsel may file a motion seeking an award of Attorneys' Fees and Litigation Expenses, as well as an Incentive Award for the Class Representative, no later than _____, 2021 (148 days from entry of this Order).

20.      Any Settlement Class Member who has not requested exclusion from the Settlement Class and who wishes to object to any aspect of the Settlement Agreement, including to the payment of an Incentive Award for the Class Representative or to the amount of the Attorneys' Fees and Litigation Expenses that Settlement Class Counsel intends to seek, may do so, either personally or through an attorney, by filing a written objection with the Court, together

with the supporting information set forth below in paragraph 21 of this Order, and serving such

objection upon Settlement Class Counsel, Defendant's Counsel, and the Settlement Administrator

no later than the Objection Deadline under the Settlement Agreement (the date that is fourteen (14)

days after the close of the Notice Period).  Addresses for Settlement Class Counsel, Defendant's

Counsel, and the Settlement Administrator are as follows:

| **Settlement Class Counsel** | **Defendants' Counsel** |
|---|---|
| Myles McGuire | Naomi G. Beer |
| Paul T. Geske | Francis Citera |
| Brendan Duffner | GREENBERG TRAURIG, LLP |
| MCGUIRE LAW, P.C. | 1144 15th Street, Suite 3300 |
| 55 W. Wacker Drive, 9th Floor | Denver, Colorado 80202 |
| Chicago, IL 60601 | |

**Settlement Administrator**

Epiq Class Actions and Claims Solutions
P.O. Box ####

21.     Any Settlement Class Member who has not requested exclusion and who intends

to object to the Settlement must state, with specificity and in writing, all objections and the basis

for any such objection(s), and must also state in writing: (i) his or her full name, address, email

address, and telephone number; (ii) the case name and number of this Litigation; (iii) all grounds

for the objection, with factual and legal support for the stated objection, including any supporting

materials; (iv) proof of standing; (v) the identification of any other objections he or she has filed,

or has had filed on his or her behalf, in any other class action cases in the last four years (including,

for each case, the name of the case, the case number, the court in which the objection was filed,

and the outcome of the objection); and (vi) the objector's signature. Objections not filed and served

in accordance with this Order shall not be received or considered by the Court. Any Settlement

Class Member who fails to timely file and serve a written objection in accordance with this Order

shall be deemed to have waived, and shall be forever foreclosed from raising, any objection to the Settlement, to the fairness, reasonableness, or adequacy of the Settlement, to the payment of Attorneys' Fees and Litigation Expenses, to the payment of any Incentive Award, and to the Final Approval Order and the right to appeal the same.

22.     A Settlement Class Member who has not requested exclusion from the Settlement Class and who has properly submitted a written objection in compliance with this Order may appear at the Final Approval Hearing in person or through counsel to show cause why the proposed Settlement should not be approved as fair, reasonable, and adequate. Attendance at the hearing is not necessary; however, persons wishing to be heard orally in opposition to the approval of the Settlement and/or Settlement Class Counsel's requested attorneys' fee award and/or the request for an Incentive Award to the Class Representative are required to indicate in their written objection their intention to appear at the Final Approval Hearing on their own behalf or through counsel. For any Settlement Class Member who files a timely written objection and who indicates his or her intention to appear at the Final Approval Hearing on their own behalf or through counsel, such Settlement Class Member must also include in his or her written objection the identity of any witnesses he or she may call to testify, and all exhibits he or she intends to introduce into evidence at the Final Approval Hearing, which shall be attached.

23.     No Settlement Class Member shall be entitled to be heard, and no objection shall be considered, unless the requirements set forth in this Order and in the Settlement Agreement are fully satisfied. Any Settlement Class Member who does not make his or her objection to the Settlement in the manner provided herein, or who does not also timely provide copies to the designated counsel of record for the Parties at the addresses set forth herein, shall be deemed to have waived any such objection and any right to challenge the Settlement by appeal, collateral

attack, or otherwise, and shall be bound by the Settlement Agreement, the releases contained therein, and all aspects of the Final Approval Order.

24.     All papers in support of final approval of the Settlement shall be filed no later than fourteen (14) days before the Final Approval Hearing.

25.     Pending final approval of the proposed Settlement, no Settlement Class Member may prosecute, initiate, commence, or continue any lawsuit (individual or class action) with respect to the Released Claims against Defendant or any of the Releasees.

26.     The Final Approval Hearing shall be held before the Court on _____, 2021 in Courtroom 10N of the Thomas F. Eagleton U.S. Courthouse, 111 S. 10th Street, St. Louis, MO 63102 (or via electronic means as needed) for the following purposes:

    a)      to finally determine whether the applicable prerequisites for settlement class action treatment under Federal Rule 23 have been met;

    b)      to finally determine whether the Settlement is fair, reasonable, and adequate, and should be approved by the Court;

    c)      to determine whether the judgment as provided under the Settlement Agreement should be entered, including an order prohibiting Settlement Class Members from further pursuing claims released in the Settlement Agreement;

    d)      to consider any application for an award of Attorneys' Fees and Litigation Expenses by Settlement Class Counsel;

    e)      to consider the application for an Incentive Award to the Class Representative;

    f)      to consider the distribution of the Settlement Fund pursuant to the Settlement Agreement; and

g)       to rule upon such other matters as the Court may deem appropriate.

27.     The Final Approval Hearing may be postponed, adjourned, transferred, or continued by order of the Court without further notice to the Settlement Class. At or following the final approval hearing, the Court may enter a judgment approving the Settlement Agreement and a final approval order in accordance with the Settlement Agreement that adjudicates the rights of all Settlement Class Members.

28.     Settlement Class Members do not need to appear at the Final Approval Hearing or take any other action to indicate their approval.

29.     All discovery and other proceedings in the Litigation as between Plaintiff and Defendant are stayed and suspended until further order of Court except such actions as may be necessary to implement the Settlement Agreement and this Order.

IT IS SO ORDERED.

ENTERED: _____               _____
                                                            Hon. Henry Edward Autrey
                                                            U.S. District Court Judge

# Exhibit 5

**EXHIBIT 5**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SCOTT PEARLSTONE, individually and on behalf of similarly situated individuals, | ) ) ) | |
| *Plaintiff*, | ) ) | Case No. 4:17-cv-02856-HEA |
| v. | ) ) | Hon. Henry Edward Autrey |
| WAL-MART STORES, INC., | ) ) | |
| *Defendant*. | ) ) ) | |

**[PROPOSED] FINAL ORDER AND JUDGMENT**

This matter having come before the Court for consideration of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Unopposed Motion for Approval of Attorneys' Fees, Litigation Expenses, and Incentive Award, due and adequate notice having been given to all Parties and the Settlement Class Members, and the Court being fully advised in the premises,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED:

1.      Unless stated otherwise, all capitalized terms used in this Final Order and Judgment shall be defined and interpreted in accordance with the definitions in the Parties' Settlement Agreement.

2.      The Court has read and considered the papers filed in support of Plaintiff's Motions, including all exhibits thereto and supporting declarations. The Parties have provided the Court with sufficient information to enable it to determine whether to certify the Settlement Class and finally approve the Settlement.

3.     The Court finds that it has jurisdiction over the subject matter of the Litigation and all claims raised therein, and has personal jurisdiction over all Parties to the Litigation, including all Settlement Class Members.

4.     The Court preliminarily approved the Parties' Settlement Agreement in its Preliminary Approval Order dated _____, 2020. Pursuant to Federal Rule 23(c)(2), the Court's Preliminary Approval Order, and the Parties' Notice Plan, the Settlement Class Members were notified of the terms of the proposed Settlement and of a final approval hearing to determine, *inter alia*, whether the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate for the release and dismissal of the released claims against the Releasees.

5.     The Court held a final approval hearing on _____, 2021, at which time the Parties and all other interested persons were afforded the opportunity to be heard in support of or in opposition to the Settlement. Settlement Class members were notified of their right to retain an attorney and appear at the hearing in support of or in opposition to the proposed Settlement.

6.     Pursuant to Federal Rule 23(a), (b)(3), and (e), and solely for purposes of settlement, the Court finally approves certification of the following Settlement Class:

> All individuals who, during the Class Period, returned an item purchased from a Walmart store, Sam's Club store, or online from Walmart.com or Samsclub.com for pickup or delivery within the United States, and to whom Walmart or Sam's Club gave a refund or credit, but the amount of sales tax refunded or credited was less than the full amount of sales tax paid at the time the item was purchased.

7.     Based on the papers filed with the Court and the presentations made to the Court by the Parties and other interested persons at the final approval hearing, and pursuant to Federal Rule 23(e)(2), the Court now grants final approval to the Settlement and finds that the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class Members, because: Plaintiff and Settlement Class Counsel have adequately and capably represented the

Settlement Class; the Settlement Agreement was negotiated at arms-length between the Parties and only reached following a mediation with the assistance of the Hon. James F. Holderman (Ret.) of JAMS Chicago; the monetary relief provided for the Settlement Class constitutes adequate compensation, taking into account the risks that both sides faced with respect to the merits of the claims alleged and remedies requested, the costs, risks, and delay of trial and appeal, the hurdles involved in maintaining a class action, and the expense and duration of further litigation, as well as the other factors listed in Federal Rule 23(e)(2)(C); and the Settlement Agreement treats Settlement Class Members equitably relative to each other. The Settlement is also fair, adequate, and reasonable based on the four factors laid out in *Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988), namely: (1) the Settlement provides adequate compensation in light of the strength of Plaintiff's case; (2) the financial condition of the Defendant is such that the Settlement is reasonable; (3) the complexity and expense of further litigation counsels in favor of approval; and (4) the absence of opposition to the Settlement. Therefore, the Settlement is finally approved.

8. For settlement purposes only, the Court confirms the appointment of Plaintiff Scott Pearlstone as Settlement Class Representative of the Settlement Class and the following counsel as Settlement Class Counsel:

> Myles McGuire
> Paul T. Geske
> Brendan Duffner
> McGuire Law, P.C.
> 55 W. Wacker Drive, 9th Floor
> Chicago, IL 60601

9. With respect to the Settlement Class, the Court finds, for settlement purposes only, that the prerequisites to certification listed in Federal Rule of Civil Procedure 23 are satisfied, namely:

A. Rule 23(a)(1) is satisfied because the Settlement Class is so numerous that

joiner would be impracticable;

B.      Rule 23(a)(2) is satisfied because the Settlement Class Members all present a common contention and suffered common injuries;

C.      Rule 23(a)(3)'s typicality requirement is met because the claims of the named Plaintiff are typical of the Settlement Class Members' claims;

D.      The adequacy requirements of Rule 23(a)(4) are satisfied because Plaintiff's interests are not antagonistic to those of the Settlement Class and Settlement Class Counsel vigorously pursued all claims;

E.      Rule 23(b)(3) is satisfied because common issues predominate over individual issues, the Settlement Class is manageable for settlement purposes, and class-wide resolution is the superior method for resolving this dispute.

*See In re Aurora Dairy Corp.*, 4:08-md-1907, 2013 U.S. Dist. LEXIS 205352, at *16–21 (E.D. Mo. Feb. 26, 2013).

10.     The Court finds that adequate notice was given to all Settlement Class Members pursuant to the terms of the Parties' Settlement Agreement and the Preliminary Approval Order. The Court has further determined that the Notice Plan fully and accurately informed Settlement Class Members of all material elements of the Settlement, constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule 23(c)(2) and 23(e)(1), applicable law, and the Due Process Clause of the United States Constitution.

11.     The Court orders the Parties to the Settlement Agreement to perform their obligations thereunder. The terms of the Settlement Agreement shall be deemed incorporated herein as if explicitly stated and shall have the full force of an order of this Court.

12.     The Court enters judgment and dismisses the Litigation with prejudice, with each Party to bear its own fees and costs (except as otherwise provided herein and in the Settlement Agreement) as to Plaintiff's and all Settlement Class Members' claims against Defendant. The Court adjudges that the Settlement Class Member Released Claims, the claims covered under the Individual General Release by Settlement Class Representative, and all of the claims described in the Settlement Agreement are released against the Releasees.

13.     The Court adjudges that Plaintiff and all Settlement Class Members who have not opted out of the Settlement Class shall be deemed to have fully, finally, and forever released, relinquished, and discharged all Settlement Class Member Released Claims against the Releasees.

14.     The Court further adjudges that, upon entry of this Order, the Settlement Agreement and the above-referenced release of the Settlement Class Member Released Claims will be binding on, and have preclusive effect in, all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiff and all other Settlement Class Members who did not validly and timely opt out of the Settlement, and their respective affiliates, assigns, heirs, executors, administrators, successors, agents, and insurers, as set forth in the Settlement Agreement. The Releasees may file the Settlement Agreement and/or this Final Order and Judgment in any action or proceeding that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

15.     Plaintiff and Settlement Class Members who did not validly and timely request exclusion from the Settlement are permanently barred and enjoined from asserting, commencing, prosecuting, or continuing any of the Settlement Class Member Released Claims or any of the

claims described in the Settlement Agreement against any of the Releasees.

16.     The Court approves payment of Attorneys' Fees and Litigation Expenses to Settlement Class Counsel in the amount of $_____. This amount shall be paid from the Class Settlement Amount in accordance with the terms of the Settlement Agreement. The Court, having considered the materials submitted by Settlement Class Counsel in support of final approval of the Settlement and their request for Attorneys' Fees and Litigation Expenses and in response to any timely filed objections thereto, finds the award of Attorneys' Fees and Litigation Expenses appropriate and reasonable for the following reasons: First, the Court finds that the Settlement provides substantial benefits to the Settlement Class. Second, the Court finds the payment fair and reasonable in light of the substantial work performed by Class Counsel. Third, the Court concludes that the Settlement was negotiated at arms-length without collusion, and that the negotiation of the attorneys' fees only followed agreement on the settlement benefits for the Settlement Class Members. Finally, the Court notes that the Class Notices specifically and clearly advised the Settlement Class Members that Settlement Class Counsel would seek an award in the amount sought.

17.     The Court approves payment of an Incentive Award in the amount of $_____ for the Settlement Class Representative, and specifically finds such amount to be reasonable in light of the services performed by Plaintiff for the Settlement Class, including taking on the risks of litigation and helping achieve the compensation made available to the Settlement Class. This amount shall be paid from the Settlement Fund in accordance with the terms of the Settlement Agreement.

18.     Neither this Final Order and Judgment, the Settlement Agreement, nor the payment of any consideration in connection with the Settlement shall be construed or used as an admission

or concession by or against Defendant or any of the Releasees of any fault, omission, liability, or wrongdoing, or of the validity of any of the Settlement Class Member Released Claims. This Final Order and Judgment is not a finding as to the merits of any claims in this Litigation or a determination of any wrongdoing by Defendant or any of the Releasees. The final approval of the Settlement Agreement does not constitute any position, opinion, or determination of this Court as to the merits of the claims or defenses of the Parties or the Settlement Class Members.

19.     Any outstanding objections to the Settlement Agreement are overruled and denied in all respects. The Court finds that no reason exists for delay in entering this Final Order and Judgment. Accordingly, the Clerk is directed to enter this Final Order and Judgment.

20.     The Parties, without further approval from the Court, are permitted to agree to and adopt such amendments, modifications, and expansions of the Settlement Agreement and its implementing documents (including all exhibits to the Settlement Agreement) so long as they are consistent in all material respects with the Final Order and Judgment and do not limit the rights of the Settlement Class Members.

IT IS SO ORDERED.


ENTERED: _____          _____
                                       Hon. Henry Edward Autrey
                                       U.S. District Court Judge